IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | Case No.: |
| | ) | |
| CRAIG R. BARRETT, CHARLENE | ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, D. | ) | **Jury Trial Demanded** |
| JAMES GUZY, REED E. HUNDT, | ) | |
| PAUL S. OTELLINI, DAVID S. | ) | |
| POTTRUCK, JANE E. SHAW, JOHN L. | ) | |
| THORNTON, DAVID B. YOFFIE, | ) | |
| ANDREW S. GROVE, and | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT**

Plaintiff alleges, upon information and belief based upon, <u>inter alia</u>, the investigation made by and through his attorneys, except as to those allegations which pertain to the plaintiff himself which are alleged upon knowledge, as follows:

1. The jurisdiction of this Court is founded upon §27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §78aa, and upon 28 U.S.C. §1367(a).

2. The claims herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and Rule 14a-9, 17 C.F.R. §240.14a-9, of the Securities and Exchange Commission (the "SEC") promulgated thereunder, Schedule 14A, 26 C.F.R. §240.14a-101, and the laws of

1

the several states including, particularly, the State of Delaware. In addition, 26 U.S.C. §162(m) and 26 C.F.R. §1.162-27 are applicable.

3.  Plaintiff brings this action derivatively in the right of and for the benefit of Intel Corp. (the "Company" or "Intel"), to recover for a false and misleading Proxy Statement that fails to comply with SEC regulations governing the contents of proxy statements. The Proxy Statement solicits stockholder approval of the 2005 Intel Corporation Executive Officer Incentive Plan, as Amended and Restated Effective May 18, 2005 (the "EOIP" or "Plan") at the annual meeting on May 18, 2005 of the stockholders of Intel Corporation, a Delaware Corporation ("Intel" or the "Company"). The Proxy Statement repeatedly refers to the Plan as a pay-for-performance plan, but it is really a system of pay-for-pulse. For example, in one year when earnings declined 87% from the previous year, bonus declined only 51%.

4.  This action is not a collusive one to confer jurisdiction on this court which it would not otherwise have. This action is not a securities fraud class action and does not present the possibility of abuse that congress sought to remedy with the Private Securities Litigation Reform Act of 1995 (Pub.Law 104-67, 109 Stat. 737), i.e., class actions charging fraud based on complicated, false accounting statements, every time a stock price fell a few points, with expensive discovery procedures that in themselves are so harsh that they might coerce settlement. It does not seek to recover damages, but rather specific, equitable relief. This case does not fall into the pattern of the usual securities fraud action, and application of those legal requirements must be adjusted to fit this particular action.

5. Plaintiff is a stockholder of this Company and has been such continuously since on or about April 14, 1999 and throughout the time of the wrongs alleged herein to the present.

6. Plaintiff has made no demand upon the board of directors of the Company to institute and prosecute this action because such demand would be futile and hence is excused for the following reasons:

(a) The entire board is neither disinterested nor independent since every member of the board is liable for violation of §14(a) of the Exchange Act, Rule 14a-9, and Schedule 14A.

(b) The board's conduct is not the product of a valid exercise of business judgment. The directors' solicitation of stockholder approval of the Plan without making accurate disclosures as alleged herein was a decision that no reasonable person would make. Moreover, the directors breach their disclosure obligations under §14(a) of the Exchange Act, Rule 14a-9, and Schedule 14A, for which they cannot be protected by the business judgment rule.

(c) The board breaches its fiduciary duty of disclosure under Delaware law for which it is not protected by the business judgment rule. Accordingly, demand on the board is excused.

(d)    Based on both Delaware law and federal policy, there is no need for prior demand upon the board of directors with respect to claims of misstatement or omission in a proxy statement.

## FIRST CLAIM
### (Under the Exchange Act and Re-incorporating ¶¶1-6)

7.    In connection with the acts, omissions, conduct, and wrongs alleged herein, defendants used the means and instrumentalities of interstate commerce and the mails in committing the wrongs alleged herein.

8.    The Company is incorporated in the State of Delaware. It fiscal year ends on the last Saturday in December. On February 25, 2005, it had 6,180,500,358 shares of stock issued and outstanding. The Company's stock is traded on the NASDAQ National Market. The Company manufactures semiconductors, microprocessors, microchips, software for computers, and is the world's largest chip maker.

9.    The individual defendants who constitute the Company's board of directors authorized the distribution of the proxy statement dated March 29, 2005 (the "Proxy Statement") to solicit the proxies of Intel's stockholders for, inter alia, the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, approval of an amendment and extension of the 2004 Equity Incentive Plan, and approval of the amendment and extension of the Plan at the annual meeting of the Company's stockholders

on May 18, 2005. Those parts of the Proxy Statement entitled "Report of the Compensation Committee on Executive Compensation" and "Stock Price Performance Graph" are incorporated by reference into Intel's 2004 Form 10K filed with the SEC.

10.   All the defendants permitted the use of their names in the Proxy Statement to solicit proxies.

11.   The Plan requires the approval of the Company's stockholders to become effective.

12.   The individual defendants are now, and have been at all relevant times, the members of the board of directors of the Company.

13.   With respect to the solicitation of proxies for the annual meeting of stockholders in the year 2005, the Proxy Statement contains materially false and misleading statements and omits material facts, as set forth herein. As a result, the Proxy Statement renders the stockholders unwitting agents of self-inflicted damage.

14.   The Proxy Statement represents that under the proposed Plan the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders, but if the stockholders fail to approve the Plan the Company would terminate the EOIP and instead would make payments to the executive officers in amounts similar to that which would have otherwise have been paid under the EOIP, a portion of which would not be deductible. This statement was intended to coerce the stockholders to vote for the Plan. Their choice, according to the representation in the Proxy Statement, was to vote for the Plan, make the incentive payments, and get the

5

deductions, or vote against the Plan, and make the incentive payments anyway, and lose the deduction.

