IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, <br><br> Plaintiff, <br><br> v. <br><br> CRAIG R. BARRETT, CHARLENE BARSHEFSKY, E. JOHN P. BROWNE, D. JAMES GUZY, REED E. HUNDT, PAUL S. OTELLINI, DAVID S. POTTRUCK, JANE E. SHAW, JOHN L. THORNTON, DAVID B. YOFFIE, ANDREW S. GROVE, and INTEL CORPORATION, <br><br> Defendants. | Case No.: 05-298(JJF) |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

FOX ROTHSCHILD LLP
Francis G.X Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920
fpileggi@foxrothschild.com
srennie@foxrothschild.com
Attorneys for Plaintiff

Of Counsel:
BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, New York 10018

Date: June 7, 2005

## TABLE OF CONTENTS

Table of Cases and Authorities ................................................................................................ (ii)-(iii)

JURISDICTION ....................................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

SUMMARY OF ARGUMENT ................................................................................................ 2

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT

    I.    THE APPLICABLE STANDARDS ............................................................................ 6

    II.    THE PROXY STATEMENT IS MATERIALLY INCOMPLETE, INADEQUATE, FALSE, AND MISLEADING SINCE IT STATES THAT PAYMENTS UNDER THE PLAN ARE DEDUCTIBLE UNDER 26 U.S.C. §162(m), EVEN THOUGH THE STOCKHOLDERS' REJECTION OF THE PLAN WILL NOT STOP THE PAYMENTS ............................................................................................. 7

    III.    THE PROXY STATEMENT IS MATERIALLY FALSE, MISLEADING, INCOMPLETE, AND INADEQUATE, FOR IT OMITS THE MATERIAL TERMS OF THE PLAN ................................. 9

    IV.    THE AFORESAID FACTS SUPPORT A CLAIM UNDER DELAWARE LAW ............................................................................................. 10

    V.    PRESUIT DEMAND IS EXCUSED IN THE CASE AT BAR .................... 11

    VI.    THE COURT SHOULD ENJOIN PAYMENTS UNDER THE PLAN ................................................................................................... 13

CONCLUSION ........................................................................................................................ 14

## TABLE OF CASES AND AUTHORITIES

Page

*In re Anderson Clayton Sh. Lit.*,
   519 A.2d 669 (Del.Ch. 1986)..................................................................................... 12

*Blasband v. Rales*,
   971 F.2d 1034 (3rd Cir. 1992) .............................................................................. 11, 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................................ 7

*Diceon Electronics, Inc. v. Calvary Partners, L.P.*,
   772 F. Supp. 859 (D. Del. 1991)................................................................................. 13

*Galef v. Alexander*,
   615 F.2d 51 (2nd Cir. 1980) ........................................................................................ 12

*Gould v. American-Hawaiian Steamship Co.*,
   535 F.2d 761 (3d Cir. 1976) ......................................................................................... 7

*Horowitz v. Federal Kemper Life Assurance Co.*,
   57 F.3d 300 (3d Cir. 1995) ........................................................................................... 6

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90, 111 S. Ct. 1711 (1991).......................................................................... 11

*Loudon v. Archer-Daniels-Midland Co.*,
   700 A.2d 135 (Del. 1997) ...................................................................................... 10, 13

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) ................................................................................................ 10

*In re Reliance Securities Litigation*,
   135 F. Supp. 2d 480 (D. Del. 2001)............................................................................. 7

*Reo v. U.S. Postal Service*,
   98 F.3d 73 (3rd Cir. 1996) .......................................................................................... 11

*Shaev v. Saper*,
   320 F.3d 373 (3rd Cir. 2003) ............................................................................ 1, 2, 7, 9

*In re Stone & Webster Inc., Saudi American Bank v. Shaw Group. Inc.*,
   No. 00-2142, 01-7766, 04-834, 2005 WL 1036556 (D.Del. May 3, 2005) .......................... 6

*Stroud v. Grace*,
   606 A.2d 75 (Del. 1992) ........................................................................................... 10

