IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 05-298 (JJF) |
| | ) |
| CRAIG R. BARRETT, CHARLENE BARSHEFSKY, E. JOHN P. BROWNE, D. JAMES GUZY, REED E. HUNDT, PAUL S. OTELLINI, DAVID S. POTTRUCK, JANE E. SHAW, JOHN L. THORNTON, DAVID B. YOFFIE, ANDREW S. GROVE, and INTEL CORPORATION, | ) Jury Trial Demanded |
| | ) |
| Defendants. | ) |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS VERIFIED COMPLAINT**

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
(415) 773-5700

Stephen C. Norman (#2686)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0957
(302) 984-6000

Attorneys for defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove, and nominal defendant Intel Corporation

Dated: June 27, 2005

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

I.   NATURE AND STAGE OF PROCEEDINGS .......................................................... 1
II.  INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1
III. STATEMENT OF FACTS .......................................................................................... 3
     A.  The Company .................................................................................................... 3
     B.  The Company's Board of Directors ................................................................ 3
     C.  The Proxy Statement ........................................................................................ 4
     D.  The 2005 EOIP .................................................................................................. 4
     E.  Plaintiff's Complaint ......................................................................................... 5
     F.  No Payments Have Been Made, Or Deductions Taken, Under The 2005 EOIP ............................................................................................. 5
IV.  ARGUMENT ................................................................................................................. 6
     A.  Plaintiff Has Not Made A Demand .................................................................. 7
     B.  Plaintiff Has Not Alleged Facts Sufficient To Excuse Demand .................... 7
         1.  Plaintiff Fails To Rebut The Presumption Of Director Disinterest And Independence ........................................................................................ 8
             a.  The Complaint Contains No Facts Which Rebut The Director's Disinterest And Independence ........................................ 9
             b.  The Allegations That the Directors Are Accused Of Violating Section 14(a) And Breaches Of Fiduciary Duty Does Not Excuse Demand .................................................................. 10
         2.  Plaintiff's Conclusory Allegation That the Business Judgment Rule Does Not Apply Does Not Excuse Demand .................................. 11
         3.  The Demand Requirement Applies to Complaints Alleging Misstatements or Omissions In a Proxy Statement .............................. 12
V.   CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

                                                                               **Page**

**Cases**

*In re Anderson, Clayton S'holders' Litig.*,
    519 A.2d 669 (Del. Ch. 1986) ................................................................13

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984), *overruled on other grounds,*
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...................................... passim

*Beam ex rel. M. Stewart Living v. Stewart*,
    845 A.2d 1040 (Del. 2004) ........................................................................2

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ..............................................................2, 8, 10

*Citron v. Fairchild Camera & Instrument Corp.*,
    C.A. No. 6085, 1988 WL 53322 (Del. Ch. May 19, 1988), *aff'd,*
    569 A.2d 53 (Del. 1989) ...........................................................................12

*Citron v. Fairchild Camera and Instrument Corp.*,
    569 A.2d 53 (Del. 1989) ...........................................................................12

*Daily Income Fund v. Fox*,
    464 U.S. 523, 530 (1984) ..........................................................................13

*Fink v. Komansky*,
    No. 03CV0388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ................3, 13

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996) *overruled on other grounds,*
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...............................................7

*Grobow v. Perot*,
    526 A.2d 914 (Del. Ch. 1987), *aff'd,*
    539 A.2d 180 (Del. 1988) ...........................................................................7

*Halpert Enters., Inc. v. Harrison*,
    362 F. Supp. 2d 426 (S.D.N.Y. 2005) ....................................................3, 13

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ......................................................................................6

*Kohls v. Duthie*,
    791 A.2d 772 (Del. Ch. 2000) ................................................................................ 10

*Landy v. D'Alessandro*,
    316 F. Supp. 2d 49 (D. Mass. 2004) ....................................................................... 10

*Leung v. Schuler*,
    No. 17089, 2000 WL 264328 (Del. Ch. Feb. 29, 2000) ..................................... 11, 12

