# EXHIBIT A PART 2 OF 2

Table of Contents

of the highest and lowest quoted sales prices of our common stock was $23.44 per share, which would have been the grant price for any stock options granted on that date. The option term may not be longer than seven years in the case of stock options vesting in full in less than five years, and may not be longer than 10 years in the case of stock options vesting in full in five or more years (long-term executive retention grants). The Compensation Committee (or, for non-employee director awards, the Board) will determine when each stock option becomes exercisable, including the establishment of required performance vesting criteria, if any, and provided that no stock option may be exercised less than one year from the date of grant (except upon the death, disability or retirement of the participant). We may require, prior to issuing common stock under the 2004 Plan, that the participant remit an amount in cash or common stock sufficient to satisfy tax withholding requirements

**Vesting of Restricted Stock and Stock Unit Awards**

The Compensation Committee (or, for non-employee director awards, the Board) may make the grant, issuance, retention and/or vesting of restricted stock and stock unit awards contingent upon continued employment with Intel, the passage of time, or such performance criteria and the level of achievement versus such criteria as it deems appropriate. Except in the case of death, disability or retirement of the participant, stock issued upon exercise or settlement of options or stock appreciation rights, restricted stock and stock unit awards that are contingent upon the achievement of performance objectives shall not vest in less than one year from the date of grant, and awards that are contingent upon continued employment or the passage of time shall not fully vest in less than pro rata installments over three years from the date of grant. Notwithstanding the limitations of the preceding sentence, up to 100,000 shares shall be available for use as employee recognition stock awards having no minimum vesting period

**Eligibility Under Section 162(m)**

Awards may, but need not, include performance criteria that satisfy Section 162(m) of the Tax Code. To the extent that awards are intended to qualify as "performance-based compensation" under Section 162(m), the performance criteria will be based on one or more of the factors set forth in the 2004 Plan (which may be adjusted as provided in the plan), applied either individually, alternatively or in any combination, to either the company as a whole or to a business unit or subsidiary, either individually, alternatively or in any combination, and measured either annually or cumulatively over a period of years, on an absolute basis or relative to a pre-established target, to previous years' results or to a designated comparison group, in each case as specified by the Compensation Committee in the award

To the extent that an award under the 2004 Plan is designated as a "performance award," but is not intended to qualify as performance-based compensation under Section 162(m), the performance criteria can include the achievement of strategic objectives as determined by the Board

Notwithstanding satisfaction of any performance criteria to the extent specified at the time of grant of an award, the number of shares of common stock, stock options or other benefits granted, issued, retainable and/or vested under an award on account of satisfaction of performance criteria may be reduced by the Compensation Committee on the basis of such further considerations as the Compensation Committee in its sole discretion determines

**Transferability**

Awards granted under the 2004 Plan are transferable by will or the laws of descent and distribution, or to the extent otherwise determined by the Compensation Committee. The Compensation Committee has sole discretion to permit the transfer of an award

**Administration**

The Compensation Committee, which is made up entirely of independent directors, administers the 2004 Plan. The Compensation Committee will select the employees who receive awards, determine the number of shares covered thereby, and, subject to the terms and limitations expressly set forth in the 2004 Plan, establish the terms, conditions and other provisions of the grants. The Compensation Committee may interpret the 2004 Plan and establish, amend and rescind any rules relating to the 2004 Plan. The Compensation Committee may delegate to a committee of one or more directors the ability to grant awards and take certain other actions with respect to participants who are not executive officers, and may delegate certain administrative or ministerial functions under the 2004 Plan to an officer or officers. The Compensation Committee has delegated authority to the CEO-elect, one of our directors, to grant awards to non-executive employees within limits and a budget pre-approved by the Compensation Committee

36

Table of Contents

Amendments Requiring Stockholder Approval

The Board may terminate, amend or suspend the 2004 Plan. provided that no action may be taken by the Board (except those described in "Adjustments") without stockholder approval to:

- Increase the number of shares that may be issued under the 2004 Plan;

- Permit granting of stock options at less than the market value;

- Permit the repricing of outstanding stock options;

- Amend the maximum shares set forth that may be granted as stock options, stock appreciation rights, restricted stock or stock units to any participant or in total;

- Extend the term of the 2004 Plan;

- Change the class of persons eligible to participate in the 2004 Plan; or

- Otherwise implement any amendment required to be approved by stockholders under NASDAQ rules

Adjustments

In the event of a stock dividend, recapitalization. stock split, combination of shares. extraordinary dividend of cash or assets, reorganization, or exchange of our common stock or any similar event affecting our common stock, the Compensation Committee shall adjust the number and kind of shares available for grant under the 2004 Plan, and subject to the various limitations set forth in the 2004 Plan, the number and kind of shares subject to outstanding awards under the 2004 Plan, and the exercise or settlement price of outstanding stock options and of other awards

The impact of a merger or other reorganization of Intel on outstanding stock options, stock appreciation rights. restricted stock and stock units granted under the 2004 Plan shall be specified in the agreement relating to the merger or reorganization. subject to the limitations and restrictions set forth in the 2004 Plan. Such agreement may provide for, among other things, assumption of outstanding awards. accelerated vesting or accelerated expiration of outstanding awards, or settlement of outstanding awards in cash

U.S. Tax Consequences

Stock option grants under the 2004 Plan may be intended to qualify as incentive stock options under Section 422 of the Tax Code or may be non–qualified stock options governed by Section 83 of the Tax Code. Generally, no federal income tax is payable by a participant upon the grant of a stock option and no deduction is taken by the company Under current tax laws, if a participant exercises a non–qualified stock option, he or she will have taxable income available for the difference between the market price of the common stock on the exercise date and the stock option grant price We will be entitled to a corresponding deduction on our income tax return A participant will have no taxable income upon exercising an incentive stock option after the applicable holding periods have been satisfied (except that alternative minimum tax may apply), and we will receive no deduction when an incentive stock option is exercised The treatment for a participant of a disposition of shares acquired through the exercise of an option depends on how long the shares were held and on whether the shares were acquired by exercising an incentive stock option or a non–qualified stock option We may be entitled to a deduction in the case of a disposition of shares acquired under an incentive stock option before the applicable holding periods have been satisfied

Restricted stock is also governed by Section 83 of the Tax Code. Generally, no taxes are due when the award is initially made, but the award becomes taxable when it is no longer subject to a "substantial risk of forfeiture" (i e . becomes vested or transferable) Income tax is paid on the value of the stock or units at ordinary rates when the restrictions lapse, and then at capital gain rates when the shares are sold

The American Jobs Creation Act of 2004 added Section 409A to the Tax Code, generally effective January 1, 2005 The IRS has so far issued only limited guidance on the interpretation of this new law. Section 409A covers most programs that defer the receipt of compensation to a succeeding year It provides strict rules for elections to defer (if any) and for timing of payouts There are significant penalties placed on the individual employee for failure to comply with Section 409A However. it does not impact our ability to deduct deferred compensation

Section 409A does not apply to incentive stock options. non–qualified stock options (that are not discounted) and restricted stock (provided there is no deferral of income beyond the vesting date) Section 409A also does not cover stock

Table of Contents

appreciation right plans if the stock appreciation rights are issued by a public company on its traded stock. the exercise price is never less than the fair market value of the underlying stock on the date of grant, the rights are settled in such stock and no features defer the recognition of income beyond the exercise date

Section 409A does apply to restricted stock units. performance units and performance shares  Grants under such plans will continue to be taxed at vesting but will be subject to new limits on plan terms governing when vesting may occur

As described above. awards granted under the 2004 Plan may qualify as "performance–based compensation" under Section 162(m) of the Tax Code in order to preserve our federal income tax deductions with respect to annual compensation required to be taken into account under Section 162(m) that is in excess of $1 million and paid to one of our five most highly compensated executive officers  To so qualify, options and other awards must be granted under the 2004 Plan by a committee consisting solely of two or more "outside directors" (as defined under Section 162 regulations) and satisfy the 2004 Plan's limit on the total number of shares that may be awarded to any one participant during any calendar year  In addition. for awards other than options to qualify, the grant, issuance, vesting or retention of the award must be contingent upon satisfying one or more of the performance criteria, as established and certified by a committee consisting solely of two or more "outside directors"

For a discussion of our executive compensation philosophy, see "Report of the Compensation Committee on Executive Compensation"

**Recommendation of the Board**

**The Board of Directors recommends that you vote "FOR" approval of amendment and extension of the Intel Corporation 2004 Equity Incentive Plan.**

## PROPOSAL 4: APPROVAL OF AMENDMENT AND EXTENSION OF THE EXECUTIVE OFFICER INCENTIVE PLAN

**Introduction**

Our Executive Officer Incentive Plan (EOIP) was established in 1994. amended and restated in 1995, and our stockholders last approved it in 2000  The EOIP is a cash–based. pay–for–performance incentive program, and its purpose is to motivate and reward our executive officers, including our Chief Executive Officer (CEO), for their contributions to our performance  To ensure that performance–based compensation over $1,000,000 payable to the CEO and our four other most highly compensated executive officers is tax–deductible and qualifies under Section 162(m) of the Internal Revenue Code of 1986. as amended (the "Tax Code"), the material terms of performance–based compensation plans. including the employees eligible to receive compensation under the plan, a description of the business criteria on which the performance goal is based and the maximum amount of compensation that could be paid to any employee under the plan (or the formula used to calculate the amount of compensation to be paid to the employee), must be approved by our stockholders  The EOIP is designed to provide for this type of performance–based compensation

In accordance with current tax laws, stockholder approval lasts for approximately five years. and this plan now needs re–approval to be tax qualified. We are asking our stockholders to extend qualification of the EOIP under Section 162(m) of the Tax Code for incentives established within five years from the date of the 2005 Annual Stockholders' Meeting, to approve amendments to the EOIP to clarify the Compensation Committee's authority under the EOIP, and to address the terms and conditions for executive officer participation in the EOIP

Our EOIP is a cash–based, pay–for–performance incentive program that effectively links our financial performance with the total cash compensation paid to our executive officers  This is accomplished through our executive officers having a lower percentage of their total cash compensation in base salary and a higher percentage of their total cash compensation in variable pay through the EOIP program, which is linked to our earnings per share ("EPS")  As a result, our executive officers have a large percentage of their total cash compensation at risk. and their total cash compensation varies with our financial performance

The Board's Compensation Committee, which consists solely of independent directors, determines payments under this plan  The Compensation Committee recommends that our stockholders re–approve this plan, and, as described below,

38

Table of Contents

it has utilized the plan to set 2005 incentive baseline amounts for our executive officers  If our stockholders do not approve the EOIP at the annual meeting, we will terminate the EOIP plan, and we will not pay any incentives under this plan for the 2005 performance year  However, we expect to make incentive payments to the executive officers in amounts similar to those that would have otherwise been paid under the EOIP; the difference is that we will lose a portion of the tax deductibility that would have otherwise been available to us  The Compensation Committee has not adopted a policy that all compensation paid must be tax–deductible and qualified under Section 162(m) of the Tax Code. If we cannot deduct incentives from our taxes, it will increase the overall cost of these incentive payouts to us and thus to our stockholders through reduced net income

