IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05-298 (JJF) |
| | ) | |
| CRAIG R. BARRETT, CHARLENE | ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, | ) | Jury Trial Demanded |
| D. JAMES GUZY, REED E. HUNDT, | ) | |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, | ) | |
| JANE E. SHAW, JOHN L. THORNTON, | ) | |
| DAVID B. YOFFIE, ANDREW S. GROVE, and | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S VERIFIED COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(B)(1)**

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
(415) 773-5700


Dated: June 27, 2005

Stephen C. Norman (#2686)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0957
(302) 984-6000

Attorneys for defendants Craig R. Barrett,
Charlene Barshefsky, E. John P. Browne, D.
James Guzy, Reed E. Hundt, Paul S. Otellini,
David S. Pottruck, Jane E. Shaw, John L.
Thornton, David B. Yoffie, Andrew S. Grove,
and nominal defendant Intel Corporation

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

II.     INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

III.    STATEMENT OF FACTS .................................................................................................... 4

A.      THE EOIP ............................................................................................................................ 4

        B.      Payments Under The 2005 EOIP Cannot Be Made Until 2006 ............................... 4

        C.      The Company's 2005 Tax Return Is Not Due Until 2006 ....................................... 5

IV.     ARGUMENT ........................................................................................................................ 5

        A.      PLAINTIFF BEARS THE BURDEN OF ESTABLISHING HIS CLAIMS
                ARE RIPE .................................................................................................................. 7

        B.      THE COMPLAINT DOES NOT ALLEGE A CLAIM THAT IS RIPE
                FOR JUDICIAL REVIEW .......................................................................................... 7

                1.      The Complaint Is Based On Uncertain And Contingent Events
                        That May Never Occur .................................................................................... 7

                2.      The Complaint Does Not Allege An Actual And Immediate Injury ........... 9

        C.      HARDSHIP TO THE PARTIES WEIGHS HEAVILY IN FAVOR OF
                DEFERRING ADJUDICATION ................................................................................ 10

V.      CONCLUSION .................................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs v. Gardner,*
  387 U.S. 136 (1967), *overruled on other grounds,*
  *Califano v. Sanders,* 430 U.S. 99 (1977) ...........................................................................6

*Aetna Life Ins. Co. v. Haworth,*
  300 U.S. 227 (1937) .................................................................................................................6

*Allen v. Wright,*
  468 U.S. 737 (1984) .................................................................................................................6

*Artway v. Attorney Gen. of State of N.J.,*
  81 F.3d 1235 (3d Cir. 1996) ...............................................................................................2, 6

*Auerbach v. Bd. of Ed. of the Harborfields Cent. Sch. Dist.,*
  136 F.3d 104 (2d Cir. 1998) ..................................................................................................9

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) .................................................................................................................6

*Bell Atl. Corp. v. MFS Communications Co.,*
  901 F. Supp. 835 (D. Del. 1995) .......................................................................................2, 7

*Brown v. Ferro,*
  763 F.2d 798 (6th Cir. 1985) ................................................................................................9

*Flast v. Cohen,*
  392 U.S. 83 (1968) ...................................................................................................................6

*Gasner v. Bd. of Supervisors of County of Dinwiddie,*
  103 F.3d 351 (4th Cir. 1996) .............................................................................................3, 9

*Grimes v. Donald,*
  673 A.2d 1207 (Del. 1996), *overruled on other grounds,*
  *Brehm v. Eisner,* 746 A.2d 244 (Del. 2000) ......................................................................9

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990) .............................................................................................................2, 6

*Med. Soc'y of N.J. v. Herr,*
  191 F. Supp. 2d 574 (D.N.J. 2002) .......................................................................................9

*In re NAHC, Inc. Sec. Litig.,*
   306 F.3d 1314 (3d Cir. 2002) ............................................................4

*New Hanover Township v. U.S. Army Corps. of Eng'rs,*
   992 F.2d 473 (3d Cir. 1993) ...........................................................10

*Nomad Acquisition Corp. v. Damon Corp.,*
   701 F. Supp. 10 (D. Mass. 1988) ....................................................10

