IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05-298(JJF) |
| | ) | |
| CRAIG R. BARRETT, CHARLENE | ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, D. | ) | |
| JAMES GUZY, REED E. HUNDT, | ) | |
| PAUL S. OTELLINI, DAVID S. | ) | |
| POTTRUCK, JANE E. SHAW, JOHN L. | ) | |
| THORNTON, DAVID B. YOFFIE, | ) | |
| ANDREW S. GROVE, and | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANTS' TWO MOTIONS TO DISMISS

FOX ROTHSCHILD LLP
Francis G.X Pileggi (No. 2624)
Sheldon K. Rennie (No. 3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920
fpileggi@foxrothschild.com
srennie@foxrothschild.com
Attorneys for Plaintiff

Of Counsel:

BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, New York 10018

Dated: July 25, 2005

# TABLE OF CONTENTS

Page

TABLE OF CASES AND AUTHORITIES ................................................................... ii

JURISDICTION ................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS .............................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT

     I.    "DO NOT MAKE A DEMAND," WARN THE FEDERAL
          COURTS AGAINST DELAWARE CORPORATIONS ........................................ 6

     II.   PRESUIT DEMAND IS EXCUSED IN THE CASE AT BAR .............................. 8

     III.  THE APPLICABLE STANDARDS FOR A RIPENESS INQUIRY ................... 12

     IV.  THE COMPLAINT'S ALLEGATIONS ARE FIT FOR
          JUDICIAL REVIEW BECAUSE ALL RELEVANT EVENTS
          HAVE ALREADY OCCURRED .......................................................... 13

     V.   THE PLAINTIFF WILL SUFFER HARDSHIP IF THE
          COURT WITHHOLDS CONSIDERATION ............................................. 18

CONCLUSION ................................................................................................ 20

## TABLE OF CASES AND AUTHORITIES

Page

*Abbott Lab. v. Gardner*,
   387 U.S. 136 (1967) ............................................................... 12

*Alabama Power Company v. U.S. Dept. of Energy*,
   307 F.3d 1300 (11th Cir. 2002) ............................................... 13

*In re Anderson Clayton Sh.Lit.*,
   519 A.2d 669 (Del.Ch. 1986) ................................................... 9

*Armstrong World Industries, Inc. v. Adams*,
   961 F.2d 405 (3rd Cir. 1992) .................................................. 12

*Aronson v. Lewis*,
   473 A.2d 805 (Del.Supr. 1984)............................................... 7, 8

*Artway v. Attorney Gen. of State of N.J.*,
   81 F.3d 1235 (3d  Cir. 1996) ....................................... 12, 16, 19

*Auerbach v. Bd of Ed. of the Harborfields Cent. Sch. Dist.*,
   136 F.3d 104 (2nd Cir. 1998).................................................. 17

*Beneville v. York*,
   769 A.2d 80 (Del.Ch. 2000) ................................................. 8, 10

*Blasband v. Rales*,
   971 F.2d 1034 (3rd Cir. 1992).................................................. 7

*Carmody v. Toll Brothers, Inc.*,
   723 A.2d 1180 (Del. Ch. 1998) ............................................... 15

*Data Access Systems Securities Litigation*,
   843 F.2d 1537 (3rd Cir.),
   *cert. denied sub nom. Vitiello v. Kahlowsky &*
   *Co.*, 488 U.S. 849 (1988)...................................................... 18

*Fink v. Komansky*,
   2004 WL 2813166 (S.D.N.Y.) ............................................... 10

*Galef v. Alexander*,
   651 F.2d 51 (2nd Cir. 1980) ........................................... 7, 9, 11

WM1A 60591v1 07/25/05

## TABLE OF CASES AND AUTHORITIES (Cont'd)

Page

*Gasner v. Bd. of Supervisors of County of Dinwiddie,*
    103 F.3d 351 (4th Cir. 1996) ................................................................. 17

*General Electric Co. v. Cathcart,*
    980 F.2d 927 (3rd Cir. 1992) ............................................................... 18

*In re General Motors Class E Stock Buyout Sec.Lit.,*
    790 F. Supp. 77 (D.Del. 1992) ............................................................... 6

*In re Grand Jury Investigation,*
    542 F.2d 166 (3rd Cir. 1966)
    *certiorari denied,*
    429 U.S. 1047 (1977)............................................................................ 10

*Grimes v. Donald,*
    673 A.2d 1207 (Del. 1996) ................................................................... 17

*Halpert Enterprises, Inc. v. Harrison,*
    362 F. Supp. 2d 426 (S.D.N.Y. 2005) ................................................. 10

*Hurwitz v. Sher,*
    982 F.2d 778 (2nd Cir. 1992) ............................................................... 15

*J.I. Case Co. v. Borak,*
    377 U.S. 426 (1964) ............................................................................. 11

*Kamen v. Kemper Financial Services, Inc.,*
    500 U.S. 90, 111 S. Ct. 1711 (1991) .............................................. 7, 11

*Leung v. Schuler,*
    2000 WL 264328 (Del. Ch.) ............................................................... 19

*Lone Star Steakhouse & Saloon, Inc. v. Adams,*
    148 F. Supp. 2d 1141 (D.Kan. 2001)................................................... 19

*Maldonado v. Flynn,*
    485 F. Supp. 274 (S.D.N.Y. 1980), aff'd
    671 F.2d 729 (2nd Cir. 1982)............................................................... 11

