# EXHIBIT 1

A. ARNOLD GERSHON, P.C.
A. Arnold Gershon
295 Madison Avenue
New York, NY 10017
(212) 684-3033

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------X
JOAN L. WEISBERG,                  :

                Plaintiff,         :

        v.                         :        CIVIL ACTION NO.

CRAIG R. BARRETT, WINSTON H. CHEN, :        JURY TRIAL DEMANDED
ANDREW S. GROVE, D. JAMES GUZY,
GORDON E. MOORE, MAX PALEVSKY,     :
ARTHUR ROCK, JANE E. SHAW, LESLIE
L. VADASZ, DAVID B. YOFFIE,        :
CHARLES E. YOUNG, and
INTEL CORPORATION,                 :

                Defendants.        :
-----------------------------------X
```

**95 CIV. 0674**

**JUDGE CHIN**

<u>VERIFIED STOCKHOLDER'S DERIVATIVE AND CLASS ACTION COMPLAINT</u>

Plaintiff alleges, upon information and belief based upon, <u>inter alia</u>, the investigation made by and through her attorney, except as to those allegations which pertain to the plaintiff herself which are alleged upon knowledge, as follows:

1. The jurisdiction of this Court is founded upon §27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §78aa, 28 U.S.C. §1331, and 28 U.S.C. §1367.

2. The claims herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and Rule 14a-9 of the Securities and Exchange Commission promulgated thereunder, and under common law.

3. In connection with the acts, omissions, conduct, and wrongs alleged herein, defendants used the means and

instrumentalities of interstate commerce and the mails in committing the wrongs complained of herein.

4.   Plaintiff is a stockholder of Intel Corporation ("Intel" or the "Company"), a Delaware corporation, and has been such continuously since January 13, 1994 and throughout the time of the wrongs alleged herein to the present.

5.   Plaintiff brings this action derivatively in the right of and for the benefit of Intel and also as a class action on behalf of Intel stockholders.  This action is not a collusive one to confer jurisdiction on this court which it would not otherwise have.

6.   The individual defendants, i.e., defendants Barrett, Chen, Grove, Guzy, Moore, Palevsky, Rock, Shaw, Vadasz, Yoffie, and Young are and were at all relevant times the members of Intel's board of directors.

7.  On or about March 21, 1994, the individual defendants, acting as Intel's board of directors, issued a proxy statement to solicit the proxies of Intel's stockholders for, _inter_ _alia_, approval of the Intel Corporation Executive Officer Bonus Plan (the "Plan") at the annual meeting of Intel stockholders on May 4, 1994. In connection with that proposal, the individual defendants willfully made materially false statements and omitted material facts from the proxy statement used to solicit stockholder approval.  That proxy statement represented that under the Plan the bonuses would be directly related to the reported or operating earnings per share ("EPS") and that Intel's EPS must improve by 10%

2

over the prior year's target for an executive officer to achieve his prior year's bonus. However, it failed to disclose that the Plan is too vague, uncertain, and ambiguous for the objective calculation of the amount of the bonus and that any bonus would necessarily be solely the result of whim and caprice undisciplined by business judgment. The Plan is vague, uncertain, and ambiguous in that it provides that the bonus amount is the "product" of an "individual target" and a second factor in the formula which will be alleged <u>infra</u>. The language "individual target" is too vague, uncertain and ambiguous to permit the calculation of a dollar amount. The second factor, as expressed in the Plan, is the EPS for the performance year which is itself then "multiplied" by a ratio of the "adjusted actual EPS to an EPS target." Thus, the "product" will be expressed as the "individual target" times dollars per share. No person could use this formula objectively to calculate the amount of the bonus. Accordingly, the proxy statement materially misled Intel's stockholders as to the workability of the Plan.

    8. Although the proxy statement included a copy of the Plan as an exhibit, this inclusion was insufficient to neutralize and exhaust the materially false statements and omission of material facts in it. This proxy statement, taken in its entirety, failed to inform the reasonable stockholders. Not only did it present a nearly insurmountable challenge to their critical wits, it is doubtful that even a financial analyst would have perceived the truth. Without an educational background in mathematics and

science, stockholders would have had only a remote chance of discerning that the Plan was unworkable and that they were being asked to give undisciplined and absolute discretion in this matter. And even such a background might not have been enough, unless accompanied by a suspicious nature, bordering on the paranoid, to make the futile effort to calculate the amount to be paid under the Plan.

9.   The individual defendants knew or should have known that the Plan was unworkable and that the proxy statement dated March 21, 1994 was materially false and misleading and omitted to disclose material facts.  The individual defendants include persons holding doctorate degrees, persons who well understand mathematics, science, and engineering, persons who are members of engineers' societies, and persons who are trustees of highly respected institutions of advanced learning.  They, far more than the reasonable investor, could see or should have seen the unworkability of the formula for computing these bonuses and the misleading nature of the proxy statement.

10.   The materially false proxy statement dated March 21, 1994 has caused damage to Intel by causing stockholder approval of an unworkable plan which has thereby exposed Intel's assets to waste and gift in the guise of bonuses to its executive officers, including defendants Barrett, Grove, Moore, and Vadasz.  For relief, Intel is entitled to recover damages from the individual defendants to the extent any such bonuses are paid and to an injunction against the payment of any future such bonuses.

11. The materially false proxy statement dated March 21, 1994 has also resulted in injury to the Intel stockholders in the exercise of their right to vote upon a fully informed basis. The stockholders are entitled to relief in the form of an order cancelling the tainted affirmative vote in favor of the Plan. They are also entitled to an injunction requiring a proxy statement free of material misstatements and omissions of material facts should the defendants seek stockholder approval of any other bonus plans.

12. The Plan by its terms replaces the only other method previously available to pay bonuses to Intel's executive officers. That former method was known as the Executive Bonus Plan. Since the Plan was proposed by the board and approved by the stockholders, there is no other method available for the payment of cash bonuses to Intel's executive officers, including defendants Barrett, Grove, Moore, and Vadasz. Despite the impossibility of calculating bonuses under the Plan, the defendants intend to pay bonuses to Intel's executive officers for the year 1994 and for future years as well. Any such bonuses must necessarily be arbitrary and capricious, for they will be undeterminable under the Plan and unsupported by any contract or other methodology. Therefore, any and all bonuses paid to Intel's executive officers will be a transfer of Intel's assets for no consideration and will constitute a gift and waste of Intel's assets.

13. Intel is entitled to relief from the gift and waste of its assets in the form of damages from the individual defendants, and it is entitled to an injunction against any future

such gifts and waste.

14.    Plaintiff has made no demand upon the board of directors of Intel to institute and prosecute this action because such demand would be futile and hence is excused for at least the following reasons:

(a)    The entire board is neither disinterested nor independent since every member of the board is liable for violation of §14(a) of the Exchange Act and Rule 14a-9.

(b)    The board's conduct was not the product of a valid exercise of business judgment.  The directors' solicitation of stockholder approval of the Plan which is too uncertain and ambiguous for the objective calculation of the amount of the bonus was a decision that no reasonable person would make.  Moreover, the directors willfully breached their disclosure obligations under §14(a) of the Exchange Act and Rule 14a-9.  Accordingly, they are not protected by the business judgment rule.  Finally, the payment by the board, or any committee thereof, of any bonus will necessarily be without consideration and a gift and a waste of assets and not the product of business judgment.

