IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-298-JJF |
| | ) | |
| CRAIG R. BARRETT, CHARLENE | ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, | ) | |
| D. JAMES GUZY, REED E. HUNDT, | ) | **PUBLIC VERSION** |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, | ) | |
| JANE E. SHAW, JOHN L. THORNTON, | ) | |
| DAVID B. YOFFIE, ANREW S. GROVE, | ) | |
| and INTEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Kenneth P. Herzinger
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
(415) 773-5700

Dated: July 25, 2005
Public Version dated: August 1, 2005

POTTER ANDERSON & CORROON LLP
Stephen C. Norman (#2686)
Brian C. Ralston (#3770)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com

Attorneys for Defendants

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS .......................................................... 1

II.   INTRODUCTION ........................................................................................................ 2

III.  SUMMARY OF ARGUMENT .................................................................................... 3

IV.   STATEMENT OF FACTS ........................................................................................... 6

      A.   The Company And Its Board Of Directors ......................................................... 6

      B.   The Company's Compensation Philosophy And Practices .................................. 7

           1.   The Company's Compensation Philosophy ................................................ 7

           2.   The Employee Bonus Plan .......................................................................... 8

           3.   The EOIP ..................................................................................................... 8

           4.   The EOIP Reflects Best Compensation Practices ....................................... 9

           5.   Application Of The EOIP Formula For Performance Year 2004 ................ 9

           6.   The Process For Calculating Payments Under The 2005 EOIP ................ 11

      C.   The 2005 Proxy ............................................................................................... 12

           1.   Intel's Internal Process............................................................................. 12

           2.   Best Practices For Directors In The Proxy Process ................................. 13

           3.   The Intel Directors' Role In The 2005 Proxy ........................................... 14

      D.   The Relevant Provisions Of The Internal Revenue Code And Treasury
           Regulations ...................................................................................................... 15

           1.   Section 162(m) Of The Internal Revenue Code ........................................ 15

           2.   The Treasury Regulations And Application Of Section 162(m) ............... 16

V.    LEGAL ARGUMENTS............................................................................................. 17

      A.   Plaintiff Lacks Standing To Bring This Action .............................................. 17

      B.   The Summary Judgment Standard Places A Significant Burden On
           Plaintiff ........................................................................................................... 17

      C.   The Court Should Deny Plaintiff's Motion Because Questions Of Fact
           Exist As To Every Element Of His Section 14(a) Claim................................. 19

           1.   Plaintiff Has Not Established That The 2005 Proxy Was False Or
                Misleading As A Matter Of Law ............................................................... 20

                a.   The Deductibility Statement Was Not False As A Matter
                     Of Law ........................................................................................... 20

                     (1)   The Language And Legislative History Of
                           Treas. Reg. § 1.162-27(e)(4)(i) Shows That It
                           Applies Only Where The Recipient Has A Pre-
                           Existing Contractual Right To The
                           Compensation ................................................................... 20

## TABLE OF CONTENTS
(continued)

Page

(2) Treas. Reg. § 1 162-27(e)(4)(i) Does Not Preclude Deductibility Because Payments May Be Made Under Different Plans Or Arrangements.............................................. 22

(3) Compliance With I.R.C. § 162(m) Is A Fact Question............................................... 23

(4) The *Shaev* Decision Does Not Entitle Plaintiff To Judgment ...................................... 24

b. The 2005 EOIP Disclosures Were Not Misleading ............ 25

2. Plaintiff Has Not Established That Defendants Acted With The Requisite State Of Mind ................................................ 27

a. All Of The Challenged Statements Are Forward-Looking Opinions That Require Proof Of Actual Knowledge...................................................... 27

b. Plaintiff Has Not Established That Defendants Were Negligent.................................................. 29

3. The Alleged Misstatements And Omissions Are Not Material As A Matter of Law ........................................................ 32

a. The Alleged Misstatements And Omissions Are Quantitatively Immaterial ............................... 33

b. The Alleged Misstatements And Omissions Are Qualitatively Immaterial ................................. 34

4. Plaintiff Has Not Established A Causal Link Between The Alleged Misstatements And Any Injury .......................... 34

D    Plaintiff Has Not Established That Defendants Breached Their Fiduciary Duty .................................................................. 36

1. Plaintiff's Motion Should Be Denied Because The Directors Did Not Make Any False Or Misleading Statements In The 2005 Proxy ..................................................................... 37

2. Defendants Are Not Liable For Breaching Their Disclosure Obligations Because Plaintiff Cannot Show That They Were Grossly Negligent ....................................................... 38

3. There Were No Material Misstatements Or Omissions In The 2005 Proxy............................................................... 39

VI.   CONCLUSION............................................................................. 40

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Adams v. Standard Knitting Mills, Inc.,*
  623 F.2d 422 (6th Cir. 1980) .............................................................................. 30

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984), *overruled on other grounds,*
  746 A.2d 244 (Del. 2000) ....................................................................... 3, 17, 38

*Ash v. McCall,*
  No. Civ. A. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000)....................... 31

*Baron v. Smith,*
  380 F.3d 49 (1st Cir. 2004) ................................................................................ 28

*Bickling v. Kent Gen. Hosp., Inc.,*
  872 F. Supp. 1299 (D. Del. 1994)................................................................... 18, 19

*Bond Opportunity Fund v. Unilab Corp.,*
  No. 99 Civ. 11074, 2003 WL 21058251 (S.D.N.Y. May 9, 2003),
  *aff'd,* 87 Fed. Appx. 772 (2d Cir. 2004)............................................................ 28

*Boyer v. Wilmington,*
  No. Civ. A. 12549, 1997 WL 382979 (Del. Ch. June 27, 1997)...................... 39, 40

*Brehm v. Eisner,*
  746 A.2d 244 (Del. 2000) ................................................................................... 38

*Cede & Co. v. Technicolor, Inc.,*
  634 A.2d 345 (Del. 1993) .................................................................................... 38

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................ 18

*Clements v. Rodgers,*
  790 A.2d 1222 (Del. Ch. 2001) .......................................................................... 40

*Craftmatic Sec. Litig. v. Kraftsow,*
  890 F.2d 628 (3d Cir. 1989)................................................................................ 33

*Crescent/Mach I Partners, L.P. v. Turner,*
  846 A.2d 963 (Del. 2000).................................................................................... 36

*EP Medsystems, Inc. v. EchoCath, Inc.,*
  235 F.3d 865 (3d Cir. 2000)................................................................................ 35

TABLE OF AUTHORITIES
(continued)

Page(s)

*Eastman Kodak Co v Image Technical Servs, Inc,*
    504 U.S. 451 (1992) ............................................................................................ 19

*Fontenot v Upjohn Co,*
    780 F.2d 1190 (5th Cir. 1986) ........................................................................... 18

*Fradkin v. Ernst,*
    571 F. Supp. 829 (N.D. Ohio 1983) ................................................................. 35

*Gaines v Haughton,*
    645 F.2d 761 (9th Cir. 1981) ............................................................................. 35

*Glassman v Wometco Cable TV, Inc,*
    No. Civ. A. 7307, 1989 WL 1160 (Del. Ch. Jan. 6, 1989) ............................... 39

*Gould v American-Hawaiian S.S. Co.,*
    535 F.2d 761 (3d Cir. 1976) .................................................................. 5, 29, 30

*Harris v Ivax,*
    182 F.3d 799 (11th Cir. 1999) ........................................................................... 28

*Herskowitz v. Nutri/System, Inc,*
    857 F.2d 179 (3d Cir. 1988) .............................................................................. 29

*In re Caremark Int'l Inc. Deriv. Litig,*
    698 A.2d 959 (Del. Ch. 1996) ........................................................................... 39

*In re DaimlerChrysler AG Sec. Litig,*
    294 F. Supp. 2d 616 (D. Del. 2003) ............................................................ 6, 35

*In re Kindred Healthcare, Inc. Sec. Litig,*
    299 F. Supp. 2d 724 (W.D. Ky. 2004) ............................................................. 29

*In re Reliance Sec. Litig,*
    135 F. Supp. 2d 480 (D. Del. 2001) ........................................................ passim

*In re Splash Tech. Holdings, Sec. Litig,*
    No. C99-00109 SBA, 2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .............. 29

*In re Western Nat'l Corp. S'holder Litig,*
    No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ................................... 37

*In re Westinghouse Sec. Litig,*
    90 F.3d 696 (3d Cir. 1996) ................................................................................ 33

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Wheelabrator Techs., Inc. S'holder Litig.*, No. Civ. A. 11495,
  1990 WL 131351 (Del. Ch. Sept. 6, 1990) ............................................... 37

*Krieger v. Ownership Corp.*,
  270 F.2d 265 (3d Cir. 1959)..................................................................... 19

*Krim v. ProNet, Inc.*,
  744 A.2d 523 (Del. Ch. 1999).................................................................. 36

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990)........................................................................... 4, 17

*Lewis v. Vogelstein*,
  699 A.2d 327 (Del. Ch. 1997)................................................................. 38

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) .......................................................................... 37

*McMullin v. Beran*,
  765 A.2d 910 (Del. 2000) ....................................................................... 39

*Metro Communication Corp. BVI v. Advanced Mobilecomm Techs., Inc.*,
  854 A.2d 121 (Del. Ch. 2004).......................................................... 37, 38

*Nagy v. Bistricer*,
  770 A.2d 43 (Del. Ch. 2000).................................................................. 38

*National Home Prods., Inc. v. Gray*,
  416 F. Supp. 1293 (D. Del. 1976) .......................................................... 19

*National State Bank v. Federal Reserve Bank*,
  979 F.2d 1579 (3d Cir. 1992) ................................................................. 18

*Ness v. Marshall*,
  660 F.2d 517 (3d Cir. 1981).................................................................... 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).................................................................... 35

*Rosenblatt v. Getty Oil Co.*,
  493 A.2d 929 (1985) .............................................................................. 39

TABLE OF AUTHORITIES
(continued)

Page(s)

*S.E.C. v. Falstaff Brewing Corp.,*
    629 F.2d 62 (D.C. Cir. 1980) ............................................................. 30

*Salit v. Stanley Works,*
    802 F. Supp. 728 (D. Conn. 1992) ...................................................... 30

*Scooper Dooper, Inc. v. Kraftco Corp.,*
    494 F.2d 840 (3d Cir. 1974) .............................................................. 18

*Seagraves v. Urstact Prop. Co.,*
    No. Civ. A. 10307, 1996 WL 159626 (Del. Ch. Apr. 1, 1996) ............ 40

*Shaev v. Hampel,*
    No. 99 Civ. 10578, 2002 WL 31413805 (S.D.N.Y. Oct. 25, 2002),
    *aff'd,* 74 Fed. Appx. 154 (2d Cir. 2003) ............................................ 28

*Shaev v. Saper,*
    320 F.3d 373 (3d Cir. 2003) ........................................................ passim

*Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992) .............................................................. 33

