IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-298-JJF |
| | ) | |
| CRAIG R. BARRETT, CHARLENE BARSHEFSKY, E. JOHN P. BROWNE, D. JAMES GUZY, REED E. HUNDT, PAUL S. OTELLINI, DAVID S. POTTRUCK, JANE E. SHAW, JOHN L. THORNTON, DAVID B. YOFFIE, ANREW S. GROVE, and INTEL CORPORATION, | ) ) ) ) ) ) ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LAWRENCE A. HAMERMESH
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Kenneth P. Herzinger
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
(415) 773-5700

Dated: July 25, 2005
Public Version dated: August 1, 2005

POTTER ANDERSON & CORROON LLP
   Stephen C. Norman (#2686)
   Brian C. Ralston (#3770)
   Hercules Plaza, 6th Floor
   1313 North Market Street
   P.O. Box 951
   Wilmington, Delaware 19899
   (302) 984-6000
   E-mail: snorman@potteranderson.com
   E-mail: bralston@potteranderson.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 05-298 (JJF) |
| ) | |
| CRAIG R. BARRETT, CHARLENE ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, ) | Jury Trial Demanded |
| D. JAMES GUZY, REED E. HUNDT, ) | |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, ) | |
| JANE E. SHAW, JOHN L. THORNTON, ) | |
| DAVID B. YOFFIE, ANDREW S. GROVE, and ) | |
| INTEL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF PROFESSOR LAWRENCE A. HAMERMESH IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

I, Lawrence A. Hamermesh, declare as follows:

1. I have personal knowledge of the facts stated in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

### Background and Qualifications

2. I am the Ruby R. Vale Professor of Corporate and Business Law at Widener University School of Law. I have been a professor at Widener since 1994 and I have taught classes in business organizations, corporate finance, securities regulation, mergers and acquisitions and equity/equitable remedies. I serve as Director of the Widener Law School Institute of Delaware Corporate Law and serve as an advisor for the Delaware Journal of

Corporate Law. In Spring 2004, I was a Visiting Professor at the University of Pennsylvania Law School and in Winter 2002, I was a Visiting Professor at the University of Michigan Law School.

3.   I graduated magna cum laude from Haverford College in 1973, where I majored in political science. I received my J.D. from Yale Law School in 1976.

4.   Following law school, I was a practicing attorney at Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where I was an associate from 1976 to 1984, and a partner from 1985 to 1994. At Morris Nichols, my practice focused on counseling companies, and their officers and directors on areas of corporate governance. I also litigated cases raising corporate governance issues, including class actions and derivative actions concerning the role of directors of companies and the fiduciary duties of those directors. I was Delaware counsel in a number of noteworthy cases concerning corporate governance, including *Revlon, Viacom, Phillips Petroleum* and *Time, Inc.* A true and correct copy of my resume is attached hereto as Exhibit A.

5.   I have also participated in task forces and written and spoken extensively on the role of directors and what and on whom a director can reasonably rely on in the course of meeting his or her fiduciary obligations to a company and its shareholders. For example, in 2002, I was asked to serve as the Reporter for the ABA's Task Force on Corporate Responsibility. I was the principal drafter of the Task Force's preliminary and final report. Those reports extensively reviewed the state of law and practice in relation to boards of directors, and recited, among many other things, the proposition that in the discharge of their fiduciary duties, directors must be able to rely on a number of internal and external experts and individuals with specialized knowledge. More recently, I was appointed as a commissioner on the National Association of Corporate Directors Blue Ribbon Commission on Implementing the Authority of the Empowered Board—Going Beyond Compliance, a group of about 25 individuals consisting primarily of inside and outside counsel and corporate directors. A significant purpose of the

-2-

Commission is to prepare written guidance on best practices for directors. I have also written a number of law review articles concerning the role of board members. A list of my significant publications, committee and task force work and speaking engagements is attached hereto as Exhibit A.

6.  I have also participated in drafting legislation relating to corporate governance. In 2001, I was appointed by the ABA Section of Business Law to its Committee on Corporate Laws. In the last few years I have chaired the Committee's Task Force on Articulation of Director Duties, whose work has led to the recent promulgation of an extensive set of amendments to the provisions of the Model Business Corporation Act addressing director oversight and other director responsibilities. I have served since 1995 as a member of the Council of the Corporation Law Section of the Delaware State Bar Association, on which I served as Chair from 2002 until 2004. The Council has primary responsibility for reviewing, drafting and proposing amendments to the Delaware General Corporation Law.

7.  Additionally, I have testified or have been engaged as an expert or consultant to opine on the roles and duties of directors. I was, for example engaged to opine on the duties of inside directors, including their relation to and ability to opine on others.

8.  In preparation of this declaration, I reviewed Intel's 2005 Proxy Statement, the Declaration of Cary Klafter, the Declarations of the members of Intel's Board of Directors and Intel's Compensation Committee Minutes for January 2004 and February 2005.

