IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRANK D. SEINFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-298-JJF |
| | ) | |
| CRAIG R. BARRETT, CHARLENE BARSHEFSKY, E. JOHN P. BROWNE, D. JAMES GUZY, REED E. HUNDT, PAUL S. OTELLINI, DAVID S. POTTRUCK, JANE E. SHAW, JOHN L. THORNTON, DAVID B. YOFFIE, ANREW S. GROVE, and INTEL CORPORATION, | ) ) ) ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) | |

**DECLARATION OF MARY B. HEVENER
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Kenneth P. Herzinger
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
(415) 773-5700

Dated: July 25, 2005
Public Version dated: August 1, 2005

POTTER ANDERSON & CORROON LLP
Stephen C. Norman (#2686)
Brian C. Ralston (#3770)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 05-298 (JJF) |
| ) | |
| CRAIG R. BARRETT, CHARLENE ) | |
| BARSHEFSKY, E. JOHN P. BROWNE, ) | Jury Trial Demanded |
| D. JAMES GUZY, REED E. HUNDT, ) | |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, ) | |
| JANE E. SHAW, JOHN L. THORNTON, ) | |
| DAVID B. YOFFIE, ANDREW S. GROVE, and ) | |
| INTEL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF MARY B. HEVENER IN SUPPORT OF
### DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

I, Mary B. Hevener, declare as follows:

1. I have personal knowledge of the facts stated in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

#### Background and Qualifications

2. I am a partner in the North American Tax Practice Group, working within the Washington, D.C. office of Baker & McKenzie LLP. Prior to joining Baker & McKenzie in 2000, I was a partner at Weil, Gotshal & Manges from 1995-2000, and both an associate and a partner at Lee, Toomey & Kent (and its successor partnership, McDermott, Will & Emery) from 1984 until mid-1995.

3. Prior to joining Lee, Toomey & Kent in 1984, I had served as an attorney-advisor in Treasury's Office of Tax Legislative Counsel from August 1981 through July 12, 1984, where I was responsible for monitoring Congressional legislation affecting employee compensation, drafting Treasury's testimony on pending legislation, and approving IRS-drafted regulations and rulings affecting employee compensation. A true and correct copy of my resume is attached hereto as Exhibit A.

4. After re-joining private practice in 1984, I have developed a practice sub-specialty of advising companies about executive compensation arrangements. I currently represent 125 major publicly held corporations (94 of which are listed in the "Fortune 500"), and have provided specific advice to at least half of these corporations on issues concerning all aspects of Section 162(m) of the Internal Revenue Code of 1986, as amended ("Section 162(m)), including the drafting of proxy disclosures concerning performance-based plans and the requesting of private letter rulings from the Internal Revenue Service ("PLRs") on behalf of my clients.[1] In the course of advising clients, I have had numerous conversations with the staff of the Internal Revenue Service concerning their interpretation of Section 162(m). I also testified at both of the public hearings held on the proposed regulations under Section 162(m). The 24 PLRs that I have obtained for various clients since 1995 comprise approximately 35 percent of all PLRs that have been issued to date on Section 162(m) issues. As a result, I believe that I have an understanding of the IRS's interpretation of Section 162(m).

5. In preparing this Declaration, I have reviewed Plaintiff's Complaint, the Motion for Summary Judgment, Intel's Proxy Statement for 2005, all 68 PLRs issued and publicly released to date concerning Section 162(m), all the public comments on both sets of proposed

---

[1] Private letter rulings are issued by the Internal Revenue Service to individual taxpayers that have questions with respect to the application of regulations or rulings to a taxpayer's particular facts. Although private letter rulings technically can be relied upon only by the taxpayers to whom they have been issued, they are released to the public and are often cited as indications of the Service's analysis of the law.

regulations under Section 162(m) (as promulgated in December 1993 and December 1994) that were published by either Tax Notes or the BNA Daily Tax Reporter, disclosures in approximately 200 proxy statements (most filed by Fortune 500 companies), the Declaration of Gabrielle Thompson in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment, and Intel's Employee Bonus Plan.

### Section 162(m) and the Regulations

6.  Section 162(m) was passed as an initiative to regulate the amounts paid to executives of publicly held companies. It sought to limit excessive amounts of executive compensation by capping the amount that a publicly held company could deduct at $1 million in compensation per person that is paid to each of a company's CEO and other top 4 most highly compensated officers in any tax year. Section 162(m) contains a significant carve out, however, for "performance-based compensation." Among other things, this exception requires that shareholders approve the material conditions of the plan before the performance-based compensation is paid. (*See* Treas. Reg. §1.162-27(e)(4)). If the shareholder approval is not obtained, bonuses cannot be paid under the performance-based plan, but compensation *may* be paid under other plans or arrangements. *See* H.R. Conf. Rep. No. 103-213, 103d Cong., 1st Sess., at 586-588 1993-3 C.B. vol. 5, at 464-466; S. Rep. No. 103-36, 103d Cong., 1st Sess. 699, at 250-251; H. Rep. No. 103-111, 103d Cong., 1st Sess., at 648-650, 1993-3 C.B. at 224-226 (explaining that the performance-based compensation exception does not apply if executives have the right to receive the performance-based compensation irrespective of whether the shareholders approve the material terms of the performance goals).

