# EXHIBIT A
# CONTINUED

**Table of Contents**

Sponsoring Organizations of the Treadway Commission. Management's assessment included evaluation of such elements as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. This assessment is supported by testing and monitoring performed both by our Internal Audit organization and our Finance and Enterprise Services organization.

Based on our assessment, management has concluded that our internal control over financial reporting was effective as of the end of the fiscal year to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles. We reviewed the results of management's assessment with the Audit Committee of our Board of Directors.

Our independent registered public accounting firm, Ernst & Young LLP, audited management's assessment and independently assessed the effectiveness of the company's internal control over financial reporting. Ernst & Young has issued an attestation report concurring with management's assessment, which is included at the end of Part II, Item 8 of this Form 10–K.

**Inherent Limitations on Effectiveness of Controls**

The company's management, including the CEO and CFO, does not expect that our Disclosure Controls or our internal control over financial reporting will prevent or detect all error and all fraud. A control system, no matter how well designed and operated, can provide only reasonable, not absolute, assurance that the control system's objectives will be met. The design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Further, because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that misstatements due to error or fraud will not occur or that all control issues and instances of fraud, if any, within the company have been detected. These inherent limitations include the realities that judgments in decision–making can be faulty and that breakdowns can occur because of simple error or mistake. Controls can also be circumvented by the individual acts of some persons, by collusion of two or more people, or by management override of the controls. The design of any system of controls is based in part on certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions. Projections of any evaluation of controls effectiveness to future periods are subject to risks. Over time, controls may become inadequate because of changes in conditions or deterioration in the degree of compliance with policies or procedures.

**ITEM 9B.     OTHER INFORMATION**

None.

Table of Contents

PART III

**ITEM 10.    DIRECTORS AND EXECUTIVE OFFICERS OF THE REGISTRANT**

The information regarding Directors and Executive Officers appearing under the headings "Proposal 1: Election of Directors" and "Other Matters—Section 16(a) Beneficial Ownership Reporting Compliance" of our 2005 Proxy Statement is incorporated by reference in this section. The information under the heading "Executive Officers of the Registrant" in Part I, Item 1 of this Form 10-K is also incorporated by reference in this section. In addition, the information included under the heading "Corporate Governance" in Part I, Item 1 of this Form 10-K identifying the "audit committee financial expert" who serves on the Audit Committee of our Board of Directors and the process by which stockholders may recommend candidates for the Board of Directors to the Corporate Governance and Nominating Committee is incorporated by reference in this section. There were no changes to the process by which stockholders may recommend candidates for the Board of Directors during 2004

Intel has, for many years, maintained a set of Corporate Business Principles which incorporate our code of ethics applicable to all employees, including all officers, and including our independent directors, who are not employees of the company, with regard to their Intel-related activities. The Corporate Business Principles incorporate our guidelines designed to deter wrongdoing and to promote honest and ethical conduct and compliance with applicable laws and regulations. They also incorporate our expectations of our employees that enable us to provide accurate and timely disclosure in our filings with the Securities and Exchange Commission and other public communications. In addition, they incorporate Intel guidelines pertaining to topics such as environmental, health and safety compliance; diversity and non-discrimination; supplier expectations; privacy; and business continuity.

The full text of our Corporate Business Principles is published on our Investor Relations web site at *www.intc.com*. We intend to disclose future amendments to certain provisions of our Corporate Business Principles, or waivers of such provisions granted to executive officers and directors, on this web site within four business days following the date of such amendment or waiver.

**ITEM 11.    EXECUTIVE COMPENSATION**

The information appearing under the headings "Directors' Compensation," "Employment Contracts and Change of Control Arrangements," "Report of the Compensation Committee on Executive Compensation," "Stock Price Performance Graph," "Compensation Committee Interlocks and Insider Participation" and "Executive Compensation" of the 2005 Proxy Statement is incorporated by reference

**ITEM 12.    SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS**

ae information appearing in our 2005 Proxy Statement under the heading "Security Ownership of Certain Beneficial Owners and Management" is incorporated by reference.

See "Employee Equity Incentive Plans" in Part II, Item 7 of this Form 10-K regarding shares authorized for issuance under equity compensation plans approved by stockholders and not approved by stockholders. For descriptions of our equity incentive plans, see "Employee Equity Incentive Plans" in Part II, Item 7 and "Note 11: Employee Equity Incentive Plans" in Part II, Item 8 of this Form 10-K.

**ITEM 13.    CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS**

The information appearing in our 2005 Proxy Statement under the heading "Certain Relationships and Related Transactions" is incorporated by reference.

**ITEM 14.    PRINCIPAL ACCOUNTANT FEES AND SERVICES**

The information appearing in our 2005 Proxy Statement under the headings "Report of the Audit Committee" and "Ratification of Selection of Independent Registered Public Accounting Firm" is incorporated by reference.

83

Table of Contents

PART IV

TEM 15.    EXHIBITS AND FINANCIAL STATEMENT SCHEDULES

1.    Financial Statements: See "Index to Consolidated Financial Statements" in Part II, Item 8 on page 45 of this Form 10−K.

2.    Financial Statement Schedule: See "Schedule II—Valuation and Qualifying Accounts" on page 85 of this Form 10−K.

3.    Exhibits: The exhibits listed in the accompanying index to exhibits are filed or incorporated by reference as part of this Form 10−K.

