IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRANK D. SEINFELD,           )
                               )
              Plaintiff,     )
                               )
              v.             )    Case No.: 05-298(JJF)
                               )
CRAIG R. BARRETT, CHARLENE   )
BARSHEFSKY, E. JOHN P. BROWNE, D. )
JAMES GUZY, REED E. HUNDT,    )
PAUL S. OTELLINI, DAVID S.     )
POTTRUCK, JANE E. SHAW, JOHN L.  )
THORNTON, DAVID B. YOFFIE,    )
ANDREW S. GROVE, and       )
INTEL CORPORATION,        )
                               )
             Defendants.   )

## REPLY BRIEF OF PLAINTIFF IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

FOX ROTHSCHILD LLP
Francis G.X Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920
fpileggi@foxrothschild.com
srennie@foxrothschild.com
Attorneys for Plaintiff

Of Counsel:
BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
1450 Broadway, 14th Floor
New York, New York 10018

Date: August 10, 2005

## TABLE OF CONTENTS

Page

Table of Cases and Authorities ................................................................................ (ii)-(iii)

I.    UNDER THIRD CIRCUIT AUTHORITY THE PROXY STATEMENT
      IS, AS A MATTER OF LAW, INCOMPLETE, INADEQUATE,
      FALSE AND MISLEADING ..................................................................................1

      A.    The Threat to Pay the Bonuses Anyway ...............................................1

      B.    The Omission of Baselines, Performance Factors, and EPS
            Definitions for 2005 ..............................................................................3

      C.    False Representations And Omissions Concerning The
            Way The Compensation Committee Calculates Bonuses .........................3

II.   THE MISSTATEMENTS AND OMISSIONS ARE MATERIAL
      AS A MATTER OF LAW ....................................................................................4

III.  THERE IS NO REQUIREMENT OF CULPABILITY ........................................5

IV.   THE MISSTATEMENTS AND OMISSIONS ARE NOT
      FORWARD LOOKING STATEMENTS ...............................................................6

V.    THE DIRECTORS ACTED IN A NEGLIGENT MANNER .............................8

VI.   INTEL SUBMISSIONS IN VIOLATION OF LOCAL
      CIVIL RULES OF THIS COURT .......................................................................10

VII.  THERE ARE NO ISSUES OF MATERIAL FACT, AND
      PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW .....................11

CONCLUSION .......................................................................................................12

## TABLE OF CASES AND AUTHORITIES

Page

*AES Corp. v. Dow Chemical Co.*,
    2001 WL 34367296 (D.Del. 2001) .................................................................6

*Ash v. LFE Corp.*,
    525 F.2d 215 (3rd Cir. 1975) .......................................................................5

*California Public Employees' Retirement System v. Chubb Corp.*,
    394 F.3d 126 (from the dissent) (3rd Cir. 2004) ......................................5

*Gould v. American Hawaiian Steamship Co.*,
    351 F. Supp. 853 (D.Del. 1972),
    affd., vacated on other grounds,
    535 F.2d 761, 777-78 (3rd Cir. 1976) .......................................................5

*Hayes v. Douglas Dynamics, Inc.*,
    8 F.3d 88 (1st Cir. 1993) ...........................................................................10

*Hurwitz v. Sher*,
    982 F.2d 778 (2nd Cir. 1992) ....................................................................7

*Malone v. Brincot*,
    722 A.2d 5, 9-12 (Del. 1998) ....................................................................8

*MidState Fertilizer Co. v. Exchange National Bank*,
    877 F.2d 1333 (7th Cir. 1989) ..................................................................10

*Moses v. Burgin*,
    316 F. Supp. 31 (D.Mass. 1970) affd
    in part, revs. in part, (1st Cir.) cert. *denied*,
    404 U.S. 994 (1971) .....................................................................................4

*Pittston Co. v. Allianz Insurance Co.*,
    905 F. Supp. 1279 (D.N.J. 1995)
    revsd on other grounds,
    124 F.3d 508, 519 n.11 (3rd Cir. 1997) ...................................................10

*In re Ply Gem Industries, Inc. Sh.Lit.*,
    2001 WL 755133 (Del.Ch 2001) ...............................................................9

*In re Reliance Sec.Lit.*,
    135 F. Supp. 2d 480 (D.Del. 2001) ...........................................................5

