IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK D. SEINFELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 05-298 (JJF) |
| | ) |
| CRAIG R. BARRETT, CHARLENE | ) |
| BARSHEFSKY, E. JOHN P. BROWNE, | ) Jury Trial Demanded |
| D. JAMES GUZY, REED E. HUNDT, | ) |
| PAUL S. OTELLINI, DAVID S. POTTRUCK, | ) |
| JANE E. SHAW, JOHN L. THORNTON, | ) |
| DAVID B. YOFFIE, ANDREW S. GROVE, and | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS VERIFIED COMPLAINT**

OF COUNSEL:

Michael D. Torpey
James N. Kramer
Susan D. Resley
Erin L. Bansal
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
(415) 773-5700


Dated: August 10, 2005

Stephen C. Norman (#2686)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0957
(302) 984-6000
snorman@potteranderson.com

Attorneys for defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove, and nominal defendant Intel Corporation

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ................................................................................................................2

    A. Strong Delaware Policy, Long Endorsed By The Courts, Requires Demand ...................................................................................................2

    B. There is No "Federal Policy" Exception To The Demand Requirement For Section 14(a) Claims ..................................................4

        1. Demand Is Required For Section 14(a) Claims ........................4

        2. Plaintiff's Cases Do Not Warrant A "Federal Policy" Exception ....................................................................................6

    C. The Demand Requirement Applies To Plaintiff's State Law Breach Of Fiduciary Duty Claim ............................................................9

    D. Plaintiff's Assertion That He Could Have Brought His Claims Directly Cannot Save His Complaint ....................................................10

III. CONCLUSION ..........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

*Allison v. General Motors Corp.*,
  604 F. Supp. 1106 (D. Del. 1985), *aff'd*,
  782 F.2d 1026 (3d Cir. 1985) ..................................................................................... 5

*In re Anderson, Clayton S'holders Litig.*,
  519 A.2d 669 (Del. Ch.) 1986 ..................................................................................... 6

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ..................................................................................... passim

*Blasband v. Rales*,
  971 F.2d 1034 (3d Cir. 1992) ..................................................................................... 2,3

*Citron v. Daniell*,
  796 F. Supp. 649 (D. Conn. 1992) ..................................................................................... 4

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
  737 F. Supp. 792 (S.D.N.Y. 1990), *aff'd in part and
  rev'd in part on other grounds*, 974 F.2d 270 (2d Cir. 1992) ..................................................................................... 6

*Fink v. Komansky*,
  No. 03CV0388 (GBD), 2004 WL 2813166
  (S.D.N.Y. Dec. 8, 2004) ..................................................................................... 4,7,8

*Galef v. Alexander*,
  615 F.2d 51 (2d Cir. 1980) ..................................................................................... 7,8

*In re General Motors Class E Stock Buyout Sec. Litig.*,
  790 F. Supp. 77 (D. Del. 1992) ..................................................................................... 3

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996) ..................................................................................... 2

*Halpert Enters., Inc. v. Harrison*,
  No. 02CIV9501SHS, 2005 WL 1773686
  (S.D.N.Y. July 26, 2005) ..................................................................................... 4,7,8,10

*Halpert Enters., Inc. v. Harrison*,
  362 F. Supp. 2d 426 (S.D.N.Y. 2005) ..................................................................................... 4,7,8

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ..................................................................................... 2,3,5,7

*Lewis v. Anderson*,
   615 F.2d 778 (9th Cir. 1979) ..................................................................4

*Maldonado v. Flynn*,
   485 F. Supp. 274 (S.D.N.Y. 1980), *aff'd in part
   and rev'd in part on other grounds*,
   671 F.2d 729 (2d Cir. 1982) ..............................................................4,5,8

*Merine v. Prudential-Bache Util. Fund, Inc.*,
   859 F. Supp. 715 (S.D.N.Y. 1994) ..........................................................5

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
   239 F.3d 333 (3d Cir. 2001) ..................................................................8

