## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FRANK D. SEINFELD,                    )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )       Case No.: 05-298 (JJF)
                                      )
CRAIG R. BARRETT, CHARLENE            )
BARSHEFSKY, E. JOHN P. BROWNE,        )
D. JAMES GUZY, REED E. HUNDT,         )
PAUL S. OTELLINI, DAVID S. POTTRUCK,  )
JANE E. SHAW, JOHN L. THORNTON,       )
DAVID B. YOFFIE, ANDREW S. GROVE, and )
INTEL CORPORATION,                    )
                                      )
                    Defendants.       )

---

## BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR FINAL APPROVAL
## OF PROPOSED SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES

---

**FOX ROTHSCHILD LLP**
Francis G.X. Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Plaintiff Frank D. Seinfeld*

Of Counsel:

Alexander Arnold Gershon
Gloria Kui
**BARRACK, RODOS & BACINE**
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (212) 688-0782
Fax: (212) 688-0783

Daniel E. Bacine
M. Richard Komins
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Dated: May 16, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ......................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 3

STATEMENT OF THE FACTS .......................................................................................... 4

I.    THE MERITS OF THE CASE ................................................................................ 4

II.   THE TERMS OF THE PROPOSED SETTLEMENT ....................................................... 6

ARGUMENT ................................................................................................................. 8

I.    THE PROPOSED SETTLEMENT IS FAIR,
      ADEQUATE, REASONABLE AND NOT
      A PRODUCT OF FRAUD OR COLLUSION ............................................................... 8

II.   THE PROPOSED NOTICE TO THE
      INTEL STOCKHOLDERS IS ADEQUATE ............................................................... 20

III.  PLAINTIFF'S REQUEST FOR ATTORNEYS'
      FEES AND EXPENSES IS REASONABLE ............................................................... 21

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961
(Del. Ch. 2003) ................................................................................................ 12

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ...................... 8, 13, 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..................... 10

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) ............... 22

*DeJulius v New England Health Care Employees Pension*, 429 F.3d 935, 945
(10th Cir. 2005) ................................................................................................ 20

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), ......................................... 10, 11, 15

*Gladstone v. Bennett*, 153 A.2d 577, 583 (Del. Supr. 1959) ....................................... 13

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ...................................... 9

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169 (1st Cir. 1983) ............... 9

*In re AOL Time Warner Shareholder Derivative Litig.* 2006 WL 2572114 (S.D.N.Y. 2006) ..... 11

*In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) .......................................... 13, 16

*In re Cendant Corp. Litig.*, 264 F.3d 286 (3d Cir. 2001) ........................ 9, 13, 16, 18, 24

*In re Coleman Co. Inc.Sh. Lit.*, 750 A.2d 1202, 1210 (Del. Ch. 1999) ...................... 14

*In re General Motors Corp. Pick-Up Truck Tank Product Liab. Litig.*, 55 F.3d 768
(3d Cir. 1995) ................................................................................ 9, 11, 15

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283
(3d Cir. 1998) ................................................................................................ 9

*In re Ravisnet Technologies, Inc. Securities Litig.*, 2005 WL 906361 (E.D.Pa. 2005) ............... 10

*In re Rite Aid Corp. Securities Litig.*, 269 F. Supp. 2d 603 (E.D.Pa. 2003) ....................... 22

*In re School Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990) .............................. 8

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ................................. 18

*Jennie Lee Williams, et al. v. First National Bank of Pauls Valley*, 216 U.S. 582 (1910) ............ 8

*Kerner v. Grossman*, 211 F.Supp. 397, 398 (S.D.N.Y 1962) ...................................................... 14

*Maher v Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ................................................................. 8

*Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir.) *cert. denied*, 346 U.S. 832 (1963) .......... 14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). ............................... 10, 20

*Neponsit Investment Co. v. Abramson*, 405 A.2d 97 (Del. 1979) ................................................. 8

*Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) .................................................................. 12

*Seinfeld v. Barrett*, 2006 WL 890909 (D.Del. 2006) ............................................................... 12

*St. Clair Shores General Employees Retirement Sustem v. Eibeler*, 2006 WL 2849783 (S.D.N.Y 2006) ........................................................................................................................ 12

*Sutton v. Medical Service Ass'n of Pennsylvania*, 1994 WL 246166 *5 (E.D.Pa. Jun. 8, 1994) ............................................................................................................ 19

*Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 388 (D. Del. 2005) .................... 17