15.   However, the aforesaid representation in the Proxy Statement, that bonuses under the Plan would be deductible if the stockholders approved the Plan, was materially false and misleading, for, even if the stockholders did vote for the Plan, the Company would not get the deduction. The defendants threatened to pay the incentive payments even if the Company's stockholders disapproved it. Accordingly, no vote of the stockholders would make it deductible. 26 C.F.R. §1.162-27(e)(4)(i).

16.   All the defendants were negligent in that they knew or should have known that the representations concerning the deductibility of the incentive payments were materially false and misleading.

17.   The Proxy Statement was materially misleading in that it omitted to disclose the material terms and provisions under which the incentive compensation is to be paid.

18.   A bonus paid under the Plan is calculated by a formula with three variables. They are (1) a dollar amount set each year by the board's compensation committee in an amount specific for each executive officer, which they call the annual incentive baseline amount, (2) a factor set each year by the compensation committee for all executive officers, and (3) a definition of the annual earnings per share ("EPS") based on operating income or net income, whichever is greater.

19.   In February 2005, for the fiscal year 2005, the compensation committee set the baseline amounts for each executive officer, the annual factor for all executive officers,

6

and the definition of EPS. However, although the Proxy Statement disclosed some of these amounts that it used for previous years, it omitted these amounts and the definition of EPS for FYE 2005, even though these facts were readily available. These omitted facts were material.

20. The Proxy Statement concedes, "Operating income per share is not defined under generally accepted accounting principles [GAAP] and is not a deemed alternative to measure performance under GAAP." The Proxy Statement also concedes that the compensation committee has discretion to "adjust" both operating income and GAAP net income, although the Plan requires this to be done in advance, so presumably the committee did this in February 2005 for the FYE 2005.

21. Omission of the committee's definition of EPS from the Proxy Statement means that the stockholders do not have the ability to assess whether it will be easy or hard for executive officers to achieve a large bonus, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments. The Proxy Statement does reveal that executive officers can achieve a bonus even if the Company's earnings decline from year to year. Some corporate incentive plans do not allow a bonus following a decline in earnings. Since operating earnings has no GAAP definition, and since the committee seems to have unlimited discretion to define operating income, the Proxy Statement should disclose the definition of EPS.

22. The Plan, according to its terms, is designed to ensure that the bonuses be deductible under 26 U.S.C. §162(m), which means that the achievement of a bonus must be

7

substantially uncertain at the time the committee establishes the formula. Without knowledge of the definition of EPS, the stockholders cannot make this assessment for themselves.

23. The purpose of the Plan, according to its terms, is to motivate and reward the 14 executive officers by making a portion of their compensation dependent on EPS. Although it is possible, with a calculator, to determine it, the Proxy Statement does not clearly disclose that the 14 executive officers own 22,220,518 Intel shares, in the aggregate, and it omits to explain why further motivation and reward is necessary, or even desirable for the Company.

24. All the defendants were negligent in that they knew or should have known that the omissions concerning the terms and provisions of the performance goals were material and available.

25. Defendants' acts have caused injury to the Company.

## SECOND CLAIM
### (Under Delaware Law Re-Incorporating ¶¶1-24)

26. As members of the board of directors of the Company, the individual defendants owe it fiduciary duties of loyalty, and good faith under Delaware law. They also owe the stockholders these duties and also fiduciary duties of disclosure. Each of the individual defendants has breached those duties. In addition, they have coerced the stockholders to vote for the Plan.

27. The aforesaid breach of duties of loyalty and good faith and misrepresentations to and coercion against the stockholders have caused injury to the Company.

WHEREFORE, plaintiff prays for the following relief:

A. Declaring void the vote of the stockholders for the Plan;

B. Cancellation of the Plan and an injunction against payments under it;

C. Voiding the elections of directors for 2005;

D. An equitable accounting in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

E. Awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts' and attorneys' fees; and

F. Granting such other, further relief, whether similar or different, as by this Court may be deemed just and proper.

                                        FOX ROTHSCHILD LLP

                                        By: /s/ Francis G.X. Pileggi
                                        Francis G.X. Pileggi (#2624)
                                        Sheldon K. Rennie (#3772)
                                        919 N. Market Street, Suite 1300
                                        Wilmington, DE 19801
                                        Phone: (302) 654-7444
                                        Fax: (302) 656-8920
                                        fpileggi@foxrothschild.com
                                        srennie@foxrothschild.com

Of Counsel:
BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, NY 10018
Phone: (212) 575-7900

Date: May 16, 2005                              9

## VERIFICATION

STATE OF NEW YORK                 )
                                 } ss:
COUNTY OF WESTCHESTER            )

The undersigned, **FRANK DAVID SEINFELD**, plaintiff in the within action, verifies that he has read the foregoing VERIFIED COMPLAINT and knows the contents thereof, that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief; and as to those matters, he believes them to be true.

The grounds of affirmant's belief as to all matters not stated to be upon affirmant's knowledge, as follows:

Records in his possession and investigations caused to be made on his behalf.

*[signature]*
FRANK DAVID SEINFELD

Sworn to before me this
_13_ day of May 2005.

*[signature]*
———————————————
Notary Public

DAVID B. SHAEV
NOTARY PUBLIC, State of New York
No. 02SH4733813
Qualified in Nassau County
Commission Expires June 30, 19__ 6

O:\BIZAR\MISC\CLIENT.VER