*Vides v. Amelio*,
   265 F. Supp. 2d 273 (S.D.N.Y. 2003) ........................................................................ 11

*In re Tri-Star Pictures, Inc. Lit.*,
   1990 WL 82734 (Del.Ch. 1990) ................................................................................ 12

*In re Westinghouse Sec.Lit.*,
   832 F. Supp. 989 (W.D.Pa. 1993) .............................................................................. 12

## STATUTES, RULES AND OTHER AUTHORITIES

Securities Exchange Act, 15 U.S.C. §78aa ........................................................................ 1

15 U.S.C. §78n(a) ........................................................................................................... 13

26 C.F.R. §1.162-27(e)(2)(i) ........................................................................................... 10

26 C.F.R. §1.162-27(e)(4)(i) ......................................................................................... 3, 8

26 U.S.C. §162(m) ................................................................................................... 1, 5, 7

28 U.S.C. §1367(a) .......................................................................................................... 1

Federal Rule of Civil Procedure 23.1 ............................................................................. 11

H.R. Conf. Rep. No. 103-213, at 587-88 .......................................................................... 9

Federal Rule of Civil Procedure 56(c) .............................................................................. 6

## JURISDICTION

The jurisdiction of this Court is founded upon §27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §78aa, and upon 28 U.S.C. §1367(a). The claims herein arise under the proxy statement provisions of the federal securities laws and under Delaware law.

## NATURE AND STAGE OF THE PROCEEDING

This is not a securities fraud class action. It is a stockholder's derivative action on behalf of Intel Corporation, a Delaware corporation ("Intel" or the "Company") to recover against its directors for a Proxy Statement that is materially incomplete, inadequate, false and misleading. The Proxy Statement solicits the stockholders' approval of a cash incentive plan for its executive officers, called the Intel Corporation Executive Officer Incentive Plan as Amended and Restated Effective May 18, 2005 (the "EOIP" or the "Plan"). The Plan provides for payment of annual cash bonuses to Intel's executive officers. The Proxy Statement contains the misrepresentation that the bonuses would be tax deductible under 26 U.S.C. §162(m) if the stockholders approve the Plan. This Proxy Statement is substantially identical to the proxy statement that the Third Circuit held was materially false and misleading in *Shaev v. Saper*, 320 F.3d 373 (3rd Cir. 2003). The *Shaev* case and the case at bar are on all fours.

Plaintiff filed the complaint on May 16, 2005 and now moves for summary judgment. This motion is supported by the affidavit of plaintiff Frank D. Seinfeld, sworn to, and dated June 3,

2005 (the "Seinfeld Aff."), attaching copies of the Proxy Statement at bar and Intel's 2004 annual report, including its Form 10-K, and the affidavit of A. Arnold Gershon, dated and sworn to on June 3, 2005 (the "Gershon Aff.") attaching a copy of the proxy statement in *Shaev v. Saper*, supra.

## SUMMARY OF ARGUMENT

There is no issue of fact at bar. The Proxy Statement is false and misleading in stating that incentive payments will be tax deductible, because the incentive payments will be made even if the stockholders reject the Plan. Thus, under Treasury Regulations and Third Circuit authority, the payments are not deductible, even if the stockholders approve the Plan. In addition, the omission of available information concerning the potential amount of bonus renders the Proxy Statement false, misleading, incomplete, and inadequate under Third Circuit authority. The Proxy Statement is also false and misleading under Delaware law.

Presuit demand on the board is excused under Delaware law and federal policy.

The proper remedy is an injunction against payments under the Plan, which will otherwise be made in January or February 2006.

## STATEMENT OF FACTS

Plaintiff is a stockholder of Intel. He bought 200 shares on or about April 14, 1999, and 100 shares on or about April 8, 2002. (Affidavit of Frank D. Seinfeld, sworn to June 3, 2005 ("Seinfeld Aff.") Exhibit 1.)