*Levine v. Smith*,
    C.A. No. 8833, 1989 WL 150784 (Del. Ch. 1989), *aff'd*,
    591 A.2d 194 (Del. 1991) ...................................................................................... 7, 8

*Lewis v. Austen*,
    C.A. No. 12937, 1999 WL 378125 (Del. Ch. June 2, 1999) ...................................... 2

*Lewis v. Fites*,
    C.A. No. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993) .................................... 10

*Lewis v. Graves*,
    701 F.2d 245 (2d Cir. 1983) .................................................................................... 11

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ....................................................................................... 8

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) .................................................................................... 3

*Pogostin v. Rice*,
    480 A.2d 619 (Del. 1984), *overruled in part on other grounds*,
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .......................................................... 8, 9

*Seinfeld v. Allen*,
    No. 02 Civ. 5018, 2005 WL 1231644 (S.D.N.Y. May 25, 2005) .............................. 5

*Seinfeld v. Becherer*,
    No. CA 03-5225 (D.N.J. Jan. 27, 2005) ..................................................................... 5

*Seinfeld v. Gray*,
    404 F.3d 645 (2nd Cir. 2005) ..................................................................................... 5

*Shaev v. Claflin*,
    No. CV794039, 2004 WL 1381037 (Cal. App. June 21, 2004) ................................ 5

*Shaev v. Hampel*,
    No. 99 Civ. 10578 (RMB), 2002 WL 31413805 (S.D.N.Y. Oct. 25, 2002) .......... 5, 6

*Shaev v. Saper*,
 320 F.3d 373 (3d Cir. 2003)....................................................................................13

*Spiegel v. Buntrock*,
 571 A.2d 767 (Del. 1990)..........................................................................................7

*In re Tri-Star Pictures, Inc. Litig.*,
 C.A. No. 9477, 1990 WL 82734 (Del. Ch. Jun 14, 1990)......................................13

*Vides v. Amelio*,
 265 F. Supp. 2d 273 (S.D.N.Y. 2003)................................................................12, 13

*Williams v. Geier*,
 671 A.2d 1368 (Del. 1996).........................................................................................2

*Zapata Corp. v. Maldonado*,
 430 A.2d 779 (Del. 1981)...........................................................................................7

Other

Fed. R. Civ. P. 23.1...........................................................................................1, 2, 6

Internal Revenue Code, Section 162(m)....................................................................4

I.   **NATURE AND STAGE OF PROCEEDINGS**

On May 17, 2005, the day before a stockholder vote to approve proposals set forth in Intel Corporation's 2005 Proxy Statement, plaintiff filed this putative shareholder derivative complaint against Intel's Board of Directors and nominal defendant Intel. Plaintiff's Complaint alleges that Intel's Board violated Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder and breached their fiduciary duties under Delaware law based upon alleged misstatements and omissions in the Proxy Statement concerning the Intel's 2005 Executive Officer Incentive Program ("2005 EOIP").

This lawsuit is contrary to the interests of all of Intel's shareholders. The Complaint threatens Intel's ability to deduct payments made pursuant to the 2005 EOIP—irrespective of whether the Internal Revenue Service would challenge the deductibility of those payments, or if it does, whether the challenge would be resolved against Intel. This would injure Intel and its shareholders. The only beneficiary would be plaintiff's counsel, who presumably will seek a fee for inflicting this injury if he succeeds.

Defendants respectfully move this Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 dismissing plaintiff's Complaint with prejudice on the grounds that plaintiff has failed either to (1) make demand on the Board for the relief requested or (2) satisfy his burden of alleging *specific facts* demonstrating that demand on Intel's Board would be futile. This is Defendants' opening brief in support of their motion to dismiss.

II.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff has failed to make any demand upon the Board, and the Complaint wholly fails to allege particularized facts necessary under settled Delaware law to excuse demand. Instead, plaintiff relies upon conclusory assertions and stale arguments that have never been enough to excuse demand. Ultimately, the Complaint fails to come to grips with the central and undisputed fact that eviscerates plaintiff's claim of demand futility – that eight of the Intel's eleven Board members are independent Directors with no interest in the challenged 2005 EOIP. Plaintiff attempts to avoid this fatal flaw in the Complaint by arguing that "the board breached its

1

fiduciary duty of disclosure" and the Board's conduct is "not the product of valid business judgment." Courts applying Delaware law have routinely rejected similar conclusory arguments as insufficient to establish demand futility.