The full text of the amended and restated EOIP appears in Exhibit B  The principal features are outlined below and should be reviewed along with the information in the text of the plan

**Purpose of the EOIP**

The EOIP is a cash–based, pay–for–performance incentive program, and its purpose is to motivate and reward eligible employees for their contributions to our performance by making a large portion of their cash compensation variable and dependent upon our performance  As a result of having a lower percentage of their total cash compensation in base salary and a higher percentage of their total cash compensation in performance–based incentives, our executives generally have more compensation risk than executives of our peer groups  As an example, in 2004 the total cash compensation of CEO Craig R  Barrett was $2,454,000, of which $1,756,800, or 72%, of his total cash compensation was performance–based under the EOIP. This is compared to CEOs at our peer groups who have on average 61% of their total cash compensation incentive performance–based. As previously described in "Report of the Compensation Committee on Executive Compensation," our peer groups (also referred to as "the market") consist of a cross–industry subset of Fortune 50 companies as well as a technology industry subset of companies generally considered to be comparable to Intel

We believe that we have effectively linked our executive officers' total cash compensation to our financial performance through the EOIP, and as a result of lower–than–market base salary and higher–than–market incentive payouts  In times of poor financial performance, our total cash compensation is lower than market  Conversely, in times of sustained excellent financial performance, our higher variability yields higher–than–market total cash compensation, motivating and rewarding executive officers for excellent performance

In support of our pay–for–performance philosophy, we intend for the actual EOIP payouts to be closely linked to our financial performance for the fiscal year  The pay–for–performance variability in the EOIP is illustrated in the following graph. From 1998 to 2000, average total cash compensation of our top five most highly compensated executive officers increased 38%. while our EPS grew 76%. In 2001. our EPS declined 87%, and, as we intended, the average total cash compensation of our top five most highly compensated executives declined by 51%. Since 2001, the average total cash compensation of our top five most highly compensated executives (top six for 2004) has grown 26% and our EPS has grown 511% in the same time period



†EPS is net income divided by Intel's weighted average common shares outstanding, assuming dilution.
††Represents the total cash compensation average for the top six most highly compensated executive officers

39

Table of Contents

**Eligibility**

Our executive officers, as determined by the Compensation Committee. are eligible to participate in the EOIP  Currently, each of our 14 executive officers participates in the EOIP. Executive officer eligibility is defined more broadly than the Section 162(m) requirements of the Tax Code to ensure consistent alignment of our executives to our financial goals

**Payout Formula/Maximum Payout**

The EOIP includes a formula to calculate the maximum annual incentive payout for each executive officer; however, we cannot pay EOIP incentives in excess of $5,000,000 annually to any executive officer  In 1997, Andrew S  Grove earned $2,669,100, the highest payout under the EOIP to date. The EOIP formula is composed of three variables: (1) the executive officer's annual incentive baseline amount, which the Compensation Committee determines annually; (2) our EPS; and (3) a factor pre–established each year by the Committee (the "Performance Factor")  At the end of each year, we multiply the individual's incentive baseline amount by our EPS for the year and the Performance Factor to calculate the maximum EOIP incentive for that year

For purposes of the EOIP incentive formula. "EPS" means the greater of our operating income or our net income per weighted average common shares outstanding, assuming dilution  Operating income does not include gains or losses on equity securities or interest or other income we earned. and does not include a deduction for interest expense or income taxes; as a result, EPS based on operating income generally exceeds EPS based on net income  The Compensation Committee, in its sole discretion and in compliance with IRS regulations, may adjust our operating income or net income for unusual, extraordinary or one–time events. These adjustments may include but are not limited to asset write–downs; acquisition–related charges; litigation, claim judgments, settlements or tax settlements; the effects of changes in tax law. changes in accounting principles or other such laws or provisions affecting reported results; accruals for reorganization and restructuring programs; gains or losses on investments (realized or unrealized); and any extraordinary non–recurring items as described in Accounting Principles Board Opinion No  30 and/or in management's discussion and analysis of financial condition and results of operations appearing in the annual report to stockholders for the applicable year  Adjustments made in the past have generally been made to eliminate the impact on EPS of large non–recurring expenses or settlements that cannot be planned for, such as acquisition–related expenses and tax or legal settlements. among other things

The Committee determines the Performance Factor annually for all participants in the EOIP  When determining the annual Performance Factor. the Committee considers Intel's past financial performance, its internal estimates of current year financial performance, and the competitiveness of its executive officers' base salary and incentive baseline amounts compared to its peer groups

**Actual Awards**

Under the EOIP, the Compensation Committee has discretion to reduce, but not to increase, an individual's maximum incentive payout  The EOIP does not specify the factors that the Compensation Committee evaluates in the exercise of its discretion to reduce nor does it require the Compensation Committee to make such a reduction  In past years, the Compensation Committee has traditionally exercised its discretion and has reduced the incentive payouts below what the EOIP formula yielded  For an example, see the "Report of the Compensation Committee on Executive Compensation" for a discussion on the reduction made in 2004

**U.S. Income Tax Consequences**

As described above. we intend incentives granted under the EOIP to qualify as "performance–based compensation" under Section 162(m) of the Tax Code  By so doing, we preserve our federal income tax deductions with respect to annual compensation required to be taken into account under Section 162(m) that is in excess of $1 million and paid to one of our five most highly compensated executive officers  To qualify, incentive awards must be granted under the stockholder–approved EOIP by a committee consisting solely of two or more "outside directors" (as defined under Section 162 regulations)  In addition, the performance criteria must be set by a committee consisting solely of two or more "outside directors" within the first ninety (90) days of the service period. and the extent to which amounts payable under the performance criteria must likewise be certified by the committee

Effective generally January 1, 2005, plans that are not tax–qualified under which compensation may be deferred must comply with Section 409A of the Tax Code (as added by The American Jobs Creation Act of 2004)  Section 409A

Table of Contents

provides specific rules for deferral elections, distributions and funding mechanisms under non-qualified deferred compensation plans. Failure to comply would result in significant penalties and interest for the individual but would not impact our tax deduction for deferred compensation

**Amendments to the EOIP**

We are also requesting that our stockholders approve amendments to the EOIP. The purpose of these amendments is to clarify the Compensation Committee's authority under the EOIP and to address our executive officers' terms and conditions of participation. The full text of the amendments appears in Exhibit B. The principal features of the EOIP, including the proposed amendments, are outlined below (other than those features that have already been discussed in the preceding pages) and should be reviewed along with the text of the plan

- *Section 5. Payment of Incentive:* Requires that the executive officer be employed by Intel on the last day of the EOIP performance period in order to be eligible for incentive payouts. The Compensation Committee, in its sole discretion, can make exceptions to this requirement in the case of death, disability or retirement

- *Section 6. Amendment and Termination:* The Board of Directors or the Compensation Committee can amend or terminate the EOIP at any time, but stockholder approval will be required for amendments to change the class of executives eligible to participate in the plan, change the performance criteria on which amounts payable under the plan are conditioned, change the maximum amount of compensation that can be paid to any one employee under the plan, or otherwise, in each case to the extent required to satisfy Section 162(m) of the Tax Code

- *Section 7. Income Tax Withholding:* We have the right to make all incentive payouts under the EOIP net of any federal, state or local taxes

- *Section 8. Severability:* If a court or other regulatory body declares any term or condition of the EOIP to be unlawful, the other terms and conditions of the EOIP will remain in effect

- *Section 9. Non-assignability:* No executive officer may sell, assign or gift any incentives under the EOIP until these incentives have actually been paid

- *Section 10. Non-exclusivity of Plan:* The adoption of the EOIP by the Board of Directors and submission of the EOIP to stockholders for approval do not create any limitation on the power of the Compensation Committee or the Board to adopt other cash or equity-based compensation programs

- *Section 11. Employment at Will:* Executive officers who participate in the EOIP are not guaranteed continued employment; we have the sole discretion to discharge any participant in the EOIP

- *Section 12. No Vested Interest or Right:* Executive officers do not accrue or receive a vested right in their EOIP payout until the actual payout is made to the executive officer. We have no obligation to treat participants identically under the EOIP

- *Section 13. Governing Law:* The EOIP will be interpreted under the laws of the State of Delaware and applicable federal law

We are requesting that our stockholders approve the amended and restated EOIP so that incentive payments under the EOIP qualify as performance-based compensation and continue to be deductible for federal income tax purposes. We believe that this is in the best interests of the company and our stockholders

**Recommendation of the Board**

**The Board of Directors recommends that you vote "FOR" amendment and extension of the Intel Corporation Executive Officer Incentive Plan.**

41

**Table of Contents**
ADDITIONAL MEETING INFORMATION

*Meeting Proposals* There are no other matters that the Board intends to present, or has reason to believe others will present, at the annual meeting If other matters are properly presented for voting at the annual meeting. the persons named as proxies will vote in accordance with their best judgment on such matters

*Proxy Solicitation* We will bear the expense of soliciting proxies. and we have retained D F King & Co . Inc for a fee of $15,000 plus a reasonable amount to cover expenses Certain of our directors, officers and other employees. without additional compensation, may also solicit proxies personally or in writing. by telephone, e–mail or otherwise We are required to request that brokers and nominees who hold stock in their names furnish our proxy material to the beneficial owners of the stock, and we must reimburse such brokers and nominees for the expenses of doing so in accordance with certain statutory fee schedules We currently estimate that this reimbursement will cost us more than $4 5 million The actual amount will depend on variables such as the number of proxy materials, the number of stockholders receiving electronic delivery and postage cost See "Electronic Delivery of Our Stockholder Communications" for information on how you can help us reduce printing and mailing costs

## OTHER MATTERS

*Section 16(a) Beneficial Ownership Reporting Compliance* Section 16(a) of the Securities Exchange Act of 1934, as amended. requires our directors and executive officers, among others, to file with the SEC and NASDAQ an initial report of ownership of our stock on a Form 3 and reports of changes in ownership on a Form 4 or a Form 5 Persons subject to Section 16 are required by SEC regulations to furnish us with copies of all Section 16(a) forms that they file Under SEC rules, certain forms of indirect ownership and ownership of company stock by certain family members are covered by these reporting requirements As a matter of practice, our administrative staff assists our executive officers and directors in preparing initial ownership reports and reporting ownership changes, and typically files these reports on their behalf.