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ....................................................................7, 10

*Philadelphia Fed'n of Teachers v. Ridge,*
   150 F.3d 319 (3d Cir. 1998) ....................................................... passim

*Renne v. Geary,*
   501 U.S. 312 (1991) ...........................................................................7

*SWT Acquisition Corp. v. TW Servs., Inc.,*
   700 F. Supp. 1323 (D. Del. 1988) ..................................................10

*Shaev v. Saper,*
   320 F.3d 373 (3d Cir. 2003) ..........................................................7, 8

*U.S. v. Hays,*
   515 U.S. 737 (1995) ...........................................................................7

*W.R. Grace & Co. v. EPA,*
   959 F.2d 360 (1st Cir. 1992) ..............................................................3

*Warth v. Seldon,*
   422 U.S. 490 (1975) ...........................................................................7

*Whitmore v. Arkansas,*
   495 U.S. 149 (U.S. 1990) ................................................................3, 9

**Other**

26 U.S.C. § 162(m) ...............................................................................8

## I.    NATURE AND STAGE OF PROCEEDINGS

On May 17, 2005, the day before a stockholder vote to approve proposals set forth in Intel Corporation's 2005 Proxy Statement, plaintiff filed this putative shareholder derivative complaint against Intel's Directors and nominal defendant Intel. The gravamen of plaintiff's Complaint is that the Directors violated Section 14(a) of the Securities Exchange Act of 1934, and Rule 14a-9 promulgated thereunder, and breached their fiduciary duties under Delaware law based upon alleged misstatements in the Proxy Statement concerning Intel's 2005 Executive Officer Incentive Program ("2005 EOIP").

Plaintiff does not and could not claim that, even if he received all the relief he seeks, it would have any effect on Intel's right to pay its executives compensation outside of the EOIP. Thus, the only thing plaintiff's lawsuit can accomplish (other than a paycheck for plaintiff's lawyer) is stopping Intel – and all of its shareholders – from enjoying a tax benefit on a portion of the executive compensation it pays. The result will be more, not less, expense to Intel's shareholders. Plaintiff is thus in the perverse position of pursuing, in the name of Intel, claims that can only harm the Company and its shareholders, even though the government entity charged with monitoring tax deductions (the IRS) has never challenged, and might never challenge, any tax deductions Intel might later choose to claim.

Defendants respectfully move this Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(1) dismissing plaintiff's Complaint with prejudice on the grounds that plaintiff's claims are not ripe for adjudication and the Court therefore lacks subject matter jurisdiction. This is Defendants' opening brief in support of that motion to dismiss on grounds of ripeness.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

The fundamental premise of the Complaint is that the Proxy Statement's assertion that payments made under the 2005 EOIP will "be deductible [for federal income tax purposes] if the stockholders approved the plan" is materially false and misleading because language elsewhere in the Proxy Statement purportedly runs afoul of the Treasury Regulations which govern the deductibility of payments. Compl. at ¶ 15. The assertion that Intel will be unable to deduct

future payments under the 2005 EOIP is the linchpin of the entire Complaint, yet is purely hypothetical, based entirely on speculation and conjecture about what *might occur* in the future. Under well settled principles of ripeness and Article III jurisdiction, these allegations are insufficient to state any claim ripe for adjudication.

Neither the IRS nor any court has ever held that the language in Intel's Proxy Statement violates the applicable Treasury Regulations. Moreover, no payments have been made under the 2005 EOIP, no tax deduction has been claimed, and the IRS has not ruled that any hypothetical tax deductions would be improper. Until these events occur, there can be no claim that representations about deductibility in the Proxy Statement are false. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for the following reasons:

1. Federal subject matter jurisdiction extends only to "real and substantial controvers[ies] admitting of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Plaintiff bears the burden of establishing a real and substantial controversy that is ripe for adjudication. *Bell Atl. Corp. v. MFS Communications Co.*, Inc., 901 F. Supp. 835, 842 (D. Del. 1995). To meet this burden, a plaintiff must "clearly allege facts that invoke the court's jurisdiction." *Warth v. Seldon*, 422 U.S. 490, 518 (1975). In assessing whether the plaintiff has met his burden of establishing that an action is ripe for adjudication, the Court must weigh: (1) "the fitness of the issues for judicial review;" and (2) the hardship to the parties of the Court withholding consideration. *Artway v. Attorney Gen. of the State of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996). Plaintiff cannot meet his burden of establishing that his claims are ripe for adjudication.

a. Under the first prong of the test, the Court must consider "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). Where, as here, the claims are predicated on contingent events that may not occur, the

first prong of the test is not met. Accordingly, plaintiff's claims are unripe. *See Gasner v. Bd. of Supervisors of County of Dinwiddie, VA*, 103 F.3d 351, 361 (4th Cir. 1996) (allegations that defendants violated provisions of the 1933 Securities Act requiring that bonds subject to federal income taxation be registered, was merely "a hypothetical" occurrence and therefore not ripe, where such taxation had not yet taken place).

        b.    To satisfy the first prong plaintiff must also establish that "real and immediate" threat of injury exists. *Philadelphia Fed'n of Teachers*, 150 F.3d at 323. Plaintiff has not, and cannot, make this showing. Nothing alleged in the Complaint establishes that Intel's Board's actions have caused Intel or its shareholders any injury. Plaintiff's speculative assertion that the Company might someday suffer an injury is insufficient as a matter of law. *See Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) ("[a]llegations of possible future injury do not satisfy the requirements of [Article III of the Constitution]"). Until Intel takes a tax deduction that the IRS subsequently disallows, there is no injury to the Company or its shareholders.

        2.    Nor can plaintiff meet the second prong of the test, which requires him to establish that he will suffer "direct and immediate" harm if adjudication is deferred. *See W.R. Grace & Co. v. EPA*, 959 F.2d 360, 364 (1st Cir. 1992). If the Court dismisses the Complaint, plaintiff will suffer no cognizable harm. If it turns out that plaintiff's hypothesis about future events comes to pass, he can assert his claims at that time. By contrast, adjudicating the claims now has caused and will continue to cause hardship to the Company and its shareholders. To the detriment of Intel and its shareholders, plaintiff threatens Intel's ability to deduct payments pursuant to the EOIP – irrespective of whether the entity charged with enforcing such issues, the Internal Revenue Service ("IRS"), would ever challenge the deductibility of those payments, or if it does, whether the challenge will be resolved against Intel. The Company has been forced to incur unnecessary fees and costs and to devote management time and effort to defend against plaintiff's claims, when it might otherwise never have to do so. Moreover, if plaintiff is permitted to go forward and he "prevails" on his claims, Intel may be required to prepare a new proposal and organize a new shareholder vote to approve a new proposal – a costly, distracting,

and ultimately pointless exercise, given that there is no reason to believe that the IRS will contest

Intel's tax deductions (assuming there are any) under the existing 2005 EOIP. On these facts, the

balance of hardships tips resoundingly in favor of dismissing the Complaint.

## III.    STATEMENT OF FACTS

### A.    The EOIP

In 1994, Intel instituted an executive bonus program designed to link executive

compensation to Company performance.[1] For certain payments under such programs to be tax

deductible, Section 162(m) of the Internal Revenue Code requires that the program be approved

by Company shareholders every five years. Accordingly, the program, now known as the 2005

EOIP, was submitted to and approved by Intel's stockholders in 1994, 1995 (because of minor

amendments) and 2000, and was submitted (with minor amendments from the 1995 version not

material here) for shareholder approval again this year. *See* RJN Ex. A at 38. As described in

the Proxy Statement, the 2005 EOIP "is an annual cash-based pay-for-performance incentive

program . . . to motivate and reward eligible employees for their contributions to Intel's

performance by making a large portion of their cash compensation variable and dependent upon

Intel's annual financial performance." *Id.* at 17 and Exhibits (which include the 2005 EOIP).