WM1A 60591v1 07/25/05

## TABLE OF CASES AND AUTHORITIES (Cont'd)

Page

*Mills v. Electric Auto-Lite Company*,
    396 U.S. 375 (1970) ............................................................... 18

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
    239 F.3d 333 (3rd Cir. 2001) ..................................................7, 11, 13

*Philadelphia Fed'n of Teachers v. Ridge*,
    150 F.3d 319 (3rd Cir. 1998) ............................................... 13, 16

*RCM Securities Fund, Inc. v. Stanton*,
    928 F.2d 1318 (2nd Cir. 1991) .................................................6

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) .......................................................7

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................. 13

*Reo v. U.S. Postal Service*,
    98 F.3d 73 (3rd Cir. 1996) .....................................................7

*Shaev v. Saper*,
    320 F.3d 373 (3rd Cir. 2003) ............................... 1, 10, 14, 15, 16, 17

*Siegman v. Tri-Star Pictures, Inc.*,
    1989 WL 48746 (Del.Ch.).......................................................8

*Sorin v. Shahmoon Industries, Inc.*,
    220 N.Y.S.2d 760 (Sup.Ct. N.Y. County, Spl.
    and Trial Term, 1961) ......................................................... 16

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) .......................................................6

*Tracinda Corp. v. DaimlerChrysler AG*,
    364 F. Supp. 2d 362 (D.Del. 2005)........................................... 12

*Tracinda Corp. v. Daimlerchrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002) ........................................... 19

WM1A 60591v1 07/25/05

## TABLE OF CASES AND AUTHORITIES (Cont'd)

Page

*In re Tri-Star Pictures, Inc. Lit.*,
   1990 WL 82734 (Del.Ch.)..............................................................9, 12

*In re Triarc Companies, Inc.*,
   791 A.2d 872 (Del.Ch. 2001) ........................................................ 12

*Unanue v. Caribbean Canneries, Inc.*,
   323 F. Supp. 63 (D.Del. 1971) ....................................................... 12

*Vides v. Amelio*,
   265 F. Supp. 2d 273 (S.D.N.Y. 2003) ....................................... 3, 7, 9

*Weisberg v. Barrett*,
   95 Civ. 0674 (DC) (S.D.N.Y.) ....................................................... 2

*Westinghouse Electric Corp. v. B.H. Franklin*,
   993 F.2d 349 (3rd Cir. 1993) ....................................................... 18

*In re Westinghouse Sec.Lit.*,
   832 F. Supp. 989 (W.D.Pa. 1993) ...........................................9, 11, 14

### STATUTES AND RULES

8 Del C. §141 .......................................................................... 15
15 U.S.C. §78aa........................................................................... 1
Securities Exchange Act §14(a), 15 U.S.C. §78n(a) ................................ 3, 11, 14, 16, 19
17 C.F.R. § 240.14a-9(a) ............................................................ 3, 14
26 C.F.R. §1.162-27(e)(4) .............................................................. 4
26 U.S.C. §162(m)..................................................................... 2, 6
28 U.S.C. §1367(a) ..................................................................... 1

### OTHER AUTHORITIES

Laurence Tribe, *American Constitutional Law* 80 (2d ed. 1987) .................................... 13

## JURISDICTION

The jurisdiction of this Court is founded upon Section 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. Section 78aa, and upon 28 U.S.C. Section 1367(a). The claims herein arise under the proxy statement provisions of the federal securities laws and under Delaware law.

## NATURE AND STAGE OF THE PROCEEDING

Intel Corporation and its board of directors threw caution to the winds. They ignored or rejected the teachings of the Third Circuit in *Shaev v. Saper*, 320 F.3d 373 (3rd Cir. 2003), and did exactly what the court said not to do when soliciting stockholders' approval of a bonus plan. Now that a stockholder has brought suit, they say that he is the source of their trouble, and not they, themselves. Intel and its board attempt to support this position, not with reasoned analysis, but with unsupported, counterfactual assertions and *ad hominem* slurs and insults, seeking to cast doubt on the stockholder's motives, his integrity, and his patriotism, and those of his attorneys, too.

Plaintiff filed his complaint in this matter on May 16, 2005 and moved for summary judgment on June 7, 2005. The defendants made two motions to dismiss, one addressed to the demand issue and one addressed to ripeness. We refer to the defendants' demand brief as "DB Demand," followed by the page number, and "DB Ripeness," followed by page number. Defendants have all appeared by the same attorneys, without retaining separate counsel for the Company. We refer to all defendants as "Intel" and to the Company as "the Company".

Of course, this is not the first time that Intel and its board of directors violated the proxy rules when seeking stockholder approval of a cash bonus plan. On January 31, 1995, a stockholder commenced an action alleging that the proxy statement for the 1994 annual meeting of Intel stockholders was materially false and misleading in soliciting stockholder approval of a cash bonus

plan. *Weisberg v. Barrett*, 95 Civ. 0674(DC), (S.D.N.Y.). (A copy of the complaint is attached to the accompanying affidavit of A. Arnold Gershon, sworn to July 22, 2005, "Gershon Aff. II", as Exhibit 1.) The *Weisberg* complaint alleged that the proxy statement represented that bonuses would be directly related to earnings per share but that, in fact, the plan was too vague and uncertain for calculation of any bonus. (*Weisberg* Cpl. ¶¶7-8) The court approved the settlement of that action on January 19, 1996. (Gershon Aff. II, Exhibit 2.) The settlement required the adoption of a restated bonus plan, that did work, at the 1995 annual meeting. (Gershon Aff. II, Exhibit 3.) So the assertion at page 4 in both briefs of defendants that the bonus plan was submitted to Intel stockholders in "1995 (because of minor amendments)" is utterly false.