15.    This action also is properly maintainable as a class action to the extent that it seeks relief for the individual defendants' breach of Exchange Act §14(a) and Rule 14a-9 in connection with the stockholder approval of the Plan.

16.    The class is defined as the holders of Intel common stock other than defendants and their affiliates.

17.    The class is so numerous that joinder of all members

of the class is impracticable. There are hundreds, if not thousands, of class members.

18. There are questions of law and fact common to the class which predominate over any individual questions, including, among other things, whether the individual defendants breached §14(a) of the Exchange Act and Rule 14a-9 in connection with seeking stockholder approval of the Plan, their liability, and the kind and measure of relief to the class. The common questions predominate, for there are no individual questions in this case.

19. The claims of the plaintiff are typical of the claims of the class.

20. The plaintiff will fairly and adequately protect the interests of the class.

21. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

22. The defendants have acted or will act on grounds generally applicable to the class, thereby making this claim appropriate for final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

WHEREFORE, plaintiff prays for the following relief:

A. Awarding Intel the damages it has sustained and will sustain by reason of the conduct alleged herein;

B. Cancellation of the stockholders' affirmative vote in favor of the Plan;

C. Enjoining implementation of the Plan and the payment

of any bonuses under it or any other methodology;

      D.  Requiring the individual defendants to comply with §14(a) of the Exchange Act and Rule 14a-9 should they seek stockholder approval of any other bonus plan.

      E.  Awarding the plaintiff the costs and disbursements of this action, including reasonable accountants', experts' and attorneys' fees; and

      F.  Granting such other and further relief, whether similar or different, as by this Court may be deemed just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

A. ARNOLD GERSHON, P.C.
295 Madison Avenue
New York, NY 10017

By: _____
A. Arnold Gershon (AG-3809)

Attorney for Plaintiff

VERIFICATION

STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK  )


JOAN L. WEISBERG, being duly sworn, hereby verifies that she has read the foregoing Verified Stockholder's Derivative and Class Action Complaint, that she is the plaintiff therein, that the allegations therein insofar as based upon her personal knowledge are true and correct, and that insofar as the allegations therein are based upon information and belief, she has consulted with her attorney, reviewed the information upon which they are based, and believes them to be true and correct.


Sworn to before me
this 30th day of January 1995

_____
      Notary Public

ROBERT W. MURRAY
NOTARY PUBLIC, State of New York
No. 60-4635442
Qualified in Westchester County
Commission Expires March 30, 19 . . .

# EXHIBIT 2

CASE
CLOSED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK                                   9

- - - - - - - - - - - - - - - - x

JOAN L. WEISBERG,                          :

                      Plaintiff,           :

        - vs. -                            :

CRAIG R. BARRETT, WINSTON H. CHEN,         :
ANDREW S. GROVE, D. JAMES GUZY,
GORDON E. MOORE, MAX PALEVSKY,             :        95 Civ. 0674 (DC)
ARTHUR ROCK, JANE E. SHAW, LESLIE
L. VADASZ, DAVID B. YOFFIE,                :
CHARLES E. YOUNG, and
INTEL CORPORATION,                         :

                      Defendants.          :

- - - - - - - - - - - - - - - - x

U. S. DISTRICT COURT
FILED
JAN 19 1996
S. D. OF N. Y.


## ORDER AND FINAL JUDGMENT

         A hearing having been held before this Court on January
12, 1996, pursuant to this Court's Order of November 9, 1995
(the "Scheduling Order"), upon a Stipulation of Settlement dated
September 1, 1995 (the "Stipulation") contemplating the
settlement (the "Settlement") of the above-captioned action (the
"Action") with respect to plaintiff, the class of Intel
Corporation ("Intel") stockholders certified in the Scheduling
Order (the "Settlement Class") and, as to the derivative claims,
the present stockholders of defendant Intel and it appearing that

due notice of said hearing was given in accordance with the Scheduling Order; the respective parties having appeared by their attorneys of record; the Court having heard and considered the evidence in support of the proposed Settlement; the attorneys for the respective parties having been heard; and an opportunity to ~~be~~ heard having been given to all other persons requesting to be *and no substantive objections having* heard in ~~acc~~accordance with the Scheduling Order; ~~the~~ Court having *been* determined that the Notice to the Settlement Class and *received* stockholders of Intel was adequate and sufficient; and the entire matter of the proposed Settlement having been heard and considered by the Court.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    Due and adequate notice of the proceedings having been given to the Settlement Class and stockholders of Intel, with a full opportunity to be heard, it is hereby determined that Intel, the Settlement Class (consisting of all holders of Intel Corporation common stock, other than Defendants, who were entitled to vote at Intel's May 4, 1994 annual stockholders' meeting) and, as to the derivative claims, all Intel stockholders and Intel, are bound by the Order and Final Judgment entered herein.

2.   The Settlement is hereby approved and confirmed as being fair, adequate, reasonable and in the best interest of Intel, the Settlement Class and all of Intel's stockholders.  The parties to the Settlement are directed to consummate the Settlement in accordance with the terms and conditions set forth in the Stipulation, and the Clerk of the Court is directed to enter and docket this Order and Final Judgment.

3.   This Order and Final Judgment shall not constitute any evidence or an admission by any party herein that any acts of wrongdoing have been committed by any of the parties to the Action and shall not be deemed to create any inference that there is any liability therefor.

4.   The Action is hereby dismissed on the merits and with prejudice to plaintiff, the Settlement Class, Intel and, as to the derivative claims, all Intel stockholders and Intel.  Each of the Defendants, their affiliates or associates, and all of their present or former directors, officers, employees, agents, attorneys, stockholders, representatives, trustees, parents, subsidiaries, heirs, executors, administrators, successors and assigns are hereby discharged from any and all claims, rights, demands, suits, matters, issues and causes of action that have been or could have been asserted by the plaintiff, Intel or by

4

any stockholder of Intel, whether directly, representatively, derivatively or individually or in any other capacity in this Action or in any court of competent jurisdiction or arbitration proceeding, in connection with or that arise now or hereafter out of or relate, in any manner, directly or indirectly, to any acts, facts, transactions, occurrences, conduct or representations alleged in this Action, including but not limited to all claims, rights, causes of action or matters asserted in, or that could have been asserted in the Complaint, or that relate or refer to or constitute the subject matter of the Action (the "Settled Claims"). This Judgment shall be final and conclusive with respect to the Settled Claims.

5. The attorney for plaintiff is awarded fees and expenses in the total amount of $ 100,000 , which sum the Court finds to be fair and reasonable, to be paid by Intel in accordance with the terms of the Stipulation.

_____
U.S.D.J.

1/16/96

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 1-22-96.

# EXHIBIT 3

Closed
1-19-96

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

#10

- - - - - - - - - - - - - - - - - - - -

JOAN L. WEISBERG,

                   Plaintiff,

      - vs. -

CRAIG R. BARRETT, WINSTON H. CHEN,
ANDREW S. GROVE, D. JAMES GUZY,
GORDON E. MOORE, MAX PALEVSKY,
ARTHUR ROCK, JANE E. SHAW, LESLIE
L. VADASZ, DAVID B. YOFFIE,
CHARLES E. YOUNG, and
INTEL CORPORATION,

                 Defendants.