*Skeen v. Jo-Ann Stores, Inc.,*
    No. Civ. A. 16836, 1999 WL 803974 (Del. Ch. Sept. 27, 1999),
    *aff'd,* 750 A.2d 1170 (Del. 2000) ............................................ 37, 38, 40

*Smillie v. Park Chem. Co.,*
    466 F. Supp. 572 (E.D. Mich. 1979) ................................................. 35

*Smith v. Van Gorkom,*
    488 A.2d 858 (Del. 1985) ................................................................. 38

*Southern Calif. Gas Co. v. City of Santa Ana,*
    336 F.3d 885 (9th Cir. 2003) ............................................................ 18

*Tomczak v. Morton Thiokol, Inc.,*
    No. Civ. A. 7861, 1990 WL 42607 (Del. Ch. Apr. 5, 1990) ............... 38

*Tracinda Corp. v. DaimlerChrysler AG,*
    197 F. Supp. 2d 42 (D. Del. 2002) .................................................... 30

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ................................................................... passim

*Turner v. Bernstein,*
    776 A.2d 530 (Del. Ch. 2000) ..................................................... 36, 38

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*United States ex rel. Jones v. Rundle,*
   453 F.2d 147 (3d Cir. 1971).......................................................... 18

*Vides v. Amelio,*
   265 F. Supp. 2d 273 (S.D.N.Y. 2003) ............................................ 26

*Virginia Bankshares, Inc. v. Sandberg,*
   501 U.S. 1083 (1991)........................................................... 30, 35

*Zirn v. VLI Corp.,*
   681 A.2d 1050 (Del. 1996) ........................................................ 36

## STATUTES

8 Del. C. § 141(e).......................................................................... 31

15 U.S.C. § 77z-2.......................................................................... 28

15 U.S.C. § 78u-5
   (c)(1)(B)(i) ....................................................................... 5, 28
   (I)(1)(A)-(C)......................................................................... 28
   (I)(1)(D) ............................................................................. 28

58 Fed. Reg.
   66, 310 .............................................................................. 22
   66, 312 .............................................................................. 22

Fed. R. Civ. P.
   12(b)(1) ........................................................................... 1, 17
   12(b)(6) ........................................................................... 1, 17
   23.1 ............................................................................... 3, 17
   56(c) ................................................................................. 17

I.R.C. § 162(m) ..................................................................... passim

Treas. Reg. § 1.162-27
   (e)(2)(v)......................................................................... 4, 23
   (e)(4)(i)......................................................................... passim

## I.    NATURE AND STAGE OF PROCEEDINGS

On May 17, 2005, plaintiff filed this putative shareholder derivative complaint against Intel's Directors and nominal defendant Intel. Plaintiff's core allegation is that Intel's 2005 Proxy Statement ("2005 Proxy") included material misstatements and omissions about the Company's 2005 Executive Officer Incentive Program ("2005 EOIP"), and thus violated both Section 14(a) of the Securities Exchange Act of 1934, and the Directors' fiduciary duties under Delaware law. Three weeks later, on June 7, 2005, plaintiff filed a motion for summary judgment ("Motion" or "MSJ") asserting that he is entitled to judgment as a matter of law. As will be shown here, plaintiff's core premise of liability is wrong. The 2005 Proxy is complete and accurate in all respects.

Consistent with his apparent view that the case was won the moment he filed it, the only evidence plaintiff offers in support of his Motion is the 2005 Proxy itself, and the proxy of one other company. He skips over altogether the traditional obligation of the moving party to produce evidence proving the elements of his claims: that any statement was false when made, that the Directors acted with the requisite mental state, that the alleged misstatements or omissions were material, or that they caused him damage. Rather, the entire Motion is premised on the Third Circuit's decision in *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003). But *Shaev* – an opinion examining the adequacy of a pleading – offers no support for the proposition that plaintiff is entitled to judgment as a matter of law.[1]

---

[1] On June 27, 2005, defendants filed a motion to dismiss this action under Fed. R. Civ. P. 12(b)(6) and 23.1 on the grounds that plaintiff failed to (1) make a demand on the Board for the relief requested or (2) satisfy his burden of alleging specific facts demonstrating that demand on Intel's Board would be futile. The same day, defendants filed a motion to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that plaintiff's claims are not ripe for adjudication and the Court therefore lacks subject matter jurisdiction. Plaintiff's oppositions to these motions are due on July 25, 2005. Reply briefs are due on August 2, 2005.

There are multiple issues of fact affecting multiple elements of plaintiff's claims. Defendants therefore respectfully ask this Court to deny plaintiff's Motion because he is not entitled to judgment as a matter of law.

## II.    INTRODUCTION

**REDACTED**

Why then, given the painstaking process undertaken by the Company and the comprehensive sweep of disclosures resulting from that process, have Defendants been sued? Because the Company included language in the 2005 Proxy explaining to shareholders how the Company intended to handle executive bonuses in the event shareholders rejected the 2005 EOIP. More specifically, the Company reserved the right to pay bonuses to its executives in amounts similar to what they would have received under the 2005 EOIP, and explained that, in the absence of shareholder approval of the 2005 EOIP, such bonuses would be subject to certain limitations on tax deductibility.

The core contention of the Verified Complaint ("Complaint" or "Compl.") is that these disclosures run afoul of Treasury Regulations, and therefore foreclose any possibility of deducting the bonuses *even with* shareholder approval of the plan. Plaintiff further reasons that the violation and resulting loss of the expected tax deduction render false and materially

misleading the Company's statement about the deductibility of bonuses paid under a shareholder-approved plan.

At bottom, the Complaint is an ill-conceived attempt to punish the Company for complete disclosure to its shareholders about its intention to adhere to a sound and successful compensation program. The amounts that are hypothetically at risk through the theoretical (but by no means certain) loss of tax deductions are so minuscule in relation to the Company's overall profit picture that no reasonable person would ever regard them as material (and certainly not more important than the objective of tying management compensation to performance). The Motion fails for a multitude of legal reasons articulated in detail here, but also because its ultimate goal runs directly counter to the more laudatory corporate objectives of complete and accurate disclosure, and aligning management incentives with shareholder interests.

Plaintiff cannot establish that he is entitled to judgment as a matter of law. He cannot carry his burden of proving there is no triable issue of fact as to each element of his claims and his Motion must be denied.

## III.    SUMMARY OF ARGUMENT

The Motion should be denied for the following reasons:

1.    Plaintiff may not bring a shareholder derivative action without first making a demand on the Intel Board to obtain relief requested or alleging "with particularity" why demand would be futile. Fed. R. Civ. P. 23.1. *See also Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984) (dismissing derivative action because improper demand was made, and holding that a stockholder's demand upon the Board can be excused as futile only where facts creating reasonable doubt as to whether directors' action falls under business judgment rule are alleged with particularity), *overruled on other grounds*, 746 A.2d 244 (Del. 2000). Here, plaintiff did neither.

2.    Plaintiff's claims are not ripe for adjudication. Federal subject matter jurisdiction extends only to "real and substantial controvers[ies] admitting of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

-3-

*Lewis v Cont'l Bank Corp*, 494 U.S. 472, 477 (1990) (nullifying a Commerce Clause claim for lack of a live case or controversy). Intel has made no payments under the 2005 EOIP, and has claimed no tax deduction for payments under the 2005 EOIP. Nor has the IRS ruled that future tax deductions for payments under the 2005 EOIP would be improper.

3      Plaintiff cannot establish that the 2005 Proxy contained a misrepresentation or omission as a matter of law:

     a.      Treas. Reg. § 1 162-27(e)(4)(i) applies to situations where executives have a pre-existing contractual right to receive the payments at issue, no matter how the shareholders vote. That is not the case here, where any bonus payments outside of the 2005 EOIP are discretionary.

     b.      The language of Treas. Reg. § 1.162-27(e)(4)(i) does not apply to situations where the intent is to make discretionary awards under different plans or arrangements, if the vote fails.

     c.      Whether bonus payments are deductible under the Treasury Regulations promulgated under Section 162(m) of the Internal Revenue Code ("Section 162(m)") and the relevant Treasury Regulations, is a question of fact. *See* Treas. Reg. § 1.162-27(e)(2)(v).

     d.      The *Shaev* decision does not entitle plaintiff to judgment on his claims for at least five reasons: (1) *Shaev* was an appeal from a motion to dismiss and adjudicated only the adequacy of the pleading; (2) the proxy at issue in *Shaev* suffered from multiple obvious violations of Section 162(m) and the relevant Treasury Regulations; (3) *Shaev* did not address the contractual right issue or the ability of the Company to pay discretionary compensation under different plans or arrangements (*see* ¶¶3(a) and (b), *supra*); (4) the narrow holding of *Shaev* has no application here; and (5) the facts in *Shaev* suggested (unlike here) that the board intentionally manipulated the plan to circumvent Section 162(m)

e.      The material terms of a performance-based compensation program that must be disclosed are "(a) the employees eligible to receive compensation, (b) a description of the business criteria on which the performance goal is based, and (c) *either* the maximum amount of compensation that could be paid to any employee *or* the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained." Treas. Reg. § 1.162-27(e)(4)(i). The 2005 Proxy complies with this requirement.

4.      Plaintiff has not established as a matter of law that Defendants acted with the requisite state of mind. *See In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 511 (D. Del. 2001).

a.      The statements at issue in the 2005 Proxy are forward-looking, which under the Private Securities Litigation Reform Act of 1995 (the "Reform Act") requires actual knowledge of their falsity in order to be actionable. 15 U.S.C. § 78u-5(c)(1)(B)(i). Plaintiff offers no evidence that the Defendants knew any statement was false.

b.      Even if the statements are not deemed forward-looking, plaintiff must nevertheless establish that the Directors acted negligently. *See Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 777-78 (3d Cir. 1976) (reversing grant of plaintiffs' summary judgment motion on a Section 14(a) claim, and approving applicability of due diligence standard to the claim). Plaintiff has offered nothing to sustain his burden. To the contrary, the declarations submitted by the Directors make clear that they fully and completely satisfied his or her duties.

5.      Plaintiff has failed to establish that any purported misstatement or omission was material as a matter of law to a reasonable shareholder. Materiality is a "mixed question of law and fact" and the analysis of the inferences a "reasonable shareholder would draw . . . are peculiarly ones for the trier of fact." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976) (rejecting plaintiffs' Section 14(a) summary judgment motion because plaintiffs failed to meet requisite showing). Plaintiff offers nothing to sustain his burden of establishing materiality. The

actual dollar values of the deductions at issue are not material. What is material to stockholders is whether the 2005 EOIP aligns the interests of management with its shareholders' interests, which it does

6.    Plaintiff fails to establish any causal link between the purported misstatement and any injury. *See In re DaimlerChrysler AG Sec Litig*, 294 F. Supp. 2d 616, 626 (D. Del 2003) (Farnan, J.) (plaintiff must show link between alleged misrepresentations and injury); *In re Reliance*, 135 F. Supp. 2d at 516-17 (same).