### The Role and Responsibility of a Board Member in Reviewing Proxy Statements

9.  In my experience advising officers, directors and companies and drafting legislation and guidelines for directors, I understand and believe that best practices in drafting documents to be filed with the SEC are collaborative in nature. This would include the process by which a proxy statement is drafted and reviewed before filing with the SEC. A collaborative process allows individuals with specialized knowledge who are both inside and outside of a

-3-

company to review and provide comment on those sections of the proxy statement in which they have expertise. The collaborative process enables communication among and the review, comment and revision of drafts of a proxy statement by internal and external legal, tax, securities and accounting experts before disseminating drafts to members of a company's board of directors.

10. Even though a member of a company's board of directors does not sign a proxy statement, a director plays an important role in this collaborative effort. In the process of reviewing a proxy statement, a director should carefully read the proxy statement and identify red flags he or she recognizes as a result of relevant experience or knowledge. If a director identifies a red flag, he or she is expected to see to it that the issue is thoroughly investigated. This is an aspect of a director's reasonable due diligence in connection with the preparation of a proxy statement.

11. Similarly, if, as part of the collaborative process of reviewing a proxy statement, a director is made aware of a red flag by any other source, that board member is expected to see to it that the issue is thoroughly investigated. This too is an aspect of a director's reasonable due diligence in connection with the preparation of a proxy statement.

12. If, in the course of carefully reviewing a proxy statement, a director does not identify a red flag or a red flag is not brought to his or her attention, it is a reasonable exercise of that director's due diligence for that director to rely on the knowledge and skills of those internal and external experts who have reviewed and commented on the prior drafts. This means that in the course of reviewing drafts of a proxy statement, a director may rely on those individuals who possess specialized knowledge in areas such as tax laws, securities laws and accounting rules. In the course of reviewing drafts of a proxy statement, a director should not be required to, and ordinarily does not, learn or engage separate experts to assist him or her in understanding or interpreting areas in which he or she does not have specialized knowledge.

DOCSSF1:827277.2

13. I believe that disclosures in a company's proxy statement which discuss the tax treatment or tax deductibility of executive compensation are matters involving precisely such specialized knowledge, and may be analogized to expertised portions of a registration statement. Absent the circumstances set out in Paragraphs 10 and 11 above, it is reasonable, as a matter of common practice as well as under both federal and Delaware law for a director reviewing a proxy statement to rely on internal personnel or outside experts with specialized knowledge of the applicable tax laws concerning performance based executive compensation.

14. Directors must be able to rely on the knowledge or expertise of others – a critical premise recognized by statute, in the ABA Corporate Responsibility Task Force's Final Report, and in numerous other authoritative descriptions of best practices in corporate governance. Requiring otherwise would contravene fundamental principles of corporate governance. For example, a director should not educate himself or herself in areas of tax law if he or she does not have specialized knowledge in that area. If every director took the time to study every area in which he or she did not have expertise, a corporation could not effectively and timely issue a proxy statement.

### Intel's Process Enabled the Directors to Rely on Internal and External Experts

15. I have reviewed the Declaration of Cary Klafter in support of Intel's Opposition to the motion for summary judgment.

**REDACTED**

-5-

07/20/2005 15:51 FAX                                                                              ☒007/007

**REDACTED**   It is my opinion that Intel has a disciplined and thorough review process which allowed sufficient time and opportunity for internal and external experts to review and comment on the disclosures contained in the 2005 Proxy Statement concerning, among other matters, the Executive Officer Incentive Program ("EOIP"). In my opinion, Intel's process exemplifies the collaborative process a company should undertake in the course of drafting a proxy statement.

16.  I have reviewed the declarations of the members of Intel's board of directors.

**REDACTED**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of July, 2005 at New Orleans, Louisiana

_____
Lawrence A. Hamermesh

-6-

DOCSSF1:827277.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I do hereby certify that, on July 25, 2005, the within document was filed under seal with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### HAND DELIVERY

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

/s/ Stephen C. Norman
Stephen C. Norman (#2686)
Brian C. Ralston (#3770)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I do hereby certify that, on August 1, 2005, the within document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

    Francis G.X. Pileggi, Esquire
    Sheldon K. Rennie, Esquire
    Fox Rothschild LLP
    919 North Market Street, Suite 1300
    Wilmington, Delaware 19801

                      */s/ Stephen C. Norman*
                      Stephen C. Norman (#2686)
                      Brian C. Ralston (#3770)
                      Potter Anderson & Corroon LLP
                      Hercules Plaza, 6th Floor
                      P.O. Box 951
                      Wilmington, DE 19899
                      (302) 984-6000
                      E-mail: snorman@potteranderson.com
                      E-mail: bralston@potteranderson.com