7.  Following the passage of Section 162(m), the Treasury Department promulgated rules providing further guidance on the operation of these provisions. *See* Treas. Reg. § 1.162-27. The regulations promulgated under Section 162(m) were more lenient in numerous respects

than the statutory language. Generally, an agency drafting rules or regulations drafts them with a recognition as to how that agency will enforce the code and underlying regulations. For example (and specifically relevant to the issues raised in this litigation), the regulations provide examples of the types of material terms that should be submitted to shareholders, but waive any need to (a) identify executives by name, (b) disclose any confidential commercial or business information, or (c) provide the specific formulas that will be used in determining performance bonuses. (*See* Prop. and Final Treas. Reg. §1.162-27(e)(4)(i) – (iv), and compare H. Conf Rept. 103-213 at 588 (indicating that, while "not all the details of a plan (or agreement) need be disclosed in all cases, ... disclosure should be as specific as possible," taking into account SEC disclosure rules).) In response to this cited legislative history, although the Treasury regulations do cross-reference the SEC disclosure rules as a source of guidance for determining what should be disclosed to shareholders for purposes of satisfying Section 162(m), the regulations give priority to the disclosure requirements provided under Section 162(m), by stating that:

> *To the extent not otherwise specifically provided in this paragraph (e)(4)*, whether the material terms of a performance goals are adequately disclosed to shareholders is determined under the same standards as apply under the Exchange Act.

Treas. Reg. § 1.162-27(e)(4)(v). (Emphasis supplied.) Thus, to the extent that the Treasury regulations have waived any requirement for disclosing specific people eligible to receive performance compensation, specific performance targets, specific performance formulas, or any confidential information, or have otherwise addressed a disclosure requirement under Section 162(m), any SEC disclosure rules that may have been interpreted to require more detailed disclosure are simply irrelevant, for purposes of meeting the disclosure requirements of Section 162(m).

-4-

### Application of Section 162(m) and the Regulations

8. The regulations state that the shareholder approval requirement of Section 162(m) is not satisfied "if the compensation would be paid regardless of whether the material terms are approved by the shareholders." *See* Treas. Reg. §1.162-27(e)(4)(i). Based on my experience, and further based on the language of the Preamble to the re-proposed regulations published in December 1994, I believe that the regulation does not prohibit the situation where a company has a *separate* bonus plan (i.e., one that is not approved by shareholders, but that could be used to pay bonuses in addition to (or as an alternative to) a shareholder-approved plan), and also generally does not prohibit a company from exercising its discretion to pay bonuses if shareholders fail to approve the material terms of a performance-based plan. I also base this opinion on my reading of Treas. Reg. §1.162-27(e)(2)(v), which mandates that the performance-based compensation must in fact be contingent on meeting the performance conditions and explains that a facts and circumstances test must be conducted to determine if a company tried to make an end run around the rule by paying the compensation at issue under another plan. Treas. Reg. §1.162-27(e)(4) contains no such contingency. Because there is no equivalent in the (e)(4) regulation of this rule in the (e)(2) regulations, a company would not lose the deduction if it had established and operated a different plan or otherwise exercised its discretion whether pursuant to a non-shareholder approved plan or other arrangement in the event that shareholders did not approve the material terms of the performance-based plan.

9. Presumably on the basis of tax practitioners' collective conclusion that a non-performance plan or bonus does not "taint" a performance plan, a number of companies have designed so called "omnibus" plans to provide bonuses and other equity-based compensation to their top executives and other employees. An omnibus plan typically contains provisions for

grants of stock options, restricted stock, restricted stock units, and various types of bonuses, including both performance-based bonuses and totally discretionary bonuses. Shareholders only approve the material terms of that portion of the omnibus plan which pays based on the fulfillment of performance-based plan criteria. In the event shareholders do not approve the performance-based part of the plan, that section may be stricken from the plan. It does not prevent the payment of bonuses under another cash-based bonus set forth in the omnibus plan.

10. My opinion with respect to the IRS's apparent willingness to approve omnibus plans is further based upon my extensive discussions with IRS attorneys in 1999, when I applied, on behalf of one of my clients, for a private letter ruling addressing shareholder approvals required in the context of a corporate spin-off. In connection with that ruling request, we had drafted and attached to the ruling submission a performance plan for the spun-off company that included a provision specifically allowing for the payment of executive compensation under plans other than performance-based plans. In its favorable response (published as PLR 1999510021 (Sept. 17, 1999)), the IRS did not object to this provision of the performance plan in issuing its general Section 162(m) rulings. Similarly, in PLR 9827021 (April 3, 1998), the IRS approved a performance-based bonus plan as qualified under Section 162(m), while recognizing (and stating in the facts of the ruling) that the company also operated other bonus plans.