---

*Intel, the Intel logo. Intel Inside. Celeron, Intel Centrino, Intel SpeedStep, Intel StrataFlash, Intel Xeon. Intel XScale. Itanium, MMX and Pentium are trademarks or registered trademarks of Intel Corporation or its subsidiaries in the United States and other countries.*
*\*Other names and brands may be claimed as the property of others.*

84

Table of Contents

## INTEL CORPORATION
## SCHEDULE II—VALUATION AND QUALIFYING ACCOUNTS

December 25, 2004, December 27, 2003 and December 28, 2002
(In Millions)

| | Balance at Beginning of Year | Additions Charged to Costs and Expenses | Deductions | Balance at End of Year |
|---|---|---|---|---|
| Allowance for doubtful receivables † | | | | |
| 2004 | $ 55 | $ 4 | $ 16 | $ 43 |
| 2003 | $ 57 | $ 14 | $ 16 | $ 55 |
| 2002 | $ 68 | $ 10 | $ 21 | $ 57 |
| Valuation allowance for deferred tax asset | | | | |
| 2004 | $ — | $ 75 | $ — | $ 75 |
| 2003 | $ — | $ — | $ — | $ — |
| 2002 | $ — | $ — | $ — | $ — |

† *Deductions represent uncollectible accounts written off, net of recoveries*

85

## INDEX TO EXHIBITS

| Exhibit Number | Exhibit Description | Form | File Number | Exhibit | Filing Date | Filed Herewith |
|---|---|---|---|---|---|---|
| | | | **Incorporated by Reference** | | | |
| 3 1 | Intel Corporation Second Restated Certificate of Incorporation filed March 13, 2003 | 10-Q | 000-06217 | 3.1 | 5/7/03 | |
| 3 2 | Intel Corporation Bylaws as amended on November 10, 2004 | 8-K | 000-06217 | 3.1 | 11/15/04 | |
| 10 1** | Intel Corporation 2004 Equity Incentive Plan, effective May 19, 2004 | 10-Q | 000-06217 | 10 3 | 8/2/04 | |
| 10 2** | Standard Terms and Conditions Relating to Non-Qualified Stock Options granted to U S employees on and after May 19, 2004 under the Intel Corporation 2004 Equity Incentive Plan | 10-Q | 000-06217 | 10 5 | 8/2/04 | |
| 10 3** | Notice of Grant of Non-Qualified Stock Option under the Intel Corporation 2004 Equity Incentive Plan | 10-Q | 000-06217 | 10 7 | 8/2/04 | |
| 10 4** | Standard International Non-Qualified Stock Option Agreement under the Intel Corporation 2004 Equity Incentive Plan | 10-Q | 000-06217 | 10 6 | 8/2/04 | |
| 10 5** | Intel Corporation Non-Employee Director Non-Qualified Stock Option Agreement under the Intel Corporation 2004 Equity Incentive Plan | 10-Q | 000-06217 | 10 4 | 8/2/04 | |
| 10 6** | Form of EL TSOP Non-Qualified Stock Option Agreement under the Intel Corporation 2004 Equity Incentive Plan | 8-K | 000-06217 | 10 1 | 10/12/04 | |
| 10 7 | Intel Corporation 1997 Stock Option Plan, as amended and restated effective July 16, 1997 | 10-K | 000-06217 | 10 7 | 3/11/03 | |
| 10 8** | Intel Corporation 1988 Executive Long Term Stock Option Plan, as amended and restated effective July 16, 1997 | 10-Q | 333-45395 | 10 2 | 8/11/98 | |
| 10 9** | Intel Corporation 1984 Stock Option Plan, as amended and restated effective July 16, 1997 | 10-Q | 333-45395 | 10 1 | 8/11/98 | |
| 10 10** | Intel Corporation Executive Officer Incentive Plan, as amended and restated effective January 1, 2004 | 10-K | 000-06217 | 10 7 | 2/23/04 | |
| 0 11** | Description of Bonus Terms under the Executive Officer Incentive Plan | 10-Q | 000-06217 | 10 2 | 8/2/04 | |
| 10 12** | Intel Corporation Deferral Plan for Outside Directors, effective July 1, 1998 | 10-K | 333-45395 | 10 6 | 3/26/99 | |
| 10 13** | Intel Corporation Special Deferred Compensation Plan | S-8 | 333-45395 | 4 1 | 2/2/98 | |
| 10 14** | Intel Corporation Sheltered Employee Retirement Plan Plus, as amended and restated effective July 15, 1996 | S-8 | 033-63489 | 4 1 1 | 7/17/96 | |
| 10 15** | Form of Indemnification Agreement with Directors and Executive Officers | | | | | X |
| 12 1 | Statement Setting Forth the Computation of Ratios of Earnings to Fixed Charges | | | | | X |
| 21 1 | Intel subsidiaries | | | | | X |
| 23 1 | Consent of Ernst & Young LLP, Independent Registered Public Accounting Firm | | | | | X |
| 31 1 | Certification of Chief Executive Officer Pursuant to Rule 13a-14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act) | | | | | X |
| 31 2 | Certification of Chief Financial Officer and Principal Accounting Officer Pursuant to Rule 13a-14(a) of the Exchange Act | | | | | X |

86

**Table of Contents**

| Exhibit Number | Exhibit Description | Incorporated by Reference | | | | Filed Herewith |
| --- | --- | --- | --- | --- | --- | --- |
| | | Form | File Number | Exhibit | Filing Date | |
| 32 1 | Certification of the Chief Executive Officer and the Chief Financial Officer and Principal Accounting Officer Pursuant to Rule 13a−14(b) of the Exchange Act and 18 U S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes−Oxley Act of 2002 | | | | | X |