## TABLE OF CASES AND AUTHORITIES (Cont'd)

Page

*Shaev v. Saper,*
320 F.3d 373 (3rd Cir. 2003) ..................................................................1, 2, 3, 4,
6, 7, 8

*Sorin v. Shahmoon Industries, Inc.,*
220 N.Y.S.2d 760 (Sup.Ct. N.Y. County, Spl.
and Trial Term, 1961).....................................................................................7

*State of N.J. and Its Division of Investment v. Sprint Corp.,*
2004 WL 1960130 (D.Kan. 2004) ..................................................................6

*Zirn v. VLK Corp.,*
681 A.2d 1050, 1056 (Del. 1996) ...................................................................9

## RULES AND STATUTES

26 C.F.R. §1.162-27(e)(4) ...............................................................................3, 6

F.R.C.P. 56.........................................................................................................9

§11 of the Securities Act of 1933, 15 U.S.C. §77k ...........................................5

§14(a) of the Securities Exchange Act, 15 U.S.C. §78n(a) ...............................5

Rule 14a-9, 17 C.F.R. §240.14a-9 .....................................................................5

## MISCELLANEOUS

Hamermesh, *Calling Off The Lynch Mob:*
*The Corporate Director's Fiduciary Duty Of Disclosure,*
49 Vand. L. Rev. 1087, 1093-94 (1996)............................................................ 5

H.R. Conf.Rep.No. 103-213, 103rd Cong. 1st Sess. 1993,
1993 U.S. Code Cong. and Admin, News 1088 ................................................2

By this summary judgment motion, plaintiff seeks to enjoin the payment of incentive bonuses that were approved by a misinformed stockholder vote, caused by a false proxy statement. Should the Court be inclined to agree with plaintiff, we urge that it enjoin the payments before they begin, which date we understand to be in January or February 2006.

In this reply brief, plaintiff refers to its opening brief as "PB" and to the Intel answering brief as "DB". Plaintiff also relies upon the affidavit of A. Arnold Gershon, sworn to on August 9, 2005 ("Gershon Aff. III") with exhibits.

**I.    UNDER THIRD CIRCUIT AUTHORITY THE
        PROXY STATEMENT IS, AS A MATTER OF LAW,
        INCOMPLETE, INADEQUATE, FALSE AND MISLEADING**

    **A.    The Threat To Pay The Bonuses Anyway**

Under *Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir. 2003), the Intel Proxy Statement is false and misleading as a matter of law. The Proxy Statement threatens to pay incentives even if the stockholders reject the Plan (Complaint ¶15), but it represents that if stockholders approve the Plan, incentive bonuses would be deductible. (PB 8-9.) As the Third Circuit previously held, with such a threat, "[r]egardless of the shareholders' approval, the bonus would not have been deductible." *Shaev*, 320 F.3d at 381.

Intel argues that the regulatory language quoted by the Third Circuit (320 F.3d at 381; PB 8), only applies if the executive has a "preexisting contractual right to the compensation," or a "preordained right to collect bonus money." (DB 21.) The only support Intel offers for this argument is a quote from the legislative history (DB 21):

> "[C]ompensation does not qualify for the performance based exception if the executive has a *right* to receive the compensation notwithstanding the failure of . . . the shareholders to approve the compensation." (emphasis added). *Id.*

The citation in the brief is to the Hevener declaration at ¶13. Plaintiff submits that the "preexisting contractual right" argument was rejected by the Third Circuit. In *Shaev* the Proxy Statement reported that the committee "may grant" another bonus if the stockholders do not approve. *Shaev*, 320 F.3d at 376. At bar, the Proxy Statement reports that Intel "expect to make incentive payments" if the stockholders do not approve. It is plaintiff's position that the two slightly different forms of language are identical in meaning and that the Third Circuit has rejected Intel's "preexisting contractual right" theory. Moreover, if that theory were correct, it would open the door to wide ranging corporate fraud and coercion and allow total evasion of the statutory and regulatory scheme.

Curiously, neither the Intel brief nor the Hevener declaration identifies a source for the quoted legislative history. However, they did not make it up. It is found in H.R. Conf.Rep.No. 103-213 at 587, 103rd Cong. 1st Sess. 1993, 1993 U.S. Code Cong. and Admin. News 1088, 1276. (*See* Gershon Aff. III, ¶3, Exhibit 1.) This conference report, at pages 587-88 is quoted by the Third Circuit in *Shaev*, 320 F.3d at 383 (PB 9), so the Court was aware of the legislative history quoted by Intel and Hevener. Significantly, notwithstanding its awareness of the legislative history, the Court rejected the "preexisting contractual right" theory.