*Omni Fin. Corp. v. Cohen*,
   No. 91 Civ. 6837, 1994 WL 97125
   (S.D.N.Y. Mar. 22, 1994) ......................................................................5

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ..................................................................2,9

*Reo v. USPS*,
   98 F.3d 73 (3d Cir. 1996) .....................................................................8

*In re Sagent Tech., Inc. Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..................................................9

*Shaev v. Saper*,
   320 F.3d 373 (3d Cir. 2003) ..................................................................5

*Shields v. Erickson*,
   710 F. Supp. 686 (N.D. Ill. 1989) ..........................................................4

*Smith v. Waste Mgmt. Inc.*
   407 F.3d 381 (5th Cir. 2005) ...............................................................10

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) ......................................................................2

*Tooley v. Donaldson, Lufkin & Jenrette Inc.*,
   845 A.2d 1031 (Del. 2004) .................................................................10

*In re Tri-Star Pictures, Inc. Litig.*,
   No. CIV. A. 9477, 1990 WL 82734
   (Del. Ch. Jun. 14, 1990) ........................................................................6

*In re Trump Hotels S'holder Derivative Litig.*,
  No. 96 CIV. 7820, 2000 WL 1371317
  (S.D.N.Y. Sept. 21, 2000) ............................................................................4,8,11

*Vides v. Amelio*,
  265 F. Supp. 2d 273 (S.D.N.Y. 2003) ..........................................................6, 7

In re Westinghouse Sec. Litig.,
  832 F. Supp. 989 (W.D. Pa. 1993) ................................................................8,10

*In re Worldcom, Inc.*
  323 B.R. 844 (Bankr. S.D.N.Y. 2005) ...........................................................10

## MISCELLANEOUS

17 C.F.R. § 270.20a-1 ...........................................................................................5

I.  **INTRODUCTION**

Plaintiff concedes that he failed to make any demand upon Intel's Board and that he has failed to allege the *particularized* facts necessary to excuse demand. Undeterred, plaintiff attempts to turn Delaware law on its head, arguing that making a demand on a corporation's board is something that courts have warned plaintiffs not to do before bringing a derivative action. From there, he argues that he should be permitted to pursue his claims in the name of Intel despite his failure to make a demand because: (1) the demand requirement is supposedly excused for misleading proxy and disclosure claims, and (2) his claims could have been brought directly. As explained below, these arguments are without merit.

Plaintiff's contention that the courts have "warned" shareholders *not* to make a demand before bringing a derivative action has it exactly backwards. To the contrary, courts (including the United States Supreme Court, the Delaware Supreme Court, and this Court) have emphasized that the demand requirement reflects a fundamental policy of corporate governance that is designed to ensure that directors of public companies – not an individual shareholder – decide in the first instance whether the pursuit of a litigation best serves the corporation and its shareholders. Plaintiff's contention that this "cardinal precept of the General Corporation Law," *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), is something that courts have "warned" shareholders to avoid is therefore demonstrably false.

Neither do plaintiff's claims support any exception to the demand requirement. The cases upon which plaintiff relies in support of a "federal policy" exception (a phrase absent from any reported decision on the subject of demand) either did not address the issues in this case, were not decided under Delaware law, or have been roundly disregarded by subsequent decisions. A legion of authorities (again, including the United States Supreme Court) have applied the demand requirement to federal claims, including securities claims.

Nor is there any substance to plaintiff's novel argument – made without citation to any authority – that because he purportedly *could have* brought his claims directly, he is excused from making a demand. Even if there were such an exception under Delaware law (and there is not), plaintiff could not avail himself of it because, as stated explicitly in the Complaint, his claims are purely derivative.