*Vides v. Amelio*, 265 F. Supp. 2d 223 (S.D.N.Y. 2003) ........................................................... 12

*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986) .................................................................... 8

**Statutes**

26 U.S.C. §162(m) .................................................................................................................. 4

**Other Authorities**

Alba Conte, Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ........................ 8, 19

Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006) ........................ 4

Fed.R.Civ.P. Rule 23.1 ..................................................................................................... 1, 3, 14

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ........................................................ 9

WM1A 99935v1 05/17/07

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Frank D. Seinfeld ("Plaintiff") hereby respectfully requests, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, that this Court grant final approval of the proposed settlement (the "Settlement") of this stockholder's derivative action pursuant to the terms of a Stipulation of Settlement dated March 7, 2007 (the "Stipulation"), entered between Plaintiff, derivatively on behalf of Intel Corporation, the defendants Craig R. Barrett, Charlene Barshefsky, E. John P. Browne, D. James Guzy, Reed E. Hundt, Paul S. Otellini, David S. Pottruck, Jane E. Shaw, John L. Thornton, David B. Yoffie, Andrew S. Grove (the "Individual Defendants") and nominal defendant Intel Corporation ("Intel" or the "Company"). The Settlement is fair, reasonable and adequate, and in the best interests of the Company. As detailed in the Stipulation, the Settlement will result and has resulted in substantial, valuable benefits to the Company and its stockholders.

Plaintiff filed the complaint on May 16, 2005 and moved for summary judgment on June 7, 2005. The Defendants made a motion to dismiss the complaint for lack of ripeness, thereby arguing that there was a lack of subject matter jurisdiction, and another motion to dismiss for failure to make a pre-suit demand on the board of directors pursuant to Fed.R.Civ. P. Rule 23.1. In response, Plaintiff argued that demand would have been futile, and that the claims were ripe for review because a cause of action arose when the allegedly false or misleading statements were made in the Proxy Statement. On March 31, 2006, the Court denied all motions.

On April 14, 2006, the defendants filed an answer denying many of the material allegations of the complaint and alleging affirmative defenses.

The Court entered a Scheduling Order on May 31, 2006, and pursuant to that order, parties began the discovery process, including producing documents, and serving notices of deposition. The defendants produced approximately 25,000 pages of documents on Summation, the computer program for storing and retrieving documents. Beginning in December 2006, the parties commenced extensive settlement discussions.    These discussions culminated in a stipulation of settlement that was filed with the court on March 7, 2007.

2

## SUMMARY OF ARGUMENT

1.    The Settlement of complex litigation is favored by the courts.

2.    A proposed settlement should be approved by the court where it is fair, reasonable, and adequate.

3.    The notice to stockholders of a proposed settlement of a stockholder's derivative action complies with the requirements of Fed.R.Civ.P. Rule 23.1 where it is reasonably calculated to apprise them of the settlement and afford them an opportunity to object.

4.    Plaintiff's counsel in a stockholder's derivative action may recover fees and disbursements in the discretion of the court where the settlement confers a substantial benefit upon the Company.

WM1A 99935v1 05/17/07

## STATEMENT OF THE FACTS

### I.    THE MERITS OF THE CASE

The complaint at bar primarily addresses disclosure issues. Improving corporate disclosure has value. Dr. Cynthia A. Glassman, who was a member of the Securities and Exchange Commission from January 28, 2002 through July 14, 2006, and its acting chairman in the summer of 2005, in a speech on April 10, 2003 at Northwestern University School of Law, reiterated that improved corporate disclosure has value. The SEC itself, in Executive Compensation Disclosure, 2006 WL 3782720 at *15 (Dec. 22, 2006) (concerning improved disclosure of stock options values in proxy statements) said:

> Although difficult to quantify, disclosure under the amendments
> will benefit investors in terms of the transparency, completeness
> and accessibility of executive compensation disclosure.

It is difficult, but not impossible.

The complaint alleges that the Proxy Statement solicits the stockholders' approval of a cash incentive plan for its executive officers, called the Intel Corporation Executive Officer Incentive Plan as Amended and Restated Effective May 18, 2005 (the "EOIP" or the "Plan"). The Plan provides for payment of annual cash bonuses to Intel's executive officers. The complaint alleges that the Proxy Statement contains the misrepresentation that the bonuses would be tax deductible under 26 U.S.C. §162(m) if the stockholders approve the Plan and that it has other defects as well.

Among the kinds of relief sought, the complaint prays for termination of the Plan. The settlement provides for such termination. We respectfully submit that this is an outstanding result and that the settlement fully merits this Court's approval.