-2-

For the annual meeting of Intel's stockholders on May 18, 2005, the individual defendants, acting as the Company's board of directors, distributed a Proxy Statement that solicited the stockholders' proxies to be voted in favor of the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, approval of an amendment and extension of the 2004 Equity Incentive Plan, and approval of the amendment and extension of the Plan. (Seinfeld Aff. ¶4, Exhibit 2.) Those parts of the Proxy Statement entitled "Report of the Compensation Committee on Executive Compensation" and "Stock Price Performance Graph" are incorporated by reference into Intel's 2004 Form 10K filed with the SEC. (Seinfeld Aff. ¶5, Exhibit 3.)

The Proxy Statement represents (Seinfeld Aff. Exhibit 2, at p.39, the first two sentences, beginning of the page) that under the proposed Plan the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders. It further represents that if the stockholders fail to approve the Plan, the Company would terminate the EOIP and instead would make payments to the executive officers in amounts similar to that which would have otherwise have been paid under the EOIP, a portion of which would not be deductible.

The defendants threaten and intend to pay the incentive payments even if the Company's stockholders disapprove it. Accordingly, no vote of the stockholders would make it deductible. (26 C.F.R. §1.162-27(e)(4)(i).) Accordingly, the representation in the Proxy Statement, that bonuses

-3-

under the Plan would be deductible if the stockholders approve the Plan, is materially false and misleading, for, even if the stockholders vote for the Plan, the Company would not get the deduction.

A bonus paid under the Plan is calculated by a formula with three variables. They are (1) a dollar amount set each year by the board's compensation committee in an amount specific for each executive officer, which they call the annual incentive baseline amount, (2) a factor set each year by the compensation committee for all executive officers, and (3) a definition of the annual earnings per share ("EPS") based on operating income or net income, whichever is greater. (Seinfeld Aff., Exhibit 2, at page 17, the last paragraph, page 40, the second paragraph.)

In February 2005, for the fiscal year 2005, the compensation committee set the baseline amounts for each executive officer, the annual factor for all executive officers, and the definition of EPS. (Seinfeld Aff., Exhibit 2, page 16, the second paragraph, under *Determining Executive Compensation*, page 18, the second and third paragraphs, page 40, second through fourth paragraphs, B-1–B-2, at ¶4.) Although the Proxy Statement disclosed some of these amounts that it used for previous years, it omitted these amounts and the definition of EPS for FYE 2005 (Seinfeld Aff. Exhibit 2, page 18, first and last full paragraphs), even though these facts were readily available. These omitted facts were material.

The Proxy Statement concedes, "Operating income per share is not defined under generally accepted accounting principles [GAAP] and is not a deemed alternative to measure performance

-4-

under GAAP." (Seinfeld Aff. Exhibit 2, p.18, footnote**) The Proxy Statement also concedes that the compensation committee has discretion to "adjust" both operating income and GAAP net income, id., although the Plan requires this to be done in advance, (Seinfeld Aff. Exhibit 2, pp. B-1- B-2, ¶4). Therefore, the committee presumably did this in February 2005 for the FYE 2005.

Omission of the committee's definition of EPS from the Proxy Statement means that the stockholders do not have the ability to assess whether it will be easy or difficult for executive officers to achieve a large bonus, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments. The Proxy Statement does reveal that executive officers can achieve a bonus even if the Company's earnings decline from year to year. (Seinfeld Aff. Exhibit 2, p.39, last full paragraph and chart.) Some corporate incentive plans do not allow a bonus following a decline in earnings. Since operating earnings has no GAAP definition, and since the committee seems to have unlimited discretion to define operating income, the Proxy Statement should disclose the definition of EPS.

The Plan, according to its terms, is designed to ensure that the bonuses be deductible under 26 U.S.C. §162(m), (Seinfeld Aff. Exhibit 2, p. B-1, ¶1), which means that the achievement of a bonus must be substantially uncertain at the time the committee establishes the formula. As far as this Plan is explained in the Proxy Statement, achievement of a bonus seems substantially certain, not uncertain. Without knowledge of the definition of EPS, the stockholders cannot make this assessment for themselves.