As shown below, the Complaint should be dismissed for the following reasons:

1. Because a shareholder derivative action is brought on behalf of the company, a plaintiff may not bring a derivative action without first making a demand on the board to obtain relief or alleging "with particularity" why demand would be futile. Fed. R. Civ. P. 23.1; *see also Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984), *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Here, plaintiff did not make a demand on the Board to pursue his claims. He must therefore establish that making a demand would have been futile.

2. To determine whether plaintiff has established demand futility, the Court must analyze "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.

   a. To satisfy the first prong of this test, plaintiff must plead particularized "facts creat[ing] a reasonable doubt that a majority of the board could have acted independently in responding to the demand." *Beam ex rel. M. Stewart Living v. Stewart Omnimedia, Inc.*, 845 A.2d 1040, 1049 (Del. 2004). As explained below, the Complaint fails to allege particularized facts (as opposed to bare conclusions of law) rebutting the presumption of director disinterest and independence necessary to establish demand futility.

   b. Under the second prong of the *Aronson* test relating to the business judgment rule, corporate directors are afforded the "presumption that [they] acted independently, with due care, in good faith and in the honest belief that its actions were in the shareholders' best interest." *Williams v. Geier*, 671 A.2d 1368, 1376 (Del. 1996). This second prong is particularly demanding, as it is "directed to extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review." *Lewis v. Austen*, C.A. No. 12937 (JVC), 1999 WL 378125,

2

at *8 (Del. Ch. June 2, 1999). The Complaint fails this test as well; it is devoid of particularized facts that rebut the business judgment rule's presumptions, and therefore is inadequate to establish demand futility.

        c.      Plaintiff's suggestion that the demand rule is inapplicable because the board members would have to sue themselves, or because plaintiff alleges Section 14(a) and breach of fiduciary duty claims, is contrary to settled law. *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005); *Fink v. Komansky*, No. 03CV0388 (GBD), 2004 WL 2813166, at *8 (S.D.N.Y. Dec. 8, 2004). To proceed, plaintiff must make a demand or establish why making a demand would be futile.

### III.   STATEMENT OF FACTS

#### A.   The Company

Intel is the world's largest maker of silicon chips, commonly known as semiconductors. Founded in 1968, it developed technology that enabled the computer and Internet revolution and changed the world. Intel now supplies the computing and communications industries with chips, boards, and other semiconductor components that are the building blocks integral to computers, servers, and networking and communications products.

#### B.   The Company's Board of Directors

At the time the Complaint was filed (the day before Intel's 2005 annual shareholder meeting), Intel's Board was comprised of eleven Directors.[1] Of those eleven, only two were Intel officers eligible to participate in the 2005 EOIP, and neither of those two was a member of the three-member Compensation Committee responsible for overseeing Intel's compensation programs, including the 2005 EOIP. *See* RJN, Ex. A. at 7. Of Intel's ten current Directors, only

---

[1] Plaintiff filed this suit on May 17, 2005. Intel's annual meeting was held on the following day, May 18, 2005. Andrew S. Grove, the Company's former Chairman of the Board, did not stand for reelection at the 2005 annual meeting. Proxy Statement at 4. Accordingly, the Intel Board is now comprised of ten directors. *Id.* Defendants request that the Court take judicial notice of the Proxy Statement in its entirety. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming judicial notice of documents relied upon in complaint and documents filed with the SEC). A true and correct copy of Intel's Proxy Statement, filed with the Securities and Exchange Commission ("SEC") on March 29, 2005, is attached as Exhibit A to the Request For Judicial Notice ("RJN"), filed concurrently herewith.