Based solely on a review of the copies of such forms in our possession, and on written representations from certain reporting persons, we believe that during fiscal 2004, all of our executive officers and directors filed the required reports on a timely basis under Section 16(a), except that Dr. Moore made a gift of 227.200 shares to the California Institute of Technology in 2001 that was not timely reported A corrective filing has since been made

*2006 Stockholder Proposals or Nominations*. From time to time. our stockholders submit proposals that they believe should be voted on at the annual meeting or recommend persons who they believe should be nominated for election to the Board Pursuant to Rule 14a–8 under the Securities Exchange Act of 1934, some stockholder proposals may be eligible for inclusion in our 2006 proxy statement Any such stockholder proposals must be submitted, along with proof of ownership of our stock in accordance with Rule 14a–8(b)(2). to our principal executive offices, in care of our Corporate Secretary, via e–mail at *corporate secretary@intel com*, by fax to (408) 653–8050 or mailed to Cary Klafter, Intel Corporation, M/S SC4–203, 2200 Mission College Blvd , Santa Clara, California 95052–8119 Failure to deliver a proposal by one of these means may result in it not being deemed timely received We must receive all submissions no later than November 29, 2005 We strongly encourage any stockholder interested in submitting a proposal to contact our Corporate Secretary in advance of this deadline to discuss the proposal, and stockholders may want to consult knowledgeable counsel with regard to the detailed requirements of applicable securities laws Submitting a stockholder proposal does not guarantee that we will include it in our proxy statement The Corporate Governance and Nominating Committee reviews all stockholder proposals and makes recommendations to the Board for action on such proposals For information on recommending individuals for consideration as nominees, see "The Board. Board Committees and Meetings "

Alternatively. under our Bylaws, if a stockholder does not want to submit a proposal for the 2006 annual meeting in our proxy statement under Rule 14a–8, or intends to nominate a person as a candidate for election to the Board. the stockholder may submit the proposal or nomination not less than 45 days or more than 120 days prior to the anniversary of the date on which we first mailed our proxy materials for the 2005 annual meeting. unless the date of the 2006 annual meeting is advanced by more than 30 days or delayed (other than as a result of adjournment) by more than 30 days from the anniversary of the 2005 annual meeting For our 2006 annual meeting, we must receive such proposals and nominations no earlier than November 29, 2005 and no later than February 12, 2006 If the date of the 2006 annual meeting is advanced by more than 30 days or delayed (other than as a result of adjournment) by more than 30 days from the anniversary of the 2005 annual meeting, the stockholder must submit any such proposal or nomination no later than the close of business on the later of the 60th day prior to the 2006 annual meeting or the 10th day following the day on which public announcement of the date of such meeting is first made The stockholder's submission must include certain specified information concerning the proposal or nominee, as the case may be, and information as to the stockholder's ownership of our stock We will not entertain any proposals or nominations at the annual meeting that do not meet these

Table of Contents

requirements  If the stockholder does not also comply with the requirements of Rule 14a-4(c)(2) under the Securities Exchange Act of 1934, we may exercise discretionary voting authority under proxies that we solicit to vote in accordance with our best judgment on any such stockholder proposal or nomination  To make a submission or to request a copy of our Bylaws, stockholders should contact our Corporate Secretary via e-mail at *corporate secretary@intel.com*, by fax to (408) 653-8050 or by mail to Cary Klafter, Intel Corporation. M/S SC4-203. 2200 Mission College Blvd . Santa Clara. California 95052-8119  Our Bylaws are also available on our web site at *www.intel.com/intel/finance/docs/bylaws.pdf*. We strongly encourage stockholders to seek advice from knowledgeable counsel before submitting a proposal or a nomination

*Financial Statements*  Our financial statements for the year ended December 25, 2004 are included in our 2004 Annual Report to Stockholders, which we are sending to our stockholders at the same time as this proxy statement  We encourage our stockholders to conserve natural resources. as well as reduce mailing and printing costs, by signing up for electronic delivery of our stockholder communications  For more information, see "Electronic Delivery of Our Stockholder Communications "  If you have not received or had access to the annual report, please call our Investor Relations department at (408) 765-1480, and we will send a copy to you  Our annual report and this proxy statement are available on the Internet at *www intel com/intel/annualreports/2004*

## COMMUNICATING WITH US

From time to time, we receive calls from stockholders asking how they can communicate with us  The following communication options are available

If you would like to *receive information* about us. you may use one of the following methods:

1.  Our main Internet site, located at *www intel com*. contains product and marketing information as well as job listings  Our Investor Relations site, located at *www.intc com*, contains press releases. earnings releases. financial information and stock quotes, as well as corporate governance information and links to our SEC filings. This proxy statement and our 2004 Annual Report to Stockholders are both available on the Internet at *www intel com/intel/annualreports/2004*

2.  To have information such as our latest Form 10-Q or annual report mailed to you, please call our transfer agent, Computershare Investor Services, LLC, at (800) 298-0146 (within the U S. and Canada) or (312) 360-5123 (outside the U S  and Canada)  You can view your Intel stock holdings electronically and perform other transactions by enrolling in Computershare's Investor Center at *www computershare com*

If you would like to *contact us.* call our Investor Relations department at (408) 765-1480, or send correspondence to Intel Corporation. Attn: Investor Relations, M/S RN5-24, 2200 Mission College Blvd . Santa Clara. California 95052-8119

## STOCKHOLDERS SHARING THE SAME LAST NAME AND ADDRESS

In accordance with notices that we sent to certain stockholders, we are sending only one copy of our annual report and proxy statement to stockholders who share the same last name and address, unless they have notified us that they want to continue receiving multiple copies  This practice, known as "householding," is designed to reduce duplicate mailings and save significant printing and postage costs as well as natural resources

If you received a householded mailing this year and you would like to have additional copies of our annual report and/or proxy statement mailed to you, or you would like to opt out of this practice for future mailings, please submit your request to our Corporate Secretary via e-mail at *corporate secretary@intel com*, by fax to (408) 653-8050 or by mail to Cary Klafter, Intel Corporation. M/S SC4-203, 2200 Mission College Blvd , Santa Clara, California 95052-8119, or call our Investor Relations department at (408) 765-1480  We will promptly send additional copies of the annual report and/or proxy statement upon receipt of such request  You may also contact us if you received multiple copies of the annual meeting materials and would prefer to receive a single copy in the future

43

Table of Contents

Unfortunately, householding for bank and brokerage accounts is limited to accounts within the same bank or brokerage firm  For example, if you and your spouse share the same last name and address, and you and your spouse each have two accounts containing Intel stock at two different brokerage firms, your household will receive two copies of our annual meeting materials—one from each brokerage firm. To reduce the number of duplicate sets of annual meeting materials your household receives, you may want to enroll some or all of your accounts in our electronic delivery program  See "Electronic Delivery of Our Stockholder Communications "

By Order of the Board of Directors

By: Cary I  Klafter
*Corporate Secretary*

Santa Clara, California
March 29, 2005

---

*Intel. the Intel logo. Pentium and Itanium are trademarks or registered trademarks of Intel Corporation or its subsidiaries in the United States and other countries  *Other names and brands may be claimed as the property of others*

44

Table of Contents

EXHIBIT A

**INTEL CORPORATION**

**2004 EQUITY INCENTIVE PLAN**

**AS AMENDED AND RESTATED, EFFECTIVE MAY 18, 2005**

**1. PURPOSE**

The purpose of this Intel Corporation 2004 Equity Incentive Plan (the "Plan") is to advance the interests of Intel Corporation, a Delaware corporation, and its Subsidiaries (hereinafter collectively "Intel" or the "Corporation"), by stimulating the efforts of employees who are selected to be participants on behalf of Intel, aligning the long–term interests of participants with those of stockholders, heightening the desire of participants to continue in working toward and contributing to the success of Intel, assisting Intel in competing effectively with other enterprises for the services of new employees necessary for the continued improvement of operations. and to attract and retain the best available individuals for service as directors of the Corporation This Plan permits the grant of stock options, stock appreciation rights. restricted stock and stock units, each of which shall be subject to such conditions based upon continued employment. passage of time or satisfaction of performance criteria as shall be specified pursuant to the Plan

**2. DEFINITIONS**

(a) "Award" means a stock option, stock appreciation right. restricted stock or stock unit granted to a Participant pursuant to the Plan

(b) "Board of Directors" means the Board of Directors of the Corporation

(c) "Code" shall mean the Internal Revenue Code of 1986, as such is amended from time to time, and any reference to a section of the Code shall include any successor provision of the Code

(d) "Committee" shall mean the committee appointed by the Board of Directors from among its members to administer the Plan pursuant to Section 3

(e) "Exchange Act" shall mean the Securities Exchange Act of 1934, as amended from time to time, and any reference to a section of the Exchange Act shall include any successor provision of the Exchange Act

(f) "Outside Director" shall mean a member of the Board of Directors who is not otherwise an employee of the Corporation

(g) "Participants" shall mean those individuals to whom Awards have been granted from time to time and any authorized transferee of such individuals

(h) "Performance Award" means an Award that vests only upon the satisfaction of one or more of the Qualifying Performance Criteria specified in Section 10(b)

(i) "Plan" means this Intel Corporation 2004 Equity Incentive Plan

(j) "Share" shall mean a share of common stock, $ 001 par value, of the Corporation or the number and kind of shares of stock or other securities which shall be substituted or adjusted for such shares as provided in Section 11

(k) "Subsidiary" means any corporation or entity in which Intel Corporation owns or controls, directly or indirectly, fifty percent (50%) or more of the voting power or economic interests of such corporation or entity

**3. ADMINISTRATION**

(a) *Composition of Committee*. This Plan shall be administered by the Committee The Committee shall consist of two or more Outside Directors who shall be appointed by the Board of Directors The Board of Directors shall fill vacancies on the Committee and may from time to time remove or add members of the Committee. The Board of Directors. in its sole discretion, may exercise any authority of the Committee under this Plan in lieu of the Committee's exercise thereof. and in such instances references herein to the Committee shall refer to the Board of Directors

(b) *Delegation and Administration* The Committee may delegate to one or more separate committees (any such committee a "Subcommittee") composed of one or more directors of the Corporation (who may but need not be members

A–1

Table of Contents

of the Committee) the ability to grant Awards and take the other actions described in Section 3(c) with respect to Participants who are not executive officers, and such actions shall be treated for all purposes as if taken by the Committee  Any action by any such Subcommittee within the scope of such delegation shall be deemed for all purposes to have been taken by the Committee, and references in this Plan to the Committee shall include any such Subcommittee  The Committee may delegate the administration of the Plan to an officer or officers of the Corporation, and such administrator(s) may have the authority to execute and distribute agreements or other documents evidencing or relating to Awards granted by the Committee under this Plan, to maintain records relating to the grant, vesting, exercise, forfeiture or expiration of Awards. to process or oversee the issuance of Shares upon the exercise, vesting and/or settlement of an Award, to interpret the terms of Awards and to take such other actions as the Committee may specify, provided that in no case shall any such administrator be authorized to grant Awards under the Plan  Any action by any such administrator within the scope of its delegation shall be deemed for all purposes to have been taken by the Committee and references in this Plan to the Committee shall include any such administrator, provided that the actions and interpretations of any such administrator shall be subject to review and approval, disapproval or modification by the Committee

(c) *Powers of the Committee*  Subject to the express provisions and limitations set forth in this Plan, the Committee shall be authorized and empowered to do all things necessary or desirable. in its sole discretion, in connection with the administration of this Plan, including, without limitation. the following:

(i)    to prescribe. amend and rescind rules and regulations relating to this Plan and to define terms not otherwise defined herein;