### B.    Payments Under The 2005 EOIP Cannot Be Made Until 2006

Intel's Compensation Committee undergoes a rigorous process to calculate and determine

payments under the EOIP.[2] This process, which was extensively disclosed in the 2005 Proxy,

calculates the EOIP based on (1) the executive officer's annual incentive baseline amount, (2)

Intel's earnings per share ("EPS"), and (3) a factor pre-established each year by the Committee

(the "Performance Factor"). RJN Ex. A at 17. The Compensation Committee determines the

---

[1] Defendants request that the Court take judicial notice of the Proxy Statement in its entirety. *See In re NAHC, Inc Sec Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming judicial notice of documents relied upon in complaint and documents filed with the SEC). A true and correct copy of Intel's Proxy Statement, filed with the Securities and Exchange Commission ("SEC") on March 29, 2005, is attached as Exhibit A to the Request For Judicial Notice ("RJN"), filed concurrently herewith.

[2] The Compensation Committee consists of three independent directors: Reed E. Hundt, E. John P. Browne and David S. Pottruck. RJN, Ex. A, at 7.

incentive baseline amount and the Performance Factor in the first quarter of each year. *Id.* This means that the 2005 baseline and Performance Factor were calculated for each eligible executive officer between January and March 2005.

However, Intel's Compensation Committee cannot calculate the EPS component of this three-part formula until after the close of Intel's fiscal year. For purposes of the EOIP, EPS is the greater of Intel's operating income or Intel's net income divided by Intel's weighted average common shares outstanding (assuming dilution). *Id.* at 18. Because Intel's 2005 fiscal year ends on December 31, 2005, it will not know what either its operating income or its net income will be until January 2006.

Once the EPS-based component has been calculated and adjusted, the Compensation Committee can begin to make decisions as to the amounts, if any, to be awarded each executive officer under the 2005 EOIP. *Id.* at 17. Historically, this process has occurred in the first quarter of the subsequent fiscal year. For example, in February 2005, the Committee determined the amount of incentive payments based on fiscal 2004 performance. *Id.* at 16, 25 n.1 ("incentive payments earned under the EOIP . . . are typically paid in the first quarter of the year following the year in which they were earned").

### C.    The Company's 2005 Tax Return Is Not Due Until 2006

The tax deductions Intel may take for compensation paid to its five most highly paid executive officers are limited to $1 million per executive under unqualified plans pursuant to Section 162(m) of the Tax Code. RJN, Ex. A. at 16. Only after Intel pays its executive compensation can it take the deduction. The earliest that Intel could file its income tax return and claim a deduction under the EOIP for 2005 would be in 2006. Only after that happens could the IRS choose (or not) to consider whether payments exceeding $1 million were properly deducted.

## IV.    ARGUMENT

Federal subject matter jurisdiction extends only to "real and substantial controvers[ies] admitting of specific relief . . . as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts." *Lewis*, 494 U.S. at 477. A party seeking to invoke the power and jurisdiction of a federal court must present an actual case or controversy. *Allen v. Wright*, 468 U.S. 737, 752 (1984). Because ripeness is part of the case-or-controversy requirement, it is a threshold issue that must be addressed before the Court may proceed to the merits. *Lewis*, 494 U.S. at 477.[3] The ripeness doctrine seeks to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Artway*, 81 F.3d at 1246-47 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977)); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

In the Third Circuit, an evaluation of ripeness requires an examination of (1) "the fitness of the [legal] issues for judicial review;" and (2) "the hardship to the parties of withholding court consideration." *Artway*, 81 F.3d at 1247. Under the first prong of this test, the court considers whether the issues presented are factual and the degree to which the challenged action is final. *Philadelphia Fed'n of Teachers*, 150 F.3d at 323. The relevant factors when assessing fitness include "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts, and whether the parties to the action are sufficiently adverse." *Id.*

The second prong focuses on the hardship that may result from denying immediate judicial review and "whether any such hardship is cognizable turns on whether the challenged action creates a 'direct and immediate' dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices." *Id. See also Abbott Labs* , 387 U.S. at 152; *W.R. Grace & Co.*, 959 F.2d at 364. Both prongs of the test must be satisfied in order to establish ripeness. *Philadelphia Fed'n of Teachers*, 150 F.3d at 325, n.7.