This is not a securities fraud class action. It is a stockholder's derivative action on behalf of Intel Corporation, a Delaware corporation (the "Company") to recover against its directors for a Proxy Statement that is materially incomplete, inadequate, false and misleading. The Proxy Statement solicits the stockholders' approval of a cash incentive plan for its executive officers, called the Intel Corporation Executive Officer Incentive Plan as Amended and Restated Effective May 18, 2005 (the "EOIP" or the "Plan"). The Plan is to pay annual cash bonuses to Intel's executive officers. The Proxy Statement contains the misrepresentation that the bonuses would be tax deductible under 26 U.S.C. Section 162(m) if the stockholders approve the Plan. This Proxy Statement is substantially identical to the proxy statement that the Third Circuit held was materially false and misleading in *Shaev v. Saper*, 320 F.3d 373 (3rd Cir. 2003). *Shaev* and the case at bar are on all fours.

## SUMMARY OF ARGUMENT

Demand is excused where, as at bar, a false and misleading proxy statement is used to obtain stockholder approval of a corporate compensation plan. Under Delaware law, subjecting disclosure

2

claims to a demand requirement would be inconsistent with Delaware law that the business judgment rule does not apply to the question whether stockholders were given appropriate information for an informed vote. Moreover, the strong federal policy in support of enforcing the proxy statement rules, 15 U.S.C. Section 78n(a) and 17 C.F.R. 240.14a-9, preempted any demand requirement under state law. The most recent case on point is *Vides v. Amelio*, 265 F.Supp.2d 273, 275-76 (S.D.N.Y. 2003).

The action at bar is ripe for disposition. The federal and state claims arose when the proxy statement was sent to the stockholders. When the bonus plan was adopted, it produced an immediate cost to the Company, which cost was capable of evaluation. Moreover, the argument that the court must wait to see if the Internal Revenue Service (the "IRS") discovers the erroneous deduction and disallows it is, in the real world of financial analysis and accounting, a generally rejected accounting principle. In the real world, nobody accepts - - nor should this court condone - - the idea that what one does is legal if one does not get caught.

## STATEMENT OF FACTS

Plaintiff is a stockholder of Intel. He bought 200 shares on or about April 14, 1999, and 100 shares on or about April 8, 2002. (Affidavit of Frank D. Seinfeld, sworn to on June 3, 2005, concerning summary judgment, ("Seinfeld Aff.") Exhibit 1.)

For the annual meeting of Intel's stockholders on May 18, 2005, the individual defendants, acting as the Company's board of directors, distributed a Proxy Statement that solicited the stockholders' proxies to be voted in favor of the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, approval of an amendment and extension of the 2004 Equity

3

Incentive Plan, and approval of the amendment and extension of the Plan. (Seinfeld Aff. ¶4, Exhibit 2.) Those parts of the Proxy Statement entitled "Report of the Compensation Committee on Executive Compensation" and "Stock Price Performance Graph" are incorporated by reference into Intel's 2004 Form 10K filed with the SEC. (Seinfeld Aff. ¶5, Exhibit 3.)

The Proxy Statement represents (Seinfeld Aff. Exhibit 2, at p.39, the first two sentences, beginning of the page) that under the proposed Plan, the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders. But if the stockholders fail to approve the Plan, the Company would terminate the EOIP and instead would make payments to the executive officers in amounts similar to that which would have otherwise been paid under the EOIP, a portion of which would not be deductible.

The defendants threaten and intend to pay the incentive payments even if the Company's stockholders disapprove it. As a result, no vote of the stockholders would make it deductible. (26 C.F.R. Section 1.162-27(e)(4)(i)). Accordingly, the representation in the Proxy Statement that bonuses under the Plan would be deductible if the stockholders approve the Plan, is materially false and misleading because, even if the stockholders vote for the Plan, the Company would not get the deduction.

A bonus paid under the Plan is calculated by a formula with three variables. They are (1) a dollar amount set each year by the board's compensation committee in an amount specific for each executive officer, which they call the annual incentive baseline amount; (2) a factor set each year by the compensation committee for all executive officers; and (3) a definition of the annual earnings per share ("EPS") based on operating income or net income, whichever is greater. (Seinfeld Aff., Exhibit 2, at page 17, the last paragraph, and page 40, the second paragraph.)

4

In February 2005, for the fiscal year 2005, the compensation committee set the baseline amounts for each executive officer, the annual factor for all executive officers, and the definition of EPS. (Seinfeld Aff., Exhibit 2, page 16, the second paragraph, under *Determining Executive Compensation*, page 18, the second and third paragraphs, and page 40, second through fourth paragraphs, B-1–B-2, at ¶4.) Although the Proxy Statement disclosed some of these amounts that it used for previous years, it omitted these amounts and the definition of EPS for FYE 2005 (Seinfeld Aff. Exhibit 2, page 18, first and last full paragraphs), even though these facts were readily available. These omitted facts were material.