95 Civ. 0674 (DC)

- - - - - - - - - - - - - - - - - - - - - - - - x


### AFFIDAVIT OF PUBLICATION

STATE OF TEXAS         )
                             )   ss:
CITY AND COUNTY OF DALLAS)

I, Ruby Iturbe, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL , a daily national newspaper  published and of general circulation in the City and County of New York, New York, City of Naperville, DuPage County, Illinois, and in the city and County of Dallas, Texas and that the attached Notice has been regularly published in THE WALL STREET JOURNAL for national distribution for two insertion(s) on the following date(s):  11-28-95, 11-24-95 advertiser: Intel Corp. and that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

*[signature]*

Sworn to before me this
9th day of January 19 96 .

*[signature]*
Notary Public

JOAN L. WEISBERG,

Plaintiff,

- v.s. -

CRAIG R. BARRETT, WINSTON H. CHEN,
ANDREW S. GROVE, D. JAMES GUZY,
GORDON E. MOORE, MAX PALEVSKY,
ARTHUR ROCK, JANE E. SHAW, LESLIE
L. VADASZ, DAVID B. YOFFIE,
CHARLES E. YOUNG, and
INTEL CORPORATION,

Defendants.

95 Civ. 8674 (DC)

## NOTICE OF PROPOSED SETTLEMENT OF STOCKHOLDER CLASS AND DERIVATIVE ACTION

**TO ALL HOLDERS OF INTEL CORPORATION COMMON STOCK AND ALL HOLDERS OF INTEL CORPORATION COMMON STOCK WHO WERE ENTITLED TO VOTE AT THE 1994 ANNUAL MEETING:**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY LEGAL PROCEEDINGS IN THIS ACTION.

YOU ARE HEREBY NOTIFIED that a hearing (the "Settlement Hearing") will be held on January 12, 1996 at 2:00pm before the Court in Room 11A of the U.S. Courthouse, 500 Pearl Street, New York, New York 10007 about the proposed settlement (the "Settlement") of this action (the "Action").

The Action was brought as a class action on behalf of all holders of Intel Corporation ("Intel") common stock who were entitled to vote at the Intel annual stockholder meeting held on May 4, 1994 (the "Settlement Class") and as a derivative action on behalf of Intel itself. The Complaint claims that the defendants, who are Intel and all of its directors, disseminated a misleading proxy statement in 1994 concerning Intel's "Executive Officer Bonus Plan" (the "Plan") and that payments under the Plan are or will be a waste of corporate assets (collectively, the "Claims").

Subsequent to the filing of the Complaint and precipitated in part thereby, the individual defendants, in their capacities as directors of Intel, amended and restated the company's Executive Officer Bonus Plan effective January 1, 1995 (the Restated Bonus Plan) to clarify the formula by which the performance-based bonus payments are calculated. The Restated Bonus Plan was submitted to Intel's stockholders for approval pursuant to an Intel proxy statement dated March 14, 1995 (the "1995 Proxy Statement") and the Restated Bonus Plan was approved by the Intel stockholders at their annual meeting on April 26, 1995.

Defendants have vigorously denied, and continue to deny, all liability with respect to the Claims and deny that they have acted improperly in any way. However, to avoid burdensome and protracted litigation, the parties agreed to a Stipulation of Settlement dated September 1, 1995 (the "Stipulation"). The Settlement resolves the Claims and other claims, known or unknown at this time, that relate to the subject matter of the Action (the "Settled Claims"). No money or other financial consideration will be paid to members of the Settlement Class, to any Intel stockholders or to Intel under the Settlement.

The Stipulation provides, among other things, (i) that the 1994 Intel Executive Officer Bonus Plan is cancelled, is of no effect for any period after December 31, 1994 and is superseded by the Restated Bonus Plan; (ii) the bonus payments made to Intel Executive Officers for 1994 described in Intel's 1995 proxy statement, were fair and reasonable to Intel and were not a gift or a waste of assets; and (iii) that the description of the Restated Bonus Plan for Intel's 1995 proxy statement properly disclosed to Intel stockholders the material terms of the Restated Bonus Plan.

If the Settlement is approved, the Action will be dismissed with prejudice as to the Settlement Class, Intel and present Intel stockholders. Also, if the Settlement is approved the Settled Claims shall be completely and finally compromised and released as to all defendants and their affiliates, agents and assigns.

The Settlement also provides that plaintiff's counsel may apply to the Court for an award of attorneys' fees and expenses in an amount not to exceed $100,000.00, which application defendants shall not oppose. Intel, on behalf of all defendants, has agreed to pay the fees and expenses actually awarded by the Court up to that amount.

The purpose of the Settlement Hearing is to (1) determine whether the Stipulation and the terms and conditions of the Settlement should be approved as fair, reasonable and adequate and is in the best interest of the Settlement Class, Intel and its stockholders; (2) whether the Action should be dismissed on the merits and with prejudice against plaintiff, the Settlement Class, Intel and its stockholders; and (3) to determine the reasonableness of plaintiff's attorney's application for the payment of fees and expenses.

Any current Intel stockholder or Settlement Class member who objects to the Stipulation, the Settlement, the application for fees and expenses or who otherwise wishes to be heard, may appear at the Settlement Hearing in person or by an attorney and present any evidence or argument that may be proper and relevant. Provided, however, that no person other than the plaintiff and the defendants shall be heard and no papers, briefs, pleadings or other documents submitted by any such person shall be received and considered by the Court unless the Court shall in its discretion otherwise direct, upon application of such person and for good cause shown), unless no later than ten business days before the Settlement Hearing, such person files with the Clerk of the Court (i) a written statement of such person's name, address, phone number, the number of shares of Intel stock such person owns and the objections to or comments on the proposed settlement or other matters before the Court, and (ii) supporting papers (including all documents and writings which such person desires the Court to consider). The objector must also mail, post-marked no later than December 26, 1995, or hand delivered no later than January 2, 1996, such written statements and supporting papers to the following counsel of record:

A. Arnold Gershon, Esq.
A. ARNOLD GERSHON, P.C.
285 Madison Avenue
New York, NY 10017
Attorney for Plaintiff and
the Settlement Class

David E. Massengill, Esq.
SIMPSON THACHER
& BARTLETT
(a partnership which includes
professional corporations)
Office and P.O. Address
425 Lexington Avenue
New York, NY 10017-3954
Attorneys for Intel Corporation

Allan Horwich, Esq.
SCHIFF HARDIN & WAITE
7200 Sears Tower
Chicago, IL 60614-6473
Attorney's for Individual Defendants Barrett, Grove,
Moore and Vadasz

M. Laurence Popofsky, P.C.
HELLER, EHRMAN, WHITE &
McAULIFFE
333 Bush Street
31st floor
San Francisco, CA 94104-3878
Attorneys for Individual Defendants Chen, Guzy, Palevsky,
Rock, Shaw, Yoffie and Young

Anyone who does not object in this manner shall be deemed to have waived such objection and shall be forever barred from raising such objection in this or any other action or proceeding.

The above is only a summary of the proposed settlement. A copy of the Stipulation and other papers on file in this litigation may be inspected at the office of the Clerk of the Court, United States District Court, Southern District of New York, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. PLEASE DO NOT CALL THE CLERK OF THE COURT OR THE COURT.