7    Plaintiff fails to establish that the Directors breached the duty of disclosure under Delaware law.

## IV.    STATEMENT OF FACTS

### A.    The Company And Its Board Of Directors

Intel was founded in 1968. It has developed technology that enabled the computer and Internet revolution and changed the world.    Intel now supplies the computing and communications industries with chips, boards, and other semiconductor components that are the building blocks integral to computers, servers, and networking and communications products [2]

When the Complaint was filed, Intel's Board was comprised of eleven Directors, including eight "independent" directors and three who had spent the majority of their careers with Intel [3] Each of these directors has a long and distinguished career. Two directors have served as high government officials, Ambassador Charlene Barshefsky as the U S. Trade Representative and a member of the President's Cabinet and Reed Hundt as Chairman of the Federal

---

[2] *See* Intel's 2004 Form 10K, filed with the Securities and Exchange Commission ("SEC") on February 22, 2005 at page 1. A true and correct copy of the 2004 Form 10K is attached as Exhibit ("Ex.") A to the Declaration of Stephen C. Norman in Support of Defendants' Opposition to Motion For Summary Judgment ("Norman Decl.") filed concurrently herewith.

[3] Plaintiff filed this suit on May 17, 2005. Intel's annual meeting was held on the following day, May 18, 2005. Andrew S. Grove, the Company's former Chairman of the Board, did not stand for reelection at the 2005 annual meeting. *See* 2005 Proxy at 4, a true and correct copy of which is attached as Ex B. to the Norman Decl. Accordingly, the Intel Board is now comprised of ten directors. *Id*. The biographies of each of Intel's Directors is found in the 2005 Proxy at 5-6 and on Intel's website.

Communications Commission  Many have led public companies, including E. John P. Browne, who is currently Managing Director and Group Chief Executive of BP plc; D. James Guzy, who is Chairman of PLX Technology, Inc.; David S. Pottruck, who served as President and CEO of the Charles Schwab Corp.; and John L. Thornton, who was President and Co-Chief Operating Officer of the Goldman Sachs Group, Inc. Most of these directors have served on the boards of other publicly traded companies, including such large and well-known companies as the American Express Company, The Estee Lauder Companies, Inc., Starwood Hotels & Resorts Worldwide, Inc., Google, Inc , McKesson Corp., OfficeMax, Inc., and the Charles Schwab Corp. All of these directors have received numerous awards and recognition for their careers, including Dr Grove, who was named Time Magazine's 1997 "Man of the Year."

**B.    The Company's Compensation Philosophy And Practices**

### 1.    The Company's Compensation Philosophy

As described in the 2005 Proxy, "Intel's general compensation philosophy is that total cash compensation should vary with Intel's performance in achieving financial and non-financial objectives, and that any long-term incentive compensation should be closely aligned with the stockholders' interests." Norman Decl , Ex. B at 15  Intel's compensation plans emphasize an egalitarian treatment of employees and alignment with shareholders' interests. *Id.*  Intel implements this philosophy in the short term by providing below-market base salaries coupled with above-market cash bonuses that depend on Intel's profitability.  Longer-term incentives are provided through stock options.  Declaration of Professor Kevin J. Murphy in Support of Defendants' Opposition to Motion for Summary Judgment ("Murphy Decl "), ¶ 8

Intel's reliance on a combination of short-term and longer-term incentive plans is consistent with best practices in compensation design.  The Company's strategy of coupling lower-than-market base salaries with higher-than-market bonus opportunities aligns the interests of its employees with the interests of Intel's shareholders  *Id.*  Of course, to attract and retain talented employees, Intel must provide *total* cash compensation that is competitive with other companies in the labor market  Given Intel's below-market base salaries, providing higher-than-

market bonus opportunities is critical to Intel's ability to attract, retain and motivate its executives and employees. *Id.* ¶ 10.

**REDACTED**

### 3. The EOIP

In 1994, Intel instituted an executive cash incentive program designed to even more closely link executive compensation to Company performance. With exceptions not relevant here, Section 162(m) limits a Company's tax deduction for compensation paid to its most highly compensated employees to $1 million for any single employee. Compensation above that amount is fully deductible to the Company, however, if it is made pursuant to a performance-based plan approved by shareholders every five years. Accordingly, consistent with the requirements of Section 162(m), Intel submitted its EOIP to its shareholders for approval in 1994, 1995 (because of minor amendments), 2000, and again this year (again with minor amendments not material here). *See* Norman Decl., Ex. B at 38. Each time, including in 2005, the shareholders resoundingly approved the plan. *Id.*

As set forth in the 2005 Proxy, the 2005 EOIP employs a formula based on (1) the executive officer's annual incentive baseline amount, (2) a pre-established performance factor, and (3) Intel's Earnings Per Share ("EPS"). *Id.* at 17.

**REDACTED**

-8-

The EOIP's formula is:  Maximum EOIP Bonus = (Baseline Amount) x (Performance Factor) x (EPS).

**REDACTED**                                          The

Compensation Committee has discretion to decrease (*but not to increase*) actual payments. *Id.* For competitive reasons, Intel does not publicly disclose its baseline amounts or the performance factor until after the year in question is concluded. *Id.*

The details of the 2005 EOIP are disclosed twice in the 2005 Proxy (both in the description of the plan and in the voting proposition itself). The actual 2005 EOIP plan document is also attached as an exhibit to the 2005 Proxy. *See id.* at 17-20 and 38-42, Ex. A at B-1

### 4.    The EOIP Reflects Best Compensation Practices

Intel's EOIP and base salary structure is consistent with its articulated compensation philosophy of aligning executive and shareholder interests. Murphy Dec ¶ 8. The critical features of the 2005 EOIP reflect "best practices" for incentive plan design. *Id.* ¶ 17. *First,* the 2005 EOIP is a pay-for-performance plan, providing highly variable payouts tied directly to the Company's operating performance. In other words, bonuses are tied to Intel's EPS; when EPS declines, bonuses decline. *Id.* ¶ 16. *Second,* the plan has a high "cap" ($5 million) for extraordinary performance and a low "floor" (payouts are zero if earnings are negative). *Id.* ¶ 17. *Third,* Intel's Compensation Committee exercises great care in setting the "performance factor" in the EOIP formula. *Id. Fourth,* the EOIP is relatively easy for executives to understand; they can calculate throughout the year how their actions will affect their ultimate incentive payment. *Id. Fifth,* the EOIP provides "retention incentives" by requiring executives to be employed by Intel on the last day of the year to be eligible for any payment. *Id.*

### 5.    Application Of The EOIP Formula For Performance Year 2004

With these basic operating principles in mind, it is instructive to review how Intel's Board has applied them in practice.                    **REDACTED**

**REDACTED**          In January 2004, the Compensation Committee had established individual incentive baseline amounts ranging from $100,000 to $610,000 for each of Intel's executive officers and set the performance factor at 2.98 for the 2004 performance period. This performance factor represented a 15% reduction from 2003; in other words, assuming other factors remained constant, EPS had to increase 15% in 2004 in order for the officers to receive the same EOIP payments. *Id.* ¶ 20.

**REDACTED**

---

**REDACTED**

-10-

In fiscal year 2004, Intel's total income before taxes was $10.4 billion. Norman Decl.,
Ex. A at 31. Its total provision for taxes during the same period was $2.9 billion. *Id.* at 34. Its
effective income tax rate was 27.8% in 2004, 24.2% in 2003 and 25.9% in 2002. *Id.*

### 6.    The Process For Calculating Payments Under The 2005 EOIP

**REDACTED**

For obvious reasons, the Compensation Committee
cannot calculate the EPS component of the three-part formula until after the close of the fiscal
year. Intel's 2005 fiscal year ends on December 31, 2005, and therefore its operating income and
its net income will be unknown until January 2006. Norman Decl., Ex. B at 18; Thompson Decl.
¶ 8.

Next year, when the EPS component has been calculated, the Compensation Committee
can begin to make decisions as to the amounts, if any, to be awarded under the 2005 EOIP.
Norman Decl., Ex. B at 17; Thompson Decl. ¶ 10.

**REDACTED**                        Under Section 12 of the EOIP, Intel's executive
officers do not have any vested right in their EOIP payout until the Compensation Committee
certifies the bonus amounts and the payout is actually made. Norman Decl., Ex. B at 41, B-3;
Thompson Decl. ¶ 10.

After Intel calculates the individual incentive amounts under the 2005 EOIP formula, the
Compensation Committee will review and determine each participant's actual incentive payment.
As it did under the 2000 EOIP, the Compensation Committee has the discretion under the 2005
EOIP to decrease (but not to increase) a participant's incentive payment from the amount
calculated using the EOIP formula.                        **REDACTED**

---

**REDACTED**

**REDACTED**

The tax deductions Intel may take for compensation paid to its five most highly paid executive officers are limited to $1 million per executive pursuant to Section 162(m), subject to exceptions for qualifying performance-based compensation and other exceptions. Norman Decl., Ex. B. at 16. Only if Intel pays compensation under the 2005 EOIP (which it cannot do until 2006), claims a deduction for compensation in excess of $1 million, the IRS challenges the deduction, and the IRS succeeds on that challenge can it be determined that such compensation is non-deductible

**C.    The 2005 Proxy**

**REDACTED**

REDACTED

## 2.  Best Practices For Directors In The Proxy Process

Collaboration is the key to best practices in drafting documents to be filed with the SEC, including proxy statements. Declaration of Professor Lawrence A. Hamermesh In Support of Defendants' Opposition to Motion for Summary Judgment ("Hamermesh Decl.") ¶ 9. A collaborative process for drafting and reviewing such documents allows the Company to deploy individuals, both inside the Company and out, with specialized knowledge and expertise in areas such as tax, securities law, and accounting. *Id.*

A prudent corporate director must participate in the collaboration by carefully reviewing the proxy statement. *Id.* ¶ 10. If a director identifies an issue ("a red flag") or is otherwise made aware of one, he is expected to see that the issue is thoroughly investigated. *Id.* ¶¶ 10, 11 However, if, in the course of reviewing a proxy statement, a director neither spots a red flag nor is alerted to one, that director is entitled to rely upon the knowledge and skills of internal and external experts who have reviewed and commented on the earlier drafts. *Id.* ¶ 12. In other words, a director satisfies his duties by relying on those individuals set to the task by the Company who possess the requisite knowledge and expertise to assure that the proxy is complete,

-13-

accurate and in compliance with all pertinent laws and regulations  The proxy statement review process does not require a director to be an expert in all subject matters implicated by the proxy, or to engage separate experts to assist him in analyzing the material falling outside of the range of his own expertise.  *Id.*[6]

      3.     **The Intel Directors' Role In The 2005 Proxy**

**REDACTED**

---

[6] This is particularly true in disclosures in a proxy statement concerning tax treatment or tax deductibility of executive compensation.  In the absence of knowledge of a red flag, a director may rely on internal personnel or outside experts with specialized knowledge of the applicable tax laws concerning performance-based executive compensation.  *Id* ¶ 13.  The ability of directors to rely on the knowledge or expertise of others is a critical premise recognized by the ABA Corporate Responsibility Task Force's Final Report and in numerous authoritative descriptions of best practices in corporate governance.  Requiring otherwise contravenes fundamental principles of corporate governance.  If every director took the time to study every area in which he or she did not have expertise, a corporation could not, effectively and timely, issue a proxy statement.  *Id* ¶ 14.