11. According to a statistical study conducted in 1995 of various performance plans established by 200 major U.S. corporations in response to Section 162(m), 48% of the surveyed companies indicated that they retained discretion to pay nondeductible compensation (even though such companies may also have modified their plans to meet the general Section 162(m) requirements).[2] Based on my personal experience in assisting my clients in establishing these plans, and further based on my survey of several hundred recent proxy statements, this 1996

---

[2] *See* Gail McGowan and Carol Bowie, "Corporate Response to Section 162(m), Executive Compensation Reports, Monograph Series 7 (1996) at 10.

statistic indicating that approximately half of major companies retain some discretion to pay non-deductible compensation, appears to have remained relatively stable over the past nine years. Only a very small percentage of performance-based plans provide that a company will not pay any bonuses in the event that shareholders do not approve the performance conditions.

12. In my experience, I believe that it is best practices for a company to disclose not only that a performance-based plan is subject to shareholder approval, but to disclose that the Board retains discretion to and may make payments to executives which are not deductible in the event that shareholders do not approve the plan up for vote. Making these disclosures, particularly the latter, in my view, satisfies applicable Treasury and SEC disclosure regulations, because such disclosures accurately and precisely explain the consequences of an unfavorable shareholder vote.

### Intel's Proxy Statement Does Not Contain Any Language Suggesting a Pre-existing Right to be Paid under the EOIP

13. The legislative history of Section 162(m) suggests that the statute and the implementing regulations were intended to preclude situations where the Board had a pre-existing contractual commitment to make a payment to an executive prior to shareholder approval. Language added to the legislative history of Section 162(m) has been incorporated in the underlying regulations, in order to ensure that the performance-based compensation is, in fact, contingent upon shareholders' approval of the material terms of the plan, in order for this compensation to qualify for exemption from deduction disallowance. If the executive already had a contractual right to the compensation, the shareholder vote would have been effectively meaningless. For this reason, Treas. Reg. §1.162-27(e)(4)(i) provides that a deduction will be disallowed, even for performance-based compensation, "if the compensation would be paid regardless of whether the material terms are approved by the shareholders." This language of the

regulation is derived specifically from the legislative history of Section 162(m), which states that "compensation does not qualify for the performance-based exception if the executive has a right to receive the compensation notwithstanding the failure of . . . the shareholders to approve the compensation."

14. I have reviewed Intel's 2005 Proxy Statement. In my opinion, Intel's disclosure that, in the event shareholders did not approve the proposal amending and restating the EOIP, Intel "expect[s] to make incentive payments to executive officers" does not state that executives have a pre-existing contractual right to receive payments under the EOIP. Accordingly, I do not believe that the language in Intel's Proxy Statement would prevent Intel from receiving a tax deduction.

### Intel's Proxy Does Not Suggest that Executives will be Paid under the EOIP if Shareholders do Not Approve the Plan

15. Additionally, the regulations and the legislative history of Section 162(m) suggest that the shareholder approval provisions of Section 162(m) were intended to prevent corporations from taking deductions when the corporation intended to make the same payment under the same plan regardless if shareholders approved the plan.

16. I do not believe that Intel's disclosure in its 2005 Proxy Statement that, in the event shareholders do not approve the proposal, Intel expects to pay executives "amounts similar to those that would have otherwise been paid under the EOIP...." indicates that Intel will pay under the EOIP even if shareholders do not approve. In fact, Intel's proxy states that the EOIP would be terminated upon a negative shareholder vote and no payments would be made thereunder. Moreover, from my experience, I do not believe the IRS intended to prohibit a company from paying non-shareholder approved bonuses to executives if a company makes clear that payments would not be deductible. Intel does just that when it discloses to shareholders that

-8-

if such payments are made, "we will lose a portion of the tax deductibility that would have otherwise been available to us." Intel's disclosure, explaining the possibility that executives may be paid in similar amounts does not taint the shareholder vote in anyway. To the contrary, I believe it allows shareholders to recognize that Intel sees the value in its executives and will pay cash compensation, even if it is non-deductible. Thus, I do not believe that the IRS would conclude that Intel's disclosure would cause Intel to lose its deduction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22 day of July, 2005, at Washington, D.C.

_____
Mary B. Hevener

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I do hereby certify that, on July 25, 2005, the within document was filed under seal with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**HAND DELIVERY**

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

Stephen C. Norman (#2686)
Brian C. Ralston (#5770)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I do hereby certify that, on August 1, 2005, the within document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

_____
Stephen C. Norman (#2686)
Brian C. Ralston (#3770)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: snorman@potteranderson.com
E-mail: bralston@potteranderson.com