** *Compensation plans or arrangements in which directors or executive officers are eligible to participate*

87

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized

INTEL CORPORATION
Registrant

By:  /s/   ANDY D. BRYANT
Andy D. Bryant
Executive Vice President, Chief Financial Officer
and Principal Accounting Officer
February 18, 2005

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

/s/   CRAIG R. BARRETT
Craig R. Barrett
Chief Executive Officer, Director and
Principal Executive Officer
February 18, 2005

/s/   REED E. HUNDT
Reed E. Hundt
Director
February 18, 2005

/s/   CHARLENE BARSHEFSKY
Charlene Barshefsky
Director
February 18, 2005

/s/   PAUL S. OTELLINI
Paul S. Otellini
President, Chief Operating Officer and Director
February 18, 2005

/s/   E. JOHN P. BROWNE
E. John P. Browne
Director
February 18, 2005

/s/   DAVID S. POTTRUCK
David S. Pottruck
Director
February 18, 2005

/s/   ANDY D. BRYANT
ndy D. Bryant
Executive Vice President, Chief Financial Officer and
Principal Accounting Officer
February 18, 2005

/s/   JANE E. SHAW
Jane E. Shaw
Director
February 18, 2005

/s/   ANDREW S. GROVE
Andrew S. Grove
Chairman of the Board and Director
February 18, 2005

/s/   JOHN L. THORNTON
John L. Thornton
Director
February 18, 2005

/s/   D. JAMES GUZY
D. James Guzy
Director
February 18, 2005

/s/   DAVID B. YOFFIE
David B. Yoffie
Director
February 18, 2005

88

## FORM OF INDEMNIFICATION AGREEMENT

THIS AGREEMENT is entered into, effective as of [EFFECTIVE DATE], between INTEL CORPORATION, a Delaware corporation (the "Company") and [INDEMNITEE] ("Indemnitee")

'WHEREAS, it is essential to the Company to retain and attract as directors, officers and employees the most capable persons available;

WHEREAS, Indemnitee is a director, and/or officer, and/or employee of the Company;

WHEREAS, both the Company and Indemnitee recognize the increased risk of litigation and other claims currently being asserted against directors, officers and employees of corporations; and

WHEREAS, in recognition of Indemnitee's need for substantial protection against personal liability in order to enhance Indemnitee's continued and effective service to the Company, and in order to induce Indemnitee to provide services to the Company as a director, officer or employee, the Company wishes to provide in this Agreement for the indemnification of and the advancing of expenses to Indemnitee to the fullest extent (whether partial or complete) permitted by law and as set forth in this Agreement, and, to the extent insurance is maintained which includes Indemnitee as a covered party, for the coverage of Indemnitee under the Company's directors' and officers' liability insurance policies.

NOW, THEREFORE, in consideration of the above premises and of Indemnitee's continuing to serve the Company directly or, at its request, with another enterprise, and intending to be legally bound hereby, the parties agree as follows:

1. Certain Definitions:

(a)  Board:  the Board of Directors of the Company.

any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), other than a trustee or other fiduciary holding securities under an employee benefit plan of the Company or a corporation owned directly or indirectly by the stockholders of the Company in substantially the same proportions as their ownership of stock of the Company, is or becomes the "Beneficial Owner" (as defined in Rule 13d−3 under said Act), directly or indirectly, of securities of the Company representing 20% or more of the total voting power represented by the Company's then outstanding Voting Securities, or (ii) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board and any new director whose election by the Board or nomination for election by the Company's stockholders was approved by a vote of at least two−thirds (2/3) of the directors then still in office who either were directors at the beginning of the period or

1.

whose election or nomination for election was previously so approved, cease for any reason to constitute a majority thereof, or (iii) the stockholders of the Company approve a merger or consolidation of the Company with any other corporation, other than a merger or consolidation that would result in the Voting Securities of the Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into Voting Securities of the surviving entity) at least 80% of the total voting power represented by the Voting Securities of the Company or such surviving entity outstanding immediately after such merger or consolidation, or the stockholders of the Company approve a plan of complete liquidation of the Company or an agreement for the sale or disposition by the Company (in one transaction or a series of transactions) of all or substantially all of the Company's assets.

(c)    Disinterested Director.    a director of the Company who is not and was not a party to the Proceeding in respect of which indemnification is sought by Indemnitee.

(d)    Expenses:    any expense, including without limitation, attorneys' fees, retainers, court costs, transcript costs, fees and expenses of experts, including accountants and other advisors, travel expenses, duplicating costs, postage, delivery service fees, filing fees, and all other disbursements or expenses of the types typically paid or incurred in connection with investigating, defending, being a witness in, or participating in (including on appeal), or preparing for any of the foregoing in, any Proceeding relating to any Indemnifiable Event, and any expenses of establishing a right to indemnification under Sections 2, 4 and 5 of this Agreement.

(e)    Indemnifiable Event:    any event or occurrence that takes place either prior to or after the execution of this Agreement, related to the fact that Indemnitee is or was a director, officer or employee of the Company, or while a director, officer or employee, is or was serving at the request of the Company as a director, officer, employee, trustee, agent, limited partner, member or fiduciary of another foreign or domestic corporation, partnership, joint venture, employee benefit plan, trust, or other enterprise, or was a director, officer, employee, or agent of a foreign or domestic corporation that was a predecessor corporation of the Company or of another enterprise at the request of such predecessor corporation, or related to anything done or not done by Indemnitee in any such capacity, whether or not the basis of the Proceeding is alleged action in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee, or agent of the Company, as described above.

(f)    Independent Counsel:    the person or body appointed in connection with Section 3.