Intel also argues that since a company can have simultaneous plans for both deductible and non-deductible bonuses, it therefore follows that a company can use a non-deductible bonus plan as a consolation prize to the disappointed executive if the stockholders reject the plan. If that is the expectation, then the bonus is not deductible even if the stockholders approve it. Further, the Third Circuit so held in *Shaev v. Saper*. *See Shaev*, 320 F.3d at 381. Intel's argument is yet another program to encourage corporate coercion and fraud, proffered without a shred of authority.

Intel's attempts to distinguish *Shaev v. Saper* fall flat. (DB 25-27.) The existence of facts, present in *Shaev*, not present at bar, do not change the force of the Third Circuit's logic, nor does the

2

procedural context, i.e., defendant's motion to dismiss as against plaintiff's motion for summary judgment.

    B.    The Omission Of Baselines, Performance
           Factors, And EPS Definitions For 2005

Finally, as set forth in plaintiff's opening brief (PB 9-10), the Proxy Statement omits to disclose the factors known to Intel concerning the Plan, i.e., the baseline amounts and the performance factors. (Thompson Declaration ¶¶16-18.) These numbers are not fully disclosed even now, although the filings are under seal. Under *Shaev v. Saper*, supra, 320 F.3d at 383, these numbers were required to be included in the Proxy Statement, for "disclosure should be as specific as possible." Moreover, no claim was made in the Proxy Statement that the compensation committee believed "that the information is confidential commercial or business information, the disclosure of which would adversely affect the company." 26 C.F.R. §1.162-27(e)(4)(iii)(B). (DB 9.)

    C.    False Representations And Omissions Concerning The
           Way The Compensation Committee Calculates Bonuses

The Proxy Statement, page 16, reports that the compensation committee "in February 2005 . . . set compensation amounts for 2005." On page 18, the Proxy Statement reports that the committee set baseline amounts and performance factors in January 2004 for 2004, and it described operating income as an amount set at the committee's discretion. (Proxy Statement at page 18**.) The Plan at ¶4 itself requires that all three factors, i.e., baselines, performance factors and EPS definition, be set at the beginning of the year. Plaintiff understood by these disclosures that the committee defined earnings per share or EPS at the beginning of the year. (DB 9; Complaint ¶19; PB 4.)

Plaintiff's understanding was incorrect. It now appears that the compensation committee does not define EPS at the beginning of the year, but at the end. At the beginning of the year it sets

3

only the baselines and the performance factors. (Thompson declaration ¶¶7-8.) The committee has

wide discretion in defining EPS. (Thompson declaration ¶9.) Such discretion and the timing of the

EPS definition make non-deductible the incentive bonuses under the Plan.

Although the terms and provisions of the Plan, ¶4 (Proxy Statement at B-2) require the

committee to adopt the "EPS definition" by the time required "by the Tax Code," *Shaev v. Saper*,

320 F.3d at 379 n.3, the committee does not follow the Plan. This is one of those "weightier issues .

. . [i.e.,] nonfulfillment of . . . [the Plan's] requirements [that] need to be disclosed." *Shaev*, 320 F.3d

at 383 n.8. Thus, the Proxy Statement is false when it states that the Plan would pay tax deductible

bonuses if the stockholders approve it and when it describes how bonus amounts are set.

## II.    THE MISSTATEMENTS AND OMISSIONS ARE MATERIAL AS A MATTER OF LAW

Intel argues that the misstatements and omissions are not material because the numbers are

too small. The Third Circuit held that they were material because Treasury Regulations required

their disclosure so that materiality "is not dependent on the quantity of money involved." *Shaev*,

320 F.3d at 384.

Intel also argues that the deductibility of the incentive bonuses is not material because

stockholders do not care if they are deductible, but only whether the bonus aligns the company's

interests with those of the executive. As "support" for this assertion, defendants cite the Murphy

declaration at ¶22, where the only basis for this comment is the declarant's "opinion and

experience." It is not based on any fact in the record, or elsewhere. It cites no survey of

stockholders. It does not cite any conversation with any stockholder (singular), not even Aunt

Minnie. *Moses v. Burgin*, 316 F.Supp. 31, 47-48 (D.Mass. 1970), aff'd in part, rev'd in part, (1st

Cir.) cert. denied, 404 U.S. 994 (1971) (one more thing that the suppositious Aunt Minnie does not

4

know about.). Professor Murphy's assertion is so deficient in support that it raises no issue of fact in any context, much less in the context of a motion for summary judgment.