## II. ARGUMENT

### A. Strong Delaware Policy, Long Endorsed By The Courts, Requires Demand

The United States Supreme Court has said that "[t]he purpose of the demand requirement is to "afford the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (citation omitted). In cases cited in Intel's Opening Brief but ignored by plaintiff, the Delaware Supreme Court has frequently reaffirmed this "cardinal precept" that Delaware law vests directors, not shareholders, with authority to make litigation and other business decisions. *See, e.g., Aronson*, 473 A.2d at 811 ("[a] cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."); *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996) ("[t]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation"); *Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990) ("[a] basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation"). This "demand requirement is not merely a formality, but rather is an important aspect of Delaware's substantive law." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992) (citation omitted); *accord Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Courts from around

2

the nation, including this Court and the Third Circuit, have acknowledged this principle. Indeed, the very cases plaintiff cites as evidence of this "warning" against making a demand actually reaffirm the importance of the demand requirement. *See Blasband*, 971 F.2d at 1048 ("[t]he decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors"); *In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F. Supp. 77, 80 (D. Del. 1992) ("[t]he purpose of the demand requirement is to 'afford the directors an opportunity to exercise their reasonable business judgment and [not pursue litigation in the name of the corporation] in the belief that its best interests will be promoted by not insisting on such right'") (citing *Kamen*, 500 U.S. at 96).

Plaintiff's entire Opposition is therefore based on the false premise that this Court should look carefully, as plaintiff has done, for an excuse to ignore Delaware's demand requirement. Decades of precedent teach that nothing could be further from the truth. Where, as here, a corporation's board is comprised predominantly of outside directors whose independence is not and could not be challenged, that board is far better positioned than a single shareholder and his lawyer to decide what is in the best interest of the corporation. Absent specific factual allegations which impugn a board's independence, a court should not upset the balance of responsibilities prescribed by the Delaware General Corporation Law.

These circumstances are absent here, and plaintiff's claims present a text-book illustration of why Intel's Board should be permitted to determine whether to pursue these claims. The entire theory of plaintiff's Complaint – that the Court should deny Intel a hypothetical future tax deduction that the IRS has not challenged – is plainly contrary to the interests of all of Intel's shareholders. All, that is, except plaintiff and his counsel. Intel's concededly distinguished and independent Board, and not plaintiff and his lawyer,

3

should be restored to its proper role under Delaware law. Thus, plaintiff's Complaint should be dismissed for failure to make a demand.

### B. There is No "Federal Policy" Exception To The Demand Requirement For Section 14(a) Claims

#### 1. Demand Is Required For Section 14(a) Claims

Plaintiff contends the Court should recognize an exception to the demand requirement in Section 14(a) cases. Tellingly, plaintiff cites no case from this Circuit that has embraced such an exception. Nor can he. Although there is no case from this Circuit addressing plaintiff's precise argument, the overwhelming weight of authority requires demand before a plaintiff may assert a Section 14(a) claim. *See, e.g., Lewis v. Anderson*, 615 F.2d 778, 783 (9th Cir. 1979) (California's pre-suit demand requirement does not conflict with federal policies underlying Section 14(a)); *Maldonado v. Flynn*, 671 F.2d 729, 731-32 (2d Cir. 1982) ("*Maldonado II*") ("we hold that the Delaware law is consistent with the policies underlying Section 14(a)"); *Maldonado v. Flynn*, 485 F. Supp. 274, 281-82 (S.D.N.Y. 1980) ("*Maldonado I*"), *aff'd in part and rev'd in part on other grounds*, 671 F.2d 729 (2d Cir. 1982) (demand requirement applicable to Section 14(a)); *In re Trump Hotels S'holder Derivative Litig.*, Nos. 96 CIV. 7820, 96 CIV. 8527, 2000 WL 1371317, at *10 n.5 (S.D.N.Y. Sept. 21, 2000) (demand requirement applies to Section 14(a) claims) (attached hereto as Exhibit A); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 428 (S.D.N.Y. 2005) (dismissing Section 14(a) claims for failure to satisfy demand requirement) ("*Halpert I*"); *Halpert Enters., Inc. v. Harrison*, No. 02CIV9501SHS, 2005 WL 1773686 (S.D.N.Y. July 26, 2005) ("*Halpert II*") (same) (attached hereto as Exhibit B); *Fink v. Komansky*, No. 03CV0388 (GBD), 2004 WL 2813166, at *8 (S.D.N.Y. Dec. 8, 2004) (same); *Shields v. Erickson*, 710 F. Supp. 686, 692-93 (N.D. Ill. 1989) (same); *Citron v. Daniell*, 796 F. Supp. 649, 653 (D. Conn. 1992)