Plaintiff is now, and has been since April 14, 1999, a stockholder of Intel, a Delaware corporation. For the annual meeting of Intel's stockholders on May 18, 2005, the individual defendants, acting as the Company's board of directors, distributed a Proxy Statement that solicited the stockholders' proxies to be voted in favor of the re-election of defendants Barrett, Barshefsky, Browne, Guzy, Hundt, Otellini, Pottruck, Shaw, Thornton, and Yoffie to the board of directors, the ratification of the appointment of Ernst & Young LLP as the independent registered public accounting firm for the current year, and the approval of an amendment and extension of the Plan.

The complaint alleges that the Proxy Statement represents that under the proposed Plan the executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan were to be approved by the stockholders. It further alleges that the Proxy Statement states that if the stockholders fail to approve the Plan, the Company would terminate it and instead would make payments to the executive officers in amounts similar to that which would have otherwise have been paid under the EOIP, a portion of which would not be deductible. It further alleges that, since the defendants intended to pay the incentive payments even if the Company's stockholders disapprove it, no vote of the stockholders would make it deductible.

In addition, complaint alleges that the Proxy Statement omitted material facts concerning material factors in the calculation of bonuses. These omissions impeded the stockholders' ability to assess whether it will be easy or difficult for executive officers to achieve large bonuses, whether achievement of bonuses is substantially uncertain, and whether they will be earned for genuine accomplishments.

5

Pursuant to the Preliminary Approval Order entered March 16, 2007, notice of the proposed settlement has been timely mailed to Intel stockholders, in the manner and form set forth in the Order.

Intel reports in Item 5 of its 2006 Form 10-K that as of February 16, 2007 there were approximately 195,000 Intel stockholders of record and a substantially greater numbers of holders in street name. As the affidavit of mailing reports, Intel mailed approximately 1.9 million notices to its stockholders and provided internet access to approximately 400,000 of its stockholders who have elected to receive electronic notification. To date, only two shareholders have filed formal objections to the proposed settlement or to the request for an allowance of attorneys' fees of $862,500, inclusive of out-of-pocket disbursements incurred in prosecuting the action. Plaintiff respectfully submits that the benefits of the proposed settlement provide more than ample consideration for dismissal of the claims asserted in the litigation and that the proposed settlement and fee application merit the court's approval.

## II.    THE TERMS OF THE PROPOSED SETTLEMENT

The proposed Settlement provides for substantial benefits to Intel and its shareholders. Intel has decided to terminate the EOIP at issue in this litigation. Plaintiff's expert, Pearl Meyer, a highly regarded authority on executive compensation and a founder of the consulting firm Steven Hall & Partners, is submitting herewith her declaration that the termination of the EOIP has a present value of $47,580,352.

Plaintiff's counsel have conducted a thorough investigation of the facts and law relating to matters set forth in the complaints in the Litigation. This investigation has included: reviewing both public and non-public documents; investigation of facts independent of the

6

formal discovery process; and communicating with counsel for the Defendants to discuss the factual and legal issues surrounding the Litigation. Plaintiff's counsel had the opportunity to conduct confirmatory discovery including deposition testimony that took place on May 1-2, 2007 in San Francisco, and to review details regarding bonuses paid.

Plaintiff's Counsel believe, based upon, among other things, the discovery that has been conducted and their expert's report, that the proposed Settlement is fair, reasonable and adequate to Intel and its shareholders.

**ARGUMENT**

I.    **THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE,
       REASONABLE AND NOT A PRODUCT OF FRAUD OR COLLUSION**

   A.    **Settlements Are Favored**

   It is well settled that "[c]ompromises of disputed claims are favored by the courts."

*Jennie Lee Williams, et al. v. First National Bank of Pauls Valley*, 216 U.S. 582, 595 (1910).

*See also Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993) ("Since it

obviously eases crowded court dockets and results in savings to the litigants and the judicial

system, settlement should be facilitated at as early a stage of the litigation as possible.") (quoting

Fed.R.Civ.P. 16(c) advisory committee's note (1983)).  Particularly in complex litigation, such

as the stockholder's derivative action at bar, courts have a policy of encouraging settlement of

such litigation that "otherwise could linger for years."  *In re School Asbestos Litig.*, 921 F.2d

1330, 1333 (3d Cir. 1990).  *See also* ALBA CONTE, HERBERT B. NEWBERG, NEWBERG ON CLASS

ACTIONS § 11:41 (4th ed. 2002) ("[t]he compromise of complex litigation is encouraged by the

courts and favored by public policy.").  Indeed, the Supreme Court of Delaware in *Neponsit*

*Investment Co. v. Abramson*, 405 A.2d 97 (Del. 1979), expressed that the law "favors the

voluntary settlement" in the context of stockholders derivative actions.  *Id.* (quoting *Rome v.*

*Archer*, 197 A.2d 49, 53-54 (Del. 1964)).