The purpose of the Plan, according to its terms, is to motivate and reward the 14 executive officers by making a portion of their compensation dependent on EPS. Although it is possible, with a calculator, to determine it, the Proxy Statement does not clearly disclose that the 14 executive officers own 22,220,518 Intel shares, in the aggregate (Seinfeld Aff. Exhibit 2, p.12, the table), and it omits to explain why further motivation and reward is necessary, or even desirable for the Company.

## ARGUMENT

### I.   THE APPLICABLE STANDARDS.

The standards that apply to a motion for summary judgment are well settled. Federal Rule of Civil Procedure 56(c) requires granting summary judgment where, as here, "there is no genuine issue as to any material fact for the jury to decide." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). Once the moving party fulfills its burden of proving no genuine issue of material fact exists, the nonmoving party must demonstrate "with specific facts showing that there is a genuine issue for trial." *In re Stone & Webster Inc., Saudi American Bank v. Shaw Group. Inc.*, No. 00-2142, 01-7766, 04-834, 2005 WL 1036556, *5 (D.Del. May 3, 2005)(internal quotations and citations omitted).

And "[t]he mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *In re Stone & Webster*

*Inc.*, 2005 WL 1036556 at *5. When a nonmoving party fails to meet its burden of proof, "the moving party is entitled to judgment as a matter of law."*In re Stone & Webster Inc.*, 2005 WL 1036556 at *5 (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Although the issue of materiality, for a claim under Section 14(a) of the Securities Exchange Act of 1934, is a "mixed question of law and fact," when "the facts falsified, misrepresented or withheld are so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality and the underlying facts and inferences to be drawn from those facts are free from controversy, the question becomes one of law which may appropriately be decided by summary judgment." *Gould v. American-Hawaiian Steamship Co.*, 535 F.2d 761, 771 (3d Cir. 1976). *See In re Reliance Securities Litig.*, 135 F.Supp.2d 480 (D. Del. 2001).

For the reasons set forth below, the Proxy Statement contains materially false and misleading statements and this motion for summary judgment should be granted in its entirety.

    II.    **THE PROXY STATEMENT IS MATERIALLY INCOMPLETE, INADEQUATE, FALSE, AND MISLEADING SINCE IT STATES THAT PAYMENTS UNDER THE PLAN ARE DEDUCTIBLE UNDER 26 U.S.C. §162(m), EVEN THOUGH THE STOCKHOLDERS' REJECTION OF THE PLAN WILL NOT STOP THE PAYMENTS.**

In *Shaev v. Saper*, 320 F.3d 373 (3rd Cir. 2003), the court held that a proxy statement representation that a bonus would be deductible under 26 U.S.C. §162(m) was false when the

bonus would be paid anyway, even if the stockholders rejected it. The court held, 320 F.3d at 381:

> Payments of the Saper bonus, even if the shareholders voted against it, also precluded the deduction. The Regulations state that "[t]he material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid. The requirements of this paragraph .. are not satisfied if the compensation would be paid regardless of whether the material terms are approved by shareholders." 26 C.F.R. §1.162-27(e)(4)(i). The Board's threat undermines the deductibility of the bonus even if the shareholders approved it.
>
> The complaint accurately alleges that Datascope's Board made a materially false statement in the proxy statement when it stated that the bonus would be deductible if the shareholders approved it. Regardless of the shareholders' approval, the bonus would not have been deductible under the Treasury Regulations, and the alleged false statement in the proxy statement is actionable. [Footnote omitted.]

The Datascope proxy statement addressed by the Third Circuit in Shaev v. Saper provided:

> .. In the event that the management Incentive Plan is not approved by the shareholders of the Corporation, the Compensation Committee may grant Mr. Saper another bonus for fiscal year 2000, a portion of which may not be deducible under Section 162(m) of the Code...

(Gershon Aff. ¶3, Exhibit 1, p.13 (A.53), fourth sentence of the last paragraph).