3

one is an officer of the Company, and only two are eligible to participate in the 2005 EOIP. *Id.* at B-2 (2005 EOIP covers executive officers).[2]

Among the members of the Intel Board at the time of the Complaint were two former members of the Cabinet of the President of the United States; a Harvard Business School Professor; Time Magazine's 1997 "Man of the Year," and several distinguished current and former executives from the world's leading corporations.[3] These are the highly qualified individuals—elected by Intel's shareholders—whom plaintiff claims are incapable of fairly evaluating a demand and determining what is in Intel's best interests.

### C.     The Proxy Statement

On March 29, 2005, Intel distributed the Proxy Statement in advance of its annual shareholders' meeting. Compl. ¶ 9. The 42-page Proxy Statement described four proposals submitted for vote by the Company's shareholders: (1) the re-election of each member of the Board other than outgoing Chairman Andrew S. Grove; (2) the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year; (3) an amendment to and extension of the 2004 Equity Incentive Plan; and (4) an amendment to and extension of the 2005 EOIP. *Id.* Plaintiff only challenges Proposal 4, relating to the 2005 EOIP.

### D.     The 2005 EOIP

In 1994, Intel instituted an executive cash incentive program designed to link executive compensation to Company performance. For certain payments under such programs to be tax deductible, Section 162(m) of the Internal Revenue Code requires that the program be approved by Company shareholders every five years. Accordingly, Intel submitted the program, now known as the 2005 EOIP, to its shareholders for approval in 1994, 1995 (because of minor amendments) and 2000, and again this year (with minor amendments from the 1995 version not

---

[2] Although no longer an officer of the Company, Mr. Barrett will be eligible to receive compensation under the 2005 EOIP because he was an officer of the Company for a portion of 2005.

[3] The biographies of each of Intel's Directors are found in the Proxy Statement at 5-6 and on Intel's web-site, http://www.intel.com.

4

material here). *See* RJN Ex. A at 38. Each time the shareholders resoundingly approved it.

As described in the Proxy Statement, the 2005 EOIP "is an annual cash-based-pay-for-performance incentive program . . . to motivate and reward eligible employees for their contributions to Intel's performance by making a large portion of their cash compensation variable and dependent upon Intel's financial performance." *Id.* at 17 and Exhibits (which include the 2005 EOIP). The three-member Compensation Committee of the Board undergoes a rigorous process to calculate and set the 2005 EOIP. As set forth in the Proxy Statement, the 2005 EOIP is based on (1) the executive officer's annual incentive baseline amount, (2) Intel's earnings per share ("EPS"), and (3) a factor pre-established each year by the Compensation Committee. *Id.* The details of the 2005 EOIP and the proposal itself are disclosed twice in the Proxy Statement and the entire 2005 EOIP is attached as an exhibit. *See id.* at 17-20 and 38-42, Ex. A at B-1. Thus, the shareholders had not only a description and narrative explanation of the 2005 EOIP, but the actual terms of the 2005 EOIP—every word.

### E. Plaintiff's Complaint

After receiving the Proxy Statement, which Intel sent to shareholders on or about March 29, 2005, plaintiff did not inform the Company or the Board of his concerns regarding the 2005 EOIP, campaign against Proposal 4, or ask the Company or the Board to clarify or withdraw the Proxy Statement or proposal. Rather, six weeks later, on May 17, 2005 (the day before the shareholders overwhelmingly approved the proposals in the Proxy Statement, including Proposal 4 concerning the 2005 EOIP), plaintiff sued Intel and its Board, claiming the Proxy Statement was misleading.[4] Specifically, plaintiff claims that, because of the wording of the 2005 EOIP