(ii)   to determine which persons are Participants, to which of such Participants, if any, Awards shall be granted hereunder and the timing of any such Awards, and to grant Awards;

(iii)  to grant Awards to Participants and determine the terms and conditions thereof, including the number of Shares subject to Awards and the exercise or purchase price of such Shares and the circumstances under which Awards become exercisable or vested or are forfeited or expire, which terms may but need not be conditioned upon the passage of time, continued employment, the satisfaction of performance criteria, the occurrence of certain events. or other factors;

(iv)   to establish or verify the extent of satisfaction of any performance goals or other conditions applicable to the grant. issuance. exercisability, vesting and/or ability to retain any Award;

(v)    to prescribe and amend the terms of the agreements or other documents evidencing Awards made under this Plan (which need not be identical);

(vi)   to determine whether, and the extent to which, adjustments are required pursuant to Section 11;

(vii)  to interpret and construe this Plan. any rules and regulations under this Plan and the terms and conditions of any Award granted hereunder, and to make exceptions to any such provisions in good faith and for the benefit of the Corporation; and

(viii) to make all other determinations deemed necessary or advisable for the administration of this Plan

(d) *Effect of Change in Status*  The Committee shall have the discretion to determine the effect upon an Award and upon an individual's status as an employee under the Plan (including whether a Participant shall be deemed to have experienced a termination of employment or other change in status) and upon the vesting, expiration or forfeiture of an Award in the case of (i) any individual who is employed by an entity that ceases to be a Subsidiary of the Corporation, (ii) any leave of absence approved by the Corporation or a Subsidiary, (iii) any transfer between locations of employment with the Corporation or a Subsidiary or between the Corporation and any Subsidiary or between any Subsidiaries. (iv) any change in the Participant's status from an employee to a consultant or member of the Board of Directors, or vice versa. and (v) at the request of the Corporation or a Subsidiary, any employee who becomes employed by any partnership, joint venture, corporation or other entity not meeting the requirements of a Subsidiary

(e) *Determinations of the Committee*  All decisions. determinations and interpretations by the Committee regarding this Plan shall be final and binding on all Participants. The Committee shall consider such factors as it deems relevant to making such decisions, determinations and interpretations including, without limitation, the recommendations or advice of any director, officer or employee of the Corporation and such attorneys. consultants and accountants as it may select  A Participant or other holder of an Award may contest a decision or action by the Committee with respect to such person or Award only on the grounds that such decision or action was arbitrary or capricious or was unlawful, and any review of such decision or action shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful

A-2

Table of Contents
4 PARTICIPANTS

Awards under the Plan may be granted to any person who is an employee or Outside Director of the Corporation  Outside Directors may be granted Awards only pursuant to Section 8(i)9 of the Plan  The status of the Chairman of the Board of Directors as an employee or Outside Director shall be determined by the Committee  Any person designated by the Corporation as an independent contractor shall not be treated as an employee and shall not be eligible for Awards under the Plan

**5. EFFECTIVE DATE AND EXPIRATION OF PLAN**

(a) *Effective Date.* This Plan was approved by the Board of Directors on February 20, 2004 and will become became effective on May 19, 2004, subject to approval by the affirmative vote of the holders of a majority of the votes cast at the 2004 Annual Meeting of Stockholders.

(b) *Expiration Date*  The Plan shall remain available for the grant of Awards until June 30, 2006 2007 or such earlier date as the Board of Directors may determine. The expiration of the Committee's authority to grant Awards under the Plan will not affect the operation of the terms of the Plan or the Corporation's and Participants' rights and obligations with respect to Awards granted on or prior to the expiration date of the Plan

**6. SHARES SUBJECT TO THE PLAN**

(a) *Aggregate Limits.* Subject to adjustment as provided in Section 11, the aggregate number of Shares authorized for issuance as Awards under the Plan is 240,000,000 370,000,000, of which no more than an aggregate of 35,000,000 Shares may be issued as restricted stock or stock units and no more than an aggregate of 8,000,000 10,000,000 Shares shall be available for issuance as stock options under any program providing for stock option grants that vest in full in five or more years and that have a maximum term of ten years  The Shares subject to the Plan may be either Shares reacquired by the Corporation, including Shares purchased in the open market, or authorized but unissued Shares  Any Shares subject to an Award which for any reason expires or terminates unexercised or is not earned in full may again be made subject to an Award under the Plan  The following Shares may not again be made available for issuance as Awards under the Plan: (i) Shares not issued or delivered as a result of the net settlement of an outstanding Stock Appreciation Right, (ii) Shares used to pay the exercise price or withholding taxes related to an outstanding Award, or (iii) Shares repurchased on the open market with the proceeds of the option exercise price.

(b) *Tax Code Limits*  The aggregate number of Shares subject to stock options or stock appreciation rights granted under this Plan during any calendar year to any one Participant shall not exceed 3,000,000  The aggregate number of Shares subject to restricted stock or stock unit Awards granted under this Plan during any calendar year to any one Participant shall not exceed 2,000,000  Notwithstanding anything to the contrary in this Plan, the foregoing limitations shall be subject to adjustment under Section 11. but only to the extent that such adjustment will not affect the status of any Award intended to qualify as "performance−based compensation" under Section 162(m) of the Code  The aggregate number of Shares issued pursuant to incentive stock options granted under the Plan shall not exceed 240,000,000 370,000,000, which limitation shall be subject to adjustment under Section 11 only to the extent that such adjustment is consistent with adjustments permitted of a plan authorizing incentive stock options under Section 422 of the Code

**7. PLAN AWARDS**

(a) *Award Types*  The Committee. on behalf of the Corporation. is authorized under this Plan to grant, award and enter into the following arrangements or benefits under the Plan provided that their terms and conditions are not inconsistent with the provisions of the Plan: stock options. stock appreciation rights, restricted stock and stock units  Such arrangements and benefits are sometimes referred to herein as "Awards " The Committee. in its discretion, may determine that any Award granted hereunder shall be a Performance Award

    (i) *Stock Options*  A "Stock Option" is a right to purchase a number of Shares at such exercise price, at such times. and on such other terms and conditions as are specified in or determined pursuant to the document(s) evidencing the Award (the "Option Agreement")  The Committee may grant Stock Options intended to be eligible to qualify as incentive stock options ("ISOs") pursuant to Section 422 of the Code and Stock Options that are not intended to qualify as ISOs ("Non−qualified Stock Options"), as it, in its sole discretion, shall determine

    (ii) *Stock Appreciation Rights*  A "Stock Appreciation Right" or "SAR" is a right to receive, in cash or stock (as determined by the Committee), value with respect to a specific number of Shares equal to or otherwise based on the excess of (i) the market value of a Share at the time of exercise over (ii) the exercise price of the right, subject to such terms and conditions as are expressed in the document(s) evidencing the Award (the "SAR Agreement")

    (iii) *Restricted Stock*  A "Restricted Stock" Award is an award of Shares, the grant, issuance, retention and/or vesting of which is subject to such conditions as are expressed in the document(s) evidencing the Award (the "Restricted Stock Agreement")

A−3

Table of Contents

(iv) *Stock Unit*  A `Stock Unit" Award is an award of a right to receive. in cash or stock (as determined by the Committee) the market value of one Share. the grant. issuance. retention and/or vesting of which is subject to such conditions as are expressed in the document(s) evidencing the Award (the "Stock Unit Agreement")

(b) *Grants of Awards*  An Award may consist of one of the foregoing arrangements or benefits or two or more of them in tandem or in the alternative

8. ~~GRANT, TERMS AND CONDITIONS OF STOCK OPTIONS AND SARS~~ EMPLOYEE PARTICIPANT AWARDS

(a) *Grant, Terms and Conditions of Stock Options and SARs*

The Committee may grant Stock Options or SARs at any time and from time to time prior to the expiration of the Plan to eligible employee Participants selected by the Committee. No Participant shall have any rights as a stockholder with respect to any Shares subject to Stock Options or SARs hereunder until said Shares have been issued  Each Stock Option or SAR shall be evidenced only by such agreements, notices and/or terms or conditions documented in such form (including by electronic communications) as may be approved by the Committee. Each Stock Option grant will expressly identify the Stock Option as an ISO or as a Non-qualified Stock Option  Stock Options or SARs granted pursuant to the Plan need not be identical but each must contain or be subject to the following terms and conditions:

(i) *Price*  The purchase price (also referred to as the exercise price) under each Stock Option or SAR granted hereunder shall be established by the Committee. The purchase price per Share shall not be less than 100% of the market value of a Share on the date of grant. For purposes of the Plan. "market value" shall mean the average of the high and low sales prices of the Corporation's common stock  The exercise price of a Stock Option shall be paid in cash or in such other form if and to the extent permitted by the Committee, including without limitation by delivery of already owned Shares. withholding (either actually or by attestation) of Shares otherwise issuable under such Stock Option and/or by payment under a broker-assisted sale and remittance program acceptable to the Committee

(ii) *No Repricing*  Other than in connection with a change in the Corporation's capitalization (as described in Section 11 of the Plan). the exercise price of ~~an a~~ Stock Option or SAR may not be reduced without stockholder approval

(iii) *No Reload Grants*  Stock Options shall not be granted under the Plan in consideration for and shall not be conditioned upon the delivery of Shares to the Corporation in payment of the exercise price and/or tax withholding obligation under any other employee stock option

(iv) *Duration. Exercise and Termination of Stock Options and SARs*  Each Stock Option or SAR shall be exercisable at such time and in such installments during the period prior to the expiration of the Stock Option or SAR as determined by the Committee  The Committee shall have the right to make the timing of the ability to exercise any Stock Option or SAR subject to continued employment, the passage of time and/or such performance requirements as deemed appropriate by the Committee  At any time after the grant of a Stock Option. the Committee may reduce or eliminate any restrictions on the Participant's right to exercise all or part of the Stock Option, except that no Stock Option shall first become exercisable within one (1) year from its date of grant, other than upon the death, disability or retirement of the person to whom the Stock Option was granted, in each case as specified in the Option Agreement

Each Stock Option or SAR that vests in full in less than five (5) years (standard grants) must expire within a period of not more than seven (7) years from the grant date and each Stock Option or SAR that vests in full in five (5) or more years (long-term retention grants) must expire within a period of not more than ten (10) years from the grant date  In each case, the Option Agreement or SAR Agreement may provide for expiration prior to the end of the stated term of the Award in the event of the termination of employment or service of the Participant to whom it was granted

(v) *Suspension or Termination of Stock Options and SARs*  If at any time (including after a notice of exercise has been delivered) the Committee, including any Subcommittee or administrator authorized pursuant to Section 3(b) (any such person, an "Authorized Officer"), reasonably believes that a Participant, other than an Outside Director, has committed an act of misconduct as described in this Section. the Authorized Officer may suspend the Participant's right to exercise any Stock Option or SAR pending a determination of whether an act of misconduct has been committed  If the Committee or an Authorized Officer determines a Participant, other than an Outside Director, has committed an act of embezzlement, fraud, dishonesty, nonpayment of any obligation owed to Intel, breach of fiduciary duty or deliberate disregard of Corporation rules resulting in loss. damage or injury to the Corporation. or if a Participant makes an unauthorized disclosure of any Corporation trade secret or confidential information. engages in any conduct constituting unfair competition. induces any customer to breach a contract with the Corporation or