---

[3]To be justiciable under Article III, a case must be "definite and concrete, not hypothetical and abstract." *Aetna Life Ins. Co. v Haworth*, 300 U.S. 227, 242 (1937). *See also Flast v Cohen*, 392 U.S. 83, 96 (1968) (to constitute a "controversy", a matter must (1) be a real legal dispute, rather than merely hypothetical; (2) have a concrete factual predicate so as to allow for reasoned adjudication; and (3) have a legal controversy that can sharpen the issues for judicial resolution).

A.    **PLAINTIFF BEARS THE BURDEN OF ESTABLISHING HIS CLAIMS ARE RIPE.**

Plaintiff has the burden of establishing that his claims are ripe for adjudication.  *U.S. v.*

*Hays*, 515 U.S. 737, 743 (1995) (it is "clear" that the party seeking exercise of jurisdiction in its

favor has the burden of proving subject matter jurisdiction); *Bell Atl. Corp. v. MFS*

*Communications Co., Inc.*, 901 F. Supp. 835, 842 (D. Del. 1995) (dismissing a declaratory

judgment action for lack of ripeness, stating "[t]he party seeking judgment must demonstrate that

its cause of action falls within the contours of Article III") (footnote omitted).  To meet his

burden on a Rule 12(b)(1) challenge, plaintiff must clearly allege facts that invoke the court's

jurisdiction."  *Warth*, 422 U.S. at 518 (plaintiffs in a civil rights action failed to meet their

burden in establishing Article III standing).  Moreover, the allegations that establish ripeness

must appear on the face of the complaint.  *See O'Shea v. Littleton*, 414 U.S. 488, 493 (1974)

(plaintiffs must "allege some threatened or actual injury resulting from putatively illegal action

before a federal court may assume jurisdiction") (citations omitted); *Philadelphia Fed'n of*

*Teachers*, 150 F.3d at 325 ("plaintiffs have failed to meet their burden of alleging facts sufficient

to demonstrate a threat of direct and immediate hardship").  If a plaintiff cannot point to

allegations in the complaint demonstrating ripeness, the case must be dismissed.  *See Renne v.*

*Geary*, 501 U.S. 312 (1991).

As set forth below, plaintiff cannot meet his burden of establishing his claims are ripe for

adjudication.  Accordingly, the Complaint must be dismissed.

B.    **THE COMPLAINT DOES NOT ALLEGE A CLAIM THAT IS RIPE FOR JUDICIAL REVIEW**

1.    **The Complaint Is Based On Uncertain And Contingent Events That May Never Occur**

Plaintiff alleges that the Proxy Statement's assertions concerning the deductibility of

payments made under the EOIP are false.  Compl. ¶¶ 14-15.  However, the falsity of the

challenged statements cannot be ascertained until next year at the earliest, if ever.

First, neither the IRS nor any court has determined that the language at issue in the Proxy

Statement violates the applicable Treasury Regulations.  Plaintiff relies on *Shaev v. Saper,* 320

7

F.3d 373, 381 (3d Cir. 2003), to support his claims, but that case did not involve the same language used in the Proxy Statement.[4]  Furthermore, the proxy statement in *Shaev* contained a number of other features which violated express provisions of the applicable Treasury Regulations. *Id.*, at 379-80.  For example, the amendments to the incentive plan in the *Shaev* proxy statement were untimely under the applicable Treasury Regulations. *Id.* at 380.  They also granted the company discretion to increase the compensation paid under the plan in violation the applicable regulations. *Id.* at 380-81.  By contrast, Intel's Proxy Statement does not suffer from any of these defects.

Second, no payments have been made, nor could they be made under the 2005 EOIP until the first quarter of 2006.  RJN, Ex. A. at 17, 25.  Plaintiff himself recognizes the hypothesis upon which his Complaint is based, admitting that payments "*might* occur in January or February 2006" (emphasis added).[5]  Until payments are *actually* made, and those payments *actually* exceed the threshold of $1 million (below which all payments are deductible anyway), and Intel *actually* takes a deduction on the excess, and the IRS *actually* determines that the deductions were improper, plaintiff cannot assert a claim.