The Proxy Statement concedes, "Operating income per share is not defined under generally accepted accounting principles [GAAP] and is not a deemed alternative to measure performance under GAAP." (Seinfeld Aff. Exhibit 2, p.18**).  The Proxy Statement also concedes that the compensation committee has discretion to "adjust" both operating income and GAAP net income, id., although the Plan requires this to be done in advance, (Seinfeld Aff. Exhibit 2, pp. B-1– B-2, ¶4). Thus, presumably the committee did this in February 2005 for the FYE 2005.

Omission of the committee's definition of EPS from the Proxy Statement means that the stockholders do not have the ability to assess whether it will be easy or difficult for executive officers to achieve a large bonus, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments.  The Proxy Statement does reveal that executive officers can achieve a bonus even if the Company's earnings decline from year to year. (Seinfeld Aff. Exhibit 2, p.39, last full paragraph and chart.)  Some corporate incentive plans do not allow a bonus following a decline in earnings.  Since "operating earnings" has no GAAP definition, and since the committee seems to have unlimited discretion to define operating income, the Proxy Statement should disclose the definition of EPS.

5

The Plan, according to its terms, is designed to ensure that the bonuses be deductible under 26 U.S.C. Section 162(m), (Seinfeld Aff. Exhibit 2, p. B-1, ¶1), which means that the achievement of a bonus must be substantially uncertain at the time the committee establishes the formula. As far as this Plan is explained in the Proxy Statement, achievement of a bonus seems substantially certain, not uncertain.  Without knowledge of the definition of EPS, the stockholders cannot make this assessment for themselves.

The purpose of the Plan, according to its terms, is to motivate and reward the 14 executive officers by making a portion of their compensation dependent on EPS.  Although it is possible, with a calculator, to determine it, the Proxy Statement does not clearly disclose that the 14 executive officers own 22,220,518 Intel shares, in the aggregate (Seinfeld Aff. Exhibit 2, p.12, the table),  and it omits to explain why further motivation and reward is necessary, or even desirable for the Company.

## ARGUMENT

I.    **"DO NOT MAKE A DEMAND," WARN THE FEDERAL COURTS IN CASES AGAINST DELAWARE CORPORATIONS**

The courts have taught stockholders "not to make a demand" when they are considering bringing a derivative action on behalf of a Delaware corporation, in cases such as this case at bar, because it substantially changes and weakens the claim. *In re General Motors Class E Stock Buyout Sec.Lit.*, 790 F.Supp. 77, 80-81 (D.Del. 1992), relying upon *RCM Securities Fund, Inc. v. Stanton*, 928 F.2d 1318 (2nd Cir. 1991). In *RCM*, the court cited *Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990) and held, 928 F.2d at 1328:

> If no demand is made, the derivative action may challenge the underlying transaction, and the complaint will not be dismissed because of the business judgment rule if it has alleged a prima facie breach of a fiduciary obligation. Once a demand is made, however,

6

the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit. ... If reported cases are any indication, few, if any, plaintiffs surmount this obstacle.

The Third Circuit agrees with these principles as expressed by this court, the Delaware Supreme Court, and the Second Circuit. *Blasband v. Rales*, 971 F.2d 1034, 1051 (3rd Cir. 1992). Heeding the courts' warnings, the stockholder at bar made no demand upon the Intel board of directors, relying, in part, upon exceptions under Delaware law.

In this stockholders' derivative action in federal court, Federal Rule of Civil Procedure 23.1 provides the pleading standards for the demand allegations, and state law ordinarily, with exceptions, governs the substance of the requirement to make demand. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98-99, 111 S.Ct. 1711, 1717 (1991); *Blasband v. Rales*, 971 F.2d 1034, 1047 (3rd Cir. 1992). The state's law that applies is the state of incorporation, which at bar is Delaware, *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. at 108-09; *Blasband v. Rales*, supra.

The exception in this area, as in other areas where federal courts apply state law, is that federal courts do not apply state law where it would impair federal policy. *Kamen v. Kemper Financial Services, Inc.*, supra, 500 U.S. at 98; *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 348 (3rd Cir. 2001) ("Conflict preemption"); *Reo v. U.S. Postal Service*, 98 F.3d 73, 76 (3rd Cir. 1996); *Galef v. Alexander*, 651 F.2d 51, 62 (2nd Cir. 1980). That federal policy is discussed below in cases such as *Vides v. Amelio*, infra.

Notwithstanding the general rule that a Delaware corporation is run by its board of directors, the law of Delaware considers the stockholder's derivative suit a proper remedy for corporate harm "resulting from misconduct by its directors," and to be one of the "potent tools to redress the conduct of a torpid and unfaithful management." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993), quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

7

For a lawyer to reject the courts' collective wisdom and to advise the stockholder to make a demand based on the facts of this case, could, we submit, mishandle that potent tool, the derivative suit, and would advocate a false statement of law.