Dated: New York, New York
November 9, 1995

THE WALL STREET JOURNAL TUESDAY, NOVEMBER 28, 1995    B15



TO ADVERTISE,
Call toll free:
1-800-FONE WSJ
(1-800-366-3975)

---

## LEGAL NOTICES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOAN L. WEISBERG,                                     Plaintiff,

— v.s. —

CRAIG R. BARRETT, WINSTON H. CHEN,
ANDREW S. GROVE, D. JAMES GUZY,
GORDON E. MOORE, MAX PALEVSKY,
ARTHUR ROCK, JANE E. SHAW, LESLIE      95Civ.9674 (DC)
L. VADASZ, DAVID B. YOFFIE,
CHARLES E. YOUNG, and
INTEL CORPORATION,

                                                    Defendants.

### NOTICE OF PROPOSED SETTLEMENT OF STOCKHOLDER CLASS AND DERIVATIVE ACTION

TO ALL HOLDERS OF INTEL CORPORATION COMMON STOCK
AND ALL HOLDERS OF INTEL CORPORATION COMMON
STOCK WHO WERE ENTITLED TO VOTE AT THE 1994 ANNUAL
MEETING.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS
ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY LEGAL
PROCEEDINGS IN THIS ACTION.

YOU ARE HEREBY NOTIFIED that a hearing (the "Settlement
Hearing") will be held on January 12, 1996 at 2:00pm before the
Court in Room 11A of the U.S. Courthouse, 500 Pearl Street, New
York, New York 10007 about the proposed settlement (the "Settlement") of this action (the "Action").

The Action was brought as a class action on behalf of all holders of Intel Corporation ("Intel") common stock who were entitled
to vote at the Intel annual stockholder meeting held on May 4, 1994
(the "Settlement Class") and as a derivative action on behalf of
Intel itself. The complaint claims that the defendants, who are
Intel and all of its directors, disseminated a misleading proxy
statement in 1994 concerning Intel's "Executive Officer Bonus
Plan" (the "Plan") and that payments under the Plan are or will
be a waste of corporate assets (collectively, the "Claims").

Subsequent to the filing of the Complaint and precipitated in
part thereby, the individual defendants, in their capacities as directors of Intel, amended and restated the company's Executive
Officer Bonus Plan effective January 1, 1995 (the Restated Bonus
Plan) to clarify the formula by which the performance-based
bonus payments are calculated. The Restated Bonus Plan was
submitted to Intel's stockholders for approval pursuant to an
Intel proxy statement dated March 14, 1995 (the "1995 Proxy Statement"), and the Restated Bonus Plan was approved by the Intel
stockholders at their annual meeting on April 26, 1995.

Defendants have vigorously denied, and continue to deny, all
liability with respect to the Claims and deny that they have acted
improperly in any way. However, to avoid burdensome and protracted litigation, the parties agreed to a Stipulation of Settlement dated September 1, 1995 (the "Stipulation"). The Settlement
resolves the Claims and other claims, known or unknown at this
time, that relate to the subject matter of the Action (the "Settled
Claims"). No money or other financial consideration will be paid
to members of the Settlement Class, to any Intel stockholders or to
Intel under the Settlement.

The Stipulation provides, among other things: (i) that the 1994
Intel Executive Officer Bonus Plan is cancelled, is of no effect for
any period after December 31, 1994 and is superseded by the Restated Bonus Plan; (ii) the bonus payments made to Intel Executive Officers for 1994 described in Intel's 1995 proxy statement
were fair and reasonable to Intel and were not a gift or a waste of
assets; and (iii) that the description of the Restated Bonus Plan
for Intel's 1995 proxy statement properly disclosed to Intel
stockholders the material terms of the Restated Bonus Plan.

If the Settlement is approved, the Action will be dismissed with
prejudice as to the Settlement Class, Intel and present Intel stockholders. Also, if the Settlement is approved the Settled Claims
shall be completely and finally compromised and released as to
all defendants and their affiliated agents and assigns.

The Settlement also provides that plaintiff's counsel may apply
to the Court for an award of attorneys' fees and expenses in an
amount not to exceed $110,000, to which application the defendants
shall not oppose. Intel has agreed that, if defendants have agreed
to pay the fees and expenses, if any, awarded by the Court up to
that amount.

For the purpose of the Settlement Hearing is to (1) determine
whether the Stipulation and the terms and conditions of the Settlement should be approved as fair, reasonable and adequate and
in the best interests of the Settlement Class, Intel and its stockholders; (2) whether the Action should be dismissed on the merits
and with prejudice against plaintiff, the Settlement Class, Intel
and its stockholders; and (3) to determine the reasonableness of
plaintiff's attorney's application for the payment of fees and expenses.

Any current Intel stockholder or Settlement Class member who
objects to the Stipulation, the Settlement, the application for fees
and expenses, or who otherwise wishes to be heard, may appear at
the Settlement Hearing in person or by an attorney and present
any evidence or argument that may be proper and relevant. Provided, however, that no person other than the plaintiff and the defendants shall be heard and no papers, briefs, pleadings or other
documents submitted by any such person will be received and
considered by the Court (except the Court shall, in its discretion,
otherwise direct), upon application of such person and for good
cause shown, unless, not later than ten business days before the
Settlement Hearing, such person files with the Clerk of the Court
(1) a written statement of such person's name, address, phone
number, the number of shares of Intel stock such person owns and
the objections to or comments on the proposed settlement or other
matters before the Court, and (2) supporting papers (including
all documents and writings which such person desires the Court to
consider). The objector must also mail, post-marked no later than
December 26, 1995, or hand delivered no later than January 2, 1996
such written statements and supporting papers to the following
counsel of record:

A. Arnold Gershon, Esq.                 Allan Horwich, Esq.
A. ARNOLD GERSHON, P.C.                  SCHIFF HARDIN & WAITE
225 Madison Avenue                       7200 Sears Tower
New York, NY 10017                       Chicago, IL 60604-3473
Attorney for Plaintiff and               Attorney's for Individual De-
the Settlement Class                     fendants Barrett, Grove,
                                         Moore and Vadasz
David E. Massengill, Esq.
SIMPSON THACHER                          M. Laurence Popofsky, P.C.
& BARTLETT                               HELLER, EHRMAN, WHITE &
(a partnership which includes            McAULIFFE
professional corporations)               333 Bush Street
Office and P.O. Address                  31st floor
425 Lexington Avenue                     San Francisco, CA 94104-3876
New York, NY 10017-3954                  Attorneys for Individual De-
Attorneys for Intel Corporation          fendants Chen, Guzy, Palevsky,
                                         Rock, Shaw, Yoffie and Young

**th**

CHARLES A. YOUNG, and
INTEL CORPORATION,

## NOTICE OF PROPOSED SETTLEMENT OF STOCKHOLDER CLASS AND DERIVATIVE ACTION

TO ALL HOLDERS OF INTEL CORPORATION COMMON STOCK AND ALL HOLDERS OF INTEL CORPORATION COMMON STOCK WHO WERE ENTITLED TO VOTE AT THE 1994 ANNUAL MEETING:

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY LEGAL PROCEEDINGS IN THIS ACTION.