[7] Declarations of Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E Shaw, John L. Thornton and David B. Yoffie in Support of Defendants' Opposition to Motion for Summary Judgment (hereafter, collectively, the "Director Decls.") at ¶¶ 4, 6-8. Due to plaintiff's immediate filing of his Motion and Defendants' limited time to respond, Counsel has been able to file only 9 of 11 Director Declarations. Counsel expects to file the remaining 2 declarations as soon as they are obtained

**REDACTED**

**D.    The Relevant Provisions Of The Internal Revenue Code And Treasury Regulations**

  **1.    Section 162(m) Of The Internal Revenue Code**

  Section 162(m) was passed to regulate cash compensation paid to executives of publicly held companies. Declaration of Mary B. Hevener in Support of Defendants' Opposition to Motion for Summary Judgment ("Hevener Decl.") ¶ 6. To that end, Section 162(m) limits the deduction a company may take of compensation greater than $1 million paid to the company's CEO or to any of its next four most highly compensated officers. I.R.C § 162(m); Hevener Decl. ¶ 6. Section 162(m) contains a significant exception to the $1 million limit for "performance-based compensation." *Id* Section 162(m) defines "performance-based compensation" as that which is (1) conditioned on the attainment of performance objectives timely established by the compensation committee of the board of directors; *and* (2) governed by a plan whose material terms are approved by shareholders. I.R.C. § 162(m)(4)(C)(i),(ii) Accordingly, if the plan is approved by shareholders and the established performance conditions are met, the compensation paid to executives under the plan is fully deductible. If, however, the performance conditions are not met, the company cannot pay any other substitute deductible compensation. Hevener Decl. ¶ 8.

  On the other hand, if the shareholders disapprove the plan, any compensation paid in excess of the $1 million-per-executive limit of Section 162(m) is generally not deductible under any circumstances. That said, however, nothing in Section 162(m) precludes the Board of Directors from exercising its discretion to pay bonuses independent of the performance-based plan. The Board simply may not pay bonuses under the shareholder-rejected performance plan. *Id.* ¶ 7.

## 2.    The Treasury Regulations And Application Of Section 162(m)

Following passage of Section 162(m), the Treasury Department promulgated rules providing further guidance on how Section 162(m) would be implemented and providing clarification as to what qualifies as "performance based compensation"[8] The regulations provide only that the shareholder approval requirement of Section 162(m) would not be satisfied "if the compensation would be paid regardless of whether the material terms are approved by the shareholders." Treas. Reg. § 1.162-27(e)(4)(i)[9]

Neither Section 162(m) nor the regulations promulgated thereunder suggest that a company may not pay nondeductible bonuses to its executives if shareholders do not approve performance conditions described in a plan put to a vote. *Id.* ¶ 8. Indeed, recent studies suggest that a large percentage of companies retain discretion to pay non-deductible compensation. *Id.* ¶ 11 [10] Such bonuses are not illegal; they simply are not tax deductible. Only a very small percentage of performance-based plans provide that a company will forgo paying any bonuses if shareholders disapprove the performance conditions. *Id.*

---

[8]  Generally, an agency drafting rules or regulations drafts them with an understanding as to how that agency will enforce the code and underlying regulations. The regulations promulgated under § 162(m) were more lenient than the language in § 162(m). Hevener Decl ¶ 7.

[9]  The regulations provide guidance as to the types of "material terms" that should be disclosed:

> The material terms include the employees eligible to receive compensation; a description of the business criteria on which the performance goal is based; and *either* the maximum amount of compensation that could be paid to any employee *or* the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained (except that, in the case of a formula based, in whole or in part, on a percentage of salary or base pay, the maximum dollar amount of compensation that could be paid to the employee must be disclosed).

Treas. Reg. § 1.162-27(e)(4)(i), last sentence (emphasis added).

[10]  The IRS has indicated a willingness to approve "omnibus plans," which are executive compensation plans allowing for the payment of performance-based bonuses as well as discretionary executive cash bonuses under the plan. Private Letter Ruling 1999510021 involved a spun-off company that established an omnibus plan containing a provision enabling it to pay compensation under plans other than its performance plan. The IRS ruling did not specifically address this provision of the plan, but the IRS certainly looked at the plan and raised no objection in issuing its general I.R.C. §162(m) rulings. *See* Hevener Decl. ¶ 10.

## V.    LEGAL ARGUMENTS

### A.    Plaintiff Lacks Standing To Bring This Action

On June 27, 2005, Defendants filed a motion to dismiss this action under Fed. R. Civ. P. 12(b)(6) and 23.1 on the grounds that plaintiff has failed either to (1) make a demand on the Board for the relief requested or (2) satisfy his burden of alleging specific facts demonstrating that demand on Intel's Board would be futile. Fed. R. Civ. P. 23.1; *see also Aronson*, 473 A.2d 805.[11] Because plaintiff did not make a demand on the Board, he must establish that demand would have been futile. As set forth in Defendants' 12(b)(6) motion, plaintiff has not established demand futility.

Also on June 27, 2005, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) because plaintiff's claims are not ripe for adjudication and the Court therefore lacks subject matter jurisdiction.[12] Federal subject matter jurisdiction extends only to "real and substantial controvers[ies] admitting of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis*, 494 U.S. at 477. Plaintiff has not established that any "real and immediate" threat of injury exists.

Plaintiff lacks standing to bring this action. Because the threshold issues of demand futility and subject matter jurisdiction must be addressed before this Court can reach the merits, Defendants ask this Court to hear and rule on Defendants' motions before addressing plaintiff's motion for summary judgment.

### B.    The Summary Judgment Standard Places A Significant Burden On Plaintiff

As the moving party, plaintiff has both an initial burden of production and the ultimate burden of persuading the Court that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This means that

---

[11] Defendants refer the Court to their Opening Brief in Support of Defendants' Motion to Dismiss Verified Complaint and hereby incorporate it into this Opposition by this reference.

[12] Defendants refer the Court to their Opening Brief in Support of Defendants' Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and hereby incorporates it into this Opposition by this reference.

plaintiff "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v Catrett*, 477 U.S. 317, 323 (1986); *see also Scooper Dooper, Inc. v Kraftco Corp.*, 494 F.2d 840, 848 (3d Cir. 1974) (party moving for summary judgment has burden of proving that there exists no genuine issue of fact); *United States ex rel Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971) (the burden of demonstrating the justification for a motion for summary judgment lies with the movant) (*citing Adickes v S. H Kress & Co.*, 398 U.S. 144, 153-161 (1969)).

When a party moves for summary judgment on the ground that there is no genuine issue of material fact as to the claims in its complaint – as plaintiff has done here – the moving party bears the initial burden of production as to each element of its claim upon which it has the burden of persuasion at trial *See National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992) (if moving party bears the burden of persuasion at trial, the moving party must point to evidence in the record that supports its version of all material facts and demonstrates the absence of any genuine issue of material fact); *Bickling v Kent Gen. Hosp., Inc.*, 872 F. Supp 1299, 1305 (D. Del. 1994) ("when party moving for summary judgment bears burden of persuasion at trial, moving party must point to evidence in record that supports movant's version of all material facts and demonstrates absence of any genuine issue of material fact"). *Thus, a plaintiff must establish beyond controversy every essential element of his claim. Fontenot v Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor"); *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) ("As the party with the burden of persuasion at trial, the [plaintiff] must establish 'beyond controversy every element'" of its claim)

-18-

Because summary judgment is "a drastic remedy," any doubts as to the existence of genuine issues of material fact must be resolved in favor of the non-moving party. *Ness v Marshall*, 660 F 2d 517, 519 (3d Cir 1981) ("summary judgment has been characterized as 'a drastic remedy'") (*quoting Tomalewski v. State Farm Life Ins Co.*, 494 F.2d 882, 884 (3d Cir 1974)); *see also Eastman Kodak Co. v Image Technical Servs , Inc.*, 504 U S. 451, 456 (1992); *Krieger v Ownership Corp*, 270 F 2d 265, 270 (3d Cir. 1959) ("Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party").

If plaintiff – who carries the burden of proof at trial on both his Section 14(a) and breach of fiduciary duty claims – fails to carry his initial burden of production, defendants have no obligation to produce any evidence in response. *See Bickling*, 872 F. Supp. at 1304-05. Only after plaintiff has carried this burden of production does the burden shift to the defendants to produce evidence of a material issue of fact

Here, plaintiff relies on *Shaev* and the 2005 Proxy without more. Plaintiff does not even address a number of the elements of his claims. Regardless, Defendants' Opposition and accompanying declarations present more than enough evidence to rebut his claims, and unquestionably raise issues of material fact which require the denial of this Motion.[13]

### C. The Court Should Deny Plaintiff's Motion Because Questions Of Fact Exist As To Every Element Of His Section 14(a) Claim

To prevail at summary judgment on a Section 14(a) claim, plaintiff must prove that: (1) the defendants made a misrepresentation or omission in a proxy statement, (2) with the requisite state of mind, (3) that was material, and (4) that the proxy was an essential link to plaintiff's injury. *In re Reliance*, 135 F Supp. at 511 (*citing General Elec Co by Levit v. Cathcart*, 980 F 2d 927, 932 (E.D. Pa 1992)). *Accord National Home Prods , Inc v Gray*, 416 F. Supp. 1293, 1312 (D. Del. 1976) (evaluating various alleged proxy misstatements under the Section 14(a)

---

[13] Although plaintiff has the burden of proof, he has made a tactical decision against submitting any expert evidence In light of that decision, plaintiff should not be permitted to offer any such evidence in support of his Motion with his reply brief, and Defendants reserve their right to either move to strike or file a sur-reply should plaintiff attempt to do so *See* Del. Ct. Local R 7 1.2(c).

elements). Plaintiff fails to address many of these elements, let alone establish *all* of them as a matter of law.

1.    **Plaintiff Has Not Established That The 2005 Proxy Was False Or Misleading As A Matter of Law**

Plaintiff asserts that the 2005 Proxy was false or misleading in two ways. *First*, plaintiff contends that the statement that future payments under the 2005 EOIP will "continue to be deductible for federal income tax purposes" was false, because the 2005 Proxy also stated that if the plan was not approved, Intel expected to make "similar" payments to the executive officers. Plaintiff asserts that under the Treasury Regulations and *Shaev*, the second statement automatically eliminates the deductibility of payments under the 2005 EOIP, rendering the first statement false. MSJ at 2. As explained below, neither the Treasury Regulations nor *Shaev* establishes that the 2005 Proxy's statement was false. To the contrary, the legislative history and plain wording of the regulation make clear that payments under the 2005 EOIP *will* be deductible, if and when they are made. A careful reading of the regulation makes clear that the IRS never intended to penalize companies for informing their shareholders of the consequences of their vote, and *Shaev* does not hold otherwise.