(g)    Potential Change in Control:    shall be deemed to have occurred if (i) the Company enters into an agreement or arrangement, the consummation of which would result in the occurrence of a Change in Control; (ii) any person (including the Company) publicly announces an intention to take or to consider taking actions that, if consummated, would constitute a Change in Control; (iii) any person (other than a

2

trustee or other fiduciary holding securities under an employee benefit plan of the Company acting in such capacity or a corporation owned, directly or indirectly, by the stockholders of the Company in substantially the same proportions as their ownership of stock of the Company), who is or becomes the Beneficial Owner, directly or indirectly, of securities of the Company representing 10% or more of the combined voting power of the Company's then outstanding Voting Securities, increases his beneficial ownership of such securities by 5% or more over the percentage so owned by such person on the date hereof, or (iv) the Board adopts a resolution to the effect that, for purposes of this Agreement, a Potential Change in Control has occurred.

a)   Proceeding:   any threatened, pending, or completed action, suit, arbitration, alternative dispute mechanism, inquiry, administrative or legislative hearing, investigation or any other actual, threatened or completed proceeding, including any and all appeals, whether conducted by the Company or any other party, whether civil, criminal, administrative, investigative, or other, and in each case whether or not commenced prior to the date of this Agreement, that relates to an Indemnifiable Event.

(i)   Reviewing Party:   the person or body appointed in accordance with Section 3.

(j)   Voting Securities:   any securities of the Company that vote generally in the election of directors.

2.   Agreement to Indemnify.

(a)   General Agreement   In the event Indemnitee was, is, or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, a Proceeding by reason of (or arising in part out of) an Indemnifiable Event, the Company shall indemnify Indemnitee from and against any and all Expenses, liability or loss, judgments, fines, ERISA excise taxes and penalties, amounts paid or to be paid in settlement, any interest, assessments, or other charges imposed thereon, and any federal, state, local, or foreign taxes imposed as a result of the actual or deemed receipt of any payments under this Agreement, to the fullest extent permitted by applicable law, as the same exists or may hereafter be amended or interpreted (but in the case of any such amendment or interpretation, only to the extent that such amendment or interpretation permits the Company to provide broader indemnification rights than were permitted prior thereto) The parties hereto intend that this Agreement shall provide for indemnification in excess of that expressly permitted by statute.

(b)   Initiation of Proceeding.   Notwithstanding anything in this Agreement to the contrary, Indemnitee shall not be entitled to indemnification or advancement pursuant to this Agreement in connection with any Proceeding initiated by Indemnitee against the Company or any director or officer of the Company unless (i) the Company has joined in or the Board has consented to the initiation of such Proceeding; (ii) the Proceeding is one to enforce indemnification rights under Section 5; or (iii) the Proceeding is instituted after a Change in Control.

3

(c)  Expense Advances.  If so requested by Indemnitee, the Company shall advance any and all Expenses to Indemnitee (an "Expense Advance") within thirty (30) calendar days after the receipt by the Company of a statement or statements from Indemnitee requesting such advance or advances, whether prior to or after final disposition of any Proceeding. Advances shall be made without regard to Indemnitee's ability to repay the Expenses and without regard to Indemnitee's ultimate entitlement to indemnification under the provisions of this Agreement  The Indemnitee shall qualify for advances solely upon the execution and delivery to the Company of an undertaking in form and substance reasonably satisfactory to the Company providing that the Indemnitee undertakes to repay the advance if and to the extent that it is ultimately determined that Indemnitee is not entitled to be indemnified by the Company  Advances shall include any and all reasonable Expenses incurred pursuing an action to enforce this right of advancement  If Indemnitee has commenced legal proceedings in a court of competent jurisdiction in the State of Delaware to secure a determination that Indemnitee should be indemnified under applicable law, as provided in Section 4, any determination made by the Reviewing Party that Indemnitee would not be permitted to be indemnified under applicable law shall not be binding and Indemnitee shall not be required to reimburse the Company for any Expense Advance until a final judicial determination is made with respect thereto (as to which all rights of appeal therefrom have been exhausted or have lapsed)  Indemnitee's obligation to reimburse the Company for Expense Advances shall be unsecured and no interest shall be charged thereon

(d)  Mandatory Indemnification.  Notwithstanding any other provision of this Agreement, to the extent that Indemnitee has been successful on the merits in defense of any Proceeding relating in whole or in part to an Indemnifiable Event or in defense of any issue or matter therein, Indemnitee shall be indemnified against all Expenses incurred in connection therewith.

(e)  Partial Indemnification.  If Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of Expenses, but not, however, for the total amount thereof, the Company shall nevertheless indemnify Indemnitee for the portion thereof to which Indemnitee is entitled

3   Reviewing Party.

(a)  Prior to any Change in Control, the person, persons or entity ("the Reviewing Party") who shall determine whether Indemnitee is entitled to indemnification in the first instance shall be (a) the Board of Directors of the Company acting by a majority vote of Disinterested Directors, whether or not such majority constitutes a quorum of the Board of Directors; (b) a committee of Disinterested Directors designated by a majority vote of such directors, whether or not such majority constitutes a quorum; or (c) if there are no Disinterested Directors, or if the

4.

Disinterested Directors so direct, by Independent Counsel (as described below in Section 3(b)) in a written determination to the Board of Directors, a copy of which shall be delivered to Indemnitee.