## III.   THERE IS NO REQUIREMENT OF CULPABILITY

Recovery of monetary relief in an action arising from §14(a) of the Securities Exchange Act, 15 U.S.C. §78n(a), and Rule 14a-9, 17 C.F.R. §240.14a-9, does not require proof of scienter, but only negligence, unless the action is grounded in fraud. *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 143-44, 145 n.9, 163, 168 (from the dissent) (3rd Cir. 2004); *Gould v. American Hawaiian Steamship Co.*, 351 F.Supp. 853, 858-65 (D.Del. 1972) ("individual liability for damages under §14(a) may be predicated on negligence," 351 F.Supp. at 865), aff'd., vacated on other grounds, 535 F.2d 761, 777-78 (3rd Cir. 1976). This court applies the "due diligence" standard of negligence, *In re Reliance Sec.Lit.*, 135 F.Supp.2d 480, 511 (D.Del. 2001), a concept borrowed from §11 of the Securities Act of 1933, 15 U.S.C. §77k, under which the defendant has the "burden of establishing [his] due diligence or lack of negligence." *Gould*, 351 F.Supp. at 859 n 5.

However, by this instant motion for summary judgment, plaintiff is not seeking damages, but instead he seeks an injunction to undo the injury caused by an ill-informed vote cast by stockholders. Accordingly, he need not establish negligence, and due diligence is not a defense. Under such circumstances, the Third Circuit holds that whatever culpability standard is required where "damages or rescission of a sale are sought, we have no hesitancy in recognizing that for prospective relief looking to the protection of the franchise, the test for the purposes of Rule 14a-9 is the objective sufficiency of the disclosure." *Ash v. LFE Corp.*, 525 F.2d 215, 220 (3rd Cir. 1975).

The result is the same under Delaware law. *See* Hamermesh, *Calling Off The Lynch Mob : The Corporate Director's Fiduciary Duty Of Disclosure*, 49 Vand.L.Rev. 1087, 1093-94 (1996).

5

Professor Hamermesh wrote in his article that: "by a plausible, and arguably mandatory, reading of Delaware case law, a court may be obliged to require directors to pay damages on account of a failure to disclose what is determined in hindsight to have been a material fact in connection with a transaction in which the directors had no self-interest and acted with the utmost good faith and due care." *Id.* at 1095. He also observed that: "As described in the Delaware cases, this fiduciary disclosure duty is deep, as well as broad. The duty is said to be strict, imposing liability without regard to director negligence or other culpability; to afford stockholders a remedy without regard to whether they relied upon a statement made in violation of the duty. . . ." *Id.* at 1091 (citations omitted). *See also id.* at footnotes 18 to 23.

## IV.    THE MISSTATEMENTS AND OMISSIONS ARE NOT FORWARD LOOKING STATEMENTS

All of the claims in the case at bar concern past events and do not involve forward looking statements. Defendants allege that these claims pertain to "future events" such as the disallowance of the deduction by the IRS. DB 29. However, the Proxy Statement represented that the Company would pay the incentive payments even if the Company's stockholders voted against it. PB 3-4. Based upon this representation, under *Shaev v. Saper,* 320 F.3d at 381 and 26 C.F.R. §1.162-27(e)(4)(i), the payments are not deductible, regardless of stockholder approval or IRS disapproval. *See State of N.J. and Its Division of Investment v. Sprint Corp.*, 2004 WL 1960130 at *3, *9 n.7 (D.Kan.) (questioning whether the statement that employment contracts are "*designed to insure their long term employment*" is forward looking.) (italics in original.)

Moreover, the Proxy Statement omitted to disclose various statements, including the baseline amounts for each executive officer, despite the fact that in February 2005 these amounts were already established. PB 4. *See AES Corp. v. Dow Chemical Co.*, 2001 WL 34367296, at *4 (D.Del.) (holding "allegations based upon omissions of existing facts or circumstances do not constitute

6

forward looking statements protected by the safe harbor of the Securities Act.") (internal quotations and citations omitted.) The facts in *Shaev v. Saper* are substantially identical to the facts here, and those misstatements and omissions were based on past events and were not held to be forward looking statements. Therefore the misstatements and omissions in this Proxy Statement should also not be held to be forward looking statements.