4

(same).[1]

The United States Supreme Court has rejected the notion that there is a "federal policy" exception to the demand requirement merely because federal securities laws are involved. *Kamen*, a case upon which plaintiff relies (Opp. at 11), involved Section 20(a) of the Investment Company Act of 1940 ("ICA Section 20(a)"). Although Section 14(a) and ICA Section 20(a) are found in different sections of the federal securities law, both prohibit misleading statements in proxies. In fact, all SEC rules and regulations under Section 14(a) also apply to ICA Section 20(a), *see* 17 C.F.R. § 270.20a-1, and courts have recognized that the two statutes are "analogous." *Maldonado I*, 485 F. Supp. at 281; *accord Merine v. Prudential-Bache Util. Fund, Inc.*, 859 F. Supp. 715, 721 (S.D.N.Y. 1994); *Omni Fin. Corp. v. Cohen*, No. 91 Civ. 6837, 1994 WL 97125, at *8 (S.D.N.Y. Mar. 22, 1994) ("[p]roxy regulation under the ICA § 20(a) parallels that under § 14 of the 1934 Act") (attached hereto as Exhibit C). The Supreme Court in *Kamen* rejected a claim that enforcement of a state law demand requirement would subvert federal securities law policy, and held that "a court that is entertaining a derivative suit under [ICA Section 20(a)] must apply the demand futility exception as it is defined by the law of the State of incorporation." 500 U.S. at 108-09. The Supreme Court's reasoning and conclusion in *Kamen* are equally applicable to plaintiff's claims under the "analogous" and "parallel[]" provisions of Section 14(a).

Beyond the securities law context, courts – including this one, in a decision affirmed by the Third Circuit – have not hesitated to apply state law demand requirements in cases involving other types of federal claims. *See Allison v. General*

---

[1] Although the Third Circuit has never squarely decided this issue, in *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003), a case that plaintiff claims is "on all fours" with the one at bar, the court declined the same invitation plaintiff makes here to create a blanket demand excuse in Section 14(a) cases. *Id.* at 378. There, the court applied the demand requirement to plaintiff's Section 14(a) claim, but determined that plaintiff had alleged enough to establish that demand would be futile. *Id.* If there were a federal policy exception in Section 14(a) cases, the *Shaev* court would have had no need to address the futility argument.

5

*Motors Corp.*, 604 F. Supp. 1106, 1119-20 (D. Del. 1985), *aff'd*, 782 F.2d 1026 (3d Cir. 1985) (RICO claim); *See also Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792, 799-800 (S.D.N.Y. 1990), *aff'd in part and rev'd in part on other grounds*, 974 F.2d 270 (2d Cir. 1992) (RICO and ERISA claims). Plaintiff's plea for a "federal policy" exception to the demand requirement would therefore require this Court to ignore a legion of contrary authority.

### 2. Plaintiff's Cases Do Not Warrant A "Federal Policy" Exception

Plaintiff relies on several cases to create his "federal policy" exception to the Delaware demand rule. None of them overcomes the authorities discussed above.

Plaintiff relies most heavily on *Vides v. Amelio*, 265 F. Supp. 2d 273 (S.D.N.Y. 2003). Opp. at 9. Because *Vides* was decided by the Southern District of New York, it is not binding on courts applying Delaware law. Indeed, *no* court from any jurisdiction – and certainly no Delaware court – has ever cited *Vides* in support of the proposition that the demand requirement does not apply to a Section 14(a) claim. To the contrary, the host of authorities cited above make clear that *Vides* is inconsistent with Delaware law as well as the law applied by the Supreme Court and other federal courts in analogous circumstances.