   This strong public policy in support of settlement is particularly true in derivative actions

because "such litigation 'is notoriously difficult and unpredictable.'"  *See Maher v Zapata Corp.,*

714 F.2d 436, 455 (5th Cir. 1983) (citing *Schinvrel v. Goldman,* 57 F.R.D. 481, 487 (S.D.N.Y.

1973)).  *See also Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) ("[s]ettlement here is

favored for the reasons that settlements generally are favored: disputes are resolved; the

resources of litigants and courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself."). Reflecting this strong public interest in the settlement of any complex lawsuit, courts have held that settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits," *Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983), and that "a district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial." *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974).

Although there is a strong judicial policy in favor of settlement, it is equally well established that "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *Girsch v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)). In exercising its broad discretion, however, the trial court does not "have the right or duty to reach any ultimate conclusions on the issues of the fact and law which underlie the merits of the dispute." *In re Cendant Corp. Litig.*, 264 F.3d 286, 301 (3d Cir. 2001) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

**B.    The Proposed Settlement Is Procedurally Fair**

In assessing whether a settlement is fair, adequate and reasonable, courts routinely examine two types of evidence: the negotiating process that led up to the settlement and the substantive terms of the settlement. *In re General Motors Corp. Pick-Up Truck Tank Product Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995). As to the first type of evidence -- procedural fairness -- there is a presumption of fairness where the Court finds that the settlement negotiations were

"conducted at arms' length by experienced counsel after adequate discovery". *Id.* at 768. *See also* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

This proposed settlement is the result of extensive, arm's-length negotiations by counsel who are experienced in complex litigation, and who possess the skills and experience to achieve a fair settlement. Additionally, pursuant to the Order directing Notice to the Shareholders entered in this present case, copies of the full printed notice were mailed to all the shareholders. Accordingly, the form of notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950).

**C.    The Proposed Settlement Is Substantively Fair**

When a district court reviews a proposed settlement agreement, it must "make findings that support the conclusion that the settlement is fair, reasonable, and adequate in sufficient detail to explain to class members and the appellate courts the reasons for approving or denying the settlement." *In re Ravisnet Technologies, Inc. Securities Litig.*, 2005 WL 906361 (E.D.Pa. 2005) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 785) (internal quotations omitted). In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit provided a non-exclusive list of factors the court should take into consideration when it is analyzing the fairness of a settlement agreement, a list derived from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

10

The relevant factors are:

(1)     the complexity, expense and likely duration of the litigation;

(2)     the reaction of the class to the settlement;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining the class action through trial;

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F2d at 156 (citing *Grinnell*, 495 F.2d at 463. Although *Grinnell* involved a class action settlement agreement, these nine factors are also applicable to stockholder derivative actions, as *Girsh* is a case involving class and derivative claims. *See also In re AOL Time Warner Shareholder Derivative Litig.* 2006 WL 2572114 *4 (S.D.N.Y. 2006).

**1.     The Complexity, Expense and
        Likely Duration of the Litigation**

This factor captures "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp.*, 55 F.3d at 812. This litigation qualifies as complex, as to both establishing liability and proving injury, and thus the first *Girsh* factor is satisfied. As described above, the complaint alleges that Intel's proxy statements contained misrepresentations concerning the tax deductions available for bonuses under the EOIP and omissions concerning

11

the measurement of bonuses. These are extremely complex issues. If the litigation were to proceed, these matters would be the subject of substantial expert opinion, thereby increasing the cost and duration of the litigation. Defendants strongly deny liability and dispute many of the factual and legal predicates underlying the derivative claim.

In addition to these individual defenses, derivative litigation generally raises certain procedural hurdles and risks for shareholders not found in either class or securities litigation, including, *inter alia*, the requirement to make a demand on the board of directors before proceeding to file a complaint or face heightened pleading requirements to demonstrate why such demand should be excused. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003). Further, Plaintiff had to "overcome the powerful presumptions of the business judgment rule." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993).