Similarly, the Intel Proxy Statement reports:

> .. If our stockholders do not approve the EOIP at the annual meeting, we will terminate the EOIP plan, and we will not pay any incentives under this plan for the 2005 performance year. However,

– 8 –

> we expect to make incentive payments to the executive officers in amounts similar to those that would have otherwise been paid under the EOIP; the difference is that we will lose a portion of the tax deductibility that would have otherwise been available to us.. .

(Seinfeld Aff. ¶3, Exhibit 2, p.39, first and second sentences, beginning of the page):

The facts at bar are substantially identical to the facts in *Shaev v. Saper*, supra. In both cases the stockholders were told that if they rejected the incentive plan, the company would pay a bonus anyway. Summary judgment should be entered.

### III. THE PROXY STATEMENT IS MATERIALLY FALSE, MISLEADING, INCOMPLETE, AND INADEQUATE, FOR IT OMITS THE MATERIAL TERMS OF THE PLAN.

The Third Circuit also held, *Shaev*, 320 F.3d at 383:

> [T]he material terms of the incentive plan and general performance goals on which the executive's compensation is based must, at a *minimum*, be disclosed. This position is supported by the Legislative History of the IRC §162(m), which states:
>
>> In order to meet the shareholder approval requirement, the material terms under which the compensation is to be paid must be disclosed ... It is intended that not all the details of a plan (or agreement) need to be disclosed in all cases ... To the extent consistent with [the SEC] rules, however, disclosure should be as *specific* as possible. ...

See H.R. Conf. Rep. No. 103-213, at 587-88. (italics added).

The Proxy Statement failed to be as specific as possible. It did not include the definition of the Earnings Per Share ("EPS") for FYE 2005, the dollar amounts for each executive officer ("annual

-9-

incentive baseline amounts"), or the annual factor for each executive officer. But these amounts and the definition of the EPS had already been set by the compensation committee in February 2005. Therefore, material terms of the Plan were omitted from the Proxy Statement.

Finally, the Third Circuit noted, "As an incentive, the outcome of a performance goal, of course, must be substantially uncertain at the time the compensation committee establishes the goal. 26 C.F.R. §1.162-27(e)(2)(i)." *Shaev*, 320 F.3d at 380. At bar, it appears that payment of bonuses is likely. Only the amounts may be unknown. The Proxy Statement omits to disclose the definition of the EPS, so the stockholders are unable to make this evaluation for themselves, although "[c]ompanies may only deduct annual compensation in excess of $1 million pursuant to a Plan that is performance-based and approved by the company's stockholders." *Shaev*, 320 F.3d at 380.

We submit that Third Circuit authority renders the Intel Proxy Statement materially false and misleading.

### IV. THE AFORESAID FACTS SUPPORT A CLAIM UNDER DELAWARE LAW.

Delaware law also provides relief upon these facts under the fiduciary duty of disclosure required by directors in connection with proxy statements. *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 137, 143 (Del. 1997) (directors must "disclose fully and fairly all material information within the board's control when it seeks shareholder action"); *Stroud v. Grace*, 606 A.2d 75, 84, 86 (Del. 1992) (Delaware imposes a duty of full disclosure in assessing the adequacy

of proxy materials).

In *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998), the Delaware Supreme Court emphasized that directors "are required to provide shareholders with all information that is material to the action being requested and to provide a balanced, truthful account of all matters disclosed in the communications with shareholders." Id. at 12. The court also noted that directors are under a fiduciary obligation to avoid misleading partial disclosures. Id. at n.31 (emphasis added).

### V.    PRESUIT DEMAND IS EXCUSED IN THE CASE AT BAR.

In this stockholders' derivative action in federal court, Federal Rule of Civil Procedure 23.1 provides the pleading standards for the presuit demand allegations, and state law ordinarily, with exceptions, governs the substance of the requirement to make demand. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98-99, 111 S.Ct. 1711, 1717 (1991); *Blasband v. Rales*, 971 F.2d 1034, 1047 (3rd Cir. 1992). The state's law that applies is the state of incorporation. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. at 108-09; *Blasband v. Rales*, supra, which at bar is Delaware.