---

[4] Plaintiff, his wife, and the notary who notarized the Complaint (and the notary's wife) are no strangers to shareholder lawsuits (typically filed by plaintiff's counsel here) that courts have rejected. In the last three years alone, this group is responsible for at least six other shareholder actions that were dismissed at the pleading stage. *See, e.g., Seinfeld v. Allen*, No. 02 Civ. 5018 (DLC), 2005 WL 1231644 (S.D.N.Y. May 25, 2005) (dismissing derivative action relating to Worldcom); *Shaev v. Alvord*, No. 034750 (BLS), 2005 WL 1009721 (Mass. Super. Mar. 23, 2005) (dismissing derivative action relating to FleetBoston); *Seinfeld v. Gray*, 404 F.3d 645 (2nd Cir. 2005) (affirming dismissal of derivative action alleging Section 14(a) claims against Boeing); *Shaev v. Claflin*, No. CV794039, 2004 WL 1381037 (Cal. App. June 21, 2004) (dismissing derivative action concerning alleged option plan manipulations by 3Com); *Seinfeld v. Becherer*, No. CA 03-5225 (D.N.J. Jan. 27, 2005) (dismissing derivative action alleging Section 14(a) claims against Honeywell); *Shaev v. Hampel*, No. 99 Civ. 10578 (RMB), 2002 WL

5

proposal, future payments made under the 2005 EOIP will not be tax deductible, and therefore the Proxy Statement's statement that such payments will "continue to be deductible for federal income tax purposes" was false. *Id.* at 40, 41.

### F. No Payments Have Been Made, Or Deductions Taken, Under The 2005 EOIP

Intel has made no incentive payments under the 2005 EOIP, and under the terms of the plan, Intel could not make any such payments (assuming it makes any) for many months—until the Company's 2005 fiscal year has ended and the Compensation Committee has information about the Company's financial performance for the preceding year. As such, the Company has not claimed any tax deduction for payments it might, but has not yet, made under the 2005 EOIP, nor has the IRS challenged any deduction yet to be claimed by the Company for any potential future payments under the 2005 EOIP.

## IV. ARGUMENT

To sue derivatively, plaintiff must either have made a demand upon the Company's Board and had it refused, or allege particular facts demonstrating that demand is excused. Because plaintiff has done neither, the Complaint must be dismissed.

Federal Rule of Civil Procedure 23.1 requires a putative derivative plaintiff to allege "with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Although this requirement is a matter of federal procedural law, the substantive law of the demand requirement, and the conditions excusing it, are supplied by the law of the state of incorporation, which for Intel is Delaware. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).

Delaware law underscores the specificity required by the Federal Rules, and insists upon strict compliance with the demand requirement except in the most extraordinary circumstances. This insistence reflects the fact that "[a] cardinal precept of the General Corporation Law of the

---

31413805 (S.D.N.Y. Oct. 25, 2002) (affirming dismissal of derivative action alleging Section 14(a) claims against Alcoa). Plaintiff and his counsel should be well aware of the pleadings standards applicable to plaintiff's claims.

6

State of Delaware is that the directors, rather than shareholders, manage the business and affairs of the corporations." *Aronson*, 473 A.2d at 811, *overruled on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). The decision whether to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is therefore one for a corporation's board of directors. *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996) ("[i]t is the corporation, acting through its board of directors, which must make the decision whether or not to assert the claim"); see *Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990) (a "basic principle of the [Delaware General Corporation Law] is that directors, rather than shareholders, manage the business affairs of the corporation"). Shareholders may not usurp this authority unless "'it is apparent that material corporate rights would not otherwise be protected.'" *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981).

### A. Plaintiff Has Not Made A Demand

Plaintiff admits that he has failed to make a demand. Compl. ¶ 6. Therefore, under the Federal Rules and Delaware substantive law, he must allege *with particularity* facts that excuse demand.

### B. Plaintiff Has Not Alleged Facts Sufficient To Excuse Demand

A derivative complaint seeking to excuse a plaintiff's failure to make a demand is subject to stringent review. *Grobow v. Perot*, 526 A.2d 914, 920 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988). The test is strict: a plaintiff must allege "particularized facts creating a reasonable doubt . . . that a majority of the board could have acted independently in responding to the demand." *Beam*, 845 A.2d at 1049. Importantly, the "reasonable doubt" and "particularized facts" standards are "more stringent" than the notice pleading standards that normally govern the adequacy of a complaint. *Grobow*, 526 A.2d at 920. Close scrutiny of a derivative complaint is warranted because the purpose of a motion to dismiss on demand issues is "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Levine v. Smith*, C.A. No. 8833, 1989 WL 150784, at *5 (Del. Ch. 1989), *aff'd*, 591 A.2d 194 (Del. 1991).