A-4

Table of Contents

induces any principal for whom Intel acts as agent to terminate such agency relationship, neither the Participant nor his or her estate shall be entitled to exercise any Stock Option or SAR whatsoever  Any determination by the Committee or an Authorized Officer with respect to the foregoing shall be final. conclusive and binding on all interested parties  For any Participant who is an "executive officer" for purposes of Section 16 of the Exchange Act, the determination of the Committee or of the Authorized Officer shall be subject to the approval of the Board of Directors

(vi) *Conditions and Restrictions Upon Securities Subject to Stock Options or SARs*  Subject to the express provisions of the Plan, the Committee may provide that the Shares issued upon exercise of a Stock Option or SAR shall be subject to such further conditions or agreements as the Committee in its discretion may specify prior to the exercise of such Stock Option or SAR, including. without limitation, conditions on vesting or transferability, forfeiture or repurchase provisions  The obligation to make payments with respect to SARs may be satisfied through cash payments or the delivery of Shares, or a combination thereof as the Committee shall determine  The Committee may establish rules for the deferred delivery of Common Stock upon exercise of a Stock Option or SAR with the deferral evidenced by use of "Stock Units" equal in number to the number of Shares whose delivery is so deferred

(vii) *Other Terms and Conditions*  Stock Options and SARs may also contain such other provisions, which shall not be inconsistent with any of the foregoing terms, as the Committee shall deem appropriate

(viii) *ISOs*.  Stock Options intending to qualify as ISOs may only be granted to employees of the Corporation within the meaning of the Code, as determined by the Committee  No ISO shall be granted to any person if immediately after the grant of such Award, such person would own stock. including stock subject to outstanding Awards held by him or her under the Plan or any other plan established by the Corporation, amounting to more than ten percent (10%) of the total combined voting power or value of all classes of stock of the Corporation  To the extent that the Option Agreement specifies that a Stock Option is intended to be treated as an ISO, the Stock Option is intended to qualify to the greatest extent possible as an "incentive stock option" within the meaning of Section 422 of the Code. and shall be so construed; provided. however, that any such designation shall not be interpreted as a representation. guarantee or other undertaking on the part of the Corporation that the Stock Option is or will be determined to qualify as an ISO  If and to the extent that any Shares are issued under a portion of any Stock Option that exceeds the $100,000 limitation of Section 422 of the Code. such Shares shall not be treated as issued under an ISO notwithstanding any designation otherwise  Certain decisions. amendments, interpretations and actions by the Committee and certain actions by a Participant may cause a Stock Option to cease to qualify as an ISO pursuant to the Code and by accepting a Stock Option the Participant agrees in advance to such disqualifying action

(ix) ~~Outside Director Stock Options. Each Outside Director shall be granted a Non-qualified Stock Option (an "Outside Director Option") once each fiscal year for not more than 30,000 Shares, as determined by the Board of Directors, provided that if an Outside Director is elected to begin serving as a director on a date not coincident with the grant date for such annual grant, then he or she will be granted an initial Outside Director Option as of the date of the first meeting of the Board of Directors at which he or she serves for a prorated number of Shares based on the number of months remaining until the next annual Outside Director Option grant. Notwithstanding anything to the contrary in this Plan, the foregoing limitations shall be subject to adjustment under Section 11. The number of Shares subject to each Outside Director Option, or the formula pursuant to which such number shall be determined, the date of grant and the vesting, expiration and other terms applicable to such Stock Options shall be specified from time to time by the Board of Directors, subject to the terms of this Plan applicable to Stock Options in general.~~

## ~~9. GRANT, TERMS AND CONDITIONS OF RESTRICTED STOCK AND STOCK UNITS~~

### (b) *Grant, Terms and Conditions of Restricted Stock and Stock Units*

The Committee may grant Restricted Stock or Stock Units at any time and from time to time prior to the expiration of the Plan to eligible employee Participants selected by the Committee  A Participant shall have rights as a stockholder with respect to any Shares subject to a Restricted Stock Award hereunder only to the extent specified in this Plan or the Restricted Stock Agreement evidencing such Award  Awards of Restricted Stock or Stock Units shall be evidenced only by such agreements, notices and/or terms or conditions documented in such form (including by electronic communications) as may be approved by the Committee  Awards of Restricted Stock or Stock Units granted pursuant to the Plan need not be identical but each must contain or be subject to the following terms and conditions:

(i) *Terms and Conditions*  Each Restricted Stock Agreement and each Stock Unit Agreement shall contain provisions regarding (a) the number of Shares subject to such Award or a formula for determining such. (b) the purchase price of the Shares. if any, and the means of payment for the Shares, (c) the performance criteria, if any, and level of achievement versus these criteria that shall determine the number of Shares granted. issued, retainable and/or

A–5

Table of Contents

vested, (d) such terms and conditions on the grant. issuance. vesting and/or forfeiture of the Shares as may be determined from time to time by the Committee. (e) restrictions on the transferability of the Shares and (f) such further terms and conditions as may be determined from time to time by the Committee. in each case not inconsistent with this Plan

(ii) *Sale Price*  Subject to the requirements of applicable law, the Committee shall determine the price, if any. at which Shares of Restricted Stock or Stock Units shall be sold or awarded to a Participant. which may vary from time to time and among Participants and which may be below the market value of such Shares at the date of grant or issuance

(iii) *Share Vesting*  The grant. issuance. retention and/or vesting of Shares under Restricted Stock or Stock Unit Awards shall be at such time and in such installments as determined by the Committee or under criteria established by the Committee  The Committee shall have the right to make the timing of the grant and/or the issuance, ability to retain and/or vesting of Shares under Restricted Stock or Stock Unit Awards subject to continued employment. passage of time and/or such performance criteria and level of achievement versus these criteria as deemed appropriate by the Committee. which criteria may be based on financial performance and/or personal performance evaluations  Up to 100,000 Shares shall be available for issuance to employee Participants as Awards having no minimum vesting period. No condition that is based on performance criteria and level of achievement versus such criteria shall be based on performance over a period of less than one year, and no condition that is based upon continued employment or the passage of time shall provide for vesting in full of a Restricted Stock or Stock Unit Award in less than pro rata installments over three years from the date the Award is made, other than with respect to such Awards that are issued upon exercise or settlement of Stock Options or SARs or upon the death, disability or retirement of the Participant. in each case as specified in the agreement evidencing such Award  Notwithstanding anything to the contrary herein, the performance criteria for any Restricted Stock or Stock Unit that is intended to satisfy the requirements for "performance-based compensation" under Section 162(m) of the Code shall be a measure based on one or more Qualifying Performance Criteria selected by the Committee and specified at the time the Restricted Stock Award is granted

(iv) *Termination of Employment*  The Restricted Stock or Stock Unit Agreement may provide for the forfeiture or cancellation of the Restricted Stock or Stock Unit Award. in whole or in part, in the event of the termination of employment or service of the Participant to whom it was granted

(v) *Stock Units*  Except to the extent this Plan or the Committee specifies otherwise, Stock Units represent an unfunded and unsecured obligation of the Corporation and do not confer any of the rights of a stockholder until Shares are issued thereunder. Settlement of Stock Units upon expiration of the deferral or vesting period shall be made in Shares or otherwise as determined by the Committee. The number of Shares, or other settlement medium, to be so distributed may be increased by an interest factor or by dividend equivalents  Until a Stock Unit is so settled. the number of Shares represented by a Stock Unit shall be subject to adjustment pursuant to Section 11  Any Stock Units that are settled after the Participant's death shall be distributed to the Participant's designated beneficiary(ies) or, if none was designated, the Participant's estate.

## 9. OUTSIDE DIRECTOR AWARDS

Each Outside Director may be granted Awards (each an "Outside Director Award") each fiscal year for up to 30,000 Shares, as determined by the Board of Directors. Notwithstanding anything to the contrary in this Plan, the foregoing limitation shall be subject to adjustment under Section 11. The number of Shares subject to each Outside Director Award, or the formula pursuant to which such number shall be determined, the type or types of Awards included in the Outside Director Awards, the date of grant and the vesting, expiration and other terms applicable to such Outside Director Awards shall be specified from time to time by the Board of Directors, subject to the terms of this Plan, including the terms specified in Section 8. If the Board of Directors reasonably believes that an Outside Director has committed an act of misconduct as specified in Section 8(a)(v), the Board of Directors may suspend the Outside Director's right to exercise any Stock Option or SAR and/or the vesting of any Restricted Stock or Stock Unit Award pending a determination of whether an act of misconduct has been committed. If the Board of Directors determines that an Outside Director has committed an act of misconduct, neither the Outside Director nor his or her estate shall be entitled to exercise any Stock Option or SAR whatsoever and shall forfeit any unvested Restricted Stock or Stock Unit Award.

## 10. OTHER PROVISIONS APPLICABLE TO AWARDS

(a) *Transferability*. Unless the agreement or other document evidencing an Award (or an amendment thereto authorized by the Committee) expressly states that the Award is transferable as provided hereunder, no Award granted

A-6

Table of Contents

under this Plan, nor any interest in such Award, may be sold. assigned. conveyed, gifted. pledged, hypothecated or otherwise transferred in any manner prior to the vesting or lapse of any and all restrictions applicable thereto, other than by will or the laws of descent and distribution  The Committee may grant an Award or amend an outstanding Award to provide that the Award is transferable or assignable (a) in the case of a transfer without the payment of any consideration. to any "family member" as such term is defined in Section 1(a)(5) of the General Instructions to Form S−8 under the Securities Act of 1933. as such may be amended from time to time. and (b) in any transfer described in clause (ii) of Section 1(a)(5) of the General Instructions to Form S−8 under the 1933 Act as amended from time to time. *provided* that following any such transfer or assignment the Award will remain subject to substantially the same terms applicable to the Award while held by the Participant to whom it was granted. as modified as the Committee shall determine appropriate, and as a condition to such transfer the transferee shall execute an agreement agreeing to be bound by such terms; *provided further*. that an ISO may be transferred or assigned only to the extent consistent with Section 422 of the Code  Any purported assignment. transfer or encumbrance that does not qualify under this Section 10(a) shall be void and unenforceable against the Corporation