Third, tax deductibility is not even relevant unless the Company's cash compensation to each of Intel's five most highly compensated executive officers exceeds $1 million. *See* RJN, Ex. A at 17; 26 U.S.C. § 162(m).  Intel is only six months into the Company's fiscal year end, and it is unknown if any, some or all of its executives will be compensated more than $1 million in cash salary and benefits.  Only *if* Intel makes these payments, takes the deductions and the IRS determines the propriety of those deductions can the falsity of the Proxy Statement be assessed. The uncertainty surrounding the occurrence of this series of events, *each* of which must occur for the Proxy Statement to be false, "serves to highlight the fact that it is still unclear how these events will play out, and that judicial intervention at this time would be premature, as the case is

---

[4] Plaintiff has relied on *Shaev* in the motion for summary judgment he filed on June 7, 2005.

[5] *See* Plaintiff's Motion for Summary Judgment, at 13.

not ripe for decision." *See Brown v. Ferro*, 763 F.2d 798, 802 (6th Cir. 1985) (shareholder derivative action dismissed on ripeness grounds).

In *Gasner*, 103 F.3d at 361, the Court dismissed a similar claim in similar circumstances. There, an investor brought a claim under Section 12(a) of the Securities Act of 1933, alleging that the defendants sold bonds that had not been properly registered pursuant to provisions of the Securities Act requiring that bonds that are subject to federal income taxation be registered. The Court affirmed dismissal of the complaint on ripeness grounds, holding that the claim could not be adjudicated until it was first determined whether interest under the bonds would in fact be subject to taxation, and that such taxation was at present merely a "hypothetical" occurrence. *Id*; *see also Grimes v. Donald*, 673 A.2d 1207, 1214 (Del. 1996) (dismissing shareholder derivative action challenging "golden parachute" provision where executive had not yet terminated employment: "Such a set of facts has not been pleaded, is not before this Court, is based on speculation, and is not ripe for adjudication."), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000); *Auerbach v. Bd. of Ed. of the Harborfields Cent. Sch. Dist.*, 136 F.3d 104, 108-09 (2d Cir. 1998) (claim that retirement plan was discriminatory was not ripe where employees had yet to retire).

### 2.    The Complaint Does Not Allege An Actual And Immediate Injury

The "presence of 'a purely legal question' is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." *Philadelphia Fed'n of Teachers*, 150 F.3d at 325 (*quoting Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 421 (3d Cir. 1992) (citations omitted)). Rather, "the plaintiffs must still demonstrate that they face a real and immediate threat of injury from the denial of pre-enforcement review of the merits." *Id.* (quoting *Armstrong*, 961 F.2d at 421-22). As the United States Supreme Court has made clear, an [a]llegation of possible future injury do not satisfy the requirements of [Article III of the Constitution]." *Whitmore*, 495 U.S. at 158. *Accord Philadelphia Fed'n of Teachers*, 150 F.3d at 325 (dismissing complaint on ripeness grounds for failing to allege facts demonstrating "the actual and immediate harm" plaintiffs would suffer); *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d

9

574, 580 (D.N.J. 2002) (dismissing ADA and equal protection claims for lack of ripeness due to the lack of a final administrative agency determination as to damages, combined with "only the [Plaintiff's] claim of hypothetical potential harm to their members.").