## II.    PRESUIT DEMAND IS EXCUSED IN THE CASE AT BAR

Delaware law does not require presuit demand in all cases as a condition to bringing a stockholder's derivative action. The usual formulation of the exception is that Delaware law excuses demand if a majority of the board members (or exactly half of an even numbered board) are either interested in the underlying conduct that is the substance of the suit, or if they are not independent from influence by the interested person, or if the underlying conduct approved by the board is so egregious that it is not protected by the business judgment rule. *Rales v. Blasband*, supra; *Aronson v. Lewis*, 473 A.2d 805 (Del.Supr. 1984); *Beneville v. York*, 769 A.2d 80, 86 n.14 (Del.Ch. 2000).

The business judgment rule is of overriding importance in deciding whether presuit demand is required. As the court held in *Blasband v. Rales*, supra (971 F.2d at 1048), if the board's conduct is not protected by the business judgment rule, then presuit demand is excused. The *Blasband* court cited *Aronson v. Lewis*, supra, 473 A.2d at 812 (Del.Supr. 1984) to hold, "This [demand] inquiry 'is inextricably bound to issues of business judgment and the standards of that doctrine's applicability.'" (971 F.2d at 1048.) In *Siegman v. Tri-Star Pictures, Inc.*, 1989 WL 48746 at *10 (Del.Ch.) the court cited that same *Aronson* language and held that demand is excused if a director's conduct fails to meet the standards of the business judgment rule.

The action at bar is different than the typical stockholders' derivative action for two reasons: First, the underlying conduct is the use of a false and misleading proxy statement to obtain stockholder approval of a corporate compensation plan. Misrepresentations are not protected by the

8

business judgment rule. Second, a stockholder has a direct action, as to which presuit demand is not required, for a false and misleading proxy statement.

The most recent case addressing this first difference is *Vides v. Amelio*, 265 F.Supp.2d 273, 275-76 (S.D.N.Y. 2003). Applying Delaware law <u>and federal policy</u>, the court held that demand was excused in a stockholder's derivative action where the complaint alleged misstatements and omissions in a proxy statement. The *Vides* court reviewed Delaware law that proper disclosure does not concern the "management of business and affairs" of a corporation and that disclosure is not an issue "inherently of the kind that courts are ill suited to treat on their own." *Id*. <u>citing</u> *In re Anderson Clayton Sh.Lit.*, 519 A.2d 669, 675 (Del.Ch. 1986). *Vides* also held that the Delaware business judgment rule does not protect directors who distribute "a proxy statement [that] makes a false assertion or an insufficient disclosure." <u>Id</u>. <u>citing</u> *In re Tri-Star Pictures, Inc. Lit.*, 1990 WL 82734 at *8 (Del.Ch.).

The *Vides* court also reviewed federal policy <u>citing</u> *Galef v. Alexander*, <u>supra</u>, 615 F.2d at 63-64 (2nd Cir. 1980) and observed that the business judgment rule cannot be invoked by directors who are sued in a stockholder's "derivative action for providing inadequate information in connection with a proxy solicitation." *Vides*, 265 F.Supp.2d at 276.

Another court reached the same conclusion concerning federal policy, *In re Westinghouse Sec. Lit.*, 832 F.Supp. 989, 998 (W.D.Pa. 1993), holding that it would be a misapplication of the business judgment rule to allow a demand defense to a stockholder's derivative action alleging that the directors had made inadequate disclosures in a proxy statement. Significantly, this is the rule "<u>regardless of their independence</u>." (emphasis added).

Thus, based on the foregoing controlling case law, no presuit demand is needed here. Both Delaware law and federal policy excuse presuit demand in this case.

Intel argues that the usual Delaware rule is that demand is required even if a disinterested majority of the board authorized the underlying non-egregious misconduct. Intel has cited a number of cases supporting that rule. However, that rule does not apply at bar to a false and misleading proxy statement. Nevertheless, Intel argues that *Vides* is not good law, citing *Halpert Enterprises, Inc. v. Harrison*, 362 F.Supp. 2d 426 (S.D.N.Y. 2005) and *Fink v. Komansky*, 2004 WL 2813166 (S.D.N.Y.). Neither of those cases cites *Vides*, so the court should not accept them as rejecting *Vides*. Moreover, those cases are only marginally actions to recover for false proxy statements. Their principal claims are to recover for the alleged misconduct of the respective boards of directors in allowing their companies to do business with Enron Corporation. The *Fink* case is on appeal to the Second Circuit, and none of the Second Circuit briefs cites to *Vides*.

Intel argues that since the court in *Shaev v. Saper*, 320 F.3d 373, 378 (3rd Cir. 2003) declined to discuss the demand issues presented at bar (and resolved three months later in *Vides*), this court should assume that the Third Circuit has rejected *Vides*, calling it "a split of authority on this issue." (DB Demand at 13.) We submit that a court's omission to decide an issue cannot be so broadly read. See *In re Grand Jury Investigation*, 542 F.2d 166, 173 (3rd Cir. 1966), cert: denied, 429 U.S. 1047 (1977) (failure to grant rehearing does not imply judgment on the merits). This is especially so in *Shaev v. Saper*, where the demand issue had not been reached below, and the "evenly divided" board rule concerning demand was so obvious. *Beneville v. York*, supra, 769 A.2d at 86 n.14, (discussing the "even split" rule).