YOU ARE HEREBY NOTIFIED that a hearing (the "Settlement Hearing") will be held on January 12, 1996 at 2:00pm before the Court in Room 11A of the U.S. Courthouse, 500 Pearl Street, New York, New York 10007 about the proposed settlement (the "Settlement") of this action (the "Action").

The Action was brought as a class action on behalf of all holders of Intel Corporation ("Intel") common stock who were entitled to vote at the Intel annual stockholder meeting held on May 4, 1994 (the "Settlement Class") and as a derivative action on behalf of Intel itself. The complaint claims that the defendants, who are Intel and all of its directors, disseminated a misleading proxy statement in 1994 concerning Intel's "Executive Officer Bonus Plan" (the "Plan") and that payments under the Plan are or will be a waste of corporate assets (collectively, the "Claims").

Subsequent to the filing of the Complaint and precipitated in part thereby, the individual defendants, in their capacities as directors of Intel, amended and restated the company's Executive Officer Bonus Plan effective January 1, 1995 (the Restated Bonus Plan) to clarify the formula by which the performance-based bonus payments are calculated. The Restated Bonus Plan was submitted to Intel's stockholders for approval pursuant to an Intel proxy statement dated March 14, 1995 (the "1995 Proxy Statement") and the Restated Bonus Plan was approved by the Intel stockholders at their annual meeting on April 28, 1995.

Defendants have vigorously denied, and continue to deny, all liability with respect to the Claims and deny that they have acted improperly in any way. However, to avoid burdensome and protracted litigation, the parties agreed to a Stipulation of Settlement dated September 1, 1995 (the "Stipulation"). The Settlement resolves the Claims and other claims, known or unknown at this time, that relate to the subject matter of the Action (the "Settled Claims"). No money or other financial consideration will be paid to members of the Settlement Class, to any Intel stockholders or to Intel under the Settlement.

The Stipulation provides, among other things: (i) that the 1994 Intel Executive Officer Bonus Plan is cancelled, is of no effect from December 31, 1994 and is superseded by the Restated Bonus Plan; (ii) the bonus payments made to Intel Executive Officers for 1994 described in Intel's 1995 proxy statement were fair and reasonable to Intel and were not a gift or a waste of assets; and (iii) that the description of the Restated Bonus Plan for Intel's 1995 proxy statement properly disclosed to Intel stockholders the material terms of the Restated Bonus Plan. If the Settlement is approved, the Action will be dismissed with prejudice as to the Settlement Class, Intel and present Intel stockholders. Also, if the Settlement is approved, the Settled Claims shall be completely and finally compromised and released as to all defendants and their affiliates, agents and assigns.

The Settlement also provides that plaintiff's counsel may apply to the Court for an award of attorneys' fees and expenses in an amount not to exceed $190,000 as to which application defendants shall not oppose. Intel, on behalf of all defendants, has agreed to pay the fees and expenses actually awarded by the Court up to that amount.

The purpose of the Settlement Hearing is to (1) determine whether the Stipulation and the terms and conditions of the Settlement should be approved as fair, reasonable and adequate and in the best interests of the Settlement Class, Intel and its stockholders; (2) whether the Action should be dismissed on the merits and with prejudice against plaintiff, the Settlement Class, Intel and its stockholders; and (3) to determine the reasonableness of plaintiff's attorneys' application for the payment of fees and expenses. ...

... Any Intel stockholder or Settlement Class member who ... to the Stipulation, the Settlement, the application for fees ... expenses, or who otherwise wishes to be heard may appear ... any evidence, bearing on the propriety or amount relevant. Provided, however, that no person other than the plaintiff and the defendants and their counsel may attend the Settlement Hearing. ... Settlement Hearing, not less than ten business days before the Settlement Hearing, ... with the Clerk of the Court, (i) a written statement of such person's name, address, phone number, the number of shares of Intel stock such person owns and the objections to or comments on the proposed settlement or other matters before the Court; and (ii) supporting papers (including all documents and writings which such person desires the Court to consider). The objector must also mail, post-marked no later than December 26, 1995, or hand delivered no later than January 2, 1996, such written statements and supporting papers to the following counsel of record:

| | |
|---|---|
| A. ARNOLD GERSHON, Esq. | Allan Horwich, Esq. |
| A. ARNOLD GERSHON, P.C. | SCHIFF HARDIN & WAITE |
| 235 Madison Avenue | 7200 Sears Tower |
| New York, NY 10017 | Chicago, IL 60606-6473 |
| Attorneys for Plaintiff and | Attorneys for Individual Defendants Barrett, Grove, |
| the Settlement Class | Moore and Vadasz |
| David E. Massengill, Esq. | |
| SIMPSON THACHER | M. Laurence Popofsky, P.C. |
| & BARTLETT | HELLER, EHRMAN, WHITE & |
| (a partnership which includes | McAULIFFE |
| professional corporations) | 333 Bush Street |
| Office and P.O. Address | 31st Floor |
| 425 Lexington Avenue | San Francisco, CA 94104-2878 |
| New York, NY 10017-3954 | Attorneys for Individual Defendants Chen, Guzy, Palevsky, |
| Attorneys for Intel Corporation | Rock, Shaw, Yoffie and Young |

Anyone who does not object in this manner shall be deemed to have waived such objection and shall be forever barred from raising such objection in this or any other action or proceeding.

The above is only a summary of the proposed settlement. A copy of the Stipulation and other papers on file in this litigation may be inspected at the office of the Clerk of the Court, United States District Court, Southern District of New York, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. PLEASE DO NOT CALL THE CLERK OF THE COURT OR THE COURT.

Dated: New York, New York
November 9, 1995

---

In the Matter of the Application of NEIL D. LEVIN, as Acting Superintendent of Banks of the State of New York, for court approval, pursuant to Sections 606 and 618 of the New York Banking Law of a plan of (1) liquidation or otherwise dealing with the business and property of, or (2) purchase of the business and assumption of liabilities of Nationar, a New York State-chartered trust company,

Petitioner,

-against-

Respondent.

Index No. 103081/95
(Justice Shainswit)

## NOTICE IN CONNECTION WITH THE LIQUIDATION OF NATIONAR BY THE SUPERINTENDENT OF BANKS OF THE STATE OF NEW YORK

On December 11, 1995, at 10:00 a.m., at IAS Part 30 of the Supreme Court of the State of New York, County of New York, 60 Centre Street, New York City, New York, Room 222, the Honorable Justice Beatrice Shainswit will hear an application by the Superintendent of Banks for the State of New York (the "Superintendent") for authorization and approval of the payment, out of Nationar's assets, of compensation for professional services rendered and reimbursement for disbursements incurred by law professional firms who rendered legal or accounting or financial advice during the period February 6, 1995 to July 31, 1995, and for the approval for procedures with respect to notice and the filing of future applications for compensation and reimbursement of such professional services and disbursements. A copy of the motion and supporting papers for the authorization of the above is available from the special counsel to the Superintendent, Fried, Frank, Harris, Shriver & Jacobson, One New York Plaza, New York, New York 10004, attention: Tracey Polsto at 212-859-8340. All interested parties may attend.

AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK    )
                     :  ss.:
COUNTY OF NEW YORK   )

    Barbara Mobiley            , being duly sworn, deposes and says:

    I am over the age of eighteen (18) years and am not a party to this action.