*Second*, plaintiff argues that the 2005 Proxy was insufficiently specific in its description of the 2005 EOIP, and that the 2005 Proxy was misleading as a result. As will be seen, the 2005 Proxy disclosed all of the information required to be disclosed under applicable IRS and SEC Regulations, and substantially more.

a.    **The Deductibility Statement Was Not False As A Matter Of Law**

(1)    **The Language And Legislative History Of Treas. Reg. § 1.162-27(e)(4)(i) Shows That It Applies Only Where The Recipient Has A Pre-Existing Contractual Right To The Compensation**

Plaintiff argues that the Company's statement that "we expect to make payments to the executive officers in amounts similar to those that would have otherwise been paid under the EOIP" if the 2005 EOIP is not approved runs afoul of Treas. Reg. § 1.162-27(e)(4)(i) and,

-20-

therefore, any payments under the 2005 EOIP will be non-deductible, regardless of shareholder approval. But plaintiff either elevates the word "expect" in the quoted language from the Proxy to a level of certainty that common usage does not justify, or he misreads the regulation itself, which provides:

> The material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid. The requirements of this paragraph (e)(4) are not satisfied if the compensation *would be paid* regardless of whether the material terms are approved by shareholders

Treas. Reg. §162-27(e)(4)(i) (emphasis added).

Thus, shareholder approval is rendered a sham *only* where the executive's interest in the compensation amounts to a virtual certainty, *e g.*, when she has a preexisting contractual right to the compensation. *See* Hevener Decl. ¶ 13. Indeed, the language of the regulation comes directly from the legislative history of Section 162(m), which contains the comment that "compensation does not qualify for the performance based exception if the executive has a *right* to receive the compensation notwithstanding the failure of    the shareholders to approve the compensation " (emphasis added). *Id* In that circumstance, the shareholder vote would be meaningless because the vote could not affect the payment, the obligation for which had already been incurred *Id* [14]

Intel's 2005 EOIP stands in direct contrast to the situation Treas. Reg § 1.162-27(e)(4)(i) was implemented to prevent. *Id.* ¶ 14. No officer of the Company has any right to receive a bonus under the 2005 EOIP (whether or not approved by shareholders) or under any other arrangement, for that matter. The explicit terms of the 2005 EOIP itself foreclose any pre-ordained right to collect bonus money: "[a]t no time before the actual payout of an incentive to any participant under the Incentive Plan shall any participant accrue any vested interest or right whatsoever under the Incentive Plan." Norman Decl. Ex. A at B-3.

---

[14] By contrast, the phrase in the proxy on which plaintiff has seized, that "we *expect* to make incentive payments.    in amounts *similar* to those that would have otherwise been paid under the EOIP," is insufficient to create an enforceable obligation to pay anything to anyone.

The Company is not contractually obligated to make any payments to the officers. Thus, nothing in the 2005 Proxy triggers Treas. Reg. § 1.162-27(e)(4)(i) and disqualifies payments under the 2005 EOIP from deduction under Section 162(m). Hevener Decl. ¶ 14.

        (2)     **Treas. Reg. § 1.162-27(e)(4)(i) Does Not Preclude Deductibility Because Payments May Be Made Under Different Plans Or Arrangements**

Plaintiff next argues that the 2005 Proxy "threatened to pay the incentive payments even if the Company's stockholders disapproved" the EOIP, and that therefore "no vote of the stockholders would make [the plan] deductible." Compl at ¶ 6; MSJ at 7-9. This contention, like the one disposed of above, is premised on the same "we expect" language just examined.

Plaintiff's argument would convert the virtue of full disclosure to shareholders – that the Company "expects" to continue its historical compensation practices whether or not the full amounts paid are tax deductible – into a vice  But there is nothing improper in the Company's decision to retain the discretion it described in the 2005 Proxy; if the decision itself is proper, its disclosure to shareholders surely cannot be improper. Hevener Decl. ¶ 16.

Treasury Regulation § 1 162-27(e)(4)(i) provides that the deduction is disallowed "if *the compensation* would be paid" Treas. Reg. § 1.162-27(e)(4)(i)  The phrase "the compensation" refers only to payments made under *the proffered EOIP plan*. Nothing in the Tax Code or the Treasury Regulations limits a company's ability to pay cash bonuses under a different plan or arrangement in the event shareholder approval was not obtained  *See also* Hevener Decl. ¶ 16 (section 1.162-27(e)(4)(i) does not prevent companies from paying bonuses under different arrangements if the performance plan is not approved); 58 Fed. Reg 66, 310, 66, 312 (Dec. 20, 1993) (recognizing that performance-based compensation need not be the only compensation available to executives for the deduction to remain available)

Furthermore, a survey of proxies seeking shareholder approval under Section 162(m) reveals that, like Intel, most public companies readily disclose that covered employees will remain eligible for discretionary bonus payments under another plan should the performance-based plan not be approved  Many companies have separate bonus plans that are not approved by

shareholders and permit discretionary pay bonuses based on subjective goals that do not eliminate the deductibility of shareholder approved plans. Hevener Decl. ¶¶ 9-11. Here, Intel disclosed that if shareholders did not approve the 2005 EOIP, it would "terminate the EOIP plan" and the Compensation Committee still had *discretion* to make nondeductible bonus payments under other plans or arrangements. Norman Decl. Ex. B at 39. This adheres to the language and spirit of the tax laws and regulations, as well as SEC disclosure regulations. Hevener Decl. ¶¶ 8, 16.[15]

In other words, the language of the 2005 Proxy does not violate Treas. Reg. §1.162-27(e)(4)(i). Therefore, it does not eliminate the deduction. Accordingly, the 2005 Proxy does not contain a false statement about deductibility. *Id.* ¶ 16.

### (3) Compliance With I.R.C. § 162(m) Is A Fact Question

Finally, summary judgment regarding the propriety of a deduction taken under Section 162(m) must fail because the deductibility of the payments, when ultimately made, cannot be determined without examining the surrounding facts. *See, e.g.,* Treas. Reg. § 1.162-27(e)(2)(v). As the Treasury Regulations make clear in this example, the IRS does not usually determine the deductibility of any compensation program simply by reading a description of the plan in a proxy; it looks at the "facts and circumstances" of the program to determine whether the plan meets the stringent requirements of code. *Id.* This "facts-and-circumstances determination" must "tak[e] into account all plans, arrangements, and agreements that provide for compensation" in order to determine whether a deduction is available under 162(m). *Id.* Plaintiff's request that this Court rule now on the future deductibility of payments under the 2005 EOIP, without any consideration

---

[15] Intel's reasons for retaining that discretion are sound, and worth considering here. As described above, Intel's approach to compensation is to pay below-market base compensation, supplemented in appropriate circumstances with above-market bonus payments. Intel has found the formula successful in retaining the best and the brightest in a highly competitive talent market. The Compensation Committee's discretion to award bonuses outside the 2005 EOIP in the event the plan was not approved was (and is) critical to Intel's competitive edge. The 2005 Proxy took pains to disclose that fact to shareholders; the disclosure should be applauded, not penalized.

of the surrounding facts and circumstances, is contrary to the spirit of analogous Tax Code provisions and on this basis alone should be denied [16]

> (4)    The *Shaev* Decision Does Not Entitle Plaintiff To Judgment

Plaintiff relies heavily on *Shaev*, 320 F.3d 373, to establish the falsity of the 2005 Proxy. That case is distinguishable on both procedural and factual grounds.

*First*, *Shaev* was an appeal from an order granting the defendant's motion to dismiss. In adjudicating the adequacy of plaintiff's complaint, the court assumed the truth of the plaintiff's allegations. Applying this standard, the Third Circuit held that plaintiff had alleged enough to state a claim. The *Shaev* court had no developed factual record before it and its decision merely remanded the case for discovery. *Id.* at 375. Thus, the holding in *Shaev* provides no support for the proposition plaintiff asserts here: that he is entitled to judgment as a matter of law without reference to the record.

*Second*, unlike the situation here, the proxy statement in *Shaev* involved multiple and obvious violations of I.R.C. §162(m). *Id* at 379-80. For example, the amendments to the incentive plan in the *Shaev* proxy statement were untimely (violation number one), and they granted the company discretion to *increase* the compensation paid under the plan (violation number two). *Id.* at 380-81. Indeed, the facts alleged in *Shaev* suggest that the directors of the company involved (Datascope) intentionally manipulated the terms of the plan to circumvent the Treasury Regulations and provide lavish compensation to Datascope's CEO. By contrast, the 2005 Proxy suffers from none of those defects.

---

[16] The lack of a factual record to evaluate the 162(m) issue is exacerbated by plaintiff's filing this suit before IRS proceedings have begun or, for that matter, even could begin. Plaintiff seeks to bypass the procedural mechanisms set up for determining whether a deduction is proper under the tax regulations. First, an action must be taken that puts the 2005 Proxy at issue in front of the proper administrative body. Here, Intel has not made any payments under the EOIP, and the IRS has not considered the issue. In short, it is the IRS, not plaintiff, who determines whether a deduction is proper. Thus, plaintiff's premature claim amounts to a legally and factually unsupported request for this Court to render an advisory opinion on the deductibility of a payment not yet made as to a deduction not yet claimed under Section 162(m).

*Third*, *Shaev* did not address either the "would be paid" or "the compensation" language in Treas Reg § 1.162-27(e)(4)(i). The plaintiff-shareholder in *Shaev* argued in brief that Datascope and its directors had conceded by silence that their proxy ran afoul of both parts of the regulation.[17] That the points were not addressed by the Third Circuit suggests there may have been some truth to the proposition they were not seriously in dispute. The meaning and application of those phrases, however, are very much at issue here.

*Fourth*, the precise holding of *Shaev* does not apply here. That court disposed of the matter with this explanation: "the Board's threat to *take the deduction* regardless of shareholder approval obviates its deductibility even if approved." *Shaev*, 320 F.3d at 385. At no time did Intel threaten *to take the deduction* whether or not shareholders approved the plan. The most that can be said is that *similar, nondeductible* payments might be made under a different plan or arrangement if the shareholders did not approve the plan

### b.    The 2005 EOIP Disclosures Were Not Misleading

Plaintiff also argues that the 2005 Proxy was misleading because it failed to disclose with sufficient specificity the annual incentive baseline amounts for each executive officer, the annual performance factor for 2005, and the definition of EPS for the fiscal year 2005. MSJ at 9-10. Plaintiff's argument is a red herring. The 2005 Proxy clearly disclosed *all* required information, and substantially more None of it was misleading

Under Treas. Reg. § 1 162-27(e)(4), the material terms of a performance-based compensation program that must be disclosed are "(a) the employees eligible to receive compensation; (b) a description of the business criteria on which the performance goal is based, and (c) *either* the maximum amount of compensation that could be paid to any employee *or* the

---

[17] *See also Shaev v Saper*, Brief for Appellant, No 02-2206, 2002 WL 32817147, at *8 (3d Cir Aug 21, 2002) ("[N]o suggestion is raised that the deduction is available in the face of the threat to pay the Saper bonus, even if the stockholders disapprove it. Nowhere is there any showing that the allegation concerning the threat to pay it anyway fails to state a claim "). A true and correct copy of this document is attached as Ex C to the Norman Decl.

formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained." Treas. Reg. § 1.162-27(e)(4)(i).