(b)   After a Change in Control, the Reviewing Party shall be the Independent Counsel referred to below. With respect to all matters arising from a Change in Control (other than a Change in Control approved by a majority of the directors on the Board who were directors immediately prior to such Change in Control) ¬oncerning the rights of Indemnitee to indemnity payments and Expense Advances under this Agreement or any other agreement or under applicable law or the ompany's articles of incorporation or by‒laws now or hereafter in effect relating to indemnification for Indemnifiable Events, the Company shall seek legal advice only from Independent Counsel selected by Indemnitee and approved by the Company (which approval shall not be unreasonably withheld), and who has not otherwise performed services for the Company or the Indemnitee (other than in connection with indemnification matters) within the last five years. The Independent Counsel shall not include any person who, under the applicable standards of professional conduct then prevailing, would have a conflict of interest · in representing either the Company or Indemnitee in an action to determine Indemnitee's rights under this Agreement. Such counsel, among other things, shall render its written opinion to the Company and Indemnitee as to whether and to what extent the Indemnitee should be permitted to be indemnified under applicable law. The Company agrees to pay the reasonable fees of the Independent Counsel and to indemnify fully such counsel against any and all expenses (including attorneys' fees), claims, liabilities, loss, and damages arising out of or relating to this Agreement or the engagement of Independent Counsel pursuant hereto.

4    Indemnification Process and Appeal.

(a)   Indemnification Payment.    Indemnitee shall be entitled to indemnification of Expenses, and shall receive payment thereof, from the Company in accordance with this Agreement within thirty (30) calendar days after Indemnitee has made written demand on the Company for indemnification (which written demand shall include such documentation and information as is reasonably available to Indemnitee and is reasonably necessary to determine whether and to what extent Indemnitee is entitled to indemnification), unless the Reviewing Party has provided a written determination to the Company that Indemnitee is not entitled to indemnification under applicable law. The Reviewing Party making the determination with respect to Indemnitee's entitlement to indemnification shall notify Indemnitee of such written determination no later than two (2) business days thereafter.

(b)   Suit to Enforce Rights.    If (i) no determination of entitlement to indemnification shall have been made within thirty (30) calendar days after Indemnitee has made a demand in accordance with Section 4(a), (ii) payment of indemnification pursuant to Section 4(a) is not made within thirty (30) calendar days after a determination has been made that Indemnitee is entitled to indemnification, (iii) the Reviewing Party determines pursuant to Section 4(a) that Indemnitee is not entitled to indemnification under this Agreement, or (iv) Indemnitee has not received advancement

of Expenses within thirty (30) calendar days after making such a request in accordance with Section 2(c), then Indemnitee shall have the right to enforce its indemnification rights under this Agreement by commencing litigation in any court of competent jurisdiction in the State of Delaware seeking an initial determination by the court or challenging any determination by the Reviewing Party or any aspect thereof. The Company hereby consents to service of process and to appear in any such proceeding. Any determination by the Reviewing Party not challenged by the Indemnitee on or before the first anniversary of the date of the Reviewing Party's determination shall be binding on the Company and Indemnitee. The remedy provided for in this Section 4 shall be in addition to any other remedies available to Indemnitee in law or equity.

(c)     Defense to Indemnification, Burden of Proof, and Presumptions.

(i)     To the maximum extent permitted by applicable law in making a determination with respect to entitlement to indemnification (or advancement of expenses) hereunder, the Reviewing Party shall presume that an Indemnitee is entitled to indemnification (or advancement of expenses) under this Agreement if Indemnitee has submitted a request for indemnification in accordance with Section 4(a) of this Agreement, and the Company shall have the burden of proof to overcome that presumption in connection with the making by the Reviewing Party of any determination contrary to that presumption.

(ii)     It shall be a defense to any action brought by Indemnitee against the Company to enforce this Agreement (other than an action brought to enforce a claim for Expenses incurred in defending a Proceeding in advance of its final disposition where the required undertaking has been tendered to the Company) that it is not permissible under applicable law for the Company to indemnify Indemnitee for the amount claimed.

(iii)     In connection with any action brought pursuant to Section 4(c)(ii) as to whether Indemnitee is entitled to be indemnified hereunder, the burden of proving Indemnitee is not entitled to indemnification under this Agreement shall be on the Company.

(iv)     Neither the failure of the Reviewing Party or the Company (including its Board, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action by Indemnitee that indemnification of the claimant is proper under this Agreement under the circumstances because Indemnitee has met the standard of conduct set forth in applicable law, nor an actual determination by the Reviewing Party or Company (including its Board, independent legal counsel, or its stockholders) that the Indemnitee had not met such applicable standard of conduct, shall be admissible as evidence in any such action for any purpose.

(v)     For purposes of this Agreement, the termination of any claim, action, suit, or proceeding, by judgment, order, settlement (whether with or without court approval), conviction, or upon a plea of nolo contendere, or its equivalent, shall not

6

create a presumption that Indemnitee did not meet any particular standard of conduct or have any particular belief or that a court has determined that indemnification is not permitted by applicable law.

5    Indemnification for Expenses Incurred in Enforcing Rights.    The Company shall indemnify Indemnitee against any and all Expenses and, if requested by Indemnitee, shall advance such Expenses to Indemnitee on such terms and conditions as the Board of Directors deems appropriate, that are incurred by Indemnitee in connection with any claim asserted against or action brought by Indemnitee for

(i)    enforcement of this Agreement,

(ii)    indemnification of Expenses or Expense Advances by the Company under this Agreement or any other agreement or under applicable law or the Company's articles of incorporation or by-laws now or hereafter in effect relating to indemnification for Indemnifiable Events, and/or

(iii)    recovery under directors' and officers' liability insurance policies maintained by the Company.