Intel's argument that these are forward looking statements is based on its assertion that if the Internal Revenue Services ("IRS") fails to catch them, the deduction is legal. However, there is no requirement that the IRS must evaluate the language in a proxy statement and determine a deficiency before the court may adjudicate the case. Courts can and do analyze provisions in the Internal Revenue Code. They have the ability to read the Code and the Treasury Regulations and apply it to the case before them. *See, e.g., Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir. 2003); *Hurwitz v. Sher*, 982 F.2d 778, 782 (2nd Cir. 1992) (in an action by the son of deceased against spouse of deceased, holding that antenuptial agreement was not a waiver of ERISA, pursuant to Treasury Regulations). Also, the Third Circuit has held that the materiality of statements in a proxy statement is to be determined as of the time at which the statement is made and is not dependent on whether the IRS, at a future date, decides to allow or deny the deduction. *Shaev*, supra, 320 F.3d at 382. Moreover, waiting for the IRS to decide on the deductibility of the payments would not bind this court, for "the tax collector may have felt that he had inadequate evidence or manpower, or perhaps for other reasons he did not have the inclination to proceed against the taxpayer." *Sorin v. Shahmoon Industries, Inc.*, 220 N.Y.S.2d 760, 779 (Sup.Ct. N.Y. County, Spl. and Trial Term, 1961).

That it is unnecessary to await an IRS determination is also the position of the accounting authorities. The Financial Accounting Standards Board decided to propose an interpretation of its rules "which requires that tax benefits be recognized based on tax positions in tax returns that are

7

probable of being sustained on audit." (Minutes of FASB meeting, p.4, July 27, 2004, attached as Exhibit 4 to Gershon Aff. II.) The staff of the International Accounting Standards Board has recommended that IASB accept this position. In so recommending, the Board emphasized the FASB view that a company must assume that an audit will be conducted by the tax authorities and that the tax position will be decided on the merits. (IASB Information for Observers, Meeting June 2005; attached as Exhibit 5 to Gershon Aff. II.) In other words, in the real world, no one can play the tax game that goes, "If I don't get caught, it's deductible." Further, if that were not enough, at bar, the Company is fully aware of this because, as the IASB Information for Observers, at pp. 1-2 reports, Intel is one of the "U.S. based multinational preparers" reviewing the draft proposal. (Gershon Aff. II, Exhibit 5.)

## V.    THE DIRECTORS ACTED IN A NEGLIGENT MANNER

The directors have all submitted declarations stating that they read the final draft and finished copy of the Proxy Statement and perceived nothing amiss. Also, the directors state in that declaration that, if they had seen anything wrong, then they would have called for an inquiry. Dr. Grove submitted his own declaration shortly before this reply brief was filed.

Having read the Proxy Statement, all the directors had to know that, despite the language of the Plan that the EPS definition had to be stated at the beginning of the year, it was actually set at the end of the year. (Thompson declaration ¶¶7-10.) At least those directors on the compensation committee knew that fact. Further, it is well established in Delaware law that the duty to disclose is not an independent fiduciary duty but instead stems from the directors' fiduciary duties, including the duty of loyalty. *Malone v. Brincot*, 722 A.2d 5, 9-12 (Del. 1998). It is axiomatic that when boards of Delaware corporations communicate with shareholders, directors are under a duty to

"disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Zirn v. VLK Corp.*, 681 A.2d 1050, 1056 (Del. 1996).

Moreover, the directors' declarations all say that they waited for others to raise warnings. Not one declaration states that any "expert" in the "Working Group" (Klafter declaration, ¶¶7-9), even made an affirmative assertion that the Proxy Statement was truthful. And there is not a single statement in any declaration that any expert in the "Working Group" had analyzed *Shaev v. Saper*, supra, and concluded that it was wrongly decided or distinguishable.

The directors say that the question of whether the Proxy Statement was truthful is absurd, because had anything been wrong, they should certainly have heard. *See* Gershon Aff. III, ¶4, Exhibit 2, concerning "The Unknown Citizen" by W.H. Auden. Moreover, as Dr. Grove said in his book "Only The Paranoid Survive" (Doubleday, April 1999, paperback ed.) at pp. 117-20, middle managers are frequently fearful to speak to deliver unwelcome, unpleasant facts. If the directors do not want to hear such stuff, and if they do not ask, then they will not hear it. (Gershon Aff. III, ¶ 5, Exhibit 3.) The directors should have affirmatively raised questions about the Proxy Statement, having read it. (Gershon Aff. III, Exh. 3 at p.3 from Dr. Grove's book.) ("I believe in the value of paranoia.")