Indeed, *Vides'* analysis of Delaware law is highly suspect. *Vides* cited two Delaware cases in reaching its decision, *In re Tri-Star Pictures, Inc. Litig.*, No. CIV. A. 9477, 1990 WL 82734 (Del. Ch. Jun. 14, 1990), and *In re Anderson, Clayton S'holders Litig.*, 519 A.2d 669, 675 (Del. Ch. 1986). Neither of these cases stands for the proposition that pre-suit demand is excused in Section 14(a) cases. *Tri-Star* did not consider the issue of whether demand was required and *Anderson* did not involve a Section 14(a) claim or even the applicability of the Delaware demand requirement. *Tri-Star*, 1990 WL 82734, at *958; *Anderson*, 519 A.2d at 675.

Moreover, even fellow Southern District of New York courts have ignored *Vides*, and have instead reaffirmed that the demand requirement *is* applicable to Section 14(a) claims. *See, e.g., Halpert I*, 362 F. Supp. 2d at 429 n.1 ("Delaware substantive law governs with respect to the futility of demand"); *Halpert II*, 2005 WL 1773686, at *2 ("Halpert's allegations do not overcome the presumption of the business judgment rule"); *Fink*, 2004 WL 2813166, at *3 ("Under Delaware law, the Amended Complaint must sufficiently set forth 'particularized factual allegations' establishing that a majority of the Merrill Lynch board of directors cannot properly exercise its sensible business judgment to proceed with the claim") (*citing* Aronson, 473 A.2d at 814). In all of these cases, the court applied Delaware law and dismissed the Section 14(a) claims based on the plaintiffs' failure to satisfy the demand requirement. *Halpert*, 362 F. Supp. 2d at 428; *Halpert II*, 2005 WL 1773686, at *2-3; *Fink*, 2004 WL 2813166, at *8. Plaintiff attempts to distinguish these cases by arguing that they "are only marginally actions to recover for false proxy statements." Opp. at 10. None can be so easily sidestepped; all involved Section 14(a) claims and all three squarely held the demand requirement applicable to such claims. *Halpert*, 362 F. Supp. 2d at 428; *Halbert II*, 2005 WL 1773686, at *2-3; *Fink*, 2004 WL 2813166, at *8.

*Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980), does not support any exception to the demand requirement. As an initial matter, *Galef* involved the application of Ohio law, not Delaware law, *id.* at 58, and was decided a decade before *Kamen*. Moreover, the issue in *Galef* was whether the court should abide the board's decision to terminate the lawsuit, not whether demand had been excused, and the court explicitly stated that its analysis was *inapplicable* to a demand question. *Id.* at 59 ("[c]ases . . . in which there has been no demand, do not answer the question presented here"; "[a] determination that directors are not so interested in the underlying transaction as to excuse demand on them does not mean that they are so disinterested as to enable them to eliminate the lawsuit").

7

The Second Circuit has since removed any doubt as to whether *Galef* stands for the proposition that there is a conflict between the *Delaware* demand requirement and the policies underlying Section 14(a). It plainly does not. *See Maldonado II*, 671 F.2d at 731-32 ("we hold that the Delaware law is consistent with the policies underlying Section 14(a)"). A number of lower courts in the Second Circuit have confirmed this principle before and since. *Maldonado I*, 485 F. Supp. at 281-82 (demand requirement applicable to a Section 14(a) claim); *In re Trump Hotels*, 2000 WL 1371317, at *10 n.5 (same); *Halpert I*, 362 F. Supp. 2d at 428 (same); *Halpert II*, 2005 WL 1773686, at *2-3 (same); *Fink*, 2004 WL 2813166, at *8 (same).