In negotiating the proposed Settlement, plaintiff's counsel, while strongly believing they had powerful arguments to overcome these hurdles, was nonetheless fully aware of the material risks of continuing to litigate the derivative action, particularly when weighed against the immediate and tangible benefits conferred upon the Company and its shareholders by the settlement. *Seinfeld v. Barrett*, 2006 WL 890909 (D.Del. 2006); *Vides v. Amelio*, 265 F. Supp. 2d 223 (S.D.N.Y. 2003), *but see St. Clair Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783 (S.D.N.Y 2006).

The further prosecution of the litigation would require plaintiff to conduct substantial additional complex and time consuming discovery on a range of issues including, for example: whether the proxy statements fully and accurately described the tax deductions available for bonuses under the Plan and the standards used to determine those bonuses. Further, a trial would

force plaintiff's and defendants' counsel to spend a significant amount of attorney, as well as expert, time not only during the trial itself but also in preparation for a trial because, for example, there would be contested pre-trial motions. The resolution of these motions and the trial would consume valuable judicial resources.

Finally, even assuming that plaintiff prevailed at trial, it is likely that defendants would file post-trial motions and appeals, thereby increasing the costs and duration of this litigation and further delaying relief to the Company. In contrast, the proposed Settlement provides an immediate benefit to the Company and its shareholders without the risks, complexity, duration, and expense of continuing litigation. *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).

**2.    Reaction of the Intel Stockholders to the Settlement**

The second factor, the reaction of the class to the settlement, examines the number of objections by the stockholders. A court will generally conclude that a small number of objections weigh in favor of approving the settlement. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993).

After preliminary approval of the settlement, approximately 2.3 million individual notices of settlement were sent out to all of the Intel stockholders. Of all the Intel stockholders, only two filed formal objections to the settlement. Mr. Asis Chaterjee filed an objection on May 8, 2007 to this court. Mr. Chaterjee feels that only a trial would adequately address the stockholders' claims against the defendants. But it is unnecessary to conduct a trial to determine whether a settlement should be approved. *In re Cendant Corp. Lit.*, 264 F.3d at 299; *Gladstone v. Bennett*, 153 A.2d 577, 583 (Del. Supr. 1959). ("Such a procedure would emasculate the very purpose for

which settlements are made."). He also expressed disapproval to the amount of attorneys' fees requested, but he presented no facts to support his opinion.

We also received a letter from Alexandra Petrich, dated May 10, 2007. She does not object to the fairness of the settlement or the fee. Instead, she objects to the settlement on the grounds that the notice did not give her a reasonable time to respond and that the record did not specifically support the amount that plaintiff's attorneys would seek for fees and expenses. She has not submitted proof of ownership of Intel stock, as required by the Notice of Settlement, at p.8. She has only furnished her name and the name of Morgan Stanley on the proxy card. Proper proof requires either a copy of a stock certificate or a statement from Morgan Stanley. The reason for requiring proof of stock ownership is that the mail might be sent to those who no longer own their stock, or who might sell their stock after the Notice is mailed.

Addressing her arguments concerning the timeliness of the Notice, Fed.R.Civ.P. Rule 23.1, does not state how much notice should be given. Federal courts have approved a month, *Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir.) *cert. denied*, 346 U.S. 832 (1963), or less, *Kerner v. Grossman*, 211 F.Supp. 397, 398 (S.D.N.Y 1962). *See also In re Coleman Co. Inc. Sh. Litig.*, 750 A.2d 1202, 1210 (Del. Ch. 1999), (Court noting its practice of providing 30 to 45 days). In the present case, the court required mailing not later than March 31, 2007 for a hearing on May 23, 2007, a period of 53 days.

As to the question Ms. Petrich raises about disclosure in the Notice of the basis for attorney's fees and expenses, Fed.R.Civ.P. Rule 23.1 leaves the content of the Notice to the discretion of the court. The form of the Notice reports the amount of fees and expenses to be

sought by plaintiff's attorneys, and in conformity with the usual practice, provides that the basis for those fees and expenses are submitted in the brief that we are filing today.

Ms. Petrich does not argue that the settlement, the fees, and the expenses are procedurally or substantively unfair. She does not seek an adjournment of the hearing or discovery on the matter of attorneys' fees and expenses. Instead, she seeks a second notice, but she has presented no legal argument to support such relief.

We respectfully submit that the court should overrule the Petrich objection.

Finally, One Peter Biondo also wrote a letter to the court objecting to the settlement. But as Mr. Biondo did not present evidence that he is a stockholder, his letter cannot be deemed to be a formal objection.