The exception in this area, as in other areas where federal courts apply state law, is that federal courts do not apply state law where it would impair federal policy. *Kamen v. Kemper Financial Services, Inc.*, supra, 500 U.S. at 98; *Reo v. U.S. Postal Service*, 98 F.3d 73, 76 (3rd Cir. 1996).

Recently, in *Vides v. Amelio*, 265 F.Supp.2d 273, 275-76 (S.D.N.Y. 2003), under

Delaware law and federal policy, the court held that demand was excused in a stockholder's derivative action where the complaint alleged misstatements and omissions in a proxy statement. The *Vides* court reviewed the Delaware rule that proper disclosure does not concern the "management of business and affairs" of a corporation and that disclosure is not an issue "inherently of the kind that courts are ill suited to treat on their own," citing *In re Anderson Clayton Sh. Lit.*, 519 A.2d 669, 675 (Del.Ch. 1986). *Vides* also held that false and misleading disclosures are not protected by the business judgment rule, citing *In re Tri-Star Pictures, Inc. Lit.*, 1990 WL 82734 at *8 (Del.Ch. 1990). As the court held, in *Blasband v. Rales*, supra, 971 F.2d at 1048, if the board's conduct is not protected by the business judgment rule, the presuit demand is excused.

The *Vides* court reviewed federal policy, citing *Galef v. Alexander*, 615 F.2d 51, 63-64 (2nd Cir. 1980), and observed that the business judgment rule cannot be invoked by directors who are sued in a stockholder's "derivative action for providing inadequate information in connection with a proxy solicitation." (265 F.Supp.2d at 276.) See also *In re Westinghouse Sec.Lit.*, 832 F.Supp. 989, 998 (W.D.Pa. 1993), where the court held it would be a misapplication of the business judgment rule to allow a demand defense to a stockholder's derivative action alleging that the directors had made inadequate disclosures in a proxy statement, and this is the rule "regardless of their independence."

Thus, based on the foregoing controlling case law, no presuit demand is needed here. Both

- 12 -

Delaware law and federal policy excuse presuit demand in this case.

### VI. THE COURT SHOULD ENJOIN PAYMENTS UNDER THE PLAN.

Enjoining payments under the Plan is the preferred remedy under both §14(a) of the Exchange Act, 15 U.S.C. §78a(n), *Diceon Electronics, Inc. v. Calvary Partners, L.P.*, 772 F.Supp. 859, 866 (D. Del. 1991) and Delaware law. *Loudon v. Archer-Daniels-Midland Co.*, supra, 700 A.2d at 138.

Payments under the Plan will not be made until the performance period ends on December 31, 2005, and the committee learns the results. (Seinfeld Aff. Exhibit 2, p.B-2, ¶5.) It might occur in January or February 2006. (Seinfeld Aff. Exhibit 2, p.18, last two paragraphs, beginning of page.)

An injunction will not irreparably interfere with Intel's compensation procedures. Should this court grant the injunction, the directors could re-solicit stockholder approval in March 2006 with a proxy statement that does not violate 15 U.S.C. §78n(a) and Delaware law.

## **CONCLUSION**

For the foregoing reasons we respectfully submit that the court should grant plaintiff's motion for summary judgment, and enjoin payments under the Plan.

                    FOX ROTHSCHILD LLP

By:   /s/ Francis G.X. Pileggi
      Francis G.X Pileggi (#2624)
      Sheldon K. Rennie (#3772)
      919 North Market Street, Suite 1300
      Wilmington, DE 19801
      Tel: (302) 655-3667
      Fax: (302) 656-8920
      fpileggi@foxrothschild.com
      srennie@foxrothschild.com

      Attorneys for Plaintiff

Of Counsel:
BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, New York 10018
Tel: (212) 575-7900
Fax: (212) 764-5060

Date: June 7, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that on June 7, 2005, I electronically filed the foregoing Plaintiff's Motion and Brief in Support of His Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Stephen Norman, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

                                               /s/ Francis G.X. Pileggi
                                    Francis G.X. Pileggi (Del. Bar No. 2624)