Because plaintiff has alleged demand futility, the Court must analyze "whether, under the *particularized facts* alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. *See also Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (citations omitted). Thus, plaintiff must show that:

> (1) . . . threshold presumptions of director disinterest or independence are rebutted by well pleaded facts; and, if not (2) [that] the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

*Levine*, 591 A.2d. at 205-06 (citations omitted). The Delaware Supreme Court has reiterated that these showings require the pleading of particular facts, not "conclusory statements or mere notice pleading." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

Here, the Complaint fails to satisfy ***either*** of the required elements for demand futility—it contains no specific factual allegations to rebut ***either*** the presumption of director disinterest ***or*** the presumption that the Board's approval of statements concerning the 2005 EOIP in the Proxy Statement was a valid exercise of business judgment. The Complaint must therefore be dismissed.

### 1. Plaintiff Fails To Rebut The Presumption Of Director Disinterest And Independence

As noted above, a cardinal precept of Delaware law is that directors are presumed to be disinterested and to act in good faith and in the best interests of the company and its shareholders. *Williams*, 671 A.2d at 1376. Rebutting this presumption requires a showing that "divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction." *Pogostin v. Rice*, 480 A.2d 619, 624-25 (Del. 1984), *overruled in part on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). The threat of personal liability for approving a transaction is an insufficient basis upon which to question the disinterestedness of a director. *Malpiede v. Townson*, 780 A.2d 1075, 1085 (Del. 2001); *Aronson*, 473 A.2d at 815 ("the mere threat of personal liability for approving

8

a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors"). Thus, director independence must be determined by analyzing the specific factual allegations "pertaining to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction." *Pogostin*, 480 A. 2d at 624-25.

### a. The Complaint Contains No Facts Which Rebut The Director's Disinterest And Independence

The gravamen of the Complaint is that the Board members breached their fiduciary duties by approving false and misleading statements in the Proxy Statement concerning the 2005 EOIP. Compl. ¶¶ 14-16. According to plaintiff, the purported misstatements were "intended to coerce [the Company's] shareholders to vote for the [2005 EOIP]." *Id.* at ¶ 14. Yet despite these bold pronouncements of wrongdoing, the Complaint offers no *facts* that establish why the Board could not fairly consider a demand. Nor could it—eight of the ten current members of the Board *are not even eligible to participate in* the 2005 EOIP. RJN Ex. A at B-1.

Plaintiff's only allegations of demand futility (paragraph 6 of the Complaint) lack any supporting facts (as opposed to bare conclusions). Why would the eight Board members ineligible to benefit in any way from the 2005 EOIP be unable to fairly consider a demand? How are their disinterest and independence so compromised that they cannot consider a demand? The Complaint is utterly silent on these points. It offers nothing that suggests that the eight Board members (or even the remaining members) have divided loyalties or would risk their professional reputations by approving misstatements concerning an incentive plan in which they are not even eligible to participate.

The Complaint offers only a list of legal conclusions which are utterly devoid of factual support. The Complaint's failure to allege particularized facts is fatal and the Complaint must be dismissed.

9

    b.  **The Allegations That the Directors Are Accused Of Violating Section 14(a) And Breaches Of Fiduciary Duty Does Not Excuse Demand**

  Plaintiff also claims that demand should be excused because Intel's Directors are "liable for violation of § 14(a) of the Exchange Act, Rule 14a-9, and Schedule 14A" and "the board breaches [sic] its fiduciary duty." Compl. ¶ 6(a), (c). Plaintiff argues that if the complaint implicates the directors' conduct, demand is excused because directors are unable as a matter of law to consider a shareholder demand fairly. Courts – including the Delaware Supreme Court – have resoundingly rejected this circular argument because it would, if accepted, eviscerate the demand requirement and the important policies underlying it.