(b) *Qualifying Performance Criteria*  For purposes of this Plan. the term "Qualifying Performance Criteria" shall mean any one or more of the following performance criteria, either individually. alternatively or in any combination, applied to either the Corporation as a whole or to a business unit or Subsidiary, either individually, alternatively or in any combination, and measured either annually or cumulatively over a period of years, on an absolute basis or relative to a pre−established target, to previous years' results or to a designated comparison group, in each case as specified by the Committee in the Award: (a) cash flow, (b) earnings per share, (c) earnings before interest. taxes and amortization, (d) return on equity, (e) total stockholder return, (f) share price performance, (g) return on capital, (h) return on assets or net assets, (i) revenue. (j) income or net income. (k) operating income or net operating income, (l) operating profit or net operating profit. (m) operating margin or profit margin. (n) return on operating revenue, (o) return on invested capital. (p) market segment share, (q) product release schedules. (r) new product innovation, (s) product cost reduction through advanced technology, (t) brand recognition/acceptance, (u) product ship targets, or (v) customer satisfaction  The Committee may appropriately adjust any evaluation of performance under a Qualifying Performance Criteria to exclude any of the following events that occurs during a performance period: (i) asset write−downs, (ii) litigation or claim judgments or settlements. (iii) the effect of changes in tax law. accounting principles or other such laws or provisions affecting reported results. (iv) accruals for reorganization and restructuring programs and (v) any extraordinary non−recurring items as described in Accounting Principles Board Opinion No. 30 and/or in management's discussion and analysis of financial condition and results of operations appearing in the Corporation's annual report to stockholders for the applicable year  Notwithstanding satisfaction of any completion of any Qualifying Performance Criteria. to the extent specified at the time of grant of an Award, the number of Shares, Stock Options, SARs, Stock Units or other benefits granted, issued, retainable and/or vested under an Award on account of satisfaction of such Qualifying Performance Criteria may be reduced by the Committee on the basis of such further considerations as the Committee in its sole discretion shall determine

(c) *Dividends*  Unless otherwise provided by the Committee, no adjustment shall be made in Shares issuable under Awards on account of cash dividends that may be paid or other rights that may be issued to the holders of Shares prior to their issuance under any Award  The Committee shall specify whether dividends or dividend equivalent amounts shall be paid to any Participant with respect to the Shares subject to any Award that have not vested or been issued or that are subject to any restrictions or conditions on the record date for dividends

(d) *Documents Evidencing Awards*  The Committee shall. subject to applicable law. determine the date an Award is deemed to be granted  The Committee or, except to the extent prohibited under applicable law. its delegate(s) may establish the terms of agreements or other documents evidencing Awards under this Plan and may. but need not, require as a condition to any such agreement's or document's effectiveness that such agreement or document be executed by the Participant, including by electronic signature or other electronic indication of acceptance, and that such Participant agree to such further terms and conditions as specified in such agreement or document  The grant of an Award under this Plan shall not confer any rights upon the Participant holding such Award other than such terms, and subject to such conditions, as are specified in this Plan as being applicable to such type of Award (or to all Awards) or as are expressly set forth in the agreement or other document evidencing such Award

(e) *Additional Restrictions on Awards*  Either at the time an Award is granted or by subsequent action, the Committee may, but need not. impose such restrictions, conditions or limitations as it determines appropriate as to the timing and manner of any resales by a Participant or other subsequent transfers by a Participant of any Shares issued under an Award, including without limitation (a) restrictions under an insider trading policy. (b) restrictions designed to delay and/or coordinate the timing and manner of sales by the Participant or Participants, and (c) restrictions as to the use of a specified brokerage firm for such resales or other transfers

A−7

Table of Contents

(f) *Subsidiary Awards*. In the case of a grant of an Award to any Participant employed by a Subsidiary, such grant may, if the Committee so directs, be implemented by Intel issuing any subject Shares to the Subsidiary, for such lawful consideration as the Committee may determine, upon the condition or understanding that the Subsidiary will transfer the Shares to the Participant in accordance with the terms of the Award specified by the Committee pursuant to the provisions of the Plan. Notwithstanding any other provision hereof, such Award may be issued by and in the name of the Subsidiary and shall be deemed granted on such date as the Committee shall determine.

## 11. ADJUSTMENT OF AND CHANGES IN THE COMMON STOCK

(a) The existence of outstanding Awards shall not affect in any way the right or power of the Corporation or its shareholders to make or authorize any or all adjustments, recapitalizations, reorganizations, exchanges, or other changes in the Corporation's capital structure or its business, or any merger or consolidation of the Corporation or any issuance of Shares or other securities or subscription rights thereto, or any issuance of bonds, debentures, preferred or prior preference stock ahead of or affecting the Shares or other securities of the Corporation or the rights thereof, or the dissolution or liquidation of the Corporation, or any sale or transfer of all or any part of its assets or business, or any other corporate act or proceeding, whether of a similar character or otherwise. Further, except as expressly provided herein or by the Committee, (i) the issuance by the Corporation of shares of stock or any class of securities convertible into shares of stock of any class, for cash, property, labor or services, upon direct sale, upon the exercise of rights or warrants to subscribe therefor, or upon conversion of shares or obligations of the Corporation convertible into such shares or other securities, (ii) the payment of a dividend in property other than Shares, or (iii) the occurrence of any similar transaction, and in any case whether or not for fair value, shall not affect, and no adjustment by reason thereof shall be made with respect to, the number of Shares subject to Stock Options or other Awards theretofore granted or the purchase price per Share, unless the Committee shall determine, in its sole discretion, that an adjustment is necessary or appropriate.

(b) If the outstanding Shares or other securities of the Corporation, or both, for which the Award is then exercisable or as to which the Award is to be settled shall at any time be changed or exchanged by declaration of a stock dividend, stock split, combination of shares, extraordinary dividend of cash and/or assets, recapitalization, reorganization or any similar event affecting the Shares or other securities of the Corporation, the Committee may appropriately and equitably adjust the number and kind of Shares or other securities which are subject to this Plan or subject to any Awards theretofore granted, and the exercise or settlement prices of such Awards, so as to maintain the proportionate number of Shares or other securities without changing the aggregate exercise or settlement price.

(c) No right to purchase fractional Shares shall result from any adjustment in Stock Options or SARs pursuant to this Section 11. In case of any such adjustment, the Shares subject to the Stock Option or SAR shall be rounded down to the nearest whole share.

(d) Any other provision hereof to the contrary notwithstanding (except Section 11(a)), in the event Intel is a party to a merger or other reorganization, outstanding Awards shall be subject to the agreement of merger or reorganization. Such agreement may provide, without limitation, for the assumption of outstanding Awards by the surviving corporation or its parent, for their continuation by Intel (if Intel is a surviving corporation), for accelerated vesting and accelerated expiration, or for settlement in cash.

## 12. LISTING OR QUALIFICATION OF COMMON STOCK

In the event that the Board of Directors determines in its discretion that the listing or qualification of the Shares available for issuance under the Plan on any securities exchange or quotation or trading system or under any applicable law or governmental regulation is necessary as a condition to the issuance of such Shares, a Stock Option or SAR may not be exercised in whole or in part and a Restricted Stock or Stock Unit Award shall not vest unless such listing, qualification, consent or approval has been unconditionally obtained.

## 13. TERMINATION OR AMENDMENT OF THE PLAN

The Board of Directors may amend, alter or discontinue the Plan and the Board or the Committee may to the extent permitted by the Plan amend any agreement or other document evidencing an Award made under this Plan, provided, however, that the Corporation shall submit for stockholder approval any amendment (other than an amendment pursuant to the adjustment provisions of Section 11) required to be submitted for stockholder approval by NASDAQ or that otherwise would:

(a) Increase the maximum number of Shares for which Awards may be granted under this Plan;

(b) Reduce the price at which Stock Options may be granted below the price provided for in Section 8(a);

Table of Contents

(c) Reduce the option price of outstanding Stock Options;

(d) Extend the term of this Plan;

(e) Change the class of persons eligible to be Participants; or

(f) Increase the limits in Section 6

In addition, no such amendment or alteration shall be made which would impair the rights of any Participant, without such Participant's consent, under any Award theretofore granted, provided that no such consent shall be required with respect to any amendment or alteration if the Committee determines in its sole discretion that such amendment or alteration either (i) is required or advisable in order for the Corporation, the Plan or the Award to satisfy any law or regulation or to meet the requirements of any accounting standard, or (ii) is not reasonably likely to significantly diminish the benefits provided under such Award, or that any such diminishment has been adequately compensated

### 14. WITHHOLDING

To the extent required by applicable federal, state, local or foreign law, the Committee may and/or a Participant shall make arrangements satisfactory to the Corporation for the satisfaction of any withholding tax obligations that arise with respect to any Stock Option, SAR, Restricted Stock or Stock Unit Award, or any sale of Shares  The Corporation shall not be required to issue Shares or to recognize the disposition of such Shares until such obligations are satisfied  To the extent permitted or required by the Committee, these obligations may or shall be satisfied by having the Corporation withhold a portion of the Shares of stock that otherwise would be issued to a Participant under such Award or by tendering Shares previously acquired by the Participant

### 15. GENERAL PROVISIONS

(a) *Employment At Will*  Neither the Plan nor the grant of any Award nor any action by the Corporation, any Subsidiary or the Committee shall be held or construed to confer upon any person any right to be continued in the employ of the Corporation or a Subsidiary. The Corporation and each Subsidiary expressly reserve the right to discharge, without liability but subject to his or her rights under this Plan. any Participant whenever in the sole discretion of the Corporation or a Subsidiary, as the case may be. its interest may so require

(b) *Governing Law*  This Plan and any agreements or other documents hereunder shall be interpreted and construed in accordance with the laws of the State of Delaware and applicable federal law  The Committee may provide that any dispute as to any Award shall be presented and determined in such forum as the Committee may specify, including through binding arbitration  Any reference in this Plan or in the agreement or other document evidencing any Award to a provision of law or to a rule or regulation shall be deemed to include any successor law. rule or regulation of similar effect or applicability

(c) *Unfunded Plan*  Insofar as it provides for Awards, the Plan shall be unfunded  Although bookkeeping accounts may be established with respect to Participants who are granted Awards under this Plan. any such accounts will be used merely as a bookkeeping convenience  The Corporation shall not be required to segregate any assets which may at any time be represented by Awards, nor shall this Plan be construed as providing for such segregation, nor shall the Corporation or the Committee be deemed to be a trustee of stock or cash to be awarded under the Plan

### 16. NON−EXCLUSIVITY OF PLAN

Neither the adoption of this Plan by the Board of Directors nor the submission of this Plan to the shareholders of the Corporation for approval shall be construed as creating any limitations on the power of the Board of Directors or the Committee to adopt such other incentive arrangements as either may deem desirable, including, without limitation, the granting of stock options, stock appreciation rights, restricted stock or stock units otherwise than under this Plan, and such arrangements may be either generally applicable or applicable only in specific cases

### 17. COMPLIANCE WITH OTHER LAWS AND REGULATIONS

This Plan, the grant and exercise of Awards thereunder. and the obligation of the Corporation to sell. issue or deliver Shares under such Awards, shall be subject to all applicable federal, state and local laws, rules and regulations and to such approvals by any governmental or regulatory agency as may be required  The Corporation shall not be required to register in a Participant's name or deliver any Shares prior to the completion of any registration or qualification of such Shares under any federal, state or local law or any ruling or regulation of any government body which the Committee shall