The Complaint makes the conclusory assertion that "Defendants' acts have caused injury to the Company." Compl. ¶¶ 25, 27. Yet nowhere in the Complaint does plaintiff explain how Intel was injured or make any effort to quantify the injury. This is unsurprising – there is no real or imminent harm to the Company (other than the continued threat of a lawsuit from one of its own shareholders seeking to preempt a tax deduction available to Intel), and any "injury" to the Company is purely speculative. Plaintiff's Complaint raises only a hypothetical possibility of a future adverse tax ruling. This falls far short of establishing his claims are ripe for adjudication. *See Nomad Acquisition Corp. v. Damon Corp.*, 701 F. Supp. 10, 13 (D. Mass. 1988) (mere threat of effect of corporation adopting provisions of anti-takeover provision too speculative); *SWT Acquisition Corp. v. TW Servs., Inc.*, 700 F. Supp. 1323, 1329-30 (D. Del. 1988) (asking the court to "hypothesize as to what *might* happen . . . runs counter to Article III jurisprudence") (emphasis in original). Because any alleged injury to Intel is impermissibly "conjectural," "hypothetical" and not "real and immediate," the Complaint must be dismissed. *See O'Shea v. Littleton,* 414 U.S. 488, 493-94 (1974).

### C.     HARDSHIP TO THE PARTIES WEIGHS HEAVILY IN FAVOR OF DEFERRING ADJUDICATION

The hardship prong of the ripeness tests turns on whether a "direct and immediate" hardship will result to plaintiff if the Court defers adjudication. *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 (citations omitted). For hardship to be present, a threat must exist which is "credible" and not merely "speculative." *Artway*, 81 F.3d at 1248. It "'must be certain and impending to obtain preventative relief.'" *See New Hanover Township v. U.S. Army Corps. of Eng'rs*, 992 F.2d 473 (3d Cir. 1993) (quoting *CEC Energy v Public Serv. Comm'n of the Virgin Islands*, 891 F.2d 1107, 1111 (3d Cir. 1989)).

Plaintiff faces no hardship if the Court defers adjudication until the factual record is developed. If plaintiff's speculation and hypotheses come to pass, then plaintiff can assert his claims then. Plaintiff cannot establish any harm from delaying adjudication until the underlying facts are known.

By contrast, adjudicating plaintiff's claim has and will continue to harm Intel and its shareholders. The Company has been forced to incur unnecessary fees and costs and to devote management time and effort to defend a claim based on hypothetical facts that might never come to pass. Moreover, if plaintiff is permitted to move forward the shareholder franchise will be unnecessarily compromised. The shareholders' vote approving the 2005 EOIP should not be jettisoned based on plaintiff's conjecture about what might happen in the future. To the detriment of Intel and its shareholders, plaintiff threatens Intel's ability to deduct payments pursuant to the EOIP – irrespective of whether the IRS would ever challenge the deductibility of those payments, or if it does, whether the challenge will be resolved against Intel. Indeed, if plaintiff is permitted to go forward and he succeeds on his claims, Intel may be required to prepare a new proposal and organize a new shareholder vote to approve a new proposal – a costly, distracting, and ultimately pointless exercise, given that there is no reason to believe that the IRS will contest Intel's tax deductions (assuming there are any) under the existing 2005 EOIP.

Plaintiff has the burden of demonstrating a real and cognizable hardship if adjudication is deferred. He cannot. By contrast, the hardships to Intel and its shareholders of litigating now are real and tangible.

**CONCLUSION**

Plaintiff's claims are not ripe for adjudication. Accordingly, the Complaint should be dismissed.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael D. Tory
James N. Kramer
Susan D. Resley
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
(415) 773-5700

Dated: June 27, 2005

By _____
    Stephen C. Norman (#2686)
    Hercules Plaza
    P.O. Box. 951
    Wilmington, DE 19899-0957
    (302) 984-6000

Attorneys for defendants Craig R. Barrett,
Charlene Barshefsky, E. John P. Browne, D.
James Guzy, Reed E. Hundt, Paul S. Otellini,
David S. Pottruck, Jane E. Shaw, John L.
Thornton, David B. Yoffie, Andrew S.
Grove, and nominal defendant Intel
Corporation

688165

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on June 27, 2005, the within document was filed with the Clerk

of Court using CM/ECF which will send notification of such filing to the following; that the

document was served on the following counsel as indicated; and that the document is available

for viewing and downloading from CM/ECF.

### BY EMAIL AND HAND DELIVERY

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

Stephen C. Norman (#2686)
Potter Anderson & Corroon LLP
Hercules Plaza – 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: snorman@potteranderson.com