Intel argues that *Vides* "ignores" the purposes of the demand rule under Delaware law. (DB Demand at 13.) They suggest that, despite the well developed body of law concerning the circumstances where presuit demand is excused under Delaware law, the *Vides* court should have rejected that authority and required a demand. Such an argument seeks to impose a universal

10

demand requirement that is the opposite of what Delaware law provides. This argument was expressly rejected by the Supreme Court in *Kamen v. Kemper Financial Services, Inc.*, supra. Moreover, as discussed earlier, to make a demand where none is required would be to support a false statement of the law or would be ignorant of the law. Intel's argument is frivolous.

Finally, Intel submits a hodge-podge of boilerplate arguments. They say that the complaint alleges that "the Directors would have to 'sue themselves'." (DB Demand, p.10.) However, the complaint at bar makes no such allegation. Intel is simply misstating the facts. They say that the directors bear only a "mere threat of personal liability" (DB Demand, p.8), rather than a "substantial likelihood of director liability." *Aronson v. Lewis*, supra 473 A.2d at 815. However, the authorities underscore that their likelihood of liability is certain. *Shaev v. Saper*, supra; *Galef v. Alexander*, supra. They say that the directors are independent because they cannot participate in the Plan but, in the proxy statement context, demand is excused "regardless of their independence." *In re Westinghouse Sec. Lit.*, supra, 832 F.Supp. at 998. What is conspicuously missing from Intel's brief is any effort to deny the application of the principles of "[c]onflict preemption" (*NE Hub Partners*, supra, 239 F.3d at 348), to the demand issue, as the courts have done in *Galef*, supra, 651 F.2d at 62; *Vides*, supra; and *Westinghouse*, supra.

The second difference, in the case at bar, from the typical stockholder's derivative action, is that the stockholder can enforce his rights in a direct action. Accordingly, even if demand were required at bar, the complaint should not be dismissed. In *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964), the Supreme Court held that, under 14(a), 15 U.S.C. Section 78n(a), "a right of action exists as to both derivative and direct causes." In *Maldonado v. Flynn*, 485 F.Supp. 274, 281-82 (S.D.N.Y. 1980), aff'd. 671 F.2d 729 (2nd Cir. 1982), the court held that the business judgment rule would not "preclude private enforcement of the proxy rules." It held:

11

> The cause of action implied under section 14(a), however, can also be asserted by an individual shareholder in his own behalf or as a class action on behalf of all affected shareholders... [footnote omitted] ... If this derivative claim is not pursued, plaintiff is free to assert his independent claim in an appropriate action.

Under Delaware law, the stockholder's right to cast an informed right belongs to him, not the corporation, and his suit to vindicate that right is direct, not derivative. *In re Triarc Companies, Inc.*, 791 A.2d 872, 879 (Del.Ch. 2001); *In re Tri-Star Pictures, Inc. Lit.*, supra. The directors solicited the proxies, and the Company paid the cost to solicit. (Proxy Statement at 42.) They all permitted the use of their names in the Proxy Statement in a manner substantially connected to it thus, they are all liable. *Tracinda Corp. v. DaimlerChrysler AG*, 364 F.Supp. 2d 362, 392-94 (D.Del. 2005). The stockholder has a direct claim against "both a corporation and individual defendants" (*Unanue v. Caribbean Canneries, Inc.*, 323 F.Supp. 63, 66 (D.Del. 1971)) for injunctive and other specific equitable relief.

## III.   THE APPLICABLE STANDARDS FOR A RIPENESS INQUIRY

Federal subject matter jurisdiction is limited to "cases" and "controversies." *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3rd Cir. 1992). The case or controversy requirement led to the development of the ripeness doctrine, "which determines when a proper party may bring an action." *Id.* It attempts "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab. v. Gardner,* 387 U.S. 136, 148 (1967).

A ripeness inquiry involves weighing two factors: (1) "the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review." *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996). Although the plaintiff has the

12

burden of alleging facts that establish ripeness, *Renne v. Geary*, 501 U.S. 312, 316 (1991), "when, as here, defendants move to dismiss a complaint under Rule 12(b)(1) for failure to allege subject matter jurisdiction" the court must "treat the allegations of the complaint as true and afford the plaintiff the favorable inferences to be drawn from the complaint." *NE Hub Partners,* supra, 239 F.3d at 341.

Cases are ripe for adjudication when they "present either or both of two features: significant *present* injuries...or legal questions that do not depend for their resolution on an extensive factual background." (italics in original.) *Alabama Power Company v. U.S. Dept. of Energy*, 307 F.3d 1300, 1310 (11th Cir. 2002)(quoting Laurence Tribe, *American Constitutional Law* 80 (2d ed. 1987)). *See Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 325 n.7 (3rd Cir. 1998) (noting "Whether ripeness requires that both parts of the test be satisfied is a matter of some uncertainty....We need not consider the issue here.")

Based upon the analysis below, we submit that it is evident that the case at bar satisfies both factors, is ripe for adjudication, and defendants' motion should be denied.