    On the 11th day of January , 1996 , I served a copy of the annexed AFFIDAVIT OF PUBLICATION upon:

M. Laurence Popofsky, Esq.          Allan Horwich, Esq.
HELLER EHRMAN, WHITE            SCHIFF, HARDIN & WHITE
  & McCAULIFFE                   7200 Sears Tower
333 Bush Street, 31st Fl.         Chicago, IL 60606-6473
San Francisco, CA 94104-2878

by depositing a true copy of the same in a properly addressed postpaid wrapper in a regularly maintained official depository under exclusive care and custody of the United States Post Office Department located in the City, County and State of New York.

                              _Barbara Mobiley_

Sworn to before me this

11th day of January , 19 96 .

_Peter Godfrey_
NOTARY PUBLIC

PETER GODFREY
NOTARY PUBLIC, State of New York
No. 01GO5025733 Qualified in Nassau County
Certificate filed in New York County
Commission Expires April 4, 19 96

# EXHIBIT 4

http://www.fasb.org/board_meeting_minutes/07-27-04_interpst109.pdf

**MINUTES**

 **Financial Accounting
Standards Board**

**To:**      Board Members

**From:**    Short-Term Convergence—Income
             Tax Team (Gagon, Ext. 322)

**Subject:**  Minutes of the July 27, 2004     **Date:**   August 2, 2004
             Board Meeting

**cc:**      Bielstein, Smith, Petrone, Leisenring, FASB Project Team, IASB Project
             Team, Mahoney, Thompson, Vincent, Sutay, Gabriele, Swift, Polley,
             Posta, FASB Intranet (e-mail)


<u>Topic</u>:                           Recognition of Tax Benefits

<u>Basis for Discussion</u>:            Board memorandum 5 (Proposed FSP
                                        FAS 109-a)
                                        dated July 16, 2004

<u>Length of Discussion</u>:           11:10 a.m. to 12:20 p.m. (EST)

<u>Attendance</u>:

    Board members present:          Herz, Trott, Schipper, Batavick, Crooch,
                                        Seidman, and Schieneman

    Board members absent:           None

    Staff in charge of topic:       Thomas

    Other staff at Board table:     Smith, Cassel, Golden, Gagon

    Outside participants:           Leisenring (IASB), Bugg (IASB staff, by
                                        phone)

Page 2

## Summary of Decisions Reached:

The Board discussed several issues relating to (1) the recognition and measurement of tax benefits (including those related to uncertain tax positions), (2) the subsequent accounting for those benefits, (3) classification and disclosure of those benefits in financial statements, (4) interim reporting considerations, and (5) effective date and transition requirements.

The Board made the following decisions at this meeting:

1. Require a *probable* level of confidence before reflecting a tax benefit in an entity's financial statements. *Probable* is meant to have the same meaning as used in FASB Statement No. 5, *Accounting for Contingencies.*

2. The amount of liability recorded, if any, reflecting the difference between the "as filed" tax basis and the tax basis meeting the probable level of confidence should not be recorded as a deferred tax liability, but should be recorded as a current liability in the financial statements.

3. Constituents should refer to paragraph 17 of Statement 5 for disclosure requirements associated with any recognized liabilities.

4. Recognition of a tax benefit should occur when the *probable* threshold is met and derecognition should occur when the *probable* threshold is no longer met.

5. The staff should discuss the accounting for interest and penalties with the IASB to determine if any convergence issues exist.

6. Changes in judgment about realizability of a tax benefit should be recognized in the current interim period and not be spread over future interim periods.

The Board also considered whether to direct the staff to issue a proposed FSP concerning those issues but decided instead to add a project to its agenda and directed the staff to prepare a proposed Interpretation, which gives the Board the opportunity to include a basis for conclusions section. The Board decided that the comment period for the proposed Interpretation should be 60 days. Furthermore, the Board decided that an entity should recognize the cumulative

Page 3

effect of initially applying the proposed Interpretation as a change in accounting principle with a cumulative-effect adjustment in the statement of operations. The Board directed the staff to further research issues related to the effective date.

**Objective of Meeting:**

The objective of the meeting was for the Board to determine the proper accounting for (1) the recognition and measurement of tax benefits (including those related to uncertain tax positions), (2) the subsequent accounting for those benefits, (3) classification and disclosure requirements of those benefits in financial statements, and (4) related interim reporting considerations. The objective of the meeting was met.

**Matters Discussed and Decisions Reached:**

The following paragraphs contain a brief background of the issues as discussed at the Board meeting and any decisions made by the Board concerning those issues.

**Background**

Mr. Thomas began the meeting by providing the background to the recognition of tax benefits (including those related to uncertain tax positions) in financial statements. He stated that while the issues being presented to the Board were raised in the context of tax advantaged transactions or uncertain tax positions; the staff believes that the guidance promulgated by the Board should apply equally to all deferred tax assets or benefits.

Mr. Thomas stated that uncertain tax positions can arise from so-called "tax-advantaged transactions," aggressive filing positions, clerical errors, or other more routine vagaries of tax law. Furthermore, tax benefits may arise as a result of (1) initial recognition of a deductible temporary difference or reduction in a taxable temporary difference or (2) recognition of an income tax receivable or a

Page 4

reduction in income taxes currently payable with no corresponding deferred tax liability.

Mr. Thomas said that the staff does not intend to ask the Board to promulgate guidance on what level of confidence financial statement issuers must meet to recognize positions in tax returns. Rather, the staff intends for the Board to promulgate guidance on the level of confidence of tax positions in tax returns that are required in order to qualify as temporary differences for financial reporting purposes.

**Initial Recognition Criteria**

Mr. Thomas stated that the staff recommends that deferred tax assets continue to be evaluated using an impairment approach. He also stated that the staff recommends that the FASB promulgate guidance which requires that tax benefits be recognized based on tax positions in tax returns that are probable of being sustained on audit. Mr. Golden clarified that probable in this sense is meant to have the same meaning as probable in paragraph 17 of Statement 5.

Ms. Seidman stated that some preparers are recognizing tax benefits in the financial statements from a "should" level tax opinion; she asked if there is any relationship between a "should" level tax opinion and "probable" level of GAAP. Mr. Thomas said that it is the staff's understanding that those two levels approximate one another. Mr. Golden stated that the staff has spoken with the Public Company Accounting Oversight Board (PCAOB) and the thought is that the FASB could promulgate accounting guidance for tax benefits, but that the level of evidence or required tax opinion level would be left to the PCAOB as an audit issue.

Mr. Trott stated that he believes that this issue is incorporating into an on/off switch uncertainty as to whether a tax position or tax basis is correct or not, so he believes that a Statement 5 probable threshold is appropriate. He stated that he believes it would be more practical to state that probable is the appropriate recognition threshold but that probable is meant to be a similar level as a

Page 5

"should" level tax opinion. He believes by stating that these two terms are meant to have similar meanings, there would be communication between the two parties (financial and tax accountants), and how to apply guidance would be more clear. He supports having a threshold and supports probable as being that threshold.

Ms. Schipper asked if the "should" opinion is sufficient or is necessary. Mr. Golden stated that if the literature discussed an unqualified "should" level opinion, a "should" opinion would be sufficient but it may not be necessary because the scope of this is dealing with all tax benefits. Some tax benefits are explicitly allowed under current tax law, and he believes it would not be appropriate to require a "should" level opinion for positions explicitly allowed by tax law before they can be recognized in the financial statements.