The 2005 Proxy complies with each of these requirements. Norman Decl., Ex. B at 17-18: The 2005 Proxy discloses that 2005 EOIP participation is limited to the Company's executive officers. Ex. B at B-1; Murphy Decl. ¶ 20. The 2005 Proxy discloses the formula for determining the bonuses *and* that $5 million is the maximum that can be paid to any individual under the plan. Norman Decl., Ex. A at 17, B-2; Murphy Decl. ¶ 20. Going beyond what the regulations require, the 2005 Proxy also discloses the actual performance factor and EPS amount used to determine prior-year bonuses. Norman Decl., Ex. B at 18; Murphy Decl. ¶ 18.

Intel's disclosures clearly comply with the applicable regulations. SEC guidance specifically indicates that a company is not required to provide "target levels for specific performance" or "factors or criteria involving confidential commercial or business information." Norman Decl., Ex. D (SEC Response to Question 13). *See also Shaev*, 320 F.3d at 383 (no misleading omission where "specific business criteria discussed in Treas. Reg. §1.162-27(e)(4)" were not disclosed); *Vides v. Amelio*, 265 F. Supp. 2d 273, 281 (S.D.N.Y. 2003) (the failure to disclose tax costs, which are not otherwise required to be disclosed, "does not make the statement of the [tax] policy false and misleading"). The Company fully and completely disclosed all material terms of the 2005 EOIP. Murphy Decl. ¶ 24.

Going beyond what the regulations require, the Company also provided other information helpful to its shareholders in their deliberations over the vote. For example, the Company provided a chart showing the relation between cash compensation and EPS performance over the past seven years. Norman Decl., Ex. B at 18; Murphy Decl. ¶ 21. This disclosure lends further support for the proposition that the 2005 EOIP is a performance-based plan, which aligns the interest of Intel's executives with the Company's shareholders. *Id.*

The Motion presents no facts, no evidence, no experts –nothing but the 2005 Proxy itself – to suggest that the disclosures were materially misleading. Plaintiff has failed to meet his burden of establishing this element of his claim.[18]

### 2. Plaintiff Has Not Established That Defendants Acted With The Requisite State Of Mind

Even if plaintiff could establish a false statement as a matter of law (which he cannot), plaintiff cannot establish the next essential element of his claim, namely, that Defendants acted with the requisite state of mind. *See In re Reliance*, 135 F. Supp. 2d at 511 ("[t]o prevail on the merits of a section 14(a) claim, a plaintiff must show that ... defendant made a material misrepresentation or omission in a proxy statement with the requisite state of mind"). Plaintiff offers *no evidence* of Defendants' state of mind. Indeed, his Motion *completely ignores* this fundamental element of his claim. By contrast, the undisputed evidence put forth by Defendants leaves no doubt that Defendants did not act with the requisite mental state. Accordingly, plaintiff is not entitled to judgment as a matter of law. *Id.*

As will be seen, the required mental state is actual knowledge, because the statements at issue are forward-looking, but under no circumstances could the state of mind required be less than negligence.[19]

### a. All Of The Challenged Statements Are Forward-Looking Opinions That Require Proof Of Actual Knowledge

Among the Reform Act's provisions intended to curb abusive securities litigation is the "safe harbor" for forward-looking statements. The safe harbor provisions of the Reform Act

---

[18] Plaintiff also argues that the 2005 Proxy is misleading because it makes bonuses appear to be "likely" and "[o]nly the amounts may be unknown." MSJ at 10. Plaintiff misses the mark. The Compensation Committee has discretion to reduce bonus payments in any way it sees fit. *See* Norman Decl., Ex. B at 17.

[19] Plaintiff himself appears to concede that the requisite mental state for a Section 14(a) violation is negligence. *See* Compl. ¶ 16 ("All the defendants were negligent in that they knew or should have known that the representations concerning the deductibility of the incentive payments were materially false and misleading."). Yet he offers no evidence to support this key allegation of his Complaint.

apply to all private actions brought under the Securities Exchange Act of 1934, including Section 14(a) claims for alleged misstatements or omissions in a proxy. *In re Reliance*, 135 F. Supp. 2d at 512 (acknowledging the applicability of the safe harbor to forward-looking statements in a proxy); *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003), *aff'd*, 87 Fed. Appx. 772 (2d Cir. 2004) ("the [Reform Act] dictates the pleading standards for Plaintiffs' claim under § 14(a) of the Securities Exchange Act and Rule 14a-9");[20] *Shaev v. Hampel*, No. 99 Civ. 10578, 2002 WL 31413805, at *7 (S.D.N.Y. Oct. 25, 2002), *aff'd*, 74 Fed. Appx. 154 (2d Cir. 2003) ("forward-looking statements contained in the Proxy Statement are protected by 'safe-harbor'" of the Reform Act).

Under the safe harbor, forward-looking statements that are accompanied by meaningful cautionary language are not actionable as a matter of law. See 15 U.S.C. § 77z-2; 15 U.S.C. § 78u-5. *See also Harris v. Ivax*, 182 F.3d 799, 803 (11th Cir. 1999) ("corporations and individual defendants may avoid liability for forward-looking statements that prove false if the statement is 'accompanied by meaningful cautionary statements'"). Forward-looking statements that are unaccompanied by meaningful cautionary language are actionable only if the speaker acted with actual knowledge of the statement's falsity. 15 U.S.C. § 78u-5(c)(1)(B)(i).

A forward-looking statement is defined as a statement that includes projections or predictions of future events. 15 U.S.C. § 77z-2; 15 U.S.C. § 78u-5(I)(1)(A)-(C). Words such as "expect", "anticipate", "intend", "plan", "believe", "seek", and "estimate" are examples of forward-looking language. *Baron v. Smith*, 380 F.3d 49, 53-54 (1st Cir. 2004) (press release announcing bankruptcy filings by corporation and subsidiaries was protected by Reform Act's safe harbor). Any statement of the assumptions underlying or relating to such forward-looking statements also qualifies as a forward-looking statement. 15 U.S.C. § 78u-5(I)(1)(D). A present-tense statement can also qualify as forward-looking if the truth or falsity of the statement cannot be discerned until after some future event occurs. *Harris*, 182 F.3d at 805 (finding that CEO's

---

[20] A compendium of unreported decisions is being filed simultaneously herewith.

present-tense statement that "the challenges . . . are now behind us" was forward-looking); *In re Splash Tech. Holdings, Inc Sec Litig.*, No. C 99-00109 SBA, 2000 WL 1727377, at *6 (N D Cal Sept. 29, 2000) (dismissing allegations about misstatements of press releases that fall under Reform Act's 'safe-harbor'); *In re Kindred Healthcare, Inc. Sec Litig*, 299 F. Supp. 2d 724, 738 (W.D Ky. 2004) (management's opinions predicated on projections of future events considered forward-looking under Reform Act).

Here, plaintiff's claims are based on the forward-looking statement that payments under that plan will "continue to be deductible for federal income tax purposes" Norman Decl., Ex B at 39. By its very words, this statement concerns expected future events and is thus forward-looking. *See Harris*, 182 F 3d at 805; *In re Splash Tech.*, 2000 WL 1727377, at *6; *In re Kindred Healthcare*, 299 F. Supp. 2d at 738. Accordingly, plaintiff must establish that each Defendant acted with actual knowledge of falsity in order to prevail on his Motion.

Plaintiff's Motion offers not a scrap of evidence to sustain his burden. Plaintiff comes to this Court with no declarations, no documents, no evidence of any kind to show anything at all about Defendants' state of mind concerning the contents of the 2005 Proxy. On the other hand, Defendants have presented sworn declarations that obliterate any suggestion that Defendants made even a negligent – let alone intentional – misstatement.

> **b.    Plaintiff Has Not Established That Defendants Were Negligent**

Even if the statements in the 2005 Proxy were not forward-looking, plaintiff must establish that Defendants were negligent It is well settled in the Third Circuit that to prevail on a 14(a) claim, a plaintiff must show that defendants acted at least negligently with respect to the facts in the proxy. *Gould*, 535 F.2d at 777-78; *Herskowitz v. Nutri/System, Inc*, 857 F 2d 179, 190 (3d Cir. 1988) ("A material misrepresentation even when made negligently rather than intentionally or recklessly, can still inflict the anticipate harm, and is thus deemed actionable ").[21]

---

[21] The Supreme Court has twice expressly reserved the question of whether scienter (some fraudulent intent) is the requisite state of mind for liability under § 14(a). *TSC Indus*, 426 U.S at

As Judge McKelvie held in *In re Reliance*, 135 F. Supp. 2d at 511, "in enforcing that standard, courts should apply the standard of due diligence" (citing *Gould*, 535, F 2d at 777-78).[22]

To satisfy this duty of care or due diligence, a director must review the proxy statement. Hamermesh Decl. ¶ 10. If a director identifies issues or "red flags," that board member must then investigate the issue thoroughly. *Id* ¶ 10. Similarly, if, during the collaborative process of preparing a proxy statement, a director is made aware of a red flag, that board member is expected to investigate that issue. *Id.* ¶ 11. In the course of reviewing a proxy statement, a director may rely on the knowledge and skills of internal and external experts who have reviewed and commented on prior drafts. *Id.* ¶ 12. That means that a director may rely on those individuals who possess specialized knowledge in areas such as tax, securities and accounting. In the course of reviewing and commenting on a proxy statement, a director is neither required to engage his own experts, or otherwise to become a specialist himself on the subject areas at issue in the proxy. *Id.*

---

444, n. 7 (declining to consider "what showing of culpability is required to establish the liability under § 14(a)"); *Virginia Bankshares, Inc v Sandberg*, 501 U.S. 1083, 1091 n.5 (1991) (reserving "the question whether scienter [i]s necessary for liability generally under § 14(a)"); *see also Tracinda Corp v DaimlerChrylser AG*, 197 F. Supp 2d 42 (D. Del. 2002) (Farnan, J.) A number of courts have held that scienter is required. *See, e g , S.E.C. v. Falstaff Brewing Corp* , 629 F.2d 62, 69 (D.C. Cir. 1980) ("Thus, the district court properly concluded that [the defendant director] could be held liable for his failure to correct errors that he *knew* appeared in the proxy statement issued on his behalf") (emphasis added); *Salit v. Stanley Works*, 802 F. Supp 728 (D Conn. 1992) (plaintiffs were required to plead that individual outside directors knew of facts allegedly omitted from proxy statement). Other courts, including the Sixth Circuit, have held that the standard is higher than negligence for defendants not directly involved in the solicitation of the proxy, and apply an actual knowledge standard to them. *See Adams v Standard Knitting Mills, Inc* , 623 F.2d 422, 429-30 (6th Cir. 1980) (culpability for outside accountants must be knowing or reckless wrongdoing); *see also Salit*, 802 F. Supp 728 (plaintiffs were required to plead that individual outside directors knew of facts allegedly omitted from proxy statement). For purposes of this Opposition, Defendants will assume, without conceding, that the required mental state for non-forward-looking statements is negligence.