6    Notification and Defense of Proceeding.

(a)    Notice    Promptly after receipt by Indemnitee of notice of the commencement of any Proceeding, Indemnitee will, if a claim in respect thereof is to be made against the Company under this Agreement, notify the Company of the commencement thereof; but the omission so to notify the Company will not relieve it from any liability that it may have to Indemnitee, except as provided in Section 13(c)

(b)    Defense.    With respect to any Proceeding as to which Indemnitee notifies the Company of the commencement thereof, the Company will be entitled to participate in the Proceeding at its own expense and except as otherwise provided below, to the extent the Company so wishes, it may assume the defense thereof with counsel reasonably satisfactory to Indemnitee. After notice from the Company to Indemnitee of its election to assume the defense of any Proceeding, the Company will not be liable to Indemnitee under this Agreement or otherwise for any Expenses subsequently incurred by Indemnitee in connection with the defense of such Proceeding other than reasonable costs of investigation or as otherwise provided below. Indemnitee shall have the right to employ his own counsel in such Proceeding, but all Expenses related thereto incurred after notice from the company of its assumption of the defense shall be at Indemnitee's expense unless: (i) the employment of counsel by Indemnitee has been authorized by the Company, (ii) Indemnitee has reasonably determined that there may be a conflict of interest between Indemnitee and the Company in the defense of the Proceeding, (iii) after a Change in Control, the employment of counsel by Indemnitee has been approved by the Independent Counsel, or (iv) the Company shall not within sixty (60) calendar days in fact have employed counsel to assume the defense of such Proceeding, in each of which case all Expenses of the Proceeding shall be borne by the Company; and (v) if the Company has selected

7

counsel to represent Indemnitee and other current and former directors, officers and employees of the Company in the defense of a Proceeding, and a majority of such persons, including Indemnitee, reasonably object to such counsel selected by the Company pursuant to this Section 6(b), then such persons, including Indemnitee, shall be permitted to employ one (1) additional counsel of their choice and the reasonable fees and expenses of such counsel shall be at the expense of the Company; provided, however, that such counsel shall be chosen from amongst the list of counsel, if any, approved by any company with which the Company obtains or maintains insurance. In the event separate counsel is retained by an Indemnitee pursuant to this Section 6(b), the Company shall cooperate vith Indemnitee with respect to the defense of the Proceeding, including making documents, witnesses and other reasonable information related to the defense vailable to the Indemnitee and such separate counsel pursuant to joint–defense agreements or confidentiality agreements, as appropriate. The Company shall not be entitled to assume the defense of any Proceeding brought by or on behalf of the Company or as to which Indemnitee shall have made the determination provided for in (ii) above.

(c)  Settlement of Claims.   The Company shall not be liable to indemnify Indemnitee under this Agreement or otherwise for any amounts paid in settlement of any Proceeding effected without the Company's written consent, provided, however, that if a Change in Control has occurred, the Company shall be liable for indemnification of Indemnitee for amounts paid in settlement if the Independent Counsel has approved the settlement. The Company shall not settle any Proceeding in any manner that would impose any penalty or limitation on Indemnitee without Indemnitee's written consent. Neither the Company nor the Indemnitee will unreasonably withhold their consent to any proposed settlement. The Company shall not be liable to indemnify the Indemnitee under this Agreement with regard to any judicial award if the Company was not given a reasonable and timely opportunity, at its expense, to participate in the defense of such action; the Company's liability hereunder shall not be excused if participation in the Proceeding by the Company was barred by this Agreement.

7.  Establishment of Trust.   In the event of a Change in Control or a Potential Change in Control, the Company shall, upon written request by Indemnitee, create a Trust for the benefit of the Indemnitee and from time to time upon written request of Indemnitee shall fund the Trust in an amount sufficient to satisfy any and all Expenses reasonably anticipated at the time of each such request to be incurred in connection with investigating, preparing for, participating in, and/or defending any Proceeding relating to an Indemnifiable Event. The amount or amounts to be deposited in the Trust pursuant to the foregoing funding obligation shall be determined by the Reviewing Party. The terms of the Trust shall provide that upon a Change in Control, (i) the Trust shall not be revoked or the principal thereof invaded, without the written consent of the Indemnitee, (ii) the Trustee shall advance, within ten business days of a request by the Indemnitee, any and all Expenses to the Indemnitee (and the Indemnitee hereby agrees to reimburse the Trust under the same circumstances for which the Indemnitee would be required to reimburse the Company under Section 2(c) of this Agreement), (iii) the Trust shall continue to be funded by the Company in accordance with the funding obligation set forth above, (iv) the Trustee shall promptly pay to the

8

Indemnitee all amounts for which the Indemnitee shall be entitled to indemnification pursuant to this Agreement or otherwise, and (v) all unexpended funds in the Trust shall revert to the Company upon a final determination by the Reviewing Party or a court of competent jurisdiction, as the case may be, that the Indemnitee has been fully indemnified under the terms of this Agreement. The Trustee shall be chosen by the Indemnitee. Nothing in this Section 7 shall relieve the Company of any of its obligations under this Agreement. All income earned on the assets held in the Trust shall be reported as income by the Company for federal, state, local, and foreign tax purposes. The Company shall pay all costs of establishing and maintaining the Trust and shall indemnify the Trustee against any and all expenses (including attorneys' fees), claims, liabilities, loss, and damages arising out of or relating to this Agreement or the establishment and maintenance of the Trust.