Intel argues that the directors properly relied on the drafts prepared by "a number of Intel employees and outside consultants." (DB 14.) In fact, there were a specified number of Intel employees and unidentified outside counsel characterized as "experienced." (Klafter Declaration ¶¶7-9.) The Intel employees were not disinterested and not independent. If they did not include participants in the Plan, they worked for and reported to participants who exercised control over them. Intel has proffered nothing to suggest that "experienced outside counsel" were independent. *In re Ply Gem Industries, Inc. Sh.Lit.*, 2001 WL 755133 at *9 (Del.Ch.). This demonstrates that the

9

directors were negligent in passively accepting the Proxy Statement as if it came from truly disinterested and independent experts. Even a little paranoia would have helped.

## VI.    INTEL SUBMISSIONS IN VIOLATION OF LOCAL CIVIL RULES OF THIS COURT

Intel did not seek leave of court to submit an answering brief in excess of 40 pages. Local Civil Rule 7.1.3(a)(D). Its answering brief ends at page 40, but at DB 17 n.11, they incorporate by reference two other briefs adding 26 more pages. Worse, they submit so-called declarations of Mary B. Hevener, a partner in Baker & McKenzie LLP, the law firm, and Lawrence A. Hamermesh, the law professor and former partner in Morris, Nichols, Arsht & Tunnel, the law firm. They are actually legal briefs, without citation of authority, not expert affidavits. *MidState Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1340 (7th Cir. 1989) (finding summary judgment affidavit of expert inadequate where purported expect gave legal rather than expert economic opinion). *Pittston Co. v. Allianz Insurance Co.*, 905 F.Supp. 1279, 1296 (D.N.J. 1995) rev'd on other grounds, 124 F.3d 508, 519 n.11 (3rd Cir. 1997). *See also*, Fed. R. Civ. P. 56(e). Therefore, this Court should strike them from the record.

Finally, the Murphy declaration is insufficient. This Court should disregard it, because it does not "include the factual basis and the process of reasoning" to support its conclusion as to what is material to the stockholder. *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (finding that expert affidavits must meet the requirements of Fed. R. Civ. P. 56(e), setting forth specific facts showing that there is a genuine issue for trial and must be more than a conclusory assertion about ultimate legal issues).

10

## VII.  THERE ARE NO ISSUES OF MATERIAL FACT, AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

As a substitute for raising issues of fact, an impossible assignment at bar, Intel has presented blatherskite on such topics as their egalitarian compensation programs, their best practices policies, and the impossibility of forecasting when, or if, the IRS will strike.  None of this puts any fact in dispute as to whether the Proxy Statement made an accurate disclosure of the Plan.  Indeed, their prolixity serves only to establish that the Proxy Statement was worse than plaintiff previously thought in that the bonus formula is not fully set until the year is over.

11

## **CONCLUSION**

For the foregoing reasons we respectfully submit that the court should grant plaintiff's

motion for summary judgment, and enjoin payments under the Plan.

FOX ROTHSCHILD LLP


By:____/s/ Francis G.X. Pileggi_____
         Francis G.X Pileggi (#2624)
         Sheldon K. Rennie (#3772)
         919 North Market Street, Suite 1300
         Wilmington, DE 19801
         Tel: (302) 655-3667
         Fax: (302) 656-8920
         fpileggi@foxrothschild.com
         srennie@foxrothschild.com

         Attorneys for Plaintiff


Of Counsel:
BALLON STOLL BADER & NADLER, P.C.
A. Arnold Gershon, P.C.
A. Arnold Gershon, Esq.
Natalie Marcus, Esq.
1450 Broadway, 14th Floor
New York, New York 10018
Tel:  (212) 575-7900
Fax: (212) 764-5060


Dated:  August 10, 2005

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2005, I electronically filed the foregoing Reply Brief of Plaintiff in Further Support of His Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Stephen Norman, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

                                          _____ /s/ Francis G.X. Pileggi _____
                                          Francis G.X. Pileggi (Del. Bar No. 2624)