Finally, plaintiff relies on *In re Westinghouse Sec. Litig.*, 832 F. Supp. 989 (W.D. Pa. 1993). Whatever merit *Westinghouse* may have under the Pennsylvania law that governed that case, *id.* at 995, as discussed above, numerous courts applying *Delaware* law, both before and since *Westinghouse*, have held that there is no conflict between the Delaware demand requirement and the policies underlying the federal securities laws. Moreover, *Westinghouse* is dubious precedent, for in the twelve years since that case was decided, it has never been cited by any court, anywhere, for the proposition that demand is excused in a Section 14(a) (or other securities) case.[2]

Plaintiff should not be permitted to end run the fundamental protections afforded by Delaware General Corporation Law. He should be required to make a demand on the Board and permit Intel's Directors to decide what best serves the interests of the

---

[2] Plaintiff also cites *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 348 (3d Cir. 2001), for the proposition that there is "conflict preemption" here. Opp. at 7. That doctrine "exists where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *NE Hub*, 239 F.3d at 348. *Kamen* and the many authorities cited above applying the demand requirement in securities cases dispose of any suggestion that federal securities law and state corporation law are incompatible. Even more perplexing is plaintiff's cite (Opp. at 7) to *Reo v. USPS*, 98 F.3d 73, 76 (3d Cir. 1996). In that case, the Third Circuit concluded that the state law at issue supplemented federal law, and listed "corporation law" as the quintessential example of the type of state law that does not impair federal policy. *Id.* at 76.

8

Company and its shareholders.

### C. The Demand Requirement Applies To Plaintiff's State Law Breach Of Fiduciary Duty Claim

Plaintiff argues he does not need to make a demand for his state law claims because those claims are not protected by the business judgment rule. Opp. at 3, 9, 11. Even assuming that the business judgment rule were inapplicable to disclosure claims, the first prong of the test in *Aronson*, 473 A.2d at 814, still requires plaintiff to make a demand or establish demand futility. *See, e.g., Rales*, 634 A.2d at 933-34 n.9 ("[d]emand should not be excused simply because the subject matter of the suit . . . does not implicate the business judgment rule"); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (Delaware law; same).

Under this prong, plaintiff bears the burden of alleging *specific facts* that rebut the presumption that the Directors are disinterested and independent. *Aronson*, 473 A.2d at 814. Plaintiff's only allegation of demand futility (Compl. ¶ 6) offers nothing but bare legal conclusions to rebut this presumption. He offers nothing suggesting that Intel's eight outside Board members have divided loyalties or would risk their professional reputations by approving misstatements concerning an incentive plan in which they are not even eligible to participate.

To the contrary, although the burden is plaintiff's, not Intel's, the facts here depict a Board that was comprised overwhelmingly of independent, disinterested outside directors. At the time the Complaint was filed, Intel's Board was comprised of eleven directors. Of those eleven, none of those eligible to participate in the 2005 EOIP was a member of the three-member Compensation Committee responsible for overseeing Intel's compensation programs, including the 2005 EOIP. *See* RJN, Ex. A. at 7. Of Intel's ten current directors, only one is an officer of the Company, and only two are eligible to participate in the 2005 EOIP. *Id.* at B-2 (2005 EOIP covers executive

officers). Courts have routinely found that a board of independent, disinterested directors elected by shareholders is not only *capable* of considering a demand that the company take legal action, but is the *required* entity to do so.[3]

### D. Plaintiff's Assertion That He Could Have Brought His Claims Directly Cannot Save His Complaint

In a last ditch effort to avoid dismissal, plaintiff argues that even if demand were required, the Complaint should not be dismissed because he purportedly *could have* brought his claims directly. Opp. at 11. It is unclear whether plaintiff's premise (that he could have brought his claims directly) is even accurate.[4] But his conclusion – that the ability to bring his claims directly provides an exception to the demand requirement, made without any citation to authority – is surely wrong. *See Halpert II*, 2005 WL 1773686, at *3 ("even were Halpert's claim pursuant to Section 14(a) to be construed as

---

[3] Indeed, *Westinghouse*, a cases upon which plaintiff relies, expressly rejects the argument plaintiff makes here and holds that the business judgment rule and demand requirement *do* apply to state law fiduciary duty claims. *See* 832 F. Supp. at 998 ("The second prong of the *Aronson* test does apply, however, to Counts III and IV, the state law claims for indemnity and for breach of fiduciary duty. The business judgment rule is perfectly fitted to such claims and does not threaten any federal disclosure policy or statute").