Hence, this factor weighs in favor of approval of the proposed settlement. *Bell Atlantic Corp. v. Bolger, supra.*

### 3.    The State of the Proceedings and the Amount of Discovery Completed

The third *Girsh* factor also supports preliminary approval of the proposed settlement at this time. To approve a proposed settlement, the Court is to examine "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating. *General Motors*, 55 F.3d at 813.

The parties in this case are well aware of the strengths and weaknesses of their claims and defenses, allowing them to assess the reasonableness of the proposed settlement. Plaintiff's counsel conducted a thorough factual and legal investigation of the claims alleged in the complaint, and reviewed Intel public filings, press releases and other public documents. They

have also considered the opinion of Pearl Meyer, a recognized authority on corporate executive compensation. This investigation has provided plaintiff's counsel with an adequate and satisfactory basis to evaluate the proposed settlement. Both sides have made engaged in extensive motion practice, having litigated dismissal and summary judgment motions. Plaintiff's counsel have deposed two Intel employees: Jodie Hickam, an executive compensation manager at Intel, and Sharon Gray, a director of tax compliance at Intel. Plaintiff's counsel have also reviewed numerous documents produced by Intel and those available in the public record. It is evident that the parties had an appreciation of the merits of the case during the course of their settlement negotiations, and this factor weighs in favor of the proposed Settlement Agreement.

### 4. The Risks of Establishing Liability and Damages

Consideration of the fourth and fifth *Girsh* factors also supports preliminary approval of the proposed settlement. The Court is to analyze the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial, and not required to engage in a trial on the merits. "Indeed, one of the benefits of a full settlement is the avoidance of a determination of the merits." *In re Cendant Corp. Litig.*, 264 F.3d 286, 299 (3d Cir. 2001) (citing *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971)). "[E]ven the possibility that the class might have received more if the case had been fully litigated is not a reason not to approve the settlement. *See In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) ("the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

16

The outcome of the litigation in the case at bar is not certain. Plaintiff would have to establish at trial that the Company's proxy statements contained materially false or misleading statements, and omitted material facts, that the named executive officers were paid unauthorized compensation, and that the bonuses under the Plan were not tax deductible.

Plaintiff faces several hurdles in order to establish the proxy statements were in violation of Section 14(a) of the Exchange Act. In order to state a claim under Section 14(a), "the plaintiff must prove by a preponderance of the evidence that (1) that the defendant made a material misrepresentation or omission in a proxy statement; (2) which caused the plaintiff injury and (3) the proxy solicitation was an essential link in effecting the proposed corporate action." *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 388 (D. Del. 2005) (quoting *General Electric Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)). Plaintiff would have to establish that the objective performance goals were not established before the last day required by the Treasury Regulations or that positive, not negative, discretion was imposed by the compensation committee. Plaintiff's counsel are of the opinion that plaintiff had a serious risk that he would not prevail on this issue. See ¶ 16 of the Declaration of Alexander Arnold Gershon In Support of Plaintiff's Application for Final Approval of the Proposed Settlement and For Attorneys' Fees and Expenses ("Gershon Decl.").

Even as to the underlying merits, a jury would be presented with strongly conflicting views as to the adequacy of the disclosures in the proxy statements and the proper tax treatment of the bonuses awarded to Intel named executive officers. Plaintiff also has the heavy burden of demonstrating that the defendants breached their fiduciary duties of care and loyalty, and were not disinterested and independent. At least a majority of these director defendants might be able

17

to establish to a jury's satisfaction at trial, that they had sound reasons to believe that Intel's bonuses were deductible and that its disclosures of the bonus formula was proper and that they acted in good faith. Even if plaintiff were to prevail at trial, it is doubtful that a better result could have been obtained. (Gershon Decl. ¶17.)

While the complaint does not seek monetary damages, plaintiff would nevertheless be required to demonstrate that the requested equitable and injunctive relief was necessary to redress an injury to Intel and its stockholders resulting from the alleged misrepresentations and breaches of fiduciary duty. Issues pertaining to causation and injury could easily devolve into a battle of the competing experts, a situation fraught with risks for both sides in a hotly contested litigation. "Were a jury confronted with *competing* expert opinions of corresponding complexity, there is no compelling reason to think that it would accept Lead Plaintiff's determination rather than [the defendants'], which would posit a much lower figure for the Company's damages. This risk in establishing damages means that this factor weighs in favor of approval of the Settlement." *In re Cendant Corp.*, 264 F.3d at 239 (alterations added) (emphasis in original).