  The Delaware Supreme Court has decreed that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815; *see also id.* at 818 (a "claim of this sort raises no legally cognizable issue under Delaware corporate law"). A legion of cases confirms this principle. *See, e.g., Kohls v. Duthie*, 791 A.2d 772, 779 (Del. Ch. 2000) ("the mere fact that directors would be asked to sue themselves is not a basis for excusing demand"); *Brehm*, 746 A.2d at 257 n.34 (lack of demand not excused; "It is no answer to say that demand is necessarily futile because (a) the directors would have to sue themselves, thereby placing the conduct of the litigation in hostile hands, or (b) that they approved the underlying transaction") (quotation omitted); *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 61 (D. Mass. 2004) (applying Delaware law; "Plaintiff also contends that demand is futile because 'the directors . . . cannot be expected to bring suit against him or herself.' This assertion is so hollow that it warrants no further consideration. It is well-settled that this exceedingly general assertion fails under Delaware law"); *see also Lewis v. Fites*, C.A. No. 12566, 1993 WL 47842, at *3 (Del. Ch. Feb. 19, 1993) (rejecting "sue themselves" allegations to support lack of independence); *Fink*, 2004 WL 2813166, at *7 (same; applying Delaware law).

  In addition, plaintiff's allegation that demand would have been futile because the Directors would have to "sue themselves" ignores the important "practical advantage[]" of the

10

demand requirement – namely, that "[c]orporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation." *Lewis v. Graves*, 701 F.2d 245, 247 (2d Cir. 1983).

In this case, plaintiff made no attempt to pursue any alternative to litigation, choosing instead to file suit on the day before the stockholder vote, even though the proxy materials had been mailed out over six weeks earlier. The allegations of the Complaint do not remotely suggest – much less allege with the "particularized facts" required by Delaware law – that the Board would not have considered a reasonable request to clarify the Proxy Statement. The demand requirement exists precisely to ensure that a corporate board is given that opportunity. *See Aronson*, 473 A.2d at 811-12 ("the demand requirement . . . exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies").

### 2. Plaintiff's Conclusory Allegation That the Business Judgment Rule Does Not Apply Does Not Excuse Demand

Plaintiff's demand futility argument also—and independently—fails because the complaint alleges no *facts* suggesting that the Directors abdicated their business judgment in issuing the Proxy Statement. Plaintiff's conclusory Complaint cannot, therefore, create "a reasonable doubt" that "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814.

The business judgment rule establishes a powerful presumption that directors acted "independently, with due care, in good faith in the honest belief that its actions were in the shareholders' best interests." *Williams*, 671 A.2d at 1376. This second prong of the *Aronson* test is particularly demanding as it is "directed to extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review." *Lewis*, 1999 WL 378125, n.33 (Jacobs, V.C.). To overcome this presumption, it is not enough to show that the Board made a decision that was arguably wrong; plaintiff must make compelling allegations supported by *particularized facts* which establish that the Board acted irrationally or in bad faith. *Leung v. Schuler*, C.A. No.

11

17089, 2000 WL 264328, at *11 (Del. Ch. Feb. 29, 2000) (emphasis added).

Plaintiff alleges—without elaboration—that "no reasonable person" would have issued the Proxy Statement without making accurate disclosures and that the Directors' alleged breaches of fiduciary duties "cannot be protected by the business judgment." Compl. ¶ 6(b). Such conclusory allegations do nothing to undermine the Board's business judgment, much less defeat the "formidable" substantive presumption of good faith and due care afforded the Board. *Citron v. Fairchild Camera & Instrument Corp.*, C.A. No. 6085, 1988 WL 53322, at *15, 18 (Del. Ch. May 19, 1988), *aff'd*, 569 A.2d 53 (Del. 1989). All plaintiff offers is the self-serving and utterly conclusory assertion that the Directors breached their fiduciary duties. Allegations such as these fall well short of establishing that the Board abdicated its responsibilities or that its conduct was unprotected by the business judgment rule. *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989) (if a plaintiff "fails to meet her burden of establishing facts rebutting the presumption, the business judgment rule, as a substantive rule of law, will attach to protect the directors and the decision they make").[5]