A−9

Table of Contents

determine to be necessary or advisable. To the extent the Corporation is unable to or the Committee deems it infeasible to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Corporation's counsel to be necessary to the lawful issuance and sale of any Shares hereunder. the Corporation shall be relieved of any liability with respect to the failure to issue or sell such Shares as to which such requisite authority shall not have been obtained  No Stock Option shall be exercisable and no Shares shall be issued and/or transferable under any other Award unless a registration statement with respect to the Shares underlying such Stock Option is effective and current or the Corporation has determined that such registration is unnecessary

## 18. LIABILITY OF CORPORATION

The Corporation shall not be liable to a Participant or other persons as to: (a) the non−issuance or sale of Shares as to which the Corporation has been unable to obtain from any regulatory body having jurisdiction the authority deemed by the Corporation's counsel to be necessary to the lawful issuance and sale of any Shares hereunder; and (b) any tax consequence expected, but not realized, by any Participant or other person due to the receipt, exercise or settlement of any Stock Option or other Award granted hereunder

Table of Contents

EXHIBIT B

**INTEL CORPORATION**

**EXECUTIVE OFFICER INCENTIVE PLAN**

**AS AMENDED AND RESTATED EFFECTIVE MAY 18, 2005**

**1. PURPOSE**

The purpose of this amended and restated Executive Officer Incentive Plan ("Incentive Plan") is to motivate and reward eligible employees by making a portion of their cash compensation dependent on earnings per share ("EPS") of Intel Corporation (the "Company") The Incentive Plan is designed to ensure that the annual incentive paid hereunder to executive officers of the Company is deductible without limit under Section 162(m) of the Internal Revenue Code of 1986, as amended, and the regulations and interpretations promulgated thereunder (the "Tax Code") This amended and restated Incentive Plan is subject to stockholder approval

**2. COVERED INDIVIDUALS**

The individuals entitled to incentive payments hereunder shall be the executive officers of the Company. as determined by the Compensation Committee (the "Committee")

**3. THE COMMITTEE**

(a) The Committee shall consist of at least two outside directors of the Company who satisfy the requirements of Section 162(m) of the Tax Code The Committee shall have the sole discretion and authority to administer and interpret the Incentive Plan in accordance with Section 162(m) of the Tax Code

(b) Subject to the express provisions and limitations set forth in the Incentive Plan, the Committee shall be authorized and empowered to do all things necessary or desirable, in its sole discretion, in connection with the administration of the Incentive Plan, including, without limitation, the following:

(i)     To prescribe. amend and rescind rules and regulations relating to the Incentive Plan and to define terms not otherwise defined herein;

(ii)    To determine which covered persons are eligible to be paid incentives and to which of such participants. if any, incentives hereunder are actually paid;

(iii)   To verify the Company's EPS and the extent to which the Company has satisfied any other performance goals or other conditions applicable to the payment of incentives under the Incentive Plan;

(iv)    To prescribe and amend the terms of any agreements or other documents under the Incentive Plan (which need not be identical);

(v)     To determine whether, and the extent to which, adjustments are required pursuant to Section 4;

(vi)    To interpret and construe the Incentive Plan, any rules and regulations under the Incentive Plan, and the terms and conditions of any incentive opportunities provided hereunder, and to make exceptions to any such provisions in good faith and for the benefit of the Company; and

(vii)   To make all other determinations deemed necessary or advisable for the administration of the Incentive Plan

(c) All decisions, determinations and interpretations by the Committee regarding the Incentive Plan shall be final and binding on all covered individuals who are participants under the Incentive Plan The Committee shall consider such factors as it deems relevant to making such decisions, determinations and interpretations including, without limitation, the recommendations or advice of any director. officer or employee of the Company and such attorneys, consultants and accountants as it may select A covered individual or other person claiming any benefits under the Incentive Plan may contest a decision or action by the Committee with respect to such person or an actual or potential incentive under the Incentive Plan only on the grounds that such decision or action was arbitrary or capricious or was unlawful, and any review of such decision or action shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful

**4. AMOUNT OF INCENTIVE**

Incentive payments are made in cash The maximum incentive payment is the product of (i) an individual incentive baseline amount in dollars for the performance period set by the Committee in writing and (ii) the numerical value of EPS for the performance period multiplied by a factor (the "Performance Factor") that is set by the Committee in its sole discretion and is in writing The term "performance period" shall mean the period for which the incentive is payable For

Table of Contents

this calculation, the term ``EPS'' shall mean the greater of operating income or net income per weighted average common shares outstanding, assuming dilution, for the performance period, in each case adjustable based upon qualifying objective criteria selected by the Committee in its sole discretion within the period prescribed by the U S Internal Revenue Service Such criteria may include, but are not limited to asset write−downs; acquisition−related charges; litigation, claim judgments, settlements or tax settlements; the effects of changes in tax law, changes in accounting principles or other such laws or provisions affecting reported results; accruals for reorganization and restructuring programs; unrealized gains or losses on investments; and any extraordinary non−recurring items as described in Accounting Principles Board Opinion No 30 and/or in management's discussion and analysis of financial condition and results of operations appearing in the annual report to stockholders for the applicable year The individual incentive baseline amount, the Performance Factor and the EPS definition shall be adopted by the Committee in its sole discretion with respect to each performance period no later than the latest time permitted by the Tax Code However, no incentive in excess of $5,000,000 will be paid to any executive officer for any performance period. In its sole discretion, the Committee may also reduce, but may not increase, an individual's incentive calculated under the preceding formula In determining the amount of any reduced incentive, the Committee reserves the right to apply subjective, discretionary criteria to determine a revised incentive amount The incentive payable hereunder shall be paid in lieu of any incentive payable under the Company's broad−based variable cash incentive program

## 5. PAYMENT OF INCENTIVE

The payment of an incentive for a given performance period requires that the executive officer be on the Company's payroll as of the last day of the performance period The Committee may make exceptions to this requirement in the case of retirement, death or disability, as determined by the Committee in its sole discretion. No incentive shall be paid unless and until the Committee makes a certification in writing as required to satisfy the conditions for exemption under Section 162(m) of the Tax Code

## 6. AMENDMENT AND TERMINATION

The Company reserves the right to amend or terminate this Incentive Plan at any time with respect to future services of covered individuals Incentive Plan amendments may be adopted by the Board of Directors or the Committee as defined in Section 3, and will require stockholder approval only to the extent required to satisfy the conditions for exemption under Section 162(m) of the Tax Code or otherwise

## 7. TAX WITHHOLDING

The Company shall have the right to make all payments or distributions pursuant to the Incentive Plan to a participant, net of any applicable federal, state and local taxes required to be paid or withheld. The Company shall have the right to withhold from wages or other amounts otherwise payable to such participant such withholding taxes as may be required by law, or to otherwise require the participant to pay such withholding taxes If the participant shall fail to make such tax payments as are required, the Company shall, to the extent permitted by law, have the right to deduct any such taxes from any payment of any kind otherwise due to such participant or to take such other action as may be necessary to satisfy such withholding obligations

## 8. SEVERABILITY

If any provision of the Incentive Plan shall be held unlawful or otherwise invalid or unenforceable in whole or in part by a court of competent jurisdiction, such provision shall (a) be deemed limited to the extent that such court of competent jurisdiction deems it lawful, valid and/or enforceable and as so limited shall remain in full force and effect. and (b) not affect any other provision of the Incentive Plan or part thereof, each of which shall remain in full force and effect If the making of any payment or the provision of any other benefit provided for under the Incentive Plan shall be held unlawful or otherwise invalid or unenforceable by a court of competent jurisdiction, such unlawfulness, invalidity or unenforceability shall not prevent any other payment or benefit from being made or provided under the Incentive Plan, and if the making of any payment in full or the provision of any other benefit provided for under the Incentive Plan in full would be unlawful or otherwise invalid or unenforceable, then such unlawfulness, invalidity or unenforceability shall not prevent such payment or benefit from being made or provided in part. to the extent that it would not be unlawful, invalid or unenforceable, and the maximum payment or benefit that would not be unlawful, invalid or unenforceable shall be made or provided under the Incentive Plan

## 9. NON−ASSIGNABILITY

Unless the Committee expressly states otherwise, no participant in the Incentive Plan may sell, assign. convey. gift, pledge or otherwise hypothecate or alienate any incentive opportunity or amounts determined by the Committee to be payable under the Incentive Plan. until such amounts (if any) are actually paid

B−2

Table of Contents

10. NON–EXCLUSIVITY OF PLAN

Neither the adoption of the Incentive Plan by the Board of Directors nor the submission of the Incentive Plan to the stockholders of the Company for approval shall be construed as creating any limitations on the power of the Board of Directors or the Committee to adopt such other incentive arrangements as either may deem desirable. including, without limitation, cash or equity–based compensation arrangements. either tied to performance or otherwise, and any such other arrangements as may be either generally applicable or applicable only in specific cases

11. EMPLOYMENT AT WILL

Neither the Incentive Plan, selection of a person as a covered person eligible to be paid incentives under the Incentive Plan nor the payment of any incentive to any participant under the Incentive Plan nor any action by the Company or the Committee shall be held or construed to confer upon any person any right to be continued in the employ of the Company  The Company expressly reserves the right to discharge any participant whenever in the sole discretion of the Company its interest may so require

12. NO VESTED INTEREST OR RIGHT

At no time before the actual payout of an incentive to any participant under the Incentive Plan shall any participant accrue any vested interest or right whatsoever under the Incentive Plan, and the Company has no obligation to treat participants identically under the Incentive Plan

13. GOVERNING LAW

The Incentive Plan and any agreements and documents hereunder shall be interpreted and construed in accordance with the laws of the State of Delaware and applicable federal law. The Committee may provide that any dispute concerning the Incentive Plan shall be presented and determined in such forum as the Committee may specify, including through binding arbitration

B–3

Table of Contents

EXHIBIT C

## CHARTER OF THE AUDIT COMMITTEE

### AS AMENDED AND RESTATED, EFFECTIVE FEBRUARY 2, 2005

#### THE PURPOSE OF THE AUDIT COMMITTEE

The purpose of the Audit Committee is to represent and assist the Board of Directors in its general oversight of the company's accounting and financial reporting processes, audits of the financial statements, and internal control and audit functions  Management is responsible for (a) the preparation, presentation and integrity of the company's financial statements; (b) accounting and financial reporting principles; and (c) the company's internal controls and procedures designed to promote compliance with accounting standards and applicable laws and regulations  The company's independent auditing firm is responsible for performing an independent audit of the consolidated financial statements in accordance with generally accepted auditing standards

The Audit Committee members are not professional accountants or auditors and their functions are not intended to duplicate or to certify the activities of management and the independent auditor, nor can the Committee certify that the independent auditor is "independent" under applicable rules  The Audit Committee serves a board level oversight role where it oversees the relationship with the independent auditor, as set forth in this charter, receives information and provides advice, counsel and general direction, as it deems appropriate, to management and the auditors, taking into account the information it receives, discussions with the auditor, and the experience of the Committee's members in business, financial and accounting matters