## IV.   THE COMPLAINT'S ALLEGATIONS ARE FIT FOR JUDICIAL REVIEW BECAUSE ALL RELEVANT EVENTS HAVE ALREADY OCCURRED

The first factor, the fitness of the issues for judicial review, requires an assessment of "whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged transaction is final." *Philadelphia Fed'n of Teachers*, supra, 150 F.3d at 323. Moreover, the court's inquiry into the fitness for review includes the following considerations: "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which the claim is bound up in the facts; and whether the parties to the action are sufficiently adverse." *Id.*

13

The claims in the case at bar are grounded in past events, i.e., solicitation of stockholder approval of the Plan based on materially false and misleading statements in the Proxy Statement. They are not based on uncertain or contingent events. Under 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78n(a), the "violation occurs when the false or misleading proxy statement is issued." *In re Westinghouse Sec. Litig.*, supra, 832 F. Supp. at 999. Furthermore, "any statement which, at the time and in the light of the circumstances under which it is made, is false and misleading" violates 14(a). 17 C.F.R. Section 240.14a-9(a). In the case at bar, the defendants issued and distributed the Proxy Statement to the stockholders. (Cpl. ¶9.) The stockholders were solicited to vote for or against the Plan based upon the materially false and misleading statements in the Proxy Statement.

The case at bar is on all fours with *Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir. 2003), where the Third Circuit held that a proxy statement violated 14(a) when it represented:

> In the event that the management Incentive Plan is not approved by the shareholders of the Corporation, the Compensation Committee may grant Mr. Saper another bonus for fiscal year 2000, a portion of which may not be deductible under Section 162(m) of the Code. Plaintiff's Motion for Summary Judgment, at 8.

The Intel Proxy Statement represents:

> If our stockholders do not approve the EOIP at the annual meeting, we will terminate the EOIP plan, and we will not pay any incentives under this plan for the 2005 performance year. However, we expect to make incentive payments to the executive officers in amounts similar to those that would have otherwise been paid under the EOIP; the difference is that we will lose a portion of the tax deductibility that would have otherwise been available to us. Plaintiff's Motion for Summary Judgment, at 8-9.

These representations are substantially identical in language, intent, and tone. In *Shaev*, the case was ripe for adjudication, as it is here, for when the proxy statement was issued it contained representations that violated 14(a) of the Exchange Act.

14

It is clear that this action is ripe. In *Carmody v. Toll Brothers, Inc.*, 723 A.2d 1180 (Del. Ch. 1998), the court held under similar circumstances that a claim was ripe. A stockholder alleged a "dead hand" provision in a poison pill rights plan was a breach of the directors' fiduciary duties and violated 8 Del. C. Section 141 because it restricted the power of future board members by creating different classes of directors, such as those who have the right to redeem a poison pill and those who could not. *Carmody*, supra, 723 A.2d at 1189. The defendants argued the case would not be ripe for adjudication until there actually was a hostile takeover proposal. *Carmody*, supra, 723 A.2d at 1187-88. They failed to persuade the court. *Id.* The court held, 723 A.2d at 1188:

> Stripped of its bells and whistles, this argument boils down to the proposition that the adoption of a facially invalid rights plan, on a "clear day" where there is no specific hostile takeover proposal, can never be the subject of a legal challenge. Not surprisingly, the defendants cite no authority which supports that proposition, nor could they, since the case law holds to the contrary.

Here, as in *Carmody*, plaintiff alleges the Plan should be cancelled because the Plan itself is invalid.

Furthermore, there is no requirement that the IRS must evaluate the language in a proxy statement and determine a deficiency before the court may adjudicate the case. Courts can and do analyze provisions in the Internal Revenue Code. They have the ability to read the Code and the Treasury Regulations and apply it to the case before them. *See, e.g., Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir. 2003); *Hurwitz v. Sher*, 982 F.2d 778, 782 (2nd Cir. 1992) (in an action by the son of deceased against spouse of deceased, holding that antenuptial agreement was not a waiver of ERISA, pursuant to Treasury Regulations). Also, the Third Circuit has held that the materiality of statements in a proxy statement is to be determined as of the time at which the statement is made and is not dependent on whether the IRS, at a future date, decides to allow or deny the deduction. *Shaev*, supra, 320 F.3d at 382. And waiting for the IRS to decide on the deductibility of the payments would not bind this court, for "[T]he tax collector may have felt that he had inadequate evidence or

15

manpower, or perhaps for other reasons he did not have the inclination to proceed against the taxpayer." *Sorin v. Shahmoon Industries, Inc.*, 220 N.Y.S.2d 760, 779 (Sup.Ct. N.Y. County, Spl. and Trial Term, 1961).

That it is unnecessary to await an IRS determination is also the position of the accounting authorities.   The Financial Accounting Standards Board ("FASB") decided to propose an interpretation of its rules "which requires that tax benefits be recognized based on tax positions in tax returns that are probable of being sustained on audit." (Minutes of FASB meeting, p.4, July 27, 2004, attached as Exhibit 4 to Gershon Aff. II.) The staff of the International Accounting Standards Board ("IASB") has recommended that IASB accept this position, noting the FASB view that a company must assume that an audit will be conducted by the tax authorities and that the tax position will be decided on the merits. (IASB Information for Observers, Meeting June 2005; attached as Exhibit 5 to Gershon Aff. II).  In other words, in the real world, no one can play the tax game that provides: "If I don't get caught, it's deductible," and if that were not enough, at bar, the Company is fully aware of this because, as the IASB Information for Observers, at pp. 1-2 reports, Intel is one of the "U.S. based multinational preparers" reviewing the draft proposal. (Gershon Aff. II, Exhibit 5.)

In addition, the court should consider the extent to "which the claim is bound up in the facts." *Philadelphia Fed'n of Teachers*, supra, 150 F.3d at 323. The Third Circuit holds "the more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe and vice-versa." *Artway*, supra, 81 F.3d at 1249. In order to state a claim under 14(a), 15 U.S.C. Section 78n(a), one must allege that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Shaev*, supra, 320 F.3d at 379.