Ms. Schipper stated that a "should" opinion should only be discussed in the basis for conclusions. However, she would not suggest that the FASB say that a "should" opinion is equal to the probable threshold.

All members agreed with the staff's recommendation that Statement 5 probable should be used as a recognition threshold for recognizing tax benefits in the financial statements.

**Classification**

Mr. Thomas stated that the question of classification is being addressed in the context of tax benefits that have been recognized in a tax return and do not meet a level of confidence consistent with Statement 5 probable. The question is therefore how to classify the liabilities recognized pursuant to this guidance related to so-called aggressive filing positions. Mr. Thomas stated that the staff does not believe these amounts should be recorded as deferred tax liabilities, because the amount is more accurately described as an inappropriate deduction and receipt of cash and, therefore, is not a deferred tax liability. The staff recommended that the amount be recognized as a regular tax liability that is classified as a current liability.

Page 6

The Board unanimously agreed with the staff that these liabilities are not deferred tax liabilities. However, some Board members expressed concern in classifying the liability as a current liability. Mr. Batavick stated that these types of issues take years to resolve, which would not cause a draw on current assets. Therefore, he is concerned with booking these liabilities as current if they may in fact be resolved a few years in the future. He believes companies should be allowed to decide if these liabilities will be resolved in the near or long term and classify the liability accordingly.

Mr. Trott stated that there are two things to consider when classifying a liability as current. First, whether or not the liability arose as part of a normal business cycle, or second, that the liability will be due within twelve months. He stated that he believed taxes arise because of the normal business cycle of an entity and should, therefore, be classified as a current liability. Additionally, he stated that if an entity had a scheduled payment with the taxing authorities, then an entity would be able to determine if it is current or noncurrent; however, without a scheduled payment, these liabilities could come due at any time.

Mr. Herz stated that he is hesitant on calling these current liabilities simply because they fail to meet the threshold for asset recognition. He agrees with Mr. Batavick and would leave judgment to the entity to determine if the liability is current or noncurrent.

Ms. Schipper stated that it is only because of limits on a revenue agent and its schedule that an entity is able to forebear paying the liability. If revenue agents weren't limited, it is likely that these liabilities would be settled in the current period. These liabilities could be recorded like a "due-on-demand note." Ms. Schipper stated that she agreed with the staff's recommendation that these liabilities should be recorded as current liabilities.

Ms. Seidman pointed out that Chapter 3 of ARB No. 43, *Restatement and Revision of Accounting Research Bulletins,* (paragraph 7) states:

Page 7

The term *current liabilities* is used principally to designate obligations…and debts which arise from operations directly related to the operating cycle, such as accruals for wages, salaries …and income and other taxes.

The Board decided to record these as regular liabilities and to classify them as current in the financial statements.

## Disclosure

Mr. Thomas stated that the staff believes there are two disclosure issues—both relating to the disclosure of potential future benefits as a result of aggressive filing positions in past returns.  First, the disclosure of the amount of the recorded liability for an aggressive filing position.   Second, the disclosure of the unrecorded deferred tax asset since the asset did not meet the required confidence level to be recorded.  Given that a future benefit may result from a prior transaction, the staff recommends that financial statement users be provided with the information.

The Board generally disagreed with the staff's recommendation concerning disclosures.  The Board believes that there is no need for disclosure since a current liability has already been recognized in the financial statements.  The Board believes that the current liability arises because the threshold for asset recognition has not been met; if the threshold is subsequently met, an asset will be recognized in the financial statements.  Therefore, the Board believes these current liabilities should be reported in a similar manner as gain contingencies in Statement 5 and would direct entities to look to Statement 5 for guidance on the requisite disclosures associated with these transactions.

## Subsequent Recognition

Mr. Thomas stated that when an issuer concludes that a tax benefit does not qualify for initial recognition, the question arises of when and how to subsequently recognize the tax benefit.   Additionally, if an asset was initially

Page 8

recognized and subsequent events indicate the asset is not realizable, the question arises of how to impair or derecognize the asset. The staff recommended that tax benefits be recognized at any time in which the recognition threshold is met and derecognized when the threshold is no longer met.

Mr. Thomas stated further that there are two views concerning this issue. The first view is the one that the staff recommends. The second view is that once tax benefits have been booked as assets, then they should only be impaired when it becomes probable that they will no longer be realized. The second approach is more akin to the impairment approach under Statement 5.

Mr. Herz asked how valuation allowances play into this issue. Mr. Thomas responded by stating that a valuation allowance is used to reduce a legitimate tax asset when it becomes more likely than not that and entity will not have sufficient taxable income in the future to realize the asset. This issue addresses whether or not a legitimate asset exists in the first place.

Mr. Cassel pointed out that one of the issues, at least historically, the Board has had to address is that small changes in confidence levels can introduce a level of volatility in financial reporting that is unacceptable. The Board may have to address this issue again if it chooses to adopt the staff's recommendation and use probability as an on/off switch for recognition and derecognition.

The Board accepted the staff's recommendation to recognize assets when a probable threshold has been met and to derecognize the assets when that threshold is no longer met. The Board believes this is a more symmetrical answer than recognizing an asset and then derecognizing the asset when it becomes probable that the asset will not be realized (Statement 5 approach).

**Interest and Penalties**

Mr. Thomas stated that the staff believes that interest is more properly classified as a financing cost of an entity and recommended that interest on additional tax

Page 9

liabilities should be classified as interest expense in the statement of operations. Furthermore, he stated that the staff does not believe that detailed guidance concerning penalties is necessary and that any reasonable allocation method, applied consistently, would be acceptable.

The Board generally agreed with the staff recommendation; however, the Board directed the staff to talk with the IASB to determine if there are any convergence issues.  If any convergence issues exist, the FASB and IASB should jointly address those issues.  However, if no convergence issues exist concerning interest and penalties, the Board believes the FASB does not need to address this issue further.

**Interim Reporting**

Mr. Thomas stated that consistent with paragraph 194 of FASB Statement No. 109, *Accounting for Income Taxes,* the staff does not believe that it is appropriate to spread the effect of changes in judgments—that, by definition, occur at a discrete point during the year—over future interim periods.

The Board unanimously agreed with the staff's recommendation and believes that GAAP is already clear on this issue.  Therefore, the GAAP guidance can be reiterated, but the Board does not believe anything new needs to be addressed.

**Form of Guidance**

Mr. Thomas indicated that the staff had proposed to issue a Board-directed FSP; however, it has become clear that this is not the preferable form of guidance for these issues.

The Board decided to elevate these issues to an Interpretation due to the magnitude and prominence of the issues.  Furthermore, an Interpretation can have a basis for conclusions that will allow the Board to delineate its thinking concerning these issues.

**Effective Date and Transition**

Page 10

The Board decided that the Interpretation should have a comment period of 60 days. Furthermore, the Board decided that an entity should recognize the cumulative effect of initially applying the proposed Interpretation as a change in accounting principle with a cumulative-effect adjustment in the statement of operations.