[22] While plaintiff's Motion is silent as to mental state, he clings to the argument that *Shaev* is dispositive of his claims MSJ at 1. Again, however, *Shaev* involved a motion to dismiss, not a motion for summary judgment. Further, *Shaev* did not address the mental standard applicable to a § 14(a) claim.

Disclosures in a proxy statement concerning the tax deductibility of executive compensation fall squarely within the "expertised" portions of the proxy, as to which a director may (in the absence of a red flag) reasonably rely on the work performed by internal and external experts in preparing those disclosures. *Id.* ¶ 13.

Here, *plaintiff has failed to present any evidence* that any Defendant acted negligently, let alone with any higher degree of culpability. Plaintiff has produced no evidence that the Directors knew, or in the exercise of due care should have known, that the 2005 Proxy contained allegedly false statements or misleading omissions.

**REDACTED**

---

[23] Indeed, as discussed more fully in Section V.D. below, the Defendants were entitled to rely on the opinions and advice from the corporation's officers and employees, board committees and outside experts, including counsel. 8 Del. C. § 141(e); Hamermesh Decl. ¶ 14. Moreover, Defendants' reliance on Intel's internal and external experts may in and of itself provide a case dispositive defense. *See Ash v. McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *9 (Del. Ch.

**REDACTED**

### 3.    The Alleged Misstatements And Omissions Are Not Material As A Matter of Law

The standard for materiality under § 14(a) was settled by the United States Supreme Court's decision in *TSC Indus* , 426 U.S. 438 (rejecting for lack of materiality plaintiff's motion for summary judgment on Section 14(a) claims)  In defining "materiality", the Supreme Court held that "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id* at 449.  The Court also held that the issue of materiality is a mixed question of law and fact that can rarely be resolved on summary judgment:

> The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts.  In considering whether summary judgment on the issue is appropriate we must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality.  The determination requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are *peculiarly ones for the trier of fact*.  Only if the established omissions are "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality" is the ultimate issue of materiality appropriately resolved "as a matter of law" by summary judgment.

*Id*. at 450 (citations omitted) (emphasis added).

---

Sept. 15, 2000) (granting director defendants' motion to dismiss because plaintiffs failed to allege "particularized facts" that, if proved, would show that the directors in fact did not properly rely on the advice of their experts).

The materiality of the alleged misstatements and omissions in this case cannot be resolved on summary judgment. Plaintiff's Motion offers nothing to establish that the alleged omissions are "so obviously important to an investor, that reasonable minds cannot differ." *Id* Rather, as explained below, they involve dollar amounts that are so minute in relation to the Company's results that they could not influence the rational decision-making process of any reasonable shareholder.[24]

a.  **The Alleged Misstatements And Omissions Are Quantitatively Immaterial**

Plaintiff has not shown that Intel's ability to take a deduction under 162(m) is the type of information that would significantly influence a reasonable investor. Nor can he  Even if we posit a blockbuster year for Intel in which the CEO and next four most highly-paid officers are each given the maximum $5 million permitted under the 2005 EOIP (a circumstance that has never occurred), the maximum amount of compensation at issue (above the $1 million-per-executive deduction) would be $20 million  At a 35 percent tax rate (well above Intel's historic effective tax rates), the maximum value of the deduction would be $7.0 million.[25]  Intel's 2004 revenues were $34 billion and its income before taxes was $10.4 billion.  It has *a total provision for taxes in 2004 of $2.9 billion*, meaning the deduction at issue is approximately 0.24% of Intel's tax provision  Norman Decl., Ex. A at 34.  A scant $7.0 million difference in tax liability, in these circumstances, is not material on its face  *See In re Westinghouse Sec. Litig.*, 90 F. 3d 696, 714 (3d Cir. 1996) (understatement of 0.54% immaterial as a matter of law)

The numbers for the actual 2004 bonus payments are even smaller.  For 2004, only three of the Company's most highly compensated officers received cash compensation over $1 million

---

[24] The alleged misstatements and omissions are also immaterial because, as discussed above, they are forward-looking statements. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 643 (3d Cir 1989) ("[w]here an event is contingent or speculative in nature, it is difficult to ascertain whether the 'reasonable investor' would have considered the omitted information significant at the time"); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992) (same).

[25] Even this tax rate exaggerates Intel's historical tax burden. Intel's effective income tax rate was 27.8% in 2004, 24.2% in 2003 and 25.9% in 2002. Norman Decl., Ex. A at 31

-33-

Norman Decl., Ex. B at 25. Collectively, these three officers were paid $5,482,200 in salary plus bonus payments. *Id.* $3,000,000 would be deductible anyway. Thus, a Section 162(m) deduction would apply to only $2,482,200.

**REDACTED**

Clearly, the deduction is immaterial.[26]

b.   The Alleged Misstatements And Omissions Are Qualitatively Immaterial

Nor is deductibility qualitatively material to the shareholders. What shareholders care about is whether the incentive program (here the EOIP) aligns the interest of the Company's officers with the interests of its shareholders. Murphy Decl. ¶ 22. Shareholders want the company's officers to be working to increase shareholder value. *Id.* The 2005 EOIP accomplishes this goal, because bonus payments under that plan are designed to (and do) rise and fall with the company's results. *Id.* ¶ 13. Whether the bonus payments to Intel's officers do, in fact, rise and fall with the success of the Company is what a reasonable investor would focus upon in deciding whether to vote for the plan, not a minuscule tax deduction that has no impact on the Company's financial results.

Plaintiff's failure to present any evidence regarding materiality alone warrants denial of his Motion.

---

[26] Plaintiff, relying on *Shaev*, argues that the deductibility of incentive compensation is material as a matter of law. Motion at 7. This is false. The *Shaev* court did not find that the deductibility of incentive compensation is always material as a matter of law. *Shaev* involved a motion to dismiss by the *defendant* and the court was required to assume all allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor for purposes of that ruling. *Shaev*, 320 F.3d at 377. Thus, the *Shaev* court did not hold that the deductibility of executive compensation is material as a matter of law; rather, it found that the defendants in that case failed to carry their burden of establishing the opposite, *i.e.*, that the misstatements and omissions were not material as a matter of law. Here, on the other hand, plaintiff is the moving party, and therefore, to prevail on this motion he must establish that the alleged misstatements and omissions "are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality'" *TSC Indus.*, 426 U.S. at 450. Plaintiff has not carried his burden here.

### 4.    Plaintiff Has Not Established A Causal Link Between The Alleged Misstatements And Any Injury

To prevail on a Section 14(a) claim, plaintiff must also establish loss causation  To accomplish this, plaintiff must establish a "legal link" between a misstatement, the vote and plaintiff's alleged injury  *In re DaimlerChrysler*, 294 F  Supp  2d at 626, *citing Tse v  Ventana Med  Sys , Inc.*, 297 F 3d 210, 217 (3d Cir  2002); *Newton v  Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 181 n 24 (3d Cir  2001) (finding that plaintiffs' 10(b) and 10b-5 claims did not warrant a class-wide presumption of economic loss).

In *Virginia Bankshares*, the Supreme Court held that in a section 14(a) case there is no loss causation if the misstatement-induced-vote by the shareholder does not authorize a transaction giving rise to the loss.  501 U S  at 1083; *accord In re Reliance*, 135 F  Supp  2d at 517.  In other words, there can be no loss causation here unless a misstatement in the 2005 Proxy caused the shareholders to vote for a proposal that, in turn, causes some loss.  *The vote must cause the loss.*  Moreover, whether the plaintiff has established loss causation is a question of fact.  *EP Medsystems, Inc  v  EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir  2000) (reversing dismissal of 10(b) and 10-5 claims in part because a factual issue remained as to causation).

The only cognizable injury plaintiff identifies is Intel's (theoretical) loss of the tax deductions on future payments under the 2005 EOIP  However, according to plaintiff's own theory, it was not the shareholder vote that caused the Company to lose the deduction under Section 162(m), it was the very language of the 2005 Proxy itself.  Compl.  ¶ 15.  According to plaintiff, Intel lost the deduction the moment it mailed the 2005 Proxy.  Shareholder approval of the 2005 EOIP had *no impact* on Intel's inability to take a deduction (as plaintiff articulates his claim, in any event)  Therefore, there can be no legal link between the vote and plaintiff's alleged injury.  *See Gaines v  Haughton*, 645 F 2d 761, 775 (9th Cir  1981) ("[T]here is no 'causal nexus' or 'transactional causation,' without regard to the issue of materiality, so long as the underlying transaction did not require shareholder approval"); *See also Fradkin v  Ernst*, 571 F  Supp  829, 842 (N D  Ohio, 1983); *Smillie v  Park Chem  Co.*, 466 F  Supp  572, 577-78 (E D  Mich  1979) (cross-motions for summary judgment).

Plaintiff's theory of liability under section 14(a) carries the seed of its own destruction, because he cannot logically prove that which is contrary to what he alleges  He does not allege (as the law says he must) that the vote caused the purported loss; he alleges that the Proxy itself caused the loss. There is, therefore, no cognizable section 14(a) claim.

### D.    Plaintiff Has Not Established That Defendants Breached Their Fiduciary Duty

Plaintiff alleges that the purported material misstatements and omissions are also breaches of the duty of disclosure under Delaware law.  Motion at 11.  This duty has been characterized as "a subset of a director's fiduciary duties of loyalty and care." *Crescent/Mach I Partners, L.P v. Turner*, 846 A.2d 963, 986 (Del. Ch 2000).[27] The duty of disclosure generally requires directors "to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Zirn*, 681 A.2d at 1056 (examining breach of duty of disclosure in the tender offer and merger context).

To state a claim for breach of the duty to disclose, plaintiff must identify" (1) material (2) reasonably available (3) information that (4) was omitted from proxy materials " *Krim v ProNet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999).[28]  In addition, plaintiff must establish that Defendants were at least grossly negligent in issuing the alleged misstatements and omissions  *See Metro Communication Corp BVI v Advanced Mobilecomm Techs, Inc.*, 854 A.2d 121, 157 (Del. Ch.