8.    Non–Exclusivity.    The rights of Indemnitee hereunder shall be in addition to any other rights Indemnitee may have under the laws of the State of Delaware, the Company's articles of incorporation, by–laws, applicable law, or otherwise. To the extent that a change in applicable law (whether by statute or judicial decision) permits greater indemnification by agreement than would be afforded currently under the Company's articles of incorporation, by–laws, applicable law, or this Agreement, it is the intent of the parties that Indemnitee enjoy by this Agreement the greater benefits so afforded by such change.

9.    Liability Insurance.    To the extent the Company maintains an insurance policy or policies providing directors' or officers' liability insurance, Indemnitee, if a director or officer of the Company, shall be covered by such policy or policies, in accordance with its or their terms.

10.    Period of Limitations    No legal action shall be brought and no cause of action shall be asserted by or on behalf of the Company or any affiliate of the Company against Indemnitee, Indemnitee's spouse, heirs, executors, or personal or legal representatives after the expiration of two years from the date of accrual of such cause of action, or such longer period as may be required or permitted by federal or state law under the circumstances. Any claim or cause of action of the Company or its affiliate shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such period; provided, however, that if any shorter period of limitations is otherwise applicable to any such cause of action the shorter period shall govern.

11.    Amendment of this Agreement.    No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by both of the parties hereto. No waiver of any of the provisions of this Agreement shall operate as a waiver of any other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver. Except as specifically provided herein, no failure to exercise or any delay in exercising any right or remedy hereunder shall constitute a waiver thereof.

9.

12.   Subrogation.   In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee, who shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Company effectively to bring suit to enforce such rights.

13.   No Duplication of Payments.   The Company shall not be liable under this Agreement to make any payment in connection with any claim made against 'ndemnitee to the extent Indemnitee has otherwise actually received payment (under any insurance policy, by law, or otherwise) of the amounts otherwise idemnifiable hereunder.

14.   Binding Effect.   This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns, including any direct or indirect successor by purchase, merger, consolidation, or otherwise to all or substantially all of the business and/or assets of the Company, spouses, heirs, and personal and legal representatives. The Company shall require and cause any successor (whether direct or indirect by purchase, merger, consolidation, or otherwise) to all, substantially all, or a substantial part, of the business and/or assets of the Company, by written agreement in form and substance satisfactory to Indemnitee, expressly to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place. This Agreement shall continue in effect regardless of whether Indemnitee continues to serve as a director, officer or employee of the Company or of any other enterprise at the Company's request.

15.   Severability.   If any provision (or portion thereof) of this Agreement shall be held by a court of competent jurisdiction to be invalid, void, or otherwise unenforceable, the remaining provisions shall remain enforceable to the fullest extent permitted by law. Furthermore, to the fullest extent possible, the provisions of this Agreement (including, without limitation, each portion of this Agreement containing any provision held to be invalid, void, or otherwise unenforceable, that is not itself invalid, void, or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, void, or unenforceable.

16.   Governing Law.   This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware applicable to contracts made and to be performed in such State without giving effect to the principles of conflicts of laws.

17.   Notices.   All notices, demands, and other communications required or permitted hereunder shall be made in writing and shall be deemed to have been duly given if delivered by hand, against receipt, or mailed, postage prepaid, certified or registered mail, return receipt requested, and addressed to the Company at:

Intel Corporation
2200 Mission College Blvd., SC4–203
Santa Clara, California 95052–8119
Attn: Corporate Secretary

10.

and to Indemnitee at:

[INDEMNITEE]
2200 Mission College Blvd., SC4-203
Santa Clara, California 95052-8119

Notice of change of address shall be effective only when done in accordance with this Section  All notices complying with this Section shall be deemed to have been received on the date of delivery or on the third business day after mailing

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement as of the day specified above

Company:                                        Intel Corporation, a Delaware corporation

                                                By:    _____

                                                Printed Name:        Cary I  Klafter
                                                            _____

                                                Its             Vice President, Legal and Government Affairs,
                                                                    and Corporate Secretary
                                                            _____

Indemnitee:

                                                            _____

                                                Printed Name:           [INDEMNITEE]
                                                            _____

11

INTEL CORPORATION 2004 FORM 10–K

STATEMENT SETTING FORTH THE COMPUTATION
OF RATIOS OF EARNINGS TO FIXED CHARGES FOR INTEL CORPORATION

*(In Millions, Except Ratios)*

|  | Years Ended | | | | |
| --- | --- | --- | --- | --- | --- |
|  | Dec. 30, 2000 | Dec. 29, 2001 | Dec. 28, 2002 | Dec. 27, 2003 | Dec. 25, 2004 |
| Income before taxes | $15,141 | $2,183 | $4,204 | $7,442 | $10,417 |
| Add—Fixed charges net of capitalized interest | 82 | 125 | 133 | 105 | 98 |
| Income before taxes and fixed charges (net of capitalized interest) | $15,223 | $2,308 | $4,337 | $7,547 | $10,515 |
| Fixed charges: | | | | | |
| Interest | $    35 | $    56 | $    84 | $    62 | $    50 |
| Capitalized interest | 7 | 5 | 1 | — | — |
| Estimated interest component of rental expense | 47 | 69 | 49 | 43 | 48 |
| Total | $    89 | $  130 | $  134 | $  105 | $    98 |
| Ratio of earnings before taxes and fixed charges, to fixed charges | 171x | 18x | 32x | 72x | 107x |