[4] The Delaware Supreme Court recently announced a new standard for determining whether a shareholder's claim is derivative or direct. *See Tooley v. Donaldson, Lufkin & Jenrette Inc.*, 845 A.2d 1031 (Del. 2004). *Tooley* discarded the old "special injury" test for determining whether a claim is direct or derivative (*i.e.* whether the plaintiff has suffered an injury different from that suffered by shareholders in general). Instead, *Tooley* requires the consideration of two questions in determining the issue: "(1) who suffered the alleged harm, (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually?)." *Id.* at 1033. Under this test, plaintiff's claims are purely derivative. Plaintiff complains that the injury occurred when the Company distributed the 2005 Proxy Statement. Opp. at 17 ("The Company has already been injured because the inclusion of material misstatements and omissions in the Company's Proxy Statement"). Accepting this as true, the alleged injury was suffered by the Company (the loss of any deductions under the 2005 EOIP) and any relief (putting the 2005 EOIP up for another vote) would benefit the Company. Plaintiff suffered no individualized harm and will receive no individualized recovery. *Tooley*, 845 A.2d at 1039 ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation"). *See, e.g., Smith v. Waste Mgt. Inc.* 407 F.3d 381, 385 (5th Cir. 2005) (applying *Tooley* and holding that a misrepresentation claim is derivative); *In re Worldcom, Inc.* 323 B.R. 844, 855 (Bankr. S.D.N.Y. 2005) (applying *Tooley* and holding that a misleading disclosure claim is derivative). The cases cited by plaintiff for the proposition that his claims could be brought directly pre-date *Tooley*.

10

one brought directly rather than derivatively on behalf of [the corporation], it would still merit dismissal" because of plaintiffs' failure to make demand or plead adequate facts to excuse it); *see also Trump*, 2000 WL 1371317, at *10 n.5 (demand requirement applied to derivative Section 14(a) and Delaware breach of fiduciary duty claims even though plaintiffs' Section 14(a) claim could have been brought directly). No court anywhere has ever accepted the premise that just because plaintiff *could have* alleged direct claims, demand is excused.

In any event, plaintiff is the master of his own Complaint, and he chose to bring derivative claims, not direct ones. His choice appears to have been strategically motivated. *See* Compl. ¶ 4 ("[t]his action is not a securities fraud class action and does not present the possibility of abuse that [C]ongress sought to remedy with the Private Securities Litigation Reform Act of 1995" and therefore "application of [the PSLRA's] legal requirement must be adjusted to fit this action"). Having made that strategic choice, plaintiff should not be relieved of its consequences when they prove inconvenient. *See Trump*, 2000 WL 1371317, at *10 n.5 ("because Plaintiffs bring their 14(a) claim derivatively," demand required even though they could have pursued direct claims).

## III. CONCLUSION

Delaware law requires plaintiff to make a demand or plead particularized facts excusing demand before pursuing his claims. He has done neither. Accordingly, his Complaint should be dismissed with prejudice.

11

12

|  | POTTER ANDERSON & CORROON LLP |
|---|---|
| OF COUNSEL: | By _____<br>Stephen C. Norman (#2686)|
| Michael D. Torpey<br>James N. Kramer<br>Susan D. Resley<br>Erin L. Bansal<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>405 Howard St.<br>San Francisco, CA 94105<br>(415) 773-5700 | Hercules Plaza, 6th Floor<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE 19899-0957<br>(302) 984-6000<br>snorman@potteranderson.com |
|  | Attorneys for defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove, and nominal defendant Intel Corporation |

Dated: August 10, 2005

694192v2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I do hereby certify that, on August 10, 2005, the within document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

Francis G.X. Pileggi, Esquire
Sheldon K. Rennie, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801

/s/ Stephen C. Norman
Stephen C. Norman (#2686)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: snorman@potteranderson.com