The proposed Settlement avoids the significant risks in establishing liability and damages and, therefore, the fourth and fifth *Girsh* factors support its preliminary approval.

### 5.    The Reasonableness of the Benefits Achieved

For the purposes of assessing the proposed settlement for final approval, the remaining *Girsh* factors all look to the reasonableness of the benefits achieved under the circumstances. "The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin:

reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (citing *Prudential*, 148 F.3d at 322).

These measures clearly provide redress for the misconduct alleged in the complaint. Termination of the Plan was precisely the relief sought by the complaint. As such, the proposed Settlement falls within the "range of reasonableness." *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257 (D. Del. 2002). The range of reasonableness of a settlement "recognizes the uncertainties of law and fact and the risks of litigation. *Id.*

**D.    This Settlement Is Not A Product of Fraud or Collusion**

"[Courts] presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." ALBA CONTE, HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS §11.51 (4th ed. 2002) overreaching.") *See also Sutton v. Medical Service Ass'n of Pennsylvania*, 1994 WL 246166 *5 (E.D.Pa. Jun. 8, 1994) ("Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citing *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F.Supp. 482, 488-89 (E.D.Pa. 1985), *aff'd*, 791 F.2d 917(3d Cir. 1986)). The terms of the proposed Settlement were negotiated at arms' length by experienced counsel. The terms of the Settlement reflect a superior result in the face of significant challenges and litigation risks.

First, Plaintiff's counsel have extensive experience in stockholder's derivation litigation and well-deserved reputations for tenaciously prosecuting claims on behalf of stockholders. Second, Plaintiff's counsel are fully informed about the facts and the law of this case, having engaged in document discovery and confirmatory depositions and retained experts on several

relevant subjects. Third, all settlement negotiations were conducted at arms' length, including participation in one in-person settlement meeting and countless telephone conversations and emails with counsel for the Defendants.

## II. THE PROPOSED NOTICE TO THE INTEL STOCKHOLDERS IS ADEQUATE

The proposed Notice to Intel shareholders dictated by the terms of the Stipulation fully satisfies due process under relevant state and federal rules and legal precedent. Specifically, the Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). *See also DeJulius v New England Health Care Employees Pension*, 429 F.3d 935, 945 (10th Cir. 2005) ("the question before us today is not whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement.").

The proposed form of Notice describes in plain English the terms and operation of the proposed settlement; the facts and considerations that caused plaintiff's counsel to conclude that the proposed settlement is fair and adequate; the maximum amount of plaintiff's counsel's fees and expenses that may be sought, the procedure for objecting to the proposed settlement, and the date, place, and time of the Settlement Hearing to consider the proposed settlement. With the Court's approval, the Notice has been sent by first class mail to each Intel Shareholder of record. In turn, the notice requested record holders that acted as nominees for beneficial holders to forward the notice.

This form of notice has fairly and reasonably apprised Intel shareholders of the proposed settlement, and of their options with respect thereto, and thus, fully satisfy due process requirements.

## III. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

Plaintiff's counsel seeks an award of attorneys' fees of $862,500 including out-of-pocket expenses aggregating $29,835.83 for services they have expended on a fully contingent basis. Pursuant to paragraph 9.1 of the Stipulation of Settlement, the Company has agreed to pay the amount.

Plaintiff submits that his application is fair and reasonable given the legal and factual issues and litigation risks described above, the efforts expended by his counsel, and the material benefits for Intel that Plaintiff's efforts have created by the settlement of this litigation.

### A. The Request For Fees Is Reasonable Under The Percentage of Recovery Method

In a stockholder's derivative action, plaintiff's counsel may recover attorneys' fees. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The *Mills* Court defined "substantial benefit" as "something more than technical in its consequence and … one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.* (quoting *Bosch v. Meeker Coop. Light & Power Ass'n*, 257 Minn. 362, 366-67, 101 N.W. 423 (1960)).

The amount of the award for attorneys' fees is committed to the sound discretion of the trial court. *See Dardovitch v. Haltzman*, 190 F.3d 125, 146 (3d Cir. 1999); *In re Cendant Corp.*

*Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002).  Further, "the District Court's discretion in deciding whether to grant attorneys' fees in an equity case is exceedingly broad." *Dardovitch* at 146.