### 3. The Demand Requirement Applies to Complaints Alleging Misstatements or Omissions In a Proxy Statement.

Plaintiff's final argument is that, under the Southern District of New York's interpretation of Delaware law in *Vides v. Amelio*, 265 F. Supp. 2d 273 (S.D.N.Y. 2003), demand is excused in all Section 14(a) cases.[6] But, as a non-Delaware decision, *Vides* is not binding on courts applying Delaware law. Indeed, *no court* from any jurisdiction – and certainly no Delaware court – has ever cited *Vides* in support of the proposition that the demand requirement does not apply to a Section 14(a) claim. For the reasons set forth below, this Court need not and should not follow *Vides*.

First, *Vides* is not good law even in the Southern District of New York. Recent decisions

---

[5] As discussed above, it is plaintiff who has asserted that the Proxy Statement was false and misleading. If a plaintiff were free to evade the demand requirement by purporting to allege a claim for breach of fiduciary duty, the demand requirement would be rendered meaningless. *See, e.g., Aronson*, 473 A.2d at 818.

[6] *See* Plaintiff's Opening Brief In Support of His Motion For Summary Judgment, at 11-12. *See also* Compl. ¶ 6(d).

12

published after *Vides* have confirmed that the demand requirement *is* applicable to Section 14(a) claims. *See Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) (applying Delaware law, dismissing claim under Section 14(a) for failure to plead particularized facts demonstrating demand futility); *Fink v. Komansky*, 2004 WL 2813166, at *8 (S.D.N.Y. Dec. 8, 2004) (same). Indeed, neither of the cases on which *Vides* relied addressed the demand issue. *See In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669, 675 (Del. Ch. 1986) (granting a preliminary injunction against company recapitalization); *In re Tri-Star Pictures, Inc. Litig.*, C.A. No. 9477, 1990 WL 82734 (Del. Ch. Jun. 14, 1990) (finding that certain claims were derivative and therefore subject to dismissal for lack of standing), *rev'd on other grounds*, 634 A.2d 319 (Del. Supr. 1993).

Second, to the extent there is a split of authority on this issue among the federal circuits, the Third Circuit, applying Delaware law, has declined the invitation to hold that the demand requirement is inapplicable as a matter of law in Section 14(a) cases. *See Shaev v. Saper*, 320 F.3d 373, 378 (3d Cir. 2003) (analyzing demand excused issue in Section 14(a) case; demand excused, but because only because allegations established that half of the directors were not disinterested).

Third, *Vides* ignores two of the primary purposes of the demand requirement under Delaware law. First, the demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies" and "promot[es] this form of alternative dispute resolution, rather than [an] immediate recourse to litigation." *Aronson*, 473 A.2d at 811-812. Second, it upholds "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Daily Income Fund v. Fox*, 464 U.S. 523, 530 (1984). The plaintiff here filed the Complaint just one day before the shareholders voted to approve the 2005 EOIP. If the plaintiff sincerely believed that the Proxy Statement was somehow misleading, the appropriate remedy under Delaware law was for him to notify the board and demand that it be cured, not to lie in wait and file suit just before the vote was taken.

13

## V. CONCLUSION

Plaintiff has failed to make the required demand and has failed to plead particularized facts excusing demand. Accordingly, defendants respectfully request that plaintiff's Complaint be dismissed with prejudice.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By _____
Stephen C. Norman (#2686)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0957
(302) 984-6000

Michael D. Torpey
James N. Kramer
Susan D. Resley
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
(415) 773-5700

Attorneys for defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove, and nominal defendant Intel Corporation

Dated: June 27, 2005

687884v5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I do hereby certify that, on June 27, 2005, the within document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY EMAIL AND HAND DELIVERY**

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

/s/ Stephen C. Norman
———————————————
Stephen C. Norman (#2686)
Potter Anderson & Corroon LLP
Hercules Plaza – 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: snorman@potteranderson.com

1