#### MEMBERSHIP AND STRUCTURE

The Audit Committee is comprised of at least three directors determined by the Board of Directors to meet the director and audit committee member independence requirements and financial literacy requirements of The NASDAQ Stock Market, Inc. ("NASDAQ")  At least one member of the Committee must be financially sophisticated, as determined by the Board, and no Committee member may have participated in the preparation of the financial statements of the company or any of the company's current subsidiaries at any time during the past three years, each as required by NASDAQ listing standards  Appointment to the Committee, including the designation of the Chair of the Committee and the designation of any Committee members as "audit committee financial experts", shall be made on an annual basis by the full Board upon recommendation of the Nominating Committee  Meetings of the Audit Committee shall be held at such times and places as the Audit Committee shall determine, including by written consent  When necessary, the Committee shall meet in executive session outside of the presence of any senior executive officer of the company  The Chair of the Audit Committee shall report on activities of the Committee to the full Board  In fulfilling its responsibilities the Audit Committee shall have authority to delegate its authority to subcommittees, in each case to the extent permitted by applicable law

#### RESPONSIBILITIES

The Audit Committee:

- Is directly responsible for the appointment, replacement, compensation, and oversight of the work of the independent auditor  The independent auditor shall report directly to the Audit Committee

- Obtains and reviews annually a report by the independent auditor describing the firm's internal quality–control procedures; any material issues raised by the most recent internal quality–control review or peer review or by any inquiry or investigation by governmental or professional authorities, within the preceding five years, respecting one or more independent audits carried out by the firm, and any steps taken to deal with any such issues

- Reviews and discusses with the independent auditor the written statement from the independent auditor concerning any relationship between the auditor and the company or any other relationships that may adversely affect the independence of the auditor, and, based on such review, assesses the independence of the auditor

- Establishes policies and procedures for the review and pre–approval by the Committee of all auditing services and permissible non–audit services (including the fees and terms thereof) to be performed by the independent auditor

- Reviews and discusses with the independent auditor: (a) its audit plans, and audit procedures, including the scope, fees and timing of the audit; (b) the results of the annual audit examination and accompanying management letters; and (c) the results of the independent auditor's procedures with respect to interim periods

Table of Contents

- Reviews and discusses reports from the independent auditors on (a) all critical accounting policies and practices used by the company, (b) alternative accounting treatments within GAAP related to material items that have been discussed with management, including the ramifications of the use of the alternative treatments and the treatment preferred by the independent auditor, and (c) other material written communications between the independent auditor and management

- Reviews and discusses with the independent auditor the independent auditor's judgments as to the quality, not just the acceptability, of the company's accounting principles and such further matters as the independent auditors present the Committee under generally accepted auditing standards

- Discusses with management and the independent auditor quarterly earnings press releases. including the interim financial information and Business Outlook included therein, reviews the year-end audited financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations" and, if deemed appropriate, recommends to the Board of Directors that the audited financial statements be included in the Annual Report on Form 10-K for the year

- Reviews and discusses with management and the independent auditor various topics and events that may have significant financial impact on the company or that are the subject of discussions between management and the independent auditor

- Reviews and discusses with management the company's major financial risk exposures and the steps management has taken to monitor and control such exposures

- Reviews and approves related-party transactions (as defined in the relevant NASDAQ requirements)

- Reviews and discusses with management. the independent auditor. and the company's chief audit executive (CAE): (a) the adequacy and effectiveness of the company's internal controls (including any significant deficiencies and significant changes in internal controls reported to the Committee by the independent auditor or management; (b) the company's internal audit procedures; and (c) the adequacy and effectiveness of the company's disclosures controls and procedures. and management reports thereon.

- Reviews annually with the CAE the scope of the internal audit program, and reviews annually the performance of both the internal audit group and the independent auditor in executing their plans and meeting their objectives

- Reviews and concurs in the appointment, replacement, reassignment, or dismissal of the CAE

- Reviews the use of auditors other than the independent auditor in cases such as management's request for second opinions

- Reviews matters related to the corporate compliance activities of the company, including the review of reports from the company's Ethics and Compliance Oversight Committee and other related groups

- Establishes procedures for the receipt, retention and treatment of complaints received by the company regarding accounting, internal accounting controls, or auditing matters, and the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters

- Establishes policies for the hiring of employees and former employees of the independent auditor

- Publishes the report of the Committee required by the rules of the Securities and Exchange Commission to be included in the company's annual proxy statement

- When appropriate, designates one or more of its members to perform certain of its duties on its behalf. subject to such reporting to or ratification by the Committee as the Committee shall direct

The Audit Committee will engage in an annual self-assessment with the goal of continuing improvement, and will annually review and reassess the adequacy of its charter, and recommends any changes to the full Board

The Audit Committee shall have the authority to engage independent legal, accounting and other advisers, as it determines necessary to carry out its duties  The Audit Committee shall have sole authority to approve related fees and retention terms

The Audit Committee shall meet at such times and places as the Audit Committee shall determine  The Audit Committee shall meet in executive session with the independent auditor, the CAE and management periodically  The Chairman of the Audit Committee shall report on Audit Committee activities to the full Board

The Chairman of the Audit Committee is to be contacted directly by the CAE or the independent auditor (1) to review items of a sensitive nature that can impact the accuracy of financial reporting or (2) to discuss significant issues relative to the overall Board responsibility that have been communicated to management but, in their judgment, may warrant follow-up by the Audit Committee

C-2

Table of Contents

## Directions to the Santa Clara Convention Center
### 5001 Great America Parkway, Santa Clara, California



The Santa Clara Convention Center is located at the corner of Great America Parkway and Tasman Drive  Parking is available in front of the building and in a large parking garage behind the Convention Center  There is no charge for parking  The meeting will be held in the auditorium on the second level of the Convention Center

**From San Francisco**
Take 101 South to the Great America Parkway exit  Go East onto Great America Parkway (a left turn)  Follow for 1 1/2 miles to Tasman Drive  Turn right onto Tasman Drive, and the Convention Center will be on your left

**From Oakland**
Take 880 South to 237 West  Turn left at the Great America Parkway exit  Follow for about 3/4 mile  Turn left onto Bunker Hill Drive (the Westin Hotel will be on your left)  This will bring you directly into the parking garage for the Convention Center and the hotel

**From San Jose/Monterey/Morgan Hill**
Take 101 North to the Great America Parkway exit  Go East onto Great America Parkway (a right turn)  Follow for 1 1/2 miles to Tasman Drive  Turn right onto Tasman Drive, and the Convention Center will be on your left

**From Sacramento/Walnut Creek/Dublin**
Take 680 South to Calaveras Highway/237 West
See directions from Oakland (237 West)

**From Santa Cruz/Los Gatos**
Take 880 North to 101 North  See directions from San Jose

Table of Contents

# intel.

MMMMMMMMMMMM

000000000.000 ext
000000000.000 ext
000000000.000 ext
000000000.000 ext
000000000.000 ext
000000000.000 ext
000000000.000 ext

MR A SAMPLE
DESIGNATION (IF ANY)
ADD 1
ADD 2
ADD 3
ADD 4
ADD 5
ADD 6

C 1234567890    J N T

☐ Mark this box with an X if you have made changes to your name or address details above.

---

## Annual Meeting Proxy Card          C0123456789          | 12345 |

### A  Election of Directors          PLEASE REFER TO THE REVERSE SIDE FOR TELEPHONE AND INTERNET VOTING INSTRUCTIONS.

1. The Board of Directors recommends a vote FOR the listed nominees.

| | For | Withhold | | For | Withhold | | For | Withhold |
|---|---|---|---|---|---|---|---|---|
| 01 - Craig R. Barrett | ☐ | ☐ | 05 - Reed E. Hundt | ☐ | ☐ | 09 - John L. Thornton | ☐ | ☐ |
| 02 - Charlene Barshefsky | ☐ | ☐ | 06 - Paul S. Otellini | ☐ | ☐ | 10 - David B. Yoffie | ☐ | ☐ |
| 03 - E. John P. Browne | ☐ | ☐ | 07 - David S. Pottruck | ☐ | ☐ | | | |
| 04 - D. James Guzy | ☐ | ☐ | 08 - Jane E. Shaw | ☐ | ☐ | | | |

### B  Issues

The Board of Directors recommends a vote FOR the following.

| | For | Against | Abstain |
|---|---|---|---|
| 2. Ratification of Selection of Independent Registered Public Accounting Firm | ☐ | ☐ | ☐ |
| 3. Approval of Amendment and Extension of the 2004 Equity Incentive Plan | ☐ | ☐ | ☐ |
| 4. Approval of Amendment and Extension of the Executive Officer Incentive Plan | ☐ | ☐ | ☐ |

### C  Authorized Signatures - Sign Here - This section must be completed for your instructions to be executed.

NOTE: Please sign your name(s) EXACTLY as your name(s) appears(s) on this proxy. At joint holders must sign. When signing as attorney, trustee, executor, administrator, guardian or corporate officer, please provide your FULL title.

| Signature 1 - Please keep signature within the box | Signature 2 - Please keep signature within the box | Date (mm/dd/yyyy) |
|---|---|---|
| | | / / |

■          1 U P X    H H H    P P P P    0054091

00EY2A

Table of Contents

## Proxy - Intel Corporation

### Proxy Solicited by Board of Directors for Annual Meeting – May 18, 2005

ANDREW S. GROVE, CRAIG R. BARRETT and CARY I. KLAFTER, or any of them, each with the power of substitution, are hereby authorized to represent and vote the shares of the undersigned, with all the powers which the undersigned would possess if personally present, at the Annual Meeting of Stockholders of Intel Corporation to be held on May 18, 2005 or at any postponement or adjournment thereof.

Shares represented by this proxy will be voted by the stockholder. If no such directions are indicated, the Proxies will have authority to vote FOR Item 1 (Election of Directors), FOR Item 2 (Ratification of Selection of Independent Registered Public Accounting Firm), FOR Item 3 (Approval of Amendment and Extension of the 2004 Equity Incentive Plan) and FOR Item 4 (Approval of Amendment and Extension of the Executive Officer Incentive Plan).

In their discretion, the Proxies are authorized to vote upon such other business as may properly come before the meeting.

(Continued and to be voted on reverse side.)

### Telephone and Internet Voting Instructions

**You can vote by telephone OR Internet! Available 24 hours a day 7 days a week!**
Instead of mailing your proxy, you may choose one of the two voting methods outlined below to vote your proxy.

 **To vote using the Telephone (within U.S. and Canada)**

- Call toll free 1-866-553-2341 in the United States or Canada any time on a touch tone telephone. There is NO CHARGE to you for the call.

- Follow the simple instructions provided by the recorded message.

 **To vote using the Internet**

- Go to the following web site:
  **www.computershare.com/us/proxy/intel**

- Enter the information requested on your computer screen and follow the simple instructions.

If you vote by telephone or the Internet, please DO NOT mail back this proxy card.
Proxies submitted by telephone or the Internet must be received by 1:00 a.m., Central Time, on May 18, 2005.
THANK YOU FOR VOTING

_____
Created by 10KWizard Technology    www.10KWizard.com