16

(Internal citations and quotations omitted.) Here, as in *Shaev,* all of the relevant facts are based upon past events and can be located in the Proxy Statement dated March 29, 2005. (Cpl. ¶9.)

The three principle cases defendants rely on are inapposite to the case at bar. All of those cases are based on contingent events that may not occur in the future. First, in *Gasner v. Bd. of Supervisors of County of Dinwiddie,* 103 F.3d 351, 360 (4th Cir. 1996), plaintiff's cause of action would only arise once the interest on the bonds was determined to be taxable, an event that had not yet occurred. However, here the cause of action arose when the defendants solicited stockholder approval of the Proxy Statement. Second, in *Grimes v. Donald,* 673 A.2d 1207, 1214 (Del. 1996), the argument, "that the payments *could* amount to a *de facto* abdication in possible *future* circumstances," illustrates the uncertain and contingent nature of the allegation. (italics added.) And third, in *Auerbach v. Bd of Ed. of the Harborfields Cent. Sch. Dist.,* 136 F.3d 104, 109 (2nd Cir. 1998), the "factual event forming the basis of the claim, i.e., their retirement, had not occurred at the commencement of the action." All of these cases are inapplicable because the case at bar is rooted in the past, i.e., the Proxy Statement was distributed to the stockholders, approved by the means of a coerced stockholder vote, and the Plan is in effect.

## V.   THE PLAINTIFF WILL SUFFER HARDSHIP IF THE COURT WITHHOLDS CONSIDERATION

The second factor evaluates the hardship to the parties of withholding court consideration. *Artway,* supra, 81 F.3d at 1247. The Company has already been injured because the inclusion of material misstatements and omissions in the Company's Proxy Statement subverts the Congressional intent behind the creation of the 14(a) claim, which is "to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills*

17

*v. Electric Auto-Lite Company*, 396 U.S. 375, 381 (1970)(internal quotations omitted.) Intel maintains that an injury to the Company and its stockholders should not be addressed and rectified until after they are caught by the IRS. (DB Ripeness, at 11.) That argument is neither supported by financial reality nor is it sound public policy.

Moreover, a 14(a) claim has a short statute of limitations, which begins to run "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Westinghouse Electric Corp. v. B.H. Franklin*, 993 F.2d 349, 353 (3rd Cir. 1993)(quoting *Data Access Systems Securities Litigation,* 843 F.2d 1537, 1550 (3rd Cir.), *cert. denied sub nom. Vitiello v. Kahlowsky & Co.*, 488 U.S. 849 (1988)). And a 14(a) allegation can only be brought when a stockholder vote is required for the particular transaction, and that vote is obtained through the solicitation of a false proxy statement. *General Electric Co. v. Cathcart*, 980 F.2d 927, 933 (3rd Cir. 1992). But if Plaintiff is not permitted to proceed with the case now, and is forced to wait until the IRS possibly picks up this violation on its radar, the statute of limitations will have already run, and it will be too late to redress this injury.

In addition, federal pleading standards do not require the inclusion of a specific damages amount. (DB Ripeness, at 10.) When a proxy statement violates 14(a), 15 U.S.C. Section 78n(a), it may be possible to evaluate the injury in quantitative terms. For example, in *Shaev*, once discovery had been conducted, and the factual record was developed, an expert was able to evaluate the benefit caused by termination of old bonus plans and substitution of new, less expensive, bonus plans. (Declaration of Pearl Meyer at ¶13; attached as Exhibit 6 to Gershon Aff. II), and the court adopted this declaration. (Transcript 6:5-7; attached as Exhibit 7 to Gershon Aff. II.)  An injunction, moreover, is the appropriate remedy in the case at bar; it is not necessary to wait for more damage to be done to the Company, such as monetary payments under the Plan. *Leung v. Schuler*, 2000 WL

18

264328, at *8 fn. 31 (Del. Ch.).  And frequently "[m]onetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F.Supp.2d 1141, 1150 (D.Kan. 2001).  Also courts have held there is no case law requiring a plaintiff to plead in a complaint the amount of damages suffered when the claim arises under the Exchange Act. *Tracinda Corp. v. Daimlerchrysler AG*, 197 F.Supp.2d 42, 67 (D. Del. 2002).

WM1A 60578v1 07/25/05

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the court should deny both of

defendants' motions to dismiss.

### FOX ROTHSCHILD LLP


By:  /s/ Francis G.X. Pileggi
        Francis G.X Pileggi (No. 2624)
        Sheldon K. Rennie (No. 3772)
        919 North Market Street, Suite 1300
        Wilmington, DE 19801
        Tel: (302) 655-3667
        Fax: (302) 656-8920
        fpileggi@foxrothschild.com
        srennie@foxrothschild.com

        Attorneys for Plaintiff


Of Counsel:

BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, New York  10018
Tel:  (212) 575-7900
Fax: (212) 764-5060

Dated:  July 25, 2005

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2005, I electronically filed the foregoing Plaintiff's Answering Brief in Opposition to Defendants' Two Motions to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Stephen Norman, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

_____ /s/ Francis G.X. Pileggi_____
Francis G.X. Pileggi (Del. Bar No. 2624)