The Board discussed making the Interpretation effective for either fiscal years beginning after January 2005 or periods ending on or after March 31, 2005. It was unclear the amount of time that would be feasible for entities to make the necessary changes. Therefore, the staff was directed to perform additional research on issues related to the effective date and transition requirements and discuss that research with the Board at a later date.

**Follow-up Items:**

The staff was directed to perform additional research on issues related to the effective date and transition requirements and discuss that research with the Board at a later date.

**General Announcements:**

None

# EXHIBIT 5

http://www.iasb.org/uploaded_files/documents/8_1058_0506ob11b.pdf



**30 Cannon Street, London EC4M 6XH, England**
**Phone: +44 (0)20 7246 6410, Fax: +44 (0)20 7246 6411**
**Email: iasb@iasb.org   Website: http://www.iasb.org**

**International**
**Accounting Standards**
**Board**

This document is provided as a convenience to observers at IASB meetings, to assist them in following the Board's discussion. It does not represent an official position of the IASB. Board positions are set out in Standards.

Note: These notes are based on the staff paper prepared for the IASB. Paragraph numbers correspond to paragraph numbers used in the IASB paper. However, because these notes are less detailed, some paragraph numbers are not used.

## INFORMATION FOR OBSERVERS

**IASB Meeting:**          **June 2005, London**

**Project:**               **Short-term convergence: income taxes – uncertain tax positions (Agenda Paper 11B)**

## PURPOSE

1.   The FASB expects to publish an Exposure Draft in June 2005 of an Interpretation of FASB Statement No. 109, *Accounting for Income Taxes*. At their February 2005 meeting, the IASB was advised of the FASB deliberations on uncertain tax positions. The IASB confirmed that they would consider the issues within the FASB's Uncertain Tax Positions' project. The conclusions reached by the IASB would be included in its forthcoming exposure draft of amendments to IAS 12.

2.   The purpose of this memorandum is to present for the IASB's consideration the issues that the FASB considered within its Uncertain Tax Positions project. The FASB staff has completed a staff draft (Agenda Paper 11B appendix) that, as of the date of this memorandum, is being reviewed by the FASB, audit practitioners, U.S. based multinational

preparers (IBM, Proctor & Gamble, Intel, and PepsiCo), and the SEC staff.  Since the basis for conclusions in the Exposure Draft details the alternatives considered by the FASB, the staffs are not providing staff analysis of the alternatives.  [Not reproduced in observer notes] This memo is organized as follows:

    a.  Summary of FASB tentative decisions as reflected by the staff draft of the proposed Interpretation, *Uncertain Tax Positions* and questions for the IASB to consider as a result of the FASB's decisions

    b.  Question for the IASB to consider as a result of disclosure requirements of IAS 12 that are different than Statement 109.

## Summary of FASB's Tentative Decisions on Uncertain Tax Positions and questions for the IASB

3.    The following table summarizes the FASB's tentative decisions made to date on the uncertain tax positions project and asks the Board a question on each topic.  The staffs are recommending that the Board accept the FASB's tentative decisions on uncertain tax positions.

| Questions for the IASB | FASB Conclusions |
| --- | --- |
| Does the IASB agree with the staffs' recommendation to accept the FASB's conclusion on **Initial and Subsequent Recognition?** | <ul><li>An enterprise must establish that it is probable[1] in the Statement 5 context (meaning that "the future event or events are likely to occur") that a position taken (or expected to be taken) regarding a tax deduction, credit, or filing position would be sustained if challenged by taxing authorities prior to the tax benefit from that position being recognised as a benefit or reduction of tax expense in the financial statements.</li><li>An enterprise must presume that a taxing authority will review a tax position when evaluating whether the position is probable of being sustained.  Therefore, consideration of the risk of detection is inappropriate.</li><li>The enterprise shall recognise the tax position in any subsequent period that it become probable that the tax position will be sustained.</li></ul> |
| Does the IAB agree with the staffs' recommendation to accept with the FASB's conclusion on **Initial Measurement?** | Two step model: after the recognition threshold is met, use the best estimate (based on question 17 of *Q&A 109—A Guide to Implementation of Statement 109 on Accounting for Income Taxes:  Questions and Answers* and Issue 93-7)[2] to measure the amount of the benefit to be recognised. |

---

[1] This threshold is similar to the IASB's "highly probable" criterion.

[2] Q&A 17 prescribes the use of a best estimate for uncertainties around tax basis in a business combination.  EITF 93-7 extended the best estimate methodology more broadly.

2

| | |
|---|---|
| Does the IASB agree with the staff's recommendation to accept the FASB's conclusion on **Derecognition?** | Derecognise a tax position when it is more likely than not that the position will not be sustained. |
| Does the IASB agree with the staff's recommendation to accept the FASB's conclusion on **Classification?** | Classify the liability that results from the difference between the probable tax basis in the financial statements and the as-filed tax basis as a current liability to the extent that cash is expected to be paid within one year or the operating cycle, if longer. |
| Does the IASB agree with the staff's recommendation to accept the FASB's conclusion on **Disclosures?** | The FASB elected not to add any new disclosures as a result of this proposed Interpretation. Rather, the proposed Interpretation will refer to the paragraph 17 of Statement 5 for appropriate disclosures. The amendment to IAS 12 would refer to the requirements of paragraph 116 of IAS 1 which relate to estimation uncertainty (see discussion below). |
| Does the IASB agree with the staff's recommendation to accept the FASB's conclusion on **Interim Periods?** | Changes in estimate of the amount to be sustained (whether from recognition or measurement) for tax positions from prior annual periods should be taken as a discrete item in the period of change. |
| Does the IASB agree with the staff's recommendation to accept the FASB's conclusion on **Interest and Penalties?** | Recognise an expense for interest and penalties in the period incurred for the settlement of underpayment controversies. |

5.  The staff will present transition and effective date issues to the Board as part of the short term convergence transition and effective date memorandum.

**QUESTION FOR THE IASB TO CONSIDER AS A RESULT OF DISCLOSURE REQUIREMENTS OF IAS 12 THAT ARE DIFFERENT THAN STATEMENT 109**

3

6.  As a consequence of the forthcoming amendment to IAS 37, Provisions, Contingent Liabilities and Contingent Assets, IAS 12's requirements related to disclosure of contingent assets and liabilities are proposed to be amended as follows:

> *88.* An enterprise shall disclose the following information about the key estimation uncertainties relating to taxes:
>
> > (a) a description of the uncertainty; and
> >
> > (b) an indication of its possible financial effects on amounts recognised for taxes and the timing of those effects.
>
> *88A.* Estimation uncertainty may relate to both recognised and unrecognised tax assets and liabilities. The enterprise discloses information to enable users of the financial statements to assess the possible financial effects of the estimation uncertainties and their timing (for example, the effects of unresolved disputes with the taxation authorities).

7.  [Not reproduced in observer notes].

8.  The staffs are therefore recommending that the IASB eliminate the proposed amendments to IAS 12. Instead, there will be a reference to the requirements of paragraph 116 of IAS 1 which states:

> An entity shall disclose in the notes information about the key assumptions concerning the future, and other key sources of estimation uncertainty at the balance sheet date, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year. In respect of those assets and liabilities, the notes shall include details of:
>
> > (a) their nature; and
> >
> > (b) their carrying amount as at the balance sheet date.

9.  Does the IASB agree with the Staffs' recommendation?

4