---

[27] When the alleged misstatements and omissions were made "as a result of the directors' good faith, but 'erroneous judgment' concerning the proper scope and content of the disclosure," only the directors' duty of care is implicated. *Id* at 987 (quoting *O'Reilly v Transworld Healthcare, Inc*, 745 A.2d 902, 915 (Del. Ch 1999)); *Zirn v. VLI Corp*, 681 A.2d 1050, 1062 (Del. 1996) ("A good faith erroneous judgment as to the proper scope or content of required disclosure implicates the duty of care rather than the duty of loyalty.")

[28] Plaintiff's Complaint alleges that, insofar as defendants made the purported material misstatements and omissions noted above, they breached their fiduciary duties of loyalty, disclosure, and good faith  Compl. at ¶ 8.  In addition, he alleges that Defendants violated their fiduciary duties by coercing the shareholders to vote in favor of the EOIP Plan. *Id*  However, since plaintiff's claim really boils down to a breach of the duty of disclosure claim -- which he concedes in his Motion (MSJ at 10-11) -- we will not address the other duties in this opposition.

2004) ("[A] fiduciary in the corporate context cannot be held liable for damages for a failure to disclose a material fact unless that fiduciary acted with at least gross negligence.").[29]

Plaintiff's motion should be denied because (1) there were no misrepresentations, (2) Defendants were not grossly negligent, and (3) none of the alleged misstatements were material.

> 1.    **Plaintiff's Motion Should Be Denied Because The Directors Did Not Make Any False Or Misleading Statements In The 2005 Proxy**

Delaware courts rely on the applicable federal laws to determine the scope of the duty to disclose in connection with a proxy statement. *See, e.g., In re Western Nat'l Corp S'holder Litig.*, No. 15927, 2000 WL 710192, at *29 (Del. Ch. May 22, 2000) (no duty to disclose in proxy statement information beyond that required under applicable SEC regulations) (*citing Skeen v. Jo-Ann Stores, Inc.*, No. Civ. A. 16836, 1999 WL 803974 (Del. Ch. Sept. 27, 1999), *aff'd*, 750 A.2d 1170 (Del. 2000); *In re Wheelabrator Techs., Inc. S'holder Litig.*, No. Civ. A. 11495, 1990 WL 131351, at *6 (Del. Ch. Sept. 6, 1990) (no duty to disclose information whose disclosure was not required by the SEC). Following this principle, the Delaware courts have refused to obligate directors to disclose information that is otherwise not required by the SEC. *See Western Nat'l*

---

[29] Until 1998, most Delaware Chancery courts held that a cause of action for failure to disclose could only arise when shareholder action was sought. *See Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998). However, in *Malone*, the Delaware Supreme Court held that when "directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty." *Id.* at 10. In addition to recognizing this new cause of action, the Delaware Supreme Court defined its elements. To state a cause of action for breach of fiduciary duty in these circumstances, a shareholder must plead and prove (1) that the defendants made misstatements or omissions of material fact; (2) that they did so knowingly or deliberately; and (3) that plaintiff was injured as a result. *Id.* at 9, 14.

Arguably, this higher standard should apply here since plaintiff's claim is that the 2005 Proxy was allegedly false and misleading on its face and no shareholder vote could change that fact. Thus, plaintiff's allegation is more analogous to a non-shareholder vote scenario based on a press release or an alternative cause of action to a claim under Rule 10b-5. Viewed under this standard, plaintiff's Motion should be denied because he has made no effort to plead or prove either knowing misconduct or injury. However, as set forth below, even if this case were to be judged under the gross negligence standard used to judge disclosure actions where shareholder action is sought, plaintiff's Motion must be denied because he has not shown that the Defendants were grossly negligent.

*Corp*, 2000 WL 710192, at \*29; *Skeen*, 1999 WL 803974, at \*7 (refusing to impose more stringent requirements than those mandated by the SEC).

Here, the issue is the scope of the duty to disclose when seeking shareholder approval of an executive compensation plan. The Delaware courts have spoken on this issue, and defer to the SEC's rules regarding the appropriate scope of disclosure on compensatory plans. *See, e g, Lewis v. Vogelstein*, 699 A.2d 327, 333 (Del. Ch. 1997) (duty to disclose did not encompass "present value" of options for purposes of shareholder ratification of compensatory option plan). Accordingly, the SEC's comprehensive regulations for compensation plans delineate the duty to disclose.

As set forth above in Section V.C.1., *supra*, the 2005 Proxy accurately stated that payments under the 2005 EOIP will be deductible, and the specific terms of the plan were disclosed. At the very least, there are serious factual questions as to whether the 2005 Proxy contained any false or misleading statements. Therefore, plaintiff cannot establish falsity for a disclosure claim as a matter of law and his motion should be denied.

### 2. Defendants Are Not Liable For Breaching Their Disclosure Obligations Because Plaintiff Cannot Show That They Were Grossly Negligent

A fiduciary cannot be held liable for breaching the Delaware duty of disclosure unless plaintiff can prove that the fiduciary acted with at least gross negligence. *See Metro Communication*, 854 A.2d at 157; *Turner v Bernstein*, 776 A.2d 530, 542 (Del. Ch. 2000); *Nagy v. Bistricer*, 770 A.2d 43, 59-60 (Del. Ch. 2000); *see also Cede v Technicolor, Inc* 634 A.2d 345, 364 n.31 (Del. 1993) ("all director action not constituting gross negligence" is protected); *Smith v Van Gorkom*, 488 A.2d 858, 873 (Del. 1985) ("The standard of care applicable to a director's duty of care ... 'is predicated upon concepts of gross negligence'") (quoting *Aronson*, 473 A.2d at 812). The term gross negligence "means 'reckless indifference to or a deliberate disregard of the whole body of stockholders' or actions which are 'without the bounds of reason.'" *Tomczak v Morton Thiokol, Inc.*, No. Civ. A. 7861, 1990 WL 42607, at \*12 (Del. Ch. Apr. 5, 1990) (citations omitted).

As set forth in Section V.C 2, *supra*, plaintiff has not presented *any* facts to support the conclusion that Defendants acted negligently, much less with "deliberate disregard of the shareholders" or "without the bounds of reason" when they communicated with shareholders regarding the EOIP Plan. Further, plaintiff has not alleged – let alone supported with evidence – any "red flags" that should have alerted Defendants to the alleged falsity of the 2005 Proxy. *See In re Caremark Int'l Inc Deriv. Litig.*, 698 A.2d 959, 969 (Del. Ch. 1996) ("absent grounds to suspect deception, neither corporate boards nor senior officers can be charged with wrongdoing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf").

### 3. There Were No Material Misstatements Or Omissions In The 2005 Proxy

As noted above, plaintiff contends that the 2005 Proxy contained a false statement about the deductibility of payments under the 2005 EOIP Plan and was misleading because it failed to disclose all the elements of the 2005 EOIP formula. Neither the alleged "misstatement" nor the "omission," however, is material. *See* Section V C 3, *supra*.

The Delaware Supreme Court has adopted the standard of materiality in *TSC Industries*, 426 U S. at 449, as the standard of materiality for Delaware law duty of disclosure claims *See Rosenblatt v Getty Oil Co*, 493 A.2d 929, 944 (1985) ("[I]t is clear from the Delaware cases that the materiality standard of *TSC Industries* ... applies "); *see also Brehm v Eisner*, 746 A.2d 244, 259 n.49 (Del. 2000) (plaintiffs' allegations failed to raise a reasonable doubt that the Board acted with due care); *McMullin v Beran*, 765 A.2d 910, 925 (Del. 2000) (citing as "well-established" that "[t]he materiality standard requires that directors disclose all facts which, 'under all the circumstances, . . . would have assumed actual significance in the deliberations of the reasonable shareholder.'")[30]    Thus, plaintiff must prove that there is a substantial likelihood that a

---

[30] Questions of materiality are not usually appropriate for resolution by summary judgment in Delaware and several courts have denied motions for summary judgment on that basis. *See, e g., Glassman v Wometco Cable TV, Inc.*, No. Civ A. 7307, 1989 WL 1160, at \*2 (Del Ch Jan 6, 1989) (denying summary judgment in cash-out merger context); *Boyer v Wilmington*, No. Civ

reasonable shareholder would consider the alleged misstatement and omissions important in deciding how to vote. *See TSC Indus.*, 426 U.S. at 449. However, Delaware law "does not require disclosure of 'all available information' simply because available information 'might be helpful.'" *In re Siliconix Inc.*, *S'holders Litig.*, No. Civ. A. 18700, 2001 WL 716787, at *9 (Del. Ch. June 19, 2001) (quoting *Skeen*, 750 A.2d at 1174).

As discussed in Section V C.3, *supra*, plaintiff cannot meet the *TSC Industries* standard because the alleged misstatements and omissions are neither quantitatively or qualitatively material. The Motion must be denied because plaintiff has presented no evidence establishing that a reasonable shareholder would find any of the information material.

## VI.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court deny plaintiff's Motion.

POTTER ANDERSON & CORROON LLP

By _____
Stephen C. Norman (#2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0957
(302) 984-6000
snorman@potteranderson.com

OF COUNSEL:
Michael D. Torpey
James N. Kramer
Susan D. Resley
Kenneth P. Herzinger
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, California 94105
(415) 773-5700

Attorneys for defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove, and nominal defendant Intel Corporation

Dated: July 25, 2005
692034

---

A. 12549, 1997 WL 382979, at *5, 8 (Del. Ch. June 27, 1997) (denying summary judgment in interested director transaction context); *Seagraves v. Urstact Prop Co.*, No Civ. A. 10307, 1996 WL 159626, at *5-6 (Del. Ch. Apr. 1, 1996) (denying summary judgment in merger context); *Clements v. Rodgers*, 790 A.2d 1222, 1239-44, 1246-48 (Del. Ch. 2001) (denying preliminary injunction in a tender offer action).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I do hereby certify that, on July 25, 2005, the within document was filed under seal with

the Clerk of Court using CM/ECF which will send notification of such filing to the following;

that the document was served on the following counsel as indicated; and that the document is

available for viewing and downloading from CM/ECF.

### HAND DELIVERY

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

Stephen C. Norman (#2686)
Brian C. Ralston (#3770)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on August 1, 2005, the within document was filed with the Clerk

of Court using CM/ECF which will send notification of such filing to the following; that the

document was served on the following counsel as indicated; and that the document is available

for viewing and downloading from CM/ECF.

       Francis G.X. Pileggi, Esquire
       Sheldon K. Rennie, Esquire
       Fox Rothschild LLP
       919 North Market Street, Suite 1300
       Wilmington, Delaware 19801

                      Stephen C. Norman (#2686)
                      Brian C. Ralston (#3770)
                      Potter Anderson & Corroon LLP
                      Hercules Plaza, 6th Floor
                      P.O. Box 951
                      Wilmington, DE 19899
                      (302) 984-6000
                      E-mail: snorman@potteranderson.com
                      E-mail: bralston@potteranderson.com