## INTEL CORPORATION

### SUBSIDIARIES (All 100% Owned)

| ubsidiaries of the Registrant | State or Other Jurisdiction of Incorporation |
|---|---|
| Components Intel de Costa Rica, S.A. | Costa Rica |
| Intel Americas, Inc. | Delaware, USA |
| Intel Asia Finance Ltd. | Cayman Islands |
| Intel Capital Corporation | Cayman Islands |
| Intel Copenhagen ApS | Denmark |
| Intel Corporation (UK) Ltd. | England and Wales |
| Intel Electronics Finance Limited | Cayman Islands |
| Intel Electronics Ltd. | Israel |
| Intel Europe, Inc. | California, USA |
| Intel International | California, USA |
| Intel International B.V. | Netherlands |
| Intel Ireland Limited | Cayman Islands |
| Intel Israel (74) Limited | Israel |
| Intel Kabushiki Kaisha | Japan |
| Intel Malaysia Sdn. Berhad | Malaysia |
| Intel Massachusetts, Inc. | Delaware, USA |
| Intel Offshore G.C. Ltd. | Cayman Islands |
| Intel Overseas Funding Corporation | Cayman Islands |
| Intel Phils. Holding Corporation | California, USA |
| Intel Products (M) Sdn. Bhd. | Malaysia |
| Intel Puerto Rico, Ltd. | Cayman Islands |
| Intel Semiconductor Limited | Delaware, USA |
| Intel Technology Finance Limited | Cayman Islands |
| Intel Technology Phils., Inc. | Philippines |
| Intel Technology Sdn. Berhad | Malaysia |
| Mission College Investments Ltd | Cayman Islands |

**CONSENT OF ERNST & YOUNG LLP, INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

We consent to the incorporation by reference in the Registration Statements (Form S−8 Nos 33−33983, 33−29672, 33−41771, 33−63489, 333−20951, 333−24229, 333−45391, 333−45395, 333−67537, 333−93057, 333−90807, 333−77279, 333−75163, 333−82387, 333−84247, 333−88251, 333−96255, 333−33188, 333−34154, 333−36526, 333−38134, 333−39336, 333−39422, 333−42408, 333−46220, 333−49696, 333−57366, 333−58238, 333−58288, 333−59518, 333−59522, 333−59530, 333−63330 and 333−115625; and Form S−3 Nos 33−20117, 33−54220, 33−58964, and 33−56107) of Intel Corporation of our reports dated February 15, 2005, with respect to the consolidated financial statements and schedule of Intel Corporation, Intel Corporation management's assessment of the effectiveness of internal control over financial reporting, and the effectiveness of internal control over financial reporting of Intel Corporation, included in this Annual Report (Form 10−K) for the year ended December 25, 2004

/s/  ERNST & YOUNG LLP

San Jose, California
February 15, 2005

The following certification includes references to an evaluation of the effectiveness of the design and operation of the company's "disclosure controls and procedures" and to certain matters related to the company's "internal control over financial reporting." Item 9A of Part II of this Form 10-K presents the conclusions of the CEO and the CFO about the effectiveness of the company's disclosure controls and procedures and internal control over financial reporting based on and as of the date of management's evaluations of such controls (relating to Item 4 of the certification), and contains additional information concerning disclosures to the company's Audit Committee and independent auditors with regard to deficiencies in internal control over financial reporting and fraud and related matters (Item 5 of the certification)

## CERTIFICATION

I, Craig R. Barrett, certify that:

1    I have reviewed this annual report on Form 10-K of Intel Corporation;

2    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

ate: February 18, 2005

By:    /s/    CRAIG R. BARRETT
                     Craig R. Barrett
                     Chief Executive Officer

The following certification includes references to an evaluation of the effectiveness of the design and operation of the company's "disclosure controls and procedures" and to certain matters related to the company's "internal control over financial reporting." Item 9A of Part II of this Form 10–K presents the conclusions of the CEO and the CFO about the effectiveness of the company's disclosure controls and procedures and internal control over financial reporting based on and as of the date of management's evaluations of such controls (relating to Item 4 of the certification), and contains additional information concerning disclosures to the company's Audit Committee and independent auditors with regard to deficiencies in internal control over financial reporting and fraud and related matters (Item 5 of the certification)

## CERTIFICATION

I, Andy D Bryant, certify that:

1.     I have reviewed this annual report on Form 10–K of Intel Corporation;

2     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for the registrant and have:

    a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

ate: February 18, 2005                    By:    /s/   ANDY D. BRYANT
                                                 Andy D Bryant
                                                 Executive Vice President, Chief Financial Officer and
                                                 Principal Accounting Officer

## CERTIFICATION

Each of the undersigned hereby certifies, for the purposes of section 1350 of chapter 63 of title 18 of the United States Code, as adopted pursuant to Section 906 of the Sarbanes–Oxley Act of 2002, in his capacity as an officer of Intel Corporation (Intel), that, to his knowledge, the Annual Report of Intel on Form 10–K for the period ended December 25, 2004, fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934 and that the information contained in such report fairly presents, in all material respects, the financial condition and results of operation of Intel. This written statement is being furnished o the Securities and Exchange Commission as an exhibit to such Form 10–K. A signed original of this statement has been provided to Intel and will be retained by Intel and furnished to the Securities and Exchange Commission or its staff upon request.

Date: February 18, 2005                    By:    /s/    CRAIG R. BARRETT
                                                   _____

                                                   Craig R. Barrett
                                                   Chief Executive Officer

Date: February 18, 2005                    By:    /s/    ANDY D. BRYANT
                                                   _____

                                                   Andy D. Bryant
                                                   Executive Vice President, Chief Financial Officer
                                                   and Principal Accounting Officer

_____
Created by 10KWizard Technology    www.10KWizard.com

Created by 10KWizard Technology    www.10KWizard.com