In a "common-fund" case, a district court should apply a "percentage-of-recovery" method of computing attorneys' fees.  *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001).  The district court should consider the following factors:

    (1)    The size of the fund created and the number of persons benefited;

    (2)    The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

    (3)    The skill and efficiency of the attorneys involved;

    (4)    The complexity and duration of the litigation;

    (5)    The risk of nonpayment;

    (6)    The amount of time devoted to the case by plaintiffs' counsel;

    (7)    The awards in similar cases.

*Gunter v. Ridgwood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  "These factors need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d at 337.

**1.     The size of the fund created and the number of persons benefited.**

The rule is, "as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *Id.*  This case is not a "mega"-fund case, which generally require awards of at least $100 million.  Hence, this factor weighs in favor of approving the requested fee.

**2.     The presence or absence of substantial objections by members of the class to the settlement terms and/fees requested by counsel.**

As noted above, only one stockholder has filed an objection to the settlement.  Hence, this factor weighs in favor of approval of the requested fee.

**3.     The skill and efficiency of the attorneys involved.**

Plaintiff's counsel is highly skilled and experienced in shareholder derivative suits.   The firm specializes in securities class actions and derivative actions and obtained numerous favorable results.  "The single clearest factor reflecting the quality of counsel's services is the result obtained.  *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).

**4 .     The complexity and duration of the litigation and the amount of time devoted by plaintiff's counsel.**

This factor overlaps with the first *Girsh* factor, and it has already been demonstrated that this factor weighs in favor of the settlement, and holds true for the requested fee.  The litigation at bar, if not for the proposed settlement, "would take on Dickensian dimensions."  *In re Rite Aid Corp. Securities Litig.*, 269 F. Supp. 2d 603, 608 (E.D.Pa. 2003).  It cannot be disputed that this is a complex case.  The case at bar has been ongoing since 2005 and has been the subject of a great deal of discovery and motion practice.  Plaintiff's counsel has survived two motions to dismiss filed by the defendants, and undertook discovery that includes reviewing thousands of pages of documents produced by Intel and consultation with an authority on corporate executive compensation. Plaintiff's counsel have conducted confirmatory depositions and engaged in the negotiations resulting in the settlement agreement.  The requested fee should be approved, for Plaintiff's counsel's active participation in the litigation.

23

**5.      The risk of nonpayment.**

This factor is present whenever there is a likelihood that a "successful verdict will go uncollected because of a defendant's potential bankruptcy, insolvency, or lack of assets." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d at 339 (citing *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72, 100 (D.N.J. 2001)).

**6.      The awards in similar cases**

The Third Circuit noted that most fee awards range "from nineteen percent to forty-five percent of the settlement fund." *In re Cendant PRIDES*, 243 F.3d at 736. The court in *In re Ikon*, 194 F.R.D. 166 (E.D.Pa. 2000) noted that the median is about twenty-five percent and thirty percent is not uncommon. *Id.* at 194.

Here, the settlement is worth $47,580,352. The sought after fees for Plaintiff's attorneys is $862,500 which represent less than 2 percent of that amount. Such a request is well within the range of similar securities litigation.

**B.      The Request for Fees is Reasonable**
**         Under the Lodestar Method**

After the Court has examined the above factors for the appropriateness of the fee award, the next step is to cross-check the reasonableness to Plaintiff's counsel's lodestar. *In re Cendant Corp., erivative Action Litig.*, 232 F. Supp. 2d at 340-341 (citing *Gunter*, 223 F.3d at 190). The lodestar calculation is determined by multiplying the number of hours the attorneys reasonably worked on a case by a reasonably hourly billing rate for such services "given the geographical area, the nature of the services provided, and the experience of the lawyer." *Gunter* at 195 n.1

## CONCLUSION

For the foregoing reasons, plaintiff respectfully request that the proposed settlement is fair, reasonable and adequate, and merits the approval of the court, and that plaintiff's request for an award of $862,500 in attorneys' fees and expenses should be granted.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:   /s/ Francis G.X Pileggi
Francis G.X. Pileggi (#2624)
Sheldon K. Rennie (#3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667
Fax: (302) 656-8920
fpileggi@foxrothschild.com
srennie@foxrothschild.com

*Attorneys for Plaintiff Frank D. Seinfeld*

Of Counsel:

Alexander Arnold Gershon
Gloria Kui
**BARRACK, RODOS & BACINE**
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (212) 688-0782
Fax: (212) 688 0783

Daniel E. Bacine
M. Richard Komins
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Dated: May 16, 2007

WM